1
2
3
4
5
6
7

8                    **UNITED STATES DISTRICT COURT**
9                    **SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10  LINDSAY R. COOPER, et al., | CASE NO. 12CV3032 JLS (WMc) |
| 11                        Plaintiffs, | **ORDER GRANTING MOTION TO DISMISS** |
| 12       vs. | |
| 13  TOKYO ELECTRIC POWER COMPANY, INC., | (ECF No. 26) |
| 14                        Defendant. | |

15

16      Presently before the Court is Defendant Tokyo Electric Power Company,
17 Inc.'s ("TEPCO")'s Motion to Dismiss for Lack of Subject Matter Jurisdiction and
18 Failure to State a Claim or, in the Alternative, to Dismiss under the Doctrines of
19 Forum Non Conveniens and International Comity.  (Mot. to Dismiss, ECF No. 26).
20 Also before the Court are the named plaintiffs' response in opposition, (Resp. in
21 Opp'n, ECF No. 29), and TEPCO's reply in support, (Reply in Supp., ECF No. 43).
22 The Court heard oral argument on November 20, 2013, and thereafter took the
23 matter under submission.  Having carefully considered the parties' arguments and
24 the law, the Court **GRANTS** TEPCO's motion.

25                              **BACKGROUND**

26      Plaintiffs are members of the U.S. military who allege that they were injured
27 by radiation exposure when they were deployed near the Fukushima-Daichi Nuclear
28 Power Plant ("FNPP") in Japan in the aftermath of the disastrous earthquake and

1  tsunami that struck that country on March 11, 2011.  In their First Amended
2  Complaint ("FAC"), Plaintiffs allege that they "were among the members of the U.S.
3  Navy crews of the U.S.S. Ronald Reagan (CVN-76), with its home port in San
4  Diego, California, or the crews of other vessels participating as part of the Reagan
5  Strike Force, 7th Fleet, as well as land-based service personnel, and/or their
6  dependents."  (FAC ¶ 1, ECF No. 21).

7  The theory of Plaintiffs' FAC is that TEPCO, which owns and operates the
8  FNPP, "conspired and acted in concerned [with the Japanese Government] . . . to
9  create an illusory impression that the extent of the radiation that had leaked from the
10 site of the FNPP was at levels that would not pose a threat" to human health and
11 safety and "failed to alert public officials, including the U.S. Navy, the Plaintiffs,
12 and the general public, to the danger of coming too close to the FNPP."  (*Id.* at ¶¶
13 70, 109).  Plaintiffs claim the Navy relied on TEPCO's misrepresentations "as to the
14 condition of [the] FNPP and its environs" in determining where to position the
15 Reagan and its Carrier Strike Group 7 when they arrived off the coast of Japan on
16 March 12, 2011.  (*Id.* at ¶¶ 56–57, 88).

17 Plaintiffs allege that the Navy failed to conduct "the kinds of research and
18 testing that would have verified" the true radiation levels, and so remained too close
19 to the FNPP until, "[o]n March 14, 2011, the U.S. 7th Fleet, other U.S. Navy
20 personnel, and aircraft aboard the vessels were repositioned away from Japan's
21 FNPP" after the Navy detected "contamination in the air and on the helicopters
22 returning to the U.S.S. Ronald Reagan (CVN-76) from ferrying supplies to the
23 land." (*Id.* at ¶¶ 1, 88).  Plaintiffs further contend that, because the military
24 commanders in charge of the relief efforts in Japan, dubbed "Operation Tomodachi,"
25 received "incorrect information regarding the levels of radiation," they "failed to
26 instruct Plaintiffs . . . to take necessary precautions to minimize the exposure to
27 radiation."  (*Id.* at ¶ 193).

28 Based on these allegations, Plaintiffs bring common-law claims for

negligence, fraud, strict liability, nuisance, and intentional infliction of emotional distress. Plaintiffs seek recovery of compensatory damages, including the establishment of a $1 billion medical monitoring fund, as well as punitive damages and attorney's fees.

TEPCO now moves to dismiss Plaintiff's amended pleading, setting forth ten distinct jurisdictional and substantive grounds on which the complaint should be tossed out. (Mot. to Dismiss, ECF No. 26). As the Court concludes that this matter may be disposed of exclusively on jurisdictional grounds, the Court declines to address TEPCO's arguments regarding the substantive inadequacy or implausibility of Plaintiffs' claims, as well as TEPCO's request for dismissal pursuant to the doctrines of *forum non conveniens* and international comity.

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject matter jurisdiction. Federal district courts are courts of limited jurisdiction that "may not grant relief absent a constitutional or valid statutory grant of jurisdiction" and are "presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *A–Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003) (internal quotations omitted).

Rule 12(b)(1) motions may challenge jurisdiction facially or factually. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*

## ANALYSIS

TEPCO's principal argument for dismissal is that this Court lacks subject matter jurisdiction over this action because Plaintiffs' claims are nonjusticiable under the political question doctrine. (Mot. to Dismiss 9–17, ECF No. 26). TEPCO

contends that adjudicating Plaintiffs' claims would require the Court to (1) scrutinize the U.S. military's discretionary decisionmaking during "Operation Tomodachi;" and, (2) determine whether the Government of Japan fully and adequately disclosed the risks of radiation exposure near the FNPP to the U.S. Government. (*Id.*) The Court begins by articulating the basic contours of the political question doctrine and then considers each of TEPCO's arguments in turn.

**1. Political Question Doctrine—General Principles**

The political question doctrine "excludes from judicial review those controversies which revolve around policy choices . . . constitutionally committed for resolution to the halls of Congress or the confines of the Executive branch." *Japan Whaling Ass'n v. Am. Cetacean Soc.*, 478 U.S. 221, 230 (1986). "[D]isputes involving political questions lie outside of the Article III jurisdiction of federal courts." *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 980 (9th Cir. 2007) (citing cases). Like other doctrines of justiciability, such as standing, mootness, and ripeness, the political question doctrine is grounded in respect for the Constitution's separation of powers. *See Baker v. Carr*, 369 U.S. 186, 210 (1962) ("The nonjusticiability of a political question is primarily a function of the separation of powers.").

In *Baker v. Carr*, the Supreme Court "outlined a familiar list of factors to be used in determining whether a dispute raises a non-justiciable political question." *Carmichael v. Kellog, Brown & Root Serv., Inc.*, 572 F.3d 1271, 1280 (11th Cir. 2009) (citing 369 U.S. at 217). Under *Baker*, a case may be dismissed on political question grounds if one of the following characteristics is present:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; [2] a lack of judicially discoverable and manageable standards for resolving it; [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id.*

Determining whether a case involves a nonjusticiable political question requires a "discriminating inquiry into the precise facts and posture of the particular case," *Baker*, 369 U.S. at 217, and an "evaluation of the particular question posed, in terms of the history of its management by the political branches, of its susceptibility to judicial handling in light of its nature and posture in the specific case, and of the possible consequences of judicial action." *Id.* at 211–12.

**2. The Military's Discretionary Decisions Regarding Deployment of Personnel and Assets During "Operation Tomodachi"**

TEPCO maintains that this action poses a nonjusticiable political question because, in order to adjudicate Plaintiffs' claims, this Court would be required to review "the factual basis and rationale for discretionary judgments made by military commanders" in the effort to supply humanitarian assistance to the Japan in the aftermath of the March 11, 2011 earthquake. (Mot. to Dismiss 12, ECF No. 69). According to TEPCO, examination of such matters is unavoidable because Plaintiffs' "theory of causation of injury" rests on the premise that TEPCO's alleged misstatements affected U.S. military commanders, leading them to deploy personnel near the FNPP without taking measures to minimize the risk of radiation exposure. (*Id.*)

Relying on *Lane v. Halliburton*, 529 F.3d 548, 561 (5th Cir. 2008), Plaintiffs respond that their claims may be fully adjudicated without probing the military's discretionary judgments. (Resp. in Opp'n 5, ECF No. 29). In *Lane*, the Fifth Circuit held that civilian truck drivers injured in Iraq could maintain a common law action for fraud and misrepresentation against their employer, a defense contractor, for utilizing "intentionally misleading and false . . . recruiting materials" that "misrepresented the risks that prospective employees would face in Iraq." 529 F.3d at 554–55. The political question doctrine did not bar Plaintiffs' claims because plaintiffs' theory of causation of injury did not call into question the U.S. military's choices regarding deployment and protection of civilians in Iraq. *See id.* at 561.

1  Rather, the employer's liability could be established by showing that at the time the
2  plaintiffs were hired in the U.S., the employer knew that "the Government could not
3  provide the assured risk-free environment." *Id.* at 567.
4    Plaintiffs analogize to *Lane*, arguing that they are entitled to recover for
5  TEPCO's fraud and negligence, even if decisions made by military commanders
6  during "Operation Tomodachi" were the direct cause of their injuries. (Resp. in
7  Opp'n 8, ECF No. 29). According to Plaintiffs, TEPCO's liability can be
8  established in this action by applying well-defined, "judicially discoverable and
9  manageable" standards of tort law. *Baker*, 369 U.S. at 217. Although Plaintiffs
10 concede that this Court will likely need to examine exactly what information the
11 military received from TEPCO, Plaintiffs insist that the Court would not be
12 compelled to "stand in judgment over what the military did after receiving the
13 information" or otherwise intrude into discretionary decisions of the Executive
14 branch. (Resp. in Opp'n 8, ECF No. 29).
15   The Court agrees with TEPCO, however, that the political question doctrine
16 bars Plaintiffs' claims because adjudicating this suit would undoubtedly require the
17 Court to weigh in on the propriety of the military's discretionary decisionmaking
18 during "Operation Tomodachi." To prevail in this suit, Plaintiffs must show, not
19 only that TEPCO misrepresented the condition of the FNPP and the risk to soldiers
20 operating near the damaged facility, but also that TEPCO's allegedly wrongful
21 conduct, as opposed to other factors, caused the commanding officers of the *Reagan*
22 "(1) to move the strike force and associated personnel into an area of dangerous
23 radiation exposure; (2) to do so without undertaking radiation testing and research;
24 and (3) to fail to order the necessary precautions, such as locking down the *Reagan*
25 and supplying radiation monitoring . . . ." (Mot. to Dismiss 12, ECF No. 26).
26   Moreover, as TEPCO adroitly points out, Plaintiffs' reliance on *Lane* is
27 misplaced, as that case actually confirms that Plaintiffs' claims are not justiciable.
28 In *Lane*, the Fifth Circuit declined to invoke the political question doctrine because

liability could be established without an inquiry into the military's "contribution to causation." *Lane*, 529 F.3d at 561. The panel recognized, however, that if such an inquiry were required, dismissal on political question grounds would have been proper. *Id.* ("If we must examine the Army's contribution to causation, 'political question' will loom large.").

Here, on the contrary, Plaintiffs cannot establish that TEPCO actually or proximately caused their injuries without delving into the "factual basis and rationale" for purely discretionary judgments made by military commanders. (Mot. to Dismiss 12, ECF No. 26). At a minimum, Plaintiffs must show that, but for TEPCO's allegedly wrongful conduct, the military would not have deployed personnel near the FNPP or would have taken additional measures to protect service members from radiation exposure. Thus, Plaintiffs' success inevitably hinges on the conclusion that the military's precautions were inadequate or unreasonable and that, had it not been for TEPCO's misstatements, military commanders would have adopted a different course of action.

The political question doctrine exists to prevent the judiciary from engaging in precisely such free-form inquiry into the reasonableness of the Executive's policy choices in the spheres of military affairs and foreign relations. This inquiry exceeds the appropriate boundaries of the judicial function and implicates several of the *Baker* tests. *See, e.g.*, *El-Shifa Pharma. Indus. Co. v. United States*, 607 F.3d 836, 845 (D.C. Cir. 2010) ("[T]he political question doctrine does not permit [courts] to mimic the constitutional role of the political branches by guessing how they would have conducted the nation's foreign policy had they been better informed. . . . Undertaking a counterfactual inquiry into how the political branches would have exercised their discretion had they known the facts alleged in the plaintiffs' complaint would be to make a political judgment, not a legal one."); *Corrie*, 503 F.3d at 982 ("Whether to grant . . . aid to a foreign nation is a political decision inherently entangled with the conduct of foreign relations.").

## 3. Adequacy of Communications Between the Japanese Government and the U.S. Government

TEPCO also contends that resolution of the Plaintiffs' claims would require the Court to address a second nonjusticiable political question, namely, whether the Japanese Government fully and adequately disclosed the risks of radiation exposure near the FNPP to the U.S. military. Plaintiffs' "extraordinary theory" of liability is that TEPCO "conspired and acted in concert" with the Government of Japan to deceive the U.S. military regarding the risks to human health and safety posed by radiation near the FNPP in order to procure humanitarian assistance. (Mot. to Dismiss 1, ECF No. 26). Consequently, TEPCO argues, this Court will need to determine whether the Japanese Government relayed TEPCO's misrepresentations to key decisionmakers in the U.S. Government and will need to evaluate TEPCO's alleged misstatements "in the context of the broader communications between the Government of Japan and the U.S. military about [the FNPP] and about the logistics of Operation Tomodachi more generally." (*Id.* at 16). TEPCO contends that the political question doctrine bars such evaluation of the "adequacy and completeness of a foreign government's communications with the U.S. Government." (Reply in Supp. 10, ECF No. 43).

Plaintiffs maintain, however, that "what is at issue is exactly what and how much information [TEPCO] . . . divulged to the Japanese Government." (Resp. in Opp'n 10, ECF No. 29). According to Plaintiffs, "[t]he Court may need to determine what exactly the Japanese Government communicated to the U.S. Government, but it need not sit in judgment over it in order to adjudicate Plaintiffs' claims." (*Id.* at 11).

The Court agrees with TEPCO that, if Plaintiffs' claims are allowed to proceed, this Court will be required to determine whether the Japanese Government's communications with the U.S. Government regarding the FNPP were false or misleading. Although Plaintiffs insist that the Court will only "focus" on

TEPCO, with other actors relegated to a minor, perfunctory role in the case, Plaintiffs' argument is unpersuasive. (*Id.* at 10). In fact, for Plaintiffs to prevail, they would have to show that the Japanese Government perpetrated a fraud on the U.S. Government. Passing judgment on a foreign government's communications in this manner interferes with the Executive's conduct of diplomacy and foreign relations, and therefore implicates several of the *Baker* tests. *See, e.g., Corrie*, 503 F.3d at 982 (invoking first, fourth, fifth, and sixth *Baker* tests).

Accordingly, the Court **GRANTS** TEPCO's motion to dismiss on the grounds that this case is nonjusticiable under the political question doctrine. Adjudicating this dispute would enlarge the power of the Court beyond the boundaries prescribed by Article III of the U.S. Constitution.

Plaintiffs have requested leave to amend their complaint to add new allegations and causes of action that purportedly do not run afoul of the constitutional limitations on this Court's jurisdiction. Accordingly, this dismissal is **WITHOUT PREJUDICE** to Plaintiffs filing an amended pleading in this Court.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** TEPCO's motion to dismiss. The dismissal is **WITHOUT PREJUDICE** to Plaintiffs filing an amended pleading in this Court. Plaintiffs shall file any amended pleading by January 6, 2014.

**IT IS SO ORDERED.**

DATED: November 26, 2013

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge