1
2
3
4
5
6
7

8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10   LINDSAY R. COOPER, et al.,          CASE NO. 12-CV-3032 JLS (WMC)

11                          Plaintiffs,   **ORDER (1) GRANTING IN PART AND DENYING IN PART**
12                                        **DEFENDANT'S MOTION TO**
       vs.                                **DISMISS, (2) DENYING**
13                                        **DEFENDANT'S MOTION TO**
                                          **DISMISS UNDER *FORUM NON***
14                                        ***CONVENIENS* AND**
                                          **INTERNATIONAL COMITY, AND**
15   TOKYO ELECTRIC POWER                 **(3) GRANTING LEAVE TO AMEND**
     COMPANY, INC.,
16

17                          Defendant.    (ECF No. 55 & 65)

18

19        Presently before the Court is Defendant Tokyo Electric Power Company, Inc.'s

20   ("TEPCO") Motion to Dismiss Second Amended Complaint for Lack of Subject Matter

21   Jurisdiction and Failure to State a Claim or, in the Alternative, to Dismiss under the

22   Doctrines of *Forum Non Conveniens* and International Comity.  (Mot. to Dismiss, ECF

23   No. 55.) Also before the Court are Plaintiffs' Response in Opposition (Plaintiff's Resp.

24   in Opp'n, ECF No. 59.) and TEPCO's Reply in Support (Reply ISO Mot. to Dismiss,

25   ECF No. 62.) of the Motion to Dismiss.

26        Additionally before the Court is Plaintiffs' Motion to Amend Second Amended

27   Complaint to Add Doe Defendants and Doe Plaintiffs. (Mot. to File Am. Compl., ECF

28   No. 65.) The Court also considers TEPCO's Response in Opposition, (TEPCO's Resp.

in Opp'n, ECF No. 67.), and Plaintiffs' Reply in Support (Reply ISO Mot. to File Am. Compl., ECF No. 68.) of the Motion to Amend.

The Court heard oral argument on August 25, 2014, and thereafter took both matters under submission.  Having carefully considered the parties' arguments and the law, the Court **GRANTS IN PART** and **DENIES IN PART** TEPCO's Motion to Dismiss and **GRANTS** Plaintiff's request for leave to amend.

### BACKGROUND

This Order incorporates by reference the factual and procedural background set forth in the Court's Nov. 26, 2013 Order dismissing Plaintiffs' First Amended Complaint ("FAC") without prejudice.  (Order, Nov. 26, 2013, ECF No. 46.)  This section presents a brief summary of the most relevant facts in order to provide context for the issues discussed below.

Plaintiffs are members of the U.S. military who allege that they were injured by radiation exposure when they were deployed near the Fukushima-Daichi Nuclear Power Plant ("FNPP") in Japan in the aftermath of the disastrous earthquake and tsunami that struck that country on March 11, 2011.  Plaintiffs initiated this action against TEPCO, which owns and operates the FNPP, on December 21, 2012, and subsequently filed the FAC on June 4, 2013.  Plaintiffs' FAC alleged that TEPCO "conspired and acted in concert with the Japanese Government . . . to create an illusory impression that the extent of the radiation that had leaked from the site of the FNPP was at levels that would not pose a threat" to human health and safety, and that TEPCO "failed to alert public officials, including the U.S. Navy, the Plaintiffs, and the general public, to the danger of coming too close to the FNPP." (*See* FAC ¶¶ 70, 109, ECF No. 21.)

On November 26, 2013, the Court granted TEPCO's motion to dismiss the FAC, concluding that subject matter jurisdiction was lacking because Plaintiffs' claims were non-justiciable under the political question doctrine. (Order 9, Nov. 26, 2013, ECF No. 46.)  The Court determined that adjudicating Plaintiffs' claims would require

1   impermissible scrutiny of the U.S. military's discretionary judgments regarding
2   deployment of personnel and would also require evaluation of the Japanese
3   Government's communications with the U.S. Government regarding the FNPP.  (*Id.*
4   at 7–9.)  The Court dismissed Plaintiffs' claims with leave to amend and declined to
5   address TEPCO's arguments for dismissal on the merits or its arguments urging
6   dismissal on the basis of *forum non conveniens* and international comity.

7       On February 5, 2014, Plaintiffs filed the operative Second Amended Complaint
8   ("SAC"), omitting claims grounded in TEPCO's purported fraud and misrepresentation,
9   and instead relying on allegations that TEPCO was negligent in the siting, design,
10  construction, and operation of the FNPP.  Plaintiffs maintain, *inter alia*, that TEPCO
11  failed to adhere to basic safety requirements in designing and operating the FNPP,
12  failed to take adequate measures to prevent and minimize nuclear accidents, and failed
13  to develop a suitable evacuation plan in case of emergency.  (SAC ¶ 109, ECF No. 50.)
14  Plaintiffs further allege that TEPCO ignored warnings that the FNPP was at risk of
15  significant damage from a tsunami, failed to make necessary repairs to the plant's
16  cooling system, and failed to carry out timely inspections of other critical equipment.
17  (*Id.* at ¶¶ 114, 118–19.)   Plaintiffs contend that because they no longer rely on
18  TEPCO's affirmative representations and fraud, the Court is not required to analyze
19  any decision made by the Executive Branch of the U.S. Government, thereby avoiding
20  the justiciability issue.

21      TEPCO moves to dismiss once again, arguing that Plaintiffs' revised claims do
22  not remedy the deficiencies previously identified by the Court.  (Mot. to Dismiss 1,
23  ECF No. 55.)  According to TEPCO, the new theory of liability elaborated in Plaintiffs'
24  SAC remains inadequate because it still relies on an account of causation of injury that
25  implicates the deployment decisions of the U.S. Navy and high-level communications
26  between the Japanese and U.S. Governments, thereby raising the same issues of
27  justiciability that warranted dismissal of the original pleading.  (*Id.*)  In addition,
28  TEPCO emphasizes that Plaintiffs' claims fail on the merits and that this suit should

1  be dismissed on the grounds of *forum non conveniens* and international comity to allow

2  for litigation to proceed in Japan.  (*Id.* at 4–6.)

3  <center>**SUBJECT MATTER JURISDICTION**</center>

4  TEPCO moves to dismiss Plaintiffs' SAC for lack of subject matter jurisdiction,

5  arguing that the SAC raises nonjusticiable political questions.

6  **1.**   **Legal Standard**

7  A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1)

8  challenges a court's subject matter jurisdiction.  Federal district courts are courts of

9  limited jurisdiction that "may not grant relief absent a constitutional or valid statutory

10  grant of jurisdiction" and are "presumed to lack jurisdiction in a particular case unless

11  the contrary affirmatively appears." *A–Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir.

12  2003) (internal quotations omitted).

13  "[D]isputes involving political questions lie outside of the Article III jurisdiction

14  of federal courts." *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 980 (9th Cir. 2007).  The

15  political question doctrine forecloses judicial review of controversies which revolve

16  around policy choices constitutionally committed to Congress or the Executive branch.

17  *Japan Whaling Ass'n v. Am. Cetacean Soc.*, 478 U.S. 221, 230 (1986).   Like other

18  doctrines of justiciability, such as standing, mootness, and ripeness, the political

19  question doctrine is grounded in respect for the Constitution's separation of powers.

20  *See Baker v. Carr*, 369 U.S. 186, 210 (1962) ("The nonjusticiability of a political

21  question is primarily a function of the separation of powers.").

22  Under *Baker v. Carr*, a case may be dismissed on political question grounds if

23  one of the following characteristics is present:

24  [1] a textually demonstrable constitutional commitment of the issue
    to a coordinate political department; [2] a lack of judicially

25  discoverable and manageable standards for resolving it; [3] the
    impossibility of deciding without an initial policy determination of

26  a kind clearly for nonjudicial discretion; [4] the impossibility of a
    court's undertaking independent resolution without expressing lack

27  of the respect due coordinate branches of government; [5] an unusual
    need for unquestioning adherence to a political decision already

28  made; or [6] the potentiality of embarrassment from multifarious
    pronouncements by various departments on one question.

1   *Id.*

2       Determining whether a case involves a nonjusticiable political question requires

3   a "discriminating inquiry into the precise facts and posture of the particular case." *Id.*

4   at 217.  Courts must analyze "the particular question posed, in terms of the history of

5   its management by the political branches, of its susceptibility to judicial handling in

6   light of its nature and posture in the specific case, and of the possible consequences of

7   judicial action." *Id.* at 211–12.  While many cases involving foreign relations or the

8   military invoke the political question doctrine, "it is error to suppose that every case or

9   controversy which touches foreign relations lies beyond judicial cognizance." *Id.* at

10  211.   Courts must determine, in light of the *Baker* factors, "whether the military

11  judgment is the kind that warrants application of the political question doctrine."

12  *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1358 (11th Cir. 2007).  The

13  court "must analyze [a plaintiff's] claim as it would be tried, to determine whether a

14  political question will emerge." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572

15  F.3d 1271, 1281 (11th Cir. 2009)(citing *Occidental of Umm al Qaywayn, Inc. v. A.*

16  *Certain Cargo of Petroleum*, 577 F.2d 1196 (5th Cir. 1978)).

17  **2.    Analysis**

18      TEPCO argues that the first, second, third, and fourth *Baker* issues are implicated

19  in Plaintiffs' theory of causation and that the Court therefore lacks subject matter

20  jurisdiction over Plaintiffs' case.  (Mot. to Dismiss 16–17, ECF No. 55.)

21      Plaintiffs maintain that they have "redirected the focus of their claims" away

22  from TEPCO's alleged misrepresentations and fraud and toward TEPCO's negligent

23  acts and omissions prior to, and during, the nuclear accident at the FNPP.  (Plaintiffs'

24  Resp. in Opp'n 6, ECF No. 59.)  According to Plaintiffs, because the SAC no longer

25  rests on the theory that TEPCO's misrepresentations influenced military judgments

26  regarding deployment of personnel and assets, the Court need not "stand in judgment

27  over any decision made by the Executive Branch of the U.S. Government." (*Id.* at 1.)

28  Plaintiffs contend that their action as amended is now merely one for "ordinary

negligence," which can be resolved through the application of "traditional tort standards" that do not raise political questions. (*Id.* at 10.)  In particular, the SAC seeks to impose liability for TEPCO's "intentional and negligent oversight in construction, design, regulatory compliance, maintenance, training, emergency readiness, emergency responses, and decision making during the emergency." (*Id.* at 11–12.)

TEPCO rejects this characterization of the SAC, however.  Despite Plaintiffs' efforts to re-style their pleading by dropping their cause of action for fraud, TEPCO contends that Plaintiffs are nonetheless required to "plead and prove that the chain of causation [of injury] was not broken by the U.S. Navy's *independent* decisionmaking about where to locate the vessels and what protective measures to take." (Reply ISO Mot. to Dismiss 3, ECF No. 62.) Because the Navy's contribution to causation remains in issue, TEPCO argues that the Court cannot adjudicate Plaintiffs' negligence claims without implicating several of the *Baker* factors.  TEPCO asserts that Plaintiffs continue to rely on concealment by TEPCO and the Japanese government.

After reevaluating the chain of causation in this case, the Court agrees with Plaintiffs that the SAC as amended no longer requires the Court to evaluate the discretionary actions of the U.S. military or communications between the Japanese and U.S. Governments.

## A.   Actual Causation

As alleged, TEPCO's negligence was an actual cause of Plaintiff's injuries. Plaintiffs allege that TEPCO failed to adhere to basic safety requirements in designing and operating the FNPP, failed to take adequate measures to prevent and minimize nuclear accidents, failed to develop a suitable evacuation plan in case of emergency, failed to make necessary repairs to the plant's cooling system, failed to carry out timely inspections of critical equipment, and  ignored warnings that the FNPP was at risk of significant damage from a tsunami. (*Id.* at ¶¶ 109, 114, 118–19.) These negligent acts,

1  in conjunction with the earthquake and tsunami, led to the FNPP's ultimate failure
2  which caused Plaintiffs and many other people within the FNPP's vicinity to fall ill.

3      The discretionary decision to deploy personnel and assets in support of
4  Operation Tomodachi is also undisputedly an actual cause of Plaintiff's injuries.
5  Accepted as true, the SAC states that Plaintiffs were brought into the vicinity of the
6  FNPP by the U.S. Navy in response to the earthquake and tsunami in order to provide
7  humanitarian relief.

8  **B.     *Proximate Causation***

9      TEPCO contends that the military's contribution to causation should limit its
10  liability in this case.

11      In certain situations where the defendant's conduct is an actual cause of the harm,
12  the defendant will nevertheless be absolved where there is an independent intervening
13  act that is not reasonably foreseeable. 6 Witkin, Summary 10th (2005) Torts, Cause in
14  Fact and Proximate Cause s. 1186, p. 553 (2012) (citing *Mitchell v. Gonzales*, 54
15  Cal.3d 1041 (1991)); *See Akins v. Sonoma Cnty.*, 67 Cal. 2d 185, 199 (1967); *Farr v.*
16  *NC Mach. Co.*, 186 F. 3d 1165, 1169 (9th Cir. 1999). However, "any harm which is
17  in itself foreseeable, as to which the actor has created or increased the recognizable
18  risk, is always 'proximate,' no matter how it is brought about, except where there is
19  such intentionally tortious or criminal intervention, and it is not within the scope of the
20  risk created by the original negligent conduct." RESTATEMENT (SECOND) OF TORTS §
21  442B cmt.b (1965).

22      TEPCO thinks the Navy's independent decision to send the U.S.S. Reagan to
23  Japan qualifies as a supervening cause of Plaintiffs' harm, thereby limiting TEPCO's
24  liability by breaking the necessary chain of proximate causation. To determine whether
25  the Navy's decision was a supervening cause, TEPCO argues that the Court would be
26  required to evaluate the discretionary decisions of military commanders, which would
27  invoke a political question and therefore deprive the Court of subject matter
28

12cv3032

1  jurisdiction. If the Navy's decision was unforeseeable, intentionally tortious, or
2  criminal it could qualify as a supervening cause.

3      TEPCO does not persuade the Court that the military's decision-making could
4  plausibly constitute a supervening cause of injury.  Aside from the military's decision
5  to enter the area, the military had no role in the chain of causation for Plaintiff's
6  injuries as alleged in the SAC.  As discussed above, Plaintiffs sufficiently allege that
7  TEPCO's negligence was an actual cause of Plaintiffs' injuries.  It is foreseeable that
8  as a result of an improperly designed and maintained nuclear plant, people present in
9  the vicinity would be adversely affected by radiation.  Likewise, the Navy's presence
10 in this scenario was foreseeable.  In the aftermath of a natural disaster, it is foreseeable
11 that foreign military and aid-workers would be among those in the vicinity.  As alleged,
12 TEPCO created the very risk of harm that actually occurred.

13     Because the alleged harm to Plaintiffs was foreseeable and within the scope of
14 risk created by TEPCO, the relevant issue becomes whether the Navy's conduct was
15 intentionally tortious or criminal.  At most, based on the initial evidence presented,
16 TEPCO could allege negligence on the part of the Navy.  However, the United States
17 is not a party, Plaintiffs allege no negligence on the part of the U.S. military, and the
18 SAC establishes the reasonableness of the military's actions.  Plaintiffs contend that
19 once the U.S.S. Reagan detected unsafe levels of radiation, the ship withdrew from the
20 area.  Further, Defendants present no facts supporting that the U.S. military's
21 precautions were inadequate or unreasonable, let alone intentionally tortious or
22 criminal.  TEPCO only discusses that the Navy is a sophisticated entity with the
23 independent capability of knowing the risks incident to a natural disaster.  (Mot. to
24 Dismiss 25, ECF No. 55.)

25     Further, the Court finds that the SAC alleviates any potential separation of
26 powers concerns.  The crux of the case is not whether the decision to deploy or the
27 actions taken during the deployment were reasonable.  Plaintiffs are not challenging
28 the executive decision to offer aid to Japan or questioning U.S. foreign relations

1   decisions.  While deployment decisions regarding military personnel operating in a

2   disaster zone are essentially professional military judgments, and therefore could

3   implicate a political question, here no military judgments need be reviewed.  The

4   choices by the U.S. military only incidentally come into play as a potential affirmative

5   defense to Plaintiffs' theory of negligence, and as discussed above, this theory is not

6   viable.  Unlike the other cases presented before the court where the circumstances were

7   thoroughly pervaded by military judgments and decisions, here the allegedly negligent

8   conduct is easily separated from the actions of the U.S. Navy both temporally and

9   factually.  *Cf. Carmichael*, 572 F.3d at 1282–83 (Suit against military contractor related

10  to driver's negligence in an Iraqi convoy accident nonjusticiable because convoy

11  controlled by U.S. military); *Corrie*, 503 F.3d at 980 (Palestine nationals suing private

12  corporation for selling bulldozers to Israel where bulldozers approved and paid for by

13  U.S.); *Taylor v. Kellogg Brown & Root Servs., Inc.*, 658 F.3d 402 (4th Cir. 2011)

14  (political question barred negligence claim against military contractor working in

15  combat zone when unauthorized military personnel interfered with repair of electrical

16  box).  TEPCO is not a military contractor or otherwise under the control or direction

17  of the United States and in resolving this case, the Court will rely on well-established

18  tort standards.   Accordingly, the Court finds that Plaintiffs' amended theory of

19  causation does not implicate any of the *Baker* factors and that the military judgment in

20  this instance is not the kind that warrants application of the political question doctrine.

21      Because the Court finds that TEPCO has not set forth a tenable scenario where

22  the Navy's actions could be considered a supervening cause, the Court need not delve

23  into the discretionary decisions of the executive branch, and jurisdiction is no longer

24  barred by the political question doctrine.[1]

25

26      [1]Plaintiffs' FAC relied on the Japanese Government and TEPCO's deception regarding the
    condition of the FNPP.  Plaintiffs' alleged a chain of causation involving TEPCO's communications
27  with the Navy and the Navy's reliance on those misrepresentations.  This necessarily included the issue
    of whether the Navy justifiably relied on TEPCO's misrepresentations and whether the Navy made
28  an informed decision in deploying personnel near the FNPP.  *See Corrie*, 503. F.3d at 983 ("Whether
    to grant military or other aid to a foreign nation is a political decision inherently entangled with the

# FAILURE TO STATE A CLAIM

## 1.   Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted." The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6).  A claim is

---

conduct of foreign relations.").  Accordingly, the Court dismissed the FAC as nonjusticiable.

However, the SAC omits these allegations. The SAC no longer alleges that had it not been for TEPCO's distribution of false information regarding radiation levels at the FNPP, military commanders would have adopted a different course of action. Similarly, the SAC no longer alleges that "but for TEPCO's allegedly wrongful conduct, the military would not have deployed personnel near the FNPP or would have taken additional measures to protect service members from radiation exposure." (Order 7, Nov. 26, 2013, ECF No. 46.) Moreover, Plaintiffs no longer specifically allege that the Japanese Government was TEPCO's 'co-conspirator' in providing misleading information to the Navy, (Mot. to Dismiss 18, ECF No. 55.), and, the Court therefore need not examine the Japanese Government's disclosures to the U.S. military. (*See* Reply in Supp. 7–9, ECF No. 62.)

The "residual factual allegations asserting (1) TEPCO's affirmative misrepresentations that the conditions at the reactor complex were within safe limits, and (2) that the radioactive release was far more dangerous than TEPCO communicated, are **not** the basis of Plaintiff's claims in the SAC." (Resp. in Opp'n 11, ECF No. 59.)  TEPCO argues throughout its motion to dismiss that these statements continue to support its political question defense. However, these allegations, "although included in the SAC," are not the basis for Plaintiffs current claims as is evident from the briefing and oral argument.

facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief.  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Further, the Court need not accept as true "legal conclusions" contained in the complaint.  *Id.*  This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 1950 (citation omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.*  Moreover, "[f]or a complaint to be dismissed because the allegations give rise to an affirmative defense[,] the defense clearly must appear on the face of the pleading." *McCalden v. Ca. Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990) (internal quotation marks omitted).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  In other words, where leave to amend would be futile, the Court may deny leave to amend. *See Desoto*, 957 F.2d at 658; *Schreiber*, 806 F.2d at 1401.

**2.    Analysis**

TEPCO moves to dismiss each of Plaintiffs' asserted causes of action for failure to state a claim for which relief could be granted.  The Court considers each of TEPCO's arguments in turn.

### A.      Proximate Causation

1

2        TEPCO contends that Plaintiffs fail to satisfy the crucial element of proximate

3   causation, such that all nine of their claims must be dismissed because there is no

4   plausible connection between TEPCO's allegedly wrongful conduct and Plaintiffs'

5   injuries.  TEPCO relies on the same argument discussed above regarding the U.S.

6   military's role in causation and unlikely reliance on TEPCO's representations.  (Mot.

7   to Dismiss 21, ECF No. 55). As discussed above, the Court finds that Plaintiffs have

8   sufficiently pled proximate causation because, as alleged, Plaintiff's harms were

9   directly caused by TEPCO's negligence and Plaintiffs no longer contend that the

10  military based its decision to deploy on TEPCO's representations.

11       Additionally, the Court finds TEPCO's reliance on the First Circuit's decision

12  in *Jacob v. Curt*, 898 F.2d 838 (1st Cir. 1990), and the Ninth Circuit's decision in

13  *Galen v. Cnty. of L.A.*, 477 F.3d 652 (9th Cir. 2007), to be misplaced. TEPCO contends

14  that "when the decisionmaking of a government body is an essential step in the chain

15  of causation of injury, a plaintiff's burden to plead and prove proximate causation

16  requires a showing that the government's decisionmaking was not the result of its own

17  independent judgment."  (Mot. to Dismiss 21, ECF No. 55.) In both cases, plaintiffs

18  sued individuals who had made statements leading to a later independent government

19  decision.  In *Galen*, the court held that judicial officers have exclusive authority to set

20  bail and that a deputy's statements to the judicial officer could not subject that deputy

21  to liability.  477 F.3d at 663.  In *Jacob*, the court held that a U.S. researcher could not

22  be found liable for a foreign government's decision to close a health clinic because of

23  a the researcher's article criticizing the clinic.  898 F.2d at 839.  The courts in both

24  cases held that the independent government decisions were superseding causes that

25  broke the chain of causation. Here, the Navy's conduct did not exclusively and

26  independently result in the harm to Plaintiffs.  As discussed above, TEPCO's

27  negligence was a proximate cause of Plaintiffs' injuries and the Navy's actions do not

28  constitute a supervening cause releasing TEPCO from liability.

1    Accordingly, the Court agrees with Plaintiffs that the complaint sufficiently
2    pleads proximate cause as amended and the Court **DENIES** TEPCO's motion to
3    dismiss on this basis.

4    **B.    *Firefighter's Rule***

5    TEPCO contends that Plaintiffs' recovery is barred under the "firefighter's rule,"
6    because as professional rescuers, they cannot recover for injuries caused by a hazard
7    incident to the situation to which they responded." (Mot. to Dismiss 22, ECF No. 55).
8    TEPCO maintains that Plaintiffs, as members of the U.S. Armed Forces participating
9    in Operation Tomodachi, were acting as professional rescuers and are therefore covered
10   by the "firefighter's rule." (*Id.* at 23.) (citing *Maltman v. Sauer*, 530 P.2d 254, 257–58
11   (Wash. 1975)).

12   Plaintiffs contend that the firefighter's rule does not apply to them because a
13   nuclear meltdown is not a "risk inherent in offering humanitarian assistance." *See*
14   *Solgaard v. Guy F. Atkinson Co.*, 6 Cal.3d 361, 369 (1971). The firefighter's rule does
15   not bar recovery for independent acts of misconduct which were not the cause of the
16   plaintiff's presence on the scene. *Donahue v. S.F. Hous. Auth.*, 16 Cal.App.4th 658,
17   663 (1993).

18   The Court agrees with Plaintiffs that their Complaint is not barred by the
19   firefighter's rule. As alleged, the nuclear accident *was* independent of the earthquake
20   that summoned the U.S. Navy. Although the FNPP meltdown occurred in part due to
21   the earthquake and tsunami, Plaintiffs allege the ultimate failure of the FNPP was a
22   result of TEPCO's inadequate preparation for a foreseeable natural disaster and
23   negligence in designing and maintaining the FNPP. Plaintiffs contend that the Navy
24   responded to the earthquake and tsunami in order to provide humanitarian assistance,
25   including: providing food, water, and emergency shelter. Nuclear failure and radiation
26   exposure—due to a private corporation's negligence—are not risks inherent in
27   responding to an earthquake and tsunami, and thus the Firefighter's Rule does not bar
28   Plaintiffs claims as a matter of law. The Court has reservations in using the

12cv3032

1  Firefighter's Rule as a liability shield for a foreign corporation where the connection

2  between the harm and the rescue operation is not obvious.  Defendants cite no authority

3  extending the Firefighter's Rule to this type of circumstance[2] and the Court will not

4  dismiss Plaintiffs' SAC for this reason.  Accordingly, the Court **DENIES** TEPCO's

5  motion to dismiss Plaintiffs' claims on this basis.

6  ***C.***       ***TEPCO's Duty of Care with Respect to Plaintiffs' Claims of Negligence,***

7            ***Negligence Per Se, Res Ipsa Loquitur, Failure to Warn, and Nuisance***

8            TEPCO argues that Plaintiffs' claims for negligence, failure to warn, and

9  nuisance must be dismissed because TEPCO owed no duty of care to Plaintiffs.

10  TEPCO relies on two arguments in support of it's contention.  First, there was no need

11  to warn the U.S. military about potential radiation because "it would be inappropriate,

12  as a matter of substantive tort law, for the court to recognize an innovative judge-made

13  duty of foreign sovereigns and foreign entities to provide disclosures to other

14  sovereigns in the context of a large-scale humanitarian crisis." (Mot. to Dismiss 25,

15  ECF No. 55).  Second, TEPCO contends that it had no duty to warn a sophisticated

16  entity such as the Navy regarding known risks of operating in a disaster zone especially

17  as the U.S.S. Reagan had nuclear detection capabilities.  (*Id.*)  Both of these arguments

18  appear to be only related to TEPCO's duty to warn the U.S. military in the context of

19  negligence.  TEPCO does not address any independent duty owed to Plaintiffs as

20  individuals in the area.  (Reply ISO Mot. to Dismiss 14, ECF No. 6.)  Further, TEPCO

21  does not address the merits of Plaintiffs' Strict Products Liability Failure to Warn or

22  Nuisance claims.[3]

23

24            [2]TEPCO cites to *Maltman v. Sauer*, to support the proposition that "Army servicemembers

25  responding to accidents" are barred by the Firefighter's Rule.  530 P.2d 254, 257–58 (Wash. 1975).
   Not only is this not authoritative, but the Court finds this broad statement to be misleading.  In

26  *Maltman*, an army helicopter was dispatched to a car accident scene as part of the Military Assistance
   to Safety and Traffic rescue program.  (*Id.* at 256.) Subsequently the helicopter crashed en route to the

27  accident.  (*Id.*)  Here, the relationship between the Plaintiffs and TEPCO is far less clear, and in any
   case, Plaintiffs were not responding directly to the nuclear disaster.

28            [3]The Court has serious concerns that Plaintiffs claims for Strict Liability Failure to Warn and
   Nuisance cannot stand as a matter of law.

12cv3032

1    Plaintiffs respond by arguing that TEPCO owed an absolute duty to all persons

2  within the vicinity of the FNPP.  (Plaintiff's Resp. in Opp'n 18, ECF No. 59.)  As

3  discussed above, the SAC alleges a chain of causation independent from the decisions

4  made by the Navy.  Thus, TEPCO owed Plaintiffs the same duty of care it owed to

5  those in the vicinity of the FNPP in reasonably operating the FNPP.  TEPCO's two

6  arguments  have  no  bearing  on  whether  it  owed  a  duty  to  the  individual

7  servicemembers.  In light of the Court's decision regarding causation and the Parties'

8  arguments, the Court **DENIES** TEPCO's motion to dismiss Plaintiffs' claims on this

9  basis.

10 ***D.     Actual and Justifiable Reliance***

11   TEPCO moves to dismiss Plaintiffs' negligence claim arguing that the claim is

12 based in large part on negligent misrepresentation and argues that Plaintiff did not

13 demonstrate actual and justifiable reliance.  (Mot. To Dismiss 26, ECF No. 55.)

14 Plaintiffs contend that this issue is irrelevant because they are not asserting a negligent

15 misrepresentation claim.   (Plaintiff's Resp. in Opp. 24, ECF No. 59.)   Because

16 Plaintiffs are pursuing no such claim, the Court  **DENIES** as moot TEPCO's motion

17 to dismiss Plaintiffs' negligence claim on this basis.

18 ***E.     Strict Liability for Design Defect***

19   A strict liability for design defect claim has four elements: (1) the product is

20 placed on the market, (2) there is knowledge that it will be used without inspection for

21 defect, (3) the product is defective, and (4) the defect causes injury. *Nelson v. Sup. Ct.*,

22 50 Cal. Rptr. 3d 684, 688 (Cal. Ct. App. 2006).

23   TEPCO moves to dismiss Plaintiffs' strict liability design defect claim, arguing

24 that Plaintiffs fail to allege facts supporting the claim that the FNPP is a product

25 "placed on the market."  (Mot. to Dismiss 28, ECF No. 55.)  Because the FNPP is a

26 nuclear power facility that was owned by TEPCO at all times and was never transferred

27 to a different "user," TEPCO argues that Plaintiffs' design defect claim must fail. (*Id.*

28 at 28–29.)  Plaintiffs argue that Defendants placed the electricity from the FNPP on the

1   market which was stored and manufactured in the FNPP and that this should lead to
2   strict liability for design defect.  (Plaintiff's Resp. in Opp'n 31, ECF No. 59.)

3       Plaintiff's design defect claim lacks merit.  Plaintiffs may not ignore elements
4   of the design defect cause of action simply because it would make sense to apply
5   liability in light of the potential for injury to the public.  Plaintiffs do not persuasively
6   explain how a design defect claim is viable in light of these facts.  The product,
7   electricity, was not defectively designed and did not cause Plaintiff's injuries.  The
8   FNPP was evidently not a product "placed on the market."  The alleged defects in
9   storage and design do not support a defective design claim.  Accordingly, the Court
10  **GRANTS** TEPCO's motion to dismiss Plaintiffs' design defect claim **WITH**
11  **PREJUDICE** because Plaintiffs can not cure the defects in this claim by alleging
12  additional facts consistent with their pleading.

13  ### F.    *Intentional Infliction of Emotional Distress ("IIED")*

14      A claim for IIED requires (1) extreme and outrageous conduct by the defendant
15  with the intention of causing emotional distress, (2) the plaintiff's suffering severe
16  emotional distress, and (3) actual and proximate causation of the emotional distress.
17  *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 819 (Cal. 1993).  Thus, "it is not
18  enough that the conduct be intentional and outrageous.  It must be conduct *directed*
19  *at the Plaintiff*."  *Id.*  This distinguishes IIED from negligent infliction of emotional
20  distress.  *Id.* at 820.

21      TEPCO contends that Plaintiffs' claim for IIED fails for two reasons: (1) the
22  federal statutory scheme for compensating victims of nuclear incidents, known as the
23  Price-Anderson Act, prohibits claims for emotional distress in the absence of physical
24  injury, suggesting that common law liability should not provide recovery in such cases
25  either; and, (2) Plaintiffs do not allege facts establishing that TEPCO engaged in
26  "extreme and outrageous conduct" or that any such conduct was "directed at" Plaintiffs,
27  two necessary elements of the IIED cause of action.  (Mot. to Dismiss 29–30, ECF No.
28  55).  Plaintiffs maintain that the Price-Anderson Act does not apply to foreign

producers of nuclear power.  (Resp. in Opp'n 24–25, ECF No. 59).  Plaintiffs also contend that TEPCO's degree of negligence rises to the level of extreme and outrageous. (*Id.* at 25.) Plaintiffs make no effort to respond to TEPCO's argument that no conduct was "directed at" Plaintiffs, a prerequisite for imposing liability for IIED.

Plaintiffs' IIED claim lacks merit.  Plaintiffs attempt to cast TEPCO's alleged negligence as the same extreme and outrageous conduct.  However, negligence is insufficient to state a claim for IIED.  Plaintiff must establish intentional conduct or reckless disregard.  *Potter*, 863 P.2d 795 at 819.  Plaintiffs also fail to allege facts sufficient to establish that TEPCO engaged in any conduct specifically "directed at" them.  Because IIED imposes liability for ambiguous injuries that are easily feigned, Plaintiffs may not recover in the absence of facts indicating that the defendant's conduct specifically targeted them and sought to cause them harm.  There is no plausible way to claim that TEPCO engaged in any conduct directed at the U.S. servicemembers. Much of the alleged negligence occurred years before the Plaintiffs were deployed and they never had any contact with TEPCO other than suffering from the radiation.

Accordingly, the Court **GRANTS** TEPCO's motion to dismiss Plaintiffs' IIED claim **WITH PREJUDICE**.

## G.    *Strict Liability for Ultrahazardous Activities*

TEPCO also moves to dismiss Plaintiffs' claim for strict liability for injuries resulting from an inherently dangerous activity.  TEPCO makes a similar argument as with the IIED claim that the Price-Anderson Act prohibits strict liability claims for releases of radiation below federal limits, and suggests that common law liability should not provide recovery absent pleading that their exposure to radiation exceeded federal limits. (Mot. to Dismiss 32–33, ECF No. 55.) Second, TEPCO argues that the Convention on Supplementary Compensation for Nuclear Damage ("CSCND") specifies that all claims concerning nuclear accidents should be resolved in the country where the accident occurred.  (*Id.* at 33–34.)  TEPCO apparently concedes that

operation of a nuclear power facility is an inherently dangerous or "ultrahazardous" activity. (Reply ISO Mot. to Dismiss 18 n. 7, ECF No. 62 (TEPCO's Motion assumed *arguendo* that the operation of a nuclear power plant qualifies as an ultrahazardous activity).)   Plaintiffs again argue that the Price-Anderson Act does not apply to a foreign nuclear operator and that the CSCND is not yet in force and has not been ratified by Japan.  (Plaintiff's Resp. in Opp. 24–25, 29–30, ECF No. 59.)   Also, Plaintiffs argue that TEPCO's activities meet the criteria of abnormally dangerous. (*Id.* at 27–29.)

The Court finds TEPCO's arguments unpersuasive.  TEPCO offers no legal support for applying the Price-Anderson Act by analogy to a foreign corporation and the Court declines to do so. Also, the Court will not dismiss a claim that is sufficiently pled because of the pending CSCND.  Accordingly, the Court **DENIES** TEPCO's motion to dismiss the strict liability for ultra-hazardous activity claim.

### H.     *Loss of Consortium*

TEPCO moves to dismiss Plaintiffs' loss of consortium claim arguing that since Plaintiffs' tort claims fail there is no valid loss of consortium cause of action.  (Mot. to Dismiss 34, ECF No. 55.)  Plaintiffs clarify that a tort claim and a spouse's loss of consortium claim are separate claims. (Plaintiff's Resp. in Opp'n 31–32, ECF No. 59.) Because the Court finds that Plaintiffs have stated a claim for which relief may be granted for several tort claims, the loss of consortium claim survives.

### MOTION TO DISMISS CLAIMS ON BEHALF OF DOE PLAINTIFFS

Finally, TEPCO moves to dismiss the claims purportedly brought by Plaintiffs on behalf of "John & Jane Does 1-70,000." (Mot. to Dismiss 34, ECF No. 55.) TEPCO argues that this is an impermissible attempt by Plaintiffs' counsel to bring claims on behalf of "placeholder plaintiffs" so as to buy time while they try to drum up 70,000 future clients. (*Id.* at 34–35.)  Additionally, TEPCO states that this designation is inappropriate in the context of a class action because absent class members are not formal parties which could be designated as Doe parties. (Reply ISO Mot. to Dismiss

18–19, ECF No. 62.)  Plaintiffs insist that they are seeking to certify a class action and that Defendant's motion to dismiss the John and Jane Does is premature.  (Plaintiff's Resp. in Opp'n 32–33, ECF No. 59.)

The continued use of "placeholder plaintiffs" is likely unjustified and inappropriate at this point as Plaintiffs have had over two years to name additional parties.  Absent class members are not formal parties which can be designated as pseudonymous Doe plaintiffs.  Accordingly, the Court **GRANTS** TEPCO's motion to dismiss the claims on behalf of the "DOE" plaintiffs.

<div align="center">

**FORUM NON CONVENIENS**

</div>

**1.     Legal Standard**

"A federal court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties*." Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504 (1947)).  "The doctrine of *forum non conveniens* is a drastic exercise of the court's 'inherent power' because, unlike a mere transfer of venue, it results in the dismissal of a plaintiff's case." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011).  TEPCO bears the burden of proving the Plaintiffs' choice of forum results in "'oppressiveness and vexation . . . out of all proportion'" to Plaintiffs' convenience.  *Id.* at 1227 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981).  Where the plaintiff is a U.S. citizen, a court should afford more deference to the plaintiff's choice of a U.S. forum and should assume the forum is convenient.  *Id.*  "While a U.S. citizen has no absolute right to sue in a U.S. court, great deference is due plaintiffs because a showing of convenience by a party who has sued in his home forum will usually outweigh the inconvenience the defendant may have shown." *Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1449 (9th Cir. 1990).

To dismiss on the ground of forum non conveniens, a court must examine: "(1) whether an adequate alternative forum exists, and (2) whether the balance of private

and public interest factors favors dismissal." *Id.* (citations omitted).  An adequate alternative forum is available to the plaintiff when (1) the defendant is amenable to service of process in the foreign forum and (2) the foreign forum provides the plaintiff with a satisfactory remedy. *Id.* at 1225.  Only where the remedy provided is "clearly unsatisfactory" is this second requirement not met. *Id.* (citing *Lueck*, 236 F.3d at 1144.).

Courts must consider the following private interest factors: "(1) the residence of the parties and witnesses; (2) the forum's convenience to the litigants; (3) access to the physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical issues that make trial of a case easy, expeditious, and inexpensive." *Id.* at 1229.  Courts also must consider the following public interest factors: (1) local interest of the lawsuit; (2) the court's familiarity with governing law; (3) the burden on local courts and juries; (4) congestion in the court; and, (5) the costs of resolving a dispute unrelated to this forum. *Id.* at 1232.

**2.  Analysis**

TEPCO moves to dismiss on the basis of forum non conveniens, arguing that this case should be heard in a Japanese court.  TEPCO provides documentation in support of its request, detailing the customs and practices of the Japanese legal system and examining the factors that would complicate trial of this action in a U.S. court.

*(A)  Adequate Alternative Forum*

To begin with, TEPCO maintains that Japan's court system is an adequate alternative forum because TEPCO is unquestionably subject to jurisdiction and amenable to process in Japan, and because Plaintiffs would be able to recover for their injuries under Japanese tort law, assuming their claims are meritorious.[4]  According to TEPCO, "[t]he Japanese judicial system is held in high regard and has consistently

---

[4] TEPCO emphasizes that Plaintiffs could also file a special statutory cause of action that provides for recovery from a nuclear operator for injuries resulting from a nuclear incident.

1   been found to be adequate for *forum non conveniens* purposes." (Mot. to Dismiss. 38,

2   ECF No. 55.)

3       Plaintiffs deny that Japan is an adequate alternative forum, arguing that they

4   "will be denied a fair and impartial proceeding, due to the highly sensitive and

5   politicized circumstances surrounding TEPCO." (Plaintiff's Resp. in Opp'n 36, ECF

6   No. 59). Additionally, Plaintiffs contend that they will be unable to receive a fair trial

7   because of the lack of discovery and jury trials available to Plaintiffs in Japan. (*Id.*)

8   Plaintiffs rely on the declaration of two Japanese attorneys and discuss a Japanese case

9   rejecting an appeal to evacuate school children suffering from radiation illness. (*Id.* at

10  34–35.)

11      The Court agrees with TEPCO that Japan is an adequate alternative forum.

12  There is no doubt that TEPCO is amenable to service in Japan. Further, Japanese

13  courts are well-respected and independent of government control and Plaintiffs provide

14  no evidence to the contrary. Courts in this Circuit have not previously rendered Japan

15  an inadequate forum, despite the country's more limited discovery system and lack of

16  jury trials. *Lockman Found v. Evangelical Alliance Mission*, 930 F.2d 764, 768 (9th

17  Cir. 1991); *Philippine Packing Corp. v. Maritime Co. of Philippines*, 519 F.2d 811, 812

18  (9th Cir. 1975) (per curiam); *Creager v. Yoshimoto*, No. 05-1985, 2006 WL 680555,

19  at *2 (N.D. Cal. Mar. 14, 2006). Further, Plaintiffs' concerns about the secrecy law are

20  unpersuasive in light of the Japanese Government's statements indicating it would be

21  inapplicable to a case like this. (Reply ISO Mot. to Dismiss 20, ECF No. 62 ("the

22  Japanese government has specifically stated that the [privacy] Act does not apply to .

23  . . information concerning nuclear power plant accidents.").) Because the Court finds

24  that Japan is an adequate alternative forum, the Court must next balance various private

25  and public factors and dismiss the case if the Japanese forum would be more

26  convenient for the Parties.

27

28

1  **(B)    Balancing of Private Interests**

2     TEPCO argues that the relevant private interest factors all indicate that Japan is

3  the appropriate forum for this action.  Plaintiffs disagree.  The Court considers each

4  private interest factor in turn.

5          (i)    Residence of the Parties and Witnesses

6     TEPCO argues that Japan is where the overwhelming majority of the witnesses

7  reside.  (Mot. to Dismiss. 40, ECF No. 55.) TEPCO maintains that Japan is the more

8  convenient forum for the litigants because all current and former TEPCO officers and

9  employees that they expect to testify are located in Japan, as are nearly all of the

10  Japanese Government officials and private citizens that were involved in the response

11  to the FNPP meltdown.  (*Id.*)  TEPCO emphasizes that, not only will it be difficult or

12  impossible to produce many non-party witnesses for trial, but it will also be extremely

13  challenging to obtain even pre-trial deposition testimony from them in light of Japan's

14  restrictions on taking depositions for use in foreign litigation.  Further, TEPCO argues

15  that although Plaintiffs are all located in the U.S., Plaintiffs' testimony is unnecessary

16  at the liability stage, such that there is no need for them to travel to the forum at this

17  time.  If it eventually becomes necessary for Plaintiffs to provide testimony regarding

18  their injuries, TEPCO indicates that Japanese courts have established procedures for

19  procuring testimony from parties located overseas who cannot travel to Japan.

20     Plaintiffs insist that this factor favors a U.S. forum.  Plaintiffs argue that all of

21  the service members named as plaintiffs in this action are located in the U.S. and that

22  TEPCO even has a Washington, D.C. office.  (Plaintiff's Resp. in Opp'n 37, ECF No.

23  59). Plaintiffs downplay the inconvenience of seeking deposition or trial testimony

24  from witnesses residing in Japan, arguing that these procedural obstacles will primarily

25  affect Plaintiffs, not TEPCO.

26     The presence of numerous non-party witnesses in Japan weighs in favor of

27  dismissal.  The difficulty of accessing these witnesses will affect both parties and, in

28  any case, the principal consideration is the convenience of the witnesses.  Plaintiffs'

12cv3032

residence in the U.S. and distance from Japan favors retaining the case.  However, plaintiff's testimony will likely play a minimal role in the initial, critical stages of the proceeding and would be more important during the damages portion of trial.  Overall, the Court finds that this factor is neutral.  Plaintiffs all reside in the U.S. and TEPCO's witness mostly reside in Japan.  Each side has established that it would be inconvenient for them to conduct proceedings in the opposite country.  However, the Court dos not find it this factor to clearly weigh in favor of one side or the other.

(ii)    *Forum's Convenience to the Litigants*

TEPCO does not separately address this factor in its motion to dismiss.  Plaintiffs maintain that their choice of forum is entitled to substantial deference.  (Plaintiff's Resp. in Opp'n 39, ECF No. 59).  Plaintiffs argue that it would be "simply impossible" for them to pursue their cases in Japan.  (*Id.* at 40.)  They attach numerous declarations to their opposition detailing their "radiation related injuries," which they claim would prevent them from traveling to Japan at all.  (*Id.* at 40–44.)  On the other hand, Plaintiffs argue, TEPCO has a long history of doing business in the U.S. and would not be inconvenienced by litigating in a U.S. forum.

This factor strongly favors retaining jurisdiction in this forum.  Plaintiffs would be comparatively disadvantaged if they were required to file suit in Japan and likely would not proceed with their claims.  The comparative hardship for Plaintiffs is much greater than it would be for TEPCO given the alleged medical conditions and ability to travel. On the other hand, TEPCO could necessarily defend itself in this forum, albeit at a significant cost.

(iii)   *Access to the Physical Evidence and Other Sources of Proof*

TEPCO contends that the critical documents that will be needed in this suit are nearly all located in Japan.  (Mot. to Dismiss. 44, ECF No. 55.)  Although TEPCO concedes that the U.S. Navy may have some important documents, TEPCO argues that the Navy is unlikely to disclose those documents in either forum.  (*Id.* at 45.) Additionally, TEPCO argues that information from the Japanese government may be

necessary to adjudicate Plaintiffs' claims and that the Japanese government may refuse to disclose this information or make witnesses available in a U.S. court.  (*Id.* at 46–47.) TEPCO contends that with respect to documents outside of TEPCO's possession and located in Japan, a U.S. forum could not obtain them, even by letters rogatory, since Japanese judges have no authority to compel document production for foreign litigation.

Plaintiffs insist that the key inquiry is which forum will facilitate access to documents, rather than where the documents themselves are located.  (Plaintiff's Resp. in Opp'n 45, ECF No. 59). Plaintiffs argue that TEPCO will be required to produce documents in its possession and control if this suit proceeds in this Court, such that access to documents does not favor a Japanese forum.  (*Id.*)  This is especially true given the prevalence of electronic documents and current technology.  (*Id.* at 45–46.) Moreover, Plaintiffs claim that there is no evidence indicating that TEPCO will have difficulty obtaining documents held by the Japanese Government or by other non-parties.  (*Id.* at 46.)  And, "Plaintiffs have no intention to compel documents from the Japanese government."  (*Id.*)  Plaintiffs maintain that TEPCO cannot meet its high burden of proving that the current forum is inadequate by relying on mere speculation.

The Court finds that this factor is neutral. While this suit arises from a nuclear incident at the FNPP and most of the operative facts took place in Japan, many of the obstacles TEPCO identifies would be present no matter where the litigation takes place. It is true that because TEPCO is subject to personal jurisdiction in the Southern District, it would be required to turn over all of the documents in its possession.  These documents would undoubtedly be the most important source of information in this litigation and would be available in the District Court.  Although the majority of the relevant documents and physical proof remain in Japan, TEPCO has not satisfied its burden of proving that litigation in California would be oppressive or vexing.

*(iv)    Whether Unwilling Witnesses Can Be Compelled to Testify*

TEPCO argues that U.S. courts have no ability to compel testimony from unwilling non-party witnesses located in Japan, such as Japanese Government officials, former TEPCO officers, and other potential witnesses.  TEPCO's argument is that many witnesses, which might be willing to testify in a Japanese court, would not do so in a U.S. court.  Further, what little could be done by way of letters rogatory would be burdensome and expensive compared to the summary procedures available in Japan.  According to TEPCO, this means that critical witnesses will be unavailable in the U.S. forum, indicating that a Japanese forum is highly preferable to a fair and unbiased determination of this action.  Plaintiffs argue that there is nothing to suggest that Japanese Government officials or former TEPCO directors and employees would be unwilling to testify or to cooperate with this litigation.

The Court agrees with TEPCO that the difficulties in obtaining testimony from non-party witnesses located in Japan, and outside of TEPCO's control, weigh in favor of a Japanese forum.  Plaintiffs err in continuing to argue that these challenges are not relevant to TEPCO's ability to present a defense.  As these witnesses can be conveniently accessed in a Japanese forum, but can be accessed only with difficulty, if at all, in this Court, this factor favors dismissal.

*(v)    The Cost of Bringing Witnesses to Trial*

TEPCO contends that the presence of witnesses and evidence in Japan would make a trial in this Court very costly, requiring significant travel expenses for TEPCO employees to attend trial and for TEPCO's U.S. counsel to conduct depositions of non-party witnesses at the U.S. Embassy in Japan.  Accordingly, TEPCO argues that this factor favors dismissal.

Plaintiffs maintain, on the other hand, that they would incur several hundred thousand dollars in travel expenses in order to try this case in Japan.  Plaintiffs claim that they would have to fly all 80 individual named plaintiffs, at least 40 treating physicians, and many expert damages witnesses to Japan, far outweighing any expenses

12cv3032

that TEPCO might incur to fly a few officers or employees to the U.S.  (Plaintiffs'
Resp. in Opp'n 48, ECF No. 59).   Travel to Japan would take a "physical and
psychological toll" on Plaintiffs, as well as a financial one, whereas Plaintiffs claim
that TEPCO is a "multi-billion dollar company" that can easily afford the costs of
defending itself in this forum. (*Id.*)

Because of the nature of international litigation, each side would incur expenses
related to traveling and procuring witnesses in either forum.  Although Plaintiffs might
incur additional expenses to retain counsel in Japan, it is not at all clear that they would
be required to travel to Japan to testify if it is inconvenient for them to do so, especially
in the initial stages of litigation. *(see* Supp. Decl. of Prof. Yasuhei Taniguchi ¶¶ 6,
13–17, ECF No. 43-1) (detailing procedures for procuring testimony from willing
witnesses overseas who cannot travel to Japan).  However, any willing witnesses in
Japan would almost certainly have to travel to the U.S. for trial or provide pre-trial
depositions through the expensive and cumbersome process specified by Japanese law.
However, the Japanese deposition process is feasible and is not a bar for litigating in
the District Court. It is also unlikely that Plaintiffs would be required to procure the
number of witnesses and experts they detail in their Opposition.  Therefore, the Court
finds this factor to weigh only slightly in favor of dismissing the case.

### (vi)    Enforceability of the Judgment

TEPCO is headquartered in Tokyo, Japan and also has significant assets in the
U.S.  Accordingly, any judgment rendered against TEPCO either in Japan or in the U.S.
would be enforceable.  This factor is therefore neutral.

### (vii)   Other Practical Problems

TEPCO argues that translation costs would be high if this case is tried in the
U.S., as most of the witnesses associated with TEPCO or with the Japanese
Government would have to testify in Japanese and most of the relevant documents will
also be in Japanese.  (Mot. to Dismiss. 51, ECF No. 55.)  Plaintiffs respond that
translation to English would be necessary in a Japanese forum in order to "apprise and

include" Plaintiffs, and that testimony from U.S. military witnesses would also have to be translated into Japanese.  (Plaintiffs' Resp. in Opp'n 50, ECF No. 59).  Plaintiffs insist that translation costs are "an expected cost of litigating in a global world."  (*Id.*)

This factor is neutral.  The available documents and testimony pertaining to liability are all likely to be in Japanese, while Plaintiffs will have English-language materials and witnesses as well.  The translation costs may be higher in this forum, however the Court does not find this to be a decisive factor in light of the necessary costs of translation in either forum.

### (C)    Balancing of Public Interests

TEPCO contends that the relevant public interest factors also favor dismissal.  The Court considers each in turn.

#### (i)    *Local Interest in the Lawsuit*

TEPCO argues that Japan has the strongest interest in this dispute because the Japanese Government has enacted several measures to provide compensation to those harmed by the FNPP incident.  (Mot. to Dismiss. 52–53, ECF No. 55.)  Moreover, TEPCO observes that the Japanese Government, through its instrumentality, the Nuclear Damage Liability Facilitation Fund, is now TEPCO's principal shareholder and has committed billions of dollars in aid to TEPCO to ensure that it is able to pay out compensation to those affected by the FNPP incident.  (*Id.* at 53–54.)  TEPCO emphasizes that the Japanese Government has been "heavily involved in the overall response to the earthquake, the tsunami, and the FNPP accident," such that no interest in this forum can "compare to the singular importance of the FNPP accident to Japan and its Government."  (*Id.* at 54–55.)

Plaintiffs maintain that the U.S. has a strong interest in seeing that its service members are compensated for their injuries. (Plaintiffs' Resp. in Opp'n 52, ECF No. 59).  In particular, because many of the Plaintiffs reside in the Southern District, this Court in particular has a strong interest in providing resolution for them.  Plaintiffs point to the myriad institutions dedicated to caring for military veterans as evidence

that the U.S. is interested in ensuring that "those who have served . . . receive benefits for [their] service." (*Id.*) Plaintiffs deny that Japan's efforts to centralize compensation for victims of the tsunami support dismissal because the allegations of negligence distinguish Plaintiffs from other Japanese citizens who were merely harmed by a natural catastrophe. (*Id.*)

Japan has an interest in adjudicating claims arising from the March 11, 2011 earthquake and tsunami that devastated large swaths of the country as evidenced by Japan's large investment in responding to the disaster. The U.S. also has a strong interest in seeing that members of the Armed Forces are compensated for their service. Especially as it is the V.A. system and the U.S. taxpayers who will ultimately pay for the injuries to Plaintiffs. The Court thinks that both countries have a strong interest in this litigation. This factor slightly favors retaining jurisdiction because of the strong interest in providing compensation for servicemembers and the ultimate costs of medical treatment lying with U.S. taxpayers.

> (ii)    *Court's Familiarity with the Governing Law*

The parties do not address this factor. Although TEPCO does not concede the applicability of California law, TEPCO does not suggest at any point that Japanese law would govern the dispute if the Court retained jurisdiction. In all likelihood, the Court would be applying some version of U.S. law, be it maritime law, federal common law, or California state law. Accordingly, this factor weighs against dismissal.

> (iii)    *Remaining Public Interest Factors: Burden on Local Courts and Juries, Congestion in the Court, Costs of Resolving a Dispute*

The parties hardly touch upon the remaining public interest factors, suggesting that these issues need not substantially affect the Court's inquiry. Although litigating this case in this forum would add to an already busy docket and would require time and resources to be dedicated to the matter, these factors alone do not justify dismissal. Moreover, litigating in Japan would impose significant costs on the Japanese judicial system. Accordingly, these factors are neutral.

12cv3032

*(D)*     ***Summary and Conclusion***

In sum, although Japan is an adequate alternative forum, the balance of the private and public interest factors suggests that it would be more convenient for the parties to litigate in a U.S. court.  Accordingly, the Court **DENIES** TEPCO's motion to dismiss on this basis.

<div align="center">

**INTERNATIONAL COMITY**

</div>

Lastly, TEPCO argues that the doctrine of international comity warrants dismissal of this action in favor of a Japanese forum.

**1.     Legal Standard**

International comity is an abstention doctrine that permits federal courts to defer to the judgment of an alternative forum where the issues to be resolved are "entangled in international relations." *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1237 (11th Cir. 2004) (quoting *In re Maxwell Comm'n Corp.*, 93 F.3d 1036, 1047 (2d Cir. 1996)).  Courts must evaluate several factors, including "the strength of the United States' interest in using a foreign forum, the strength of the foreign governments' interests, and the adequacy of the alternative forum." *Id.* (citing cases).

**2.     Analysis**

TEPCO contends that the interests of the U.S., Japan, and the international community support consolidating Plaintiffs' claims in Japan in light of the Japanese Government's comprehensive scheme for providing relief to individuals harmed by the FNPP incident.  The Court considers each of the three key interests in turn.

*(A)*     ***Strength of the United States' Interest in Using a Japanese Forum***

TEPCO argues that the U.S.'s ratification of the Convention on Supplementary Compensation for Nuclear Damage ("CSCND") reflects a long-expressed policy that "all claims arising from a nuclear incident are handled in a comprehensive and coordinated fashion by centralizing all such claims in the courts of the country where the nuclear incident occurred."  (Mot. to Dismiss 57–58, ECF No. 55).  The CSCND, which was ratified by the U.S. on August 3, 2006, provides that "jurisdiction over

actions concerning nuclear damage from a nuclear incident shall lie only with the courts of the Contracting Party within which the nuclear incident occurs." (*Id.* at 58.) According to TEPCO, both the CSCND and the comments of Executive officials regarding the Convention make clear that the U.S. has a strong interest in seeing that claims for damages from a nuclear incident are consolidated in the country where the incident occurred, even if that means that U.S citizens are diverted to a foreign court system. (*Id.* at 58–59)

Plaintiffs discussed previously that the Convention has not yet entered into effect and thus does not have the force of law.  Moreover, Plaintiffs distinguish the primary case upon which TEPCO relies, *Ungaro-Benages v. Dresdner Bank AG* because, in that case, the court dismissed out of deference to an alternative forum that had been established jointly by the American and German governments to address precisely the types of claims brought by the plaintiffs. 379 F.3d at 1237. Here, the alternative forum would be a Japanese court, over which the U.S. has no authority.  Finally, Plaintiffs argue that the interests of the U.S. would not be served by adjudicating Plaintiffs' claims in a Japanese forum.

Although the U.S. has articulated its preference that all claims, including those brought by U.S. citizens, be centralized in the jurisdiction where the nuclear incident took place – the CSCND has not yet been ratified.  Additionally, other factors evidence the U.S.'s strong interest including the residence of the injured servicemembers and the financial responsibility of U.S. taxpayers.  Thus, the Court finds that the United States has an extremely strong interest in resolving this matter in the Southern District. TEPCO's evidence on this matter does not persuade the Court that the U.S. lacks a serious interest in resolving this case.

*(B)* **Strength of Japan's Interest in Using a Japanese Forum**

TEPCO cites the measures that Japan has taken to set up an effective system for compensating individuals harmed by the FNPP incident and points to these steps as evidence of Japan's significant interest in having Plaintiffs' claims adjudicated in the

Japanese court system.  (Mot. to Dismiss 58–59, ECF No. 55).   Plaintiffs do not dispute Japan's interest, but claim the United States' interests are stronger and that TEPCO has not been forthcoming about the FNPP meltdown, such that dismissal in deference to Japan's interests would be improper.  As discussed above, the Court agrees that Japan has a strong interest in litigating the case in Japan.  However, while consolidating liability may be an enticing prospect to Japan, the potential liability in this case lies with TEPCO and the Court is not persuaded that Japan has a strong interest in compensating foreign plaintiffs arising out of TEPCO's negligence.

*(C)*   ***Adequacy of the Japanese Forum***

The standards for evaluating the adequacy of a forum are the same under the international comity doctrine as they are under *forum non conveniens* analysis.  *See Jota v. Texaco Co.*, 157 F.3d 153, 160 (2d Cir. 1998).  Neither party adds any argument regarding this factor.  As discussed above, the Court finds Japan to be an adequate alternative forum.

*(D)*   ***Summary and Conclusion***

For the same reasons articulated in the *forum non conveniens* analysis above, the Court finds that both the U.S. and Japan have a strong interest in having this suit heard within their forum.  The Court finds that the United States has a slightly stronger interest and declines to exercise its discretion in dismissing this case under the doctrine of international comity.

## PLAINTIFFS' MOTION TO AMEND

Plaintiffs seek leave to amend the SAC to add four Doe Defendants: General Electric, EBASCO, Toshiba, and Hitachi.  Plaintiffs also wish to add additional servicemember plaintiffs.  Plaintiffs assert that they only recently "discovered the nature and extent of conduct of the Doe Defendants giving rise to liability and causation of Plaintiffs' harms, damages, injuries and losses." (Mot. to File Am. Compl. 3, ECF No. 65.) Plaintiffs allege that each of the four Doe Defendants was responsible

1  in part for the design, procurement, maintenance, management, or servicing of the
2  FNPP. (*Id.*)

3  **1.     Legal Standard**

4  Leave to amend should be freely given "when justice so requires." Fed. R. Civ.
5  P. 15(a)(2). But while the rule should be interpreted extremely liberally, leave should
6  not be granted automatically. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir.
7  1990). The opposing party bears the burden of demonstrating why denial is necessary.
8  A trial court may deny a motion for leave to amend based on various factors, including
9  bad faith, undue delay, prejudice to the opposing party, futility of amendment, and
10  whether the party has previously amended. *Foman v. Davis*, 371 U.S. 178 (1962).

11  **2.     Analysis**

12  TEPCO argues that the Court should deny Plaintiffs' Motion to Amend SAC as
13  futile because of the previously discussed justiciability issue. However, as the Court
14  finds that the SAC is not barred by the political question doctrine, this argument is not
15  persuasive. TEPCO does not address the other *Foman* factors. The burden fell on
16  TEPCO to demonstrate that leave to amend would be inappropriate. Because TEPCO
17  failed to meet that burden and did not establish the presence of any of the five *Foman*
18  factors, the Court finds no reason to deny leave to amend. However, the Court does not
19  admit the third amended complaint, attached as Exhibit A. Rather, Plaintiffs shall
20  amend in light of the Court's rulings in this Order.

21  <div align="center">**CONCLUSION**</div>

22  For the reasons stated above, the Court **GRANTS** TEPCO's motion to dismiss
23  Plaintiffs' strict liability for design defect and IIED claims **WITH PREJUDICE**.
24  Additionally, the Court **GRANTS** TEPCO's motion to dismiss the SAC's claims on
25  behalf of "Doe" plaintiffs. Plaintiffs' other claims survive.

26  The Court **DENIES** TEPCO's Motion to Dismiss under the doctrines of *forum*
27  *non conveniens* and international comity.

28

12cv3032

1    The Court also **GRANTS** Plaintiffs Motion to Amend their SAC.  Plaintiffs shall

2  take this Order into consideration and file any amended pleading by <u>November 18,</u>

3  <u>2014</u>.

4    **IT IS SO ORDERED.**

5

6  DATED:  October 28, 2014

7                                                          _____
                                                           Honorable Janis L. Sammartino
8                                                          United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28