1  PAUL C. GARNER (State Bar No. 132524)
   c/o LAW OFFICES OF CHARLES A. BONNER
2  475 Gate Five Road, Suite 212
   Sausalito, California 94965
3  Telephone:   (760) 600-0081
   Facsimile:    (760) 918-1984
4
   CHARLES A. BONNER (State Bar No. 85413)
5  A. CABRAL BONNER (State Bar No. 247528)
   LAW OFFICES OF CHARLES A. BONNER
6  475 Gate Five Road, Suite 212
   Sausalito, California 94965
7  Telephone:   (415) 331-3070
   Facsimile:    (415) 331-2738
8
   Attorneys for Plaintiffs

9

10                 UNITED STATES DISTRICT COURT

11               SOUTHERN DISTRICT OF CALIFORNIA

12                                          Case No. 12-CV-3032 JLS JLB

13                                          **PLAINTIFFS' MEMORANDUM**
    LINDSAY R. COOPER; *et al*,            **OF POINTS AND AUTHORITIES**
14                                          **IN OPPOSITION TO**
              Plaintiffs,                   **DEFENDANT TOKYO**
15                                          **ELECTRIC POWER COMPANY,**
    vs.                                     **INC.'S MOTIONS TO DISMISS**
16                                          **THIRD AMENDED COMPLAINT**
                                            **FOR LACK OF SUBJECT**
17  TOKYO ELECTRIC POWER CO., INC.,         **MATTER JURISDICTION AND**
                                            **FAILURE TO STATE A CLAIM**
18            Defendant.                    **OR, IN THE ALTERNATIVE, TO**
                                            **DISMISS UNDER THE**
19                                          **DOCTRINE OF**
                                            **INTERNATIONAL COMITY**
20
                                            Judge:  Hon. Janis L. Sammartino
21
                                            Date:    March 12, 2015
22                                          Time:    1:30 PM
                                            Crtrm:   4A (Schwartz Building)
23                                                   221 West Broadway
                                                     San Diego
24

25

26

27

28

                                                    123-cv-3032 JLS WMc

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

**INTRODUCTION** **1**

**LEGAL STANDARD** **1**

**ARGUMENT** **2**

    A.    Amended Complaint Does Not Entirely Supersede Court's Order
Sustaining Prior Complaint *2*

    B.    The Court Had Previously Ruled on the Three Issues TEPCO Raises and as
such, the Rule of the Case Doctrine Precludes Re-argument *5*

**II.    COURT NEED NOT ABSTAIN DUE TO COMITY CONCERNS AS
THE UNITED STATES HAS A SIGNIFICANT INTEREST IN
PLAINTIFFS' CLAIMS:** **6**

    A. TEPCO is Precluded from Rearguing Comity Defense as Court Correctly
Applied the Ugaro-Benages Factors in Determining that it was Improper to
Abstain on Account of Comity Concerns *6*

    B.  Comity Abstention is Unwarranted upon Consideration of General Comity
Concerns *7*

**III. POLITICAL QUESTIONS ANALYSIS IS UNWARRANTED WHERE
U.S. MILITARY COMMAND DID NOT SUPERSEDE TEPCO'S DUTY OF
CARE TO PLAINTIFFS** **7**

    1.    It was Foreseeable that U.S. Humanitarian Relief Workers Would
Respond to Provide Humanitarian Assistance In The Aftermath Of
Earthquakes And Other Natural Disasters. 8

    2.    U.S. Military Command's Conduct was not a Superseding Cause as it
was not "highly extraordinary" nor "extraordinarily negligent." 10

    3.    TEPCO'S Reliance on Restatement 452(s) is Inapplicable where
TEPCO'S Duty of Care had at no Point "Shifted" to U.S. Military Command
    12

    4.    "Exceptional Circumstances" did not Exist where U.S. Military
Command did not Engage in "Extraordinary" conduct by Following Through
and Carrying out their Mission of Providing Humanitarian Assistance to the
People of Fukushima. 14

    5.    TEPCO'S Reliance on Section 452(2) is Inapplicable where TEPCO was
Charged with a Non Delegable Duty of Care to Plaintiffs by Engaging in an
Ultra-Hazardous Activity 16

    6.    TEPCO'S Reliance on Independent Governmental Decisionmaking as
Grounds for Asserting Superseding Cause is Unavailing 18

MEMO OF POINTS & AUTHS. IN OPPOSITION TO MOT. TO DISMISS TAC

1

**IV.  FIREFIGHTER'S RULE IS INAPPLICABLE TO FACTS AT BAR     19**

2

**IV.  FAILURE TO (1) NAME SPOUSE FOR LOSS OF CORSORTIUM**
**CLAIM, (2) PROVIDE NOTHING MORE THAN NAMES FOR 156**
**PLAINTIFFS, AND (3) CERTIFY PERSONAL REPRESENTATIVE**
**STATUS FOR WRONGFUL DEATH CLAIM, ARE DE- MINIMIS**
**OVERSITES THAT CAN EASILY BE CURED                              22**

3

4

5

**CONCLUSION                                                      23**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Am Concrete Agric Pipe Ass'n v. No-Joint Concrete Pipe Co*., 331 F.2d 706, 708 (9th Cir. 1964) ...........................................................................................2

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .....................................................................2

*Bigbee v. Pacific Tel. & Tel.* Co. 34 Cal.3d 49, 57 (1983).....................................10

*Bloomberg v. Interinsurance Exchange*,162 Cal. App. 3d 571, 576–577 (1984) ...11

*Bruton v. Gerber Prods. Co*., 2014 U.S. Dist. LEXIS 5493 (N.D. Cal. 2014) ........4

*Calatayud v. State of California* 18 Cal.4th 1057, 1062(1998)..............................22

*Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004)......................2

*Cline v. Watkins*, 66 Cal.App.3d 174, 179(1977) ...................................................15

*Davis v. Monroe County Bd. of Educ*., 526 U.S. 629, 633(1999) .............................1

*Donohue v. San Francisco Housing Authority*,16 Cal.App.4th 658(1993).............21

for *O'Connor v. Uber Techs., Inc*., 2014 LEXIS 124136 (N.D. Cal. 2014) .............2

*Galen v. County of Los Angeles*, 477 F.3d 652, 663 (9th Cir. 2007) .....................18

*Hippele v. Palm Beach County Bd. of County Comm'rs*, 2010 U.S. Dist. LEXIS 79906 * 25(S.D. Fla. 2010) ...........................................................................17

*Hubbard v. Boelt*, 28 Cal.3d 480, 486(1980).........................................................20

*Jackson v. Ryder Truck Rental, Inc*., 16 Cal. App. 4th 1830, 1848 (3d Dist. 1993) ....................................................................................................14

*Jacob v. Curt*, 898 F.2d 838, 839 (1st Cir. 1990) ..................................................18

*Kocan v. Garino* 107 Cal.App.3d 291, 292 (1980) ................................................20

*Lacey v. Maricopa Cnty*., 693 F.3d 896, 927 (9th Cir. 2012). Id. At *10 ...............3

*Landeros v. Flood* (1976) 17 Cal.3d 399, 551 P.2d 389, 395 ............................8, 9

*Lipson v. Superior Court* 31 Cal.3d 362, 367(1982) ....................................... 20, 21

*Meuller v. Jeffrey Mfg. Co*. 494 F.Supp. 275, 278(E.D.Pa. 1980) ........................14

*Savage v. Glendale Union High Sch*., 343 F.3d 1036, 1039 n.1 (9th Cir. 2003) ....21

*Smith v. Lockheed Propulsion Co*., 247 Cal.App.2d 774, 785 (1967). ..................17

MEMO OF POINTS & AUTHS. IN OPPOSITION TO MOT. TO DISMISS TAC

1  *Stasulat v. Pacific Gas & Elec*. Co., 8 Cal.2d 631, 637 (1937)................................11

2  *Stewart v. Cox* , 55 Cal.2d 857 (1961)......................................................... 11, 13, 14

3  *Terhell v. Am. Commonwealth Assocs*.172 Cal. App.3d 434, 44(1985) ................21

4  *Yamaguchi v. Harnsmut*, 106 Cal.App.4th 472, 479-480(2003)............................22

5                                                Statutes

6  Federal Rule of Civil Procedure 12(b)(6) ....................................................................1

7                                          Other Authorities

8  <u>Black's Law Dictionary</u> 234 (8th ed. 2004) ....................................................8

9  *Lien Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1005)(9th Cir. 2006) .........14

10 <u>Oxford English Dictionary</u> (2d ed. 1989) ..................................................14

11 Prosser & Keeton, Torts (5th ed 1984) § 44 .............................................................17

12 Prosser and Keeton on the Law of Torts § 41 .............................................................8

13 Restatement (Second) of Torts, § 427A.....................................................................17

14 Restatement (Second) of Torts, 447............................................................... 11, 13

15 Restatement of Torts, sections 442-453......................................................................11

16                                               Treatises

17 6 <u>Witkin, Summary of Cal. Law</u> (9th ed. 1988) Torts § 975........................... 10, 14

18 *Mocettini v. Kenworth Truck Co.,* 2014 U.S. Dist. LEXIS 142828 (E.D. Cal. Oct.
19     6, 2014)...........................................................................................................14

    Prosser & Keeton on Torts, §75 at 534 (5th ed. 1984).........................................17

20

21

22

23

24

25

26

27

28

MEMO OF POINTS & AUTHS. IN OPPOSITION TO MOT. TO DISMISS TAC

## INTRODUCTION

Plaintiffs respectfully oppose TEPCO'S Motion to Dismiss their Third Amended Complaint ("TAC").

Primarily, this Court's October 28, 2014 Order Granting in Part and Denying in Part Defendant's Motion to Dismiss ("Order") had clearly articulated its rulings and underlying rationale which subsequently became the law of the case. In the instant Motion, TEPCO raises the same issues that this Court had previously considered and rejected and thus expressly disregards the law of the case.

As plaintiffs' TAC merely alleges the same claims, both categorically and factually that had been alleged and sustained under their Second Amended Complaint ("SAC"), it belies both fairness and judicial economy to allow TEPCO a "second bite of the apple" where plaintiffs' TAC neither expands nor changes its causes of action directed at TEPCO nor adds any additional factual statements to support such actions. Plaintiffs SAC was simply amended with the sole purpose of bringing General Electric, Hitachi, Toshiba, Ebasco into the proceeding. Thus, the only difference between plaintiffs SAC and its TAC is the addition of these three defendants, as well as factual allegations particular to these defendants to support plaintiffs Design Defect cause of action.

Plaintiffs thus rely on the law of the case doctrine as grounds for precluding TEPCO'S arguments seeking to dismiss TEPCO'S TAC.

Were the Court to disagree and permit TEPCO a "second bite of the apple," plaintiffs set out the following arguments that will reinforce the Court's affirmative rulings in its October 28, 2014 Order.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. See *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633(1999). A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff. *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004).

## **ARGUMENT**

**I. LAW OF THE CASE DOCTRINE PRECLUDES TEPCO FROM REARGUING OR RAISING NEW ARGUMENTS THAT THIS COURT HAD ALREADY RULED UPON**

### A. Amended Complaint Does Not Entirely Supersede Court's Order Sustaining Prior Complaint

In their first footnote, TEPCO relies on *Am Concrete Agric Pipe Ass'n v. No-Joint Concrete Pipe Co.*, 331 F.2d 706, 708 (9th Cir. 1964) for the proposition that plaintiffs' TAC entirely supersedes plaintiffs' SAC. See, footnote 1, TEPCO Motion to Dismiss, Dec 5, 2014 ("MTD"). The claim that an amended complaint entirely supersedes not only a previous complaint, but the rulings made thereon goes unsupported by precedent in this Circuit. Rather than pronouncing a rule of law and thus precedent that an amended complaint will always supersede a prior complaint, the Ninth Circuit in *Am. Concrete* merely responded to the convoluted nature of the proceeding before it where two duplicative appeals and one writ of mandamus were pending, all of which raised the same issues. To simplify matters, the Ninth Circuit dismissed the first appeal. Thus, *Am Concrete* had not expressed a general rule of law outside the particular facts and circumstances of case. The same holds true for *O'Connor v. Uber Techs., Inc.*, 2014 LEXIS 124136 (N.D. Cal. 2014). In O'Connor, the District court rejected plaintiff's argument that defendants' motion for judgment was effectively a motion for reconsideration as it merely repeated the same arguments made on plaintiff's original complaint. District court held that plaintiff's amended complaint "supersed[ed] the original

complaint and render[ed] it without legal effect," citing, *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th Cir. 2012). Id. At *10. In *Lacey* however, rather than reinforcing this rule, the Ninth Circuit questioned whether it made procedural and equitable sense that a plaintiff waives all claims on appeal that were not raised anew in an amended complaint. Id. at 925. The court reasoned that requiring a plaintiff to re-allege claims that had already been decided is not only unfair, but a waste of judicial resources as it required a court to revisit and reiterate its prior rulings. *Id.* at 928. Thus, the Ninth Circuit did not pronounce a general rule that an amended complaint entirely supplants a previous one but rather its holding was particular to the facts and circumstances of that case. Thus, *O'Connor's* reliance on *Lacey* as support for its holding that an amended complaint completely supersedes a prior complaint is unfounded. Similarly, TEPCO'S reliance on *O'Connor* as a basis for challenging plaintiffs TAC claims that had previously been raised and sustained in their SAC is equally unsupported.

Thus, *Lacy's* holding did not stand for a general proposition that an amended complaint entirely supersedes an earlier complaint. Were *Lacy* and cases relying on *Lacy* correct, the law of the case doctrine would have no import as each time an amended complaint was filed; a court's prior rulings would be nullified. Thus, where a plaintiff brings the same causes of action in each successive amended complaint, a defendant would have a second and third bite of the same apple. Were a defendant given a fresh opportunity to revisit previously decided issues each time a plaintiff amends a complaint, a defendant would not only be given an undue advantage by having several opportunities to change and reargue its position, but that judicial economy would immeasurably suffer as the court would continually have to consider issues that had already been decided.

Here, plaintiffs challenge TEPCO'S ability to revisit and reargue opposition to plaintiffs TAC where said complaint merely alleges the same claims, both

categorically and factually, that had been alleged and sustained under their SAC. Similar to the rationale relied upon in Lacey, it belies both fairness and judicial economy to allow TEPCO a "second bite of the apple" where plaintiffs' TAC neither expands nor changes its causes of action directed at TEPCO nor adds any additional factual statements to support such actions. Plaintiffs SAC was simply amended with the sole purpose of bringing General Electric, Hitachi, Toshiba, Ebasco into the proceeding. Thus, the only difference between plaintiffs SAC and TAC is the addition of these three defendants, as well as factual allegations particular to these defendants to support plaintiffs' Design Defect cause of action. There are no new factual allegations nor new causes of action directed at TEPCO.

Plaintiffs rely on the law of the case doctrine as grounds for precluding TEPCO'S arguments seeking to dismiss TEPCO'S TAC. When comparing the Court's Order, with arguments currently put forth by TEPCO, it is unequivocally clear that the Court has heretofore sufficiently addressed TEPCO'S arguments. As such, the Court's rulings are the law of the case and as such, the Court need not substantively address the Motion's merits. Unlike circumstances where plaintiffs have argued that defendants have attempted to rely upon a motion to dismiss as an end run around formally seeking reconsideration, see, *Bruton v. Gerber Prods. Co.*, 2014 U.S. Dist. LEXIS 5493 (N.D. Cal. 2014), TEPCO has already filed a Motion for Reconsideration. In its reconsideration motion, TEPCO raises the exact same arguments as in this Motion to Dismiss. Unlike a Motion to Dismiss, a Motion for Reconsideration is the proper means by which a party can reargue its position and where the court is required to reexamine its holdings. This however is not the case with a Motion to Dismiss where the law of the case doctrine precludes a court from revisiting its prior holdings. Plaintiffs are more than happy to address TEPCO'S Reconsideration claims which is the proper vehicle for raising objections with the Court's Order.

1    However, where TEPCO attempts to raise objections with the Courts Order

2    under a Motion to Dismiss, the Court must assert the law of the case doctrine and

3    as the following arguments make clear, duly dismiss them.

**B.  The Court Had Previously Ruled on the Three Issues TEPCO Raises and as such, the Rule of the Case Doctrine Precludes Re-argument**

5    Under the law of the case doctrine, a court is generally precluded from

6    reconsidering an issue that has already been decided by the same court, or a higher

7    case in the identical action….For the doctrine to apply, the issue in question must

8    have been "decided either expressly or by necessary implication in [the] previous

9    disposition." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993). Thus, law of the

10   case doctrine applies to an amended complaint where the causes of action are

11   substantially the same as the prior complaint and they involve substantially the

12   same allegations. *DeFazio v. Hollister, Inc.*, 2007 U.S. Dist. LEXIS 84706 *12, fn.

13   5 (E.D. Cal. 2007); *United States v. Park Place Assocs.*, 563 F.3d 907, 925 (9th

14   Cir. 2009) (The law of the case doctrine is "a judicial invention designed to aid in

15   the efficient operation of court affairs," *Lower Elwha Band of S'Klallams v. Lummi

16   Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000) and is "founded upon the sound

17   public policy that litigation must come to an end," *Old Person v. Brown*, 312 F.3d

18   1036, 1039 (9th Cir. 2002); Roberts v. Cooper, 61 U.S. (20 How.) 467, 481(1858)

19   Further, the doctrine serves to advance the principle that in order to maintain

20   consistency during the course of a single lawsuit, reconsideration of legal questions

21   previously decided should be avoided. United States v. Smith, 389 F.3d 944, 948

22   (9th Cir. 2004)(issues that a district court determines during pretrial motions

23   become law of the case).

24   As the following analysis clearly illustrates, the Court, in its Order, more

25   than sufficiently and expressly addressed the merits of TEPCO'S arguments and

26   ruled accordingly. Significantly, the primary three issues raised in the instant

27   motion, (1) International comity, (2) Proximate causation and superseding cause

28

MEMO OF POINTS & AUTHS. IN OPPOSITION TO MOT. TO DISMISS TAC

and, (3) the Firefighters Rule were all addressed and ruled upon by the Court. As such, the Court's conclusions, as set down in its Order attain the status of law of the case. TEPCO'S attempt to re-litigate these issues are thus barred by this doctrine. As the following analysis shows, law of the case warrants this Court to dismiss TEPCO'S arguments and to sustain its prior holdings.

## II.  COURT NEED NOT ABSTAIN DUE TO COMITY CONCERNS AS THE UNITED STATES HAS A SIGNIFICANT INTEREST IN PLAINTIFFS' CLAIMS:

### A.  TEPCO is Precluded from Rearguing Comity Defense as Court Correctly Applied the Ugaro-Benages Factors in Determining that it was Improper to Abstain on Account of Comity Concerns

The Court was clear in its Order of October 28, 2014 that although both the "U.S. and Japan held a strong interest in having this suit heard within their forum," the "United States ha[d] a slightly stronger interest and decline[d] to exercise its discretion in dismissing this case under the doctrine of international comity." Order, p. 30, ¶¶21-24. In drawing its conclusion, the Court relied on the same three Ungaro-Benages factors that TEPCO now attempts to have this Court revisit in its instant motion. See, Ungaro-Benages v. Dresdner Bank AG, 379 F.3d 1227, 1232 (11th Cir. 2004). Although TEPCO asserts that the Ninth Circuit in Mujica v. AirScan Inc., 771 F.3d 580, 603(9th Cir. 2014) espoused a 'new' framework to be considered when determining the viability of international comity, that framework had already been promulgated in an earlier 'oft-cited' Ninth Circuit case, Timberlane Lumber Co. v. Bank of America, N.T. & S.A., 549 F.2d 597 (9th Cir. 1976) (Timberlane I), which thereafter had been thoroughly incorporated into the Restatement (Third) of the Foreign Relations Law. Thus, the Ninth Circuit merely took the pre-existing Timberlane I factors and relied on them as a means to guide the Ungaro-Benages factors. Thus, Mujica left intact the Ungaro-Benages factors as the primary consideration when determining comity. As such, Mujica cannot be considered an intervening change in controlling law.

This Court through its Order, has considered and rejected TEPCO'S position. As the Court's Order is the law of the case, TEPCO'S attempt to reargue its position in this Motion must be dismissed.

However, if the Court chooses to reconsider TEPCO'S position with respect to comity, plaintiffs oppose such arguments with the following analysis:

### B. Comity Abstention is Unwarranted upon Consideration of General Comity Concerns

See PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR RECONSIDERATION OR, ALTERNATIVELY, FOR CERTIFICATION OF INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) *Section II COURT NEED NOT ABSTAIN DUE TO COMITY CONCERNS AS THE U.S. HAS A SIGNIFICANT INTEREST IN PLAINTIFFS' CLAIMS* which is incorporated by reference as though fully set forth herein.

## III. POLITICAL QUESTIONS ANALYSIS IS UNWARRANTED WHERE U.S. MILITARY COMMAND DID NOT SUPERSEDE TEPCO'S DUTY OF CARE TO PLAINTIFFS

### A. By Broadly Relying on the Correct Rule of Law, this Court's Ruling that U.S. Military Command ("MC") had not Superseded TEPCO'S Duty of Care for Plaintiffs must be Afforded Law of the Case

The Court correctly relied on the rule that where a harm is foreseeable and within the scope of the risk created by the original tortfeasor, that only an unforeseeable act, an intentional tort or criminal act can break the chain of causation and thus constitute a superseding cause. Order, p. 7, ¶¶ 11-13. The Court expressed how it was clearly foreseeable that "people present in the vicinity of an improperly designed and maintained nuclear plant" "would be adversely affected by radiation." Order, p. 8, ¶8. The Court further acknowledged that it was equally foreseeable that the Navy would be present in such a scenario as it was foreseeable "in the aftermath of a natural disaster,…that foreign military and aid-workers would be among those in the vicinity." Id. at ¶¶10-11.

Although the Court cited to and briefly analyzed the circumstances under Restatement (Second) of Torts 442B, it relied overall upon the more general rule that foreseeability is the overriding factor when analyzing superseding cause. As plaintiffs following arguments make plain, foreseeability has an integral role to play in evaluating the existence of any superseding cause. In citing to Witkin, the Court fully acknowledged that a superseding cause can be shown where there is an independent intervening act that is not foreseeable. See, *Landeros v. Flood* (1976) 17 Cal.3d 399, 551 P.2d 389, 395. Thus, TEPCO'S attempt to take a second bite of the apple by asserting that the Court must now rely upon Restatement § 452(2), which had not been raised in its prior Motion to Dismiss, in order to find superseding cause is barred by the law of the case.

Were the Court to construe TEPCO instant arguments as lying outside the law of the case, the following arguments clearly show that Restatement § 452(2) is inapplicable to the facts and circumstances at bar.

**B.  The Authority Governing Proximate and Superseding Cause Confirms that U.S. Military Command's Conduct Fails to Satisfy Criteria for Finding Superseding Cause**

**1.    It was Foreseeable that U.S. Humanitarian Relief Workers Would Respond to Provide Humanitarian Assistance In The Aftermath Of Earthquakes And Other Natural Disasters.**

Proximate cause is (1) a cause that is legally sufficient to result in liability; an act or omission that is considered in law to result in a consequence, so that liability can be imposed on the actor; and (2) a cause that directly produces an event and without which the event would not have occurred. Black's Law Dictionary 234 (8th ed. 2004).

As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability." W. Page Keeton, et al., Prosser and Keeton on the Law of Torts § 41, at 264 (5th ed. 1984). Thus, proximate cause is linked to

foreseeability: "the most general and pervasive approach to proximate cause holds that a negligent defendant is liable for all kinds of harms he foreseeably risked by his negligent conduct." Id. An intervening act does not amount to a 'superseding cause' relieving the negligent defendant of liability if it was reasonably foreseeable: An actor may be liable if his negligence is a substantial factor in causing an injury. However, he is not relieved of liability because of the intervening act of a third person if such act was reasonably foreseeable at the time of his negligent conduct. *Landeros*, supra 17 Cal.3d at 411.

Here, by engaging in the ultra-hazardous activity of using highly radioactive materials to produce electricity, TEPCO was well aware of the hazards attendant to that activity, as well as the operating and safety standards regulating such activity. As alleged in plaintiffs TAC, TEPCO was very aware of its failure to attend to the looming problems at the power plant, as well as its disregard for implementing safety precautions. TEPCO was also well aware that Japan was located in the volatile "ring of fire" and had experienced several powerful earthquakes throughout its history and recent present. TEPCO also knew that in the past, the United States and other allies had provided humanitarian assistance in the aftermath of earthquakes and other natural disasters in Japan.

TEPCO was thus, well aware or should have been that an earthquake would likely occur in the future and that precautions and safety protocols were necessary to withstand such a natural disaster.

It also should have been apparent that if the Dai-ichi plant was unable to withstand an earthquake, the compromised reactors could result in releasing radioactive material. TEPCO was or should have been aware of the history of Chernobyl and Three Mile Island, as well as other mishaps and meltdowns at nuclear power plants and the trans-boundary concerns that such radioactive releases pose.

1    Due to the ultra-hazardous nature of radioactivity, TEPCO was well aware
2   of the necessity for an emergency response to both controlling the release of
3   nuclear emissions and attending to harms incurred by residents in the highly
4   populated environs of Fukushima. Similarly, TEPCO, as a Japanese regulated
5   energy producer, also knew that they were bound by international protocols and
6   standards, particularly those relating to safety and emergency responsiveness.
7   Thus, TEPCO knew or should have known of its requirements under the
8   International Atomic Energy Agency's Convention on Nuclear Safety, Convention
9   on Assistance in Case of a Nuclear Accident, and Convention on Early Notification
10  of a Nuclear Accident. TEPCO was well aware of the international nature of
11  nuclear emergencies.

12    It was similarly foreseeable that TEPCO'S conduct causing a nuclear
13  emergency would warrant more attention than could otherwise be provided by
14  local Japanese authorities; that it was foreseeable that foreign assistance would be
15  provided, and in particular, provided by Japan's most important ally, the United
16  States. Finally, in providing humanitarian relief, it is clearly foreseeable that some
17  harm could befall the relief workers. See, *Bigbee v. Pacific Tel. & Tel.* Co. 34
18  Cal.3d 49, 57 (1983) Thus, it was reasonably foreseeable that TEPCO'S conduct
19  would ultimately harm not only the inhabitants of Fukushima, but all people in the
20  vicinity of the reactors, including those coming from outside the vicinity to render
21  the required aid and support necessary due to the magnitude of such a catastrophe.

22         **2.    U.S. Military Command's Conduct was not a Superseding**
23              **Cause as it was not "highly extraordinary" nor "extraordinarily**
               **negligent."**
24       When considering the existence of a superseding event that could somehow
25  relieve TEPCO of its liability, TEPCO must establish as a matter of law that such
26  an intervening act was so highly unusual or extraordinary that the occurrence was
27  not likely to happen and therefore was not foreseeable. 6 Witkin, Summary of Cal.

28

Law (9th ed. 1988) Torts § 975, p. 366 *Bloomberg v. Interinsurance Exchange*, 162 Cal. App. 3d 571, 576–577 (1984).

Thus, under rules set forth in Restatement of Torts, sections 442-453, the fact that an intervening act of a third person is done in a negligent manner does not make it a superseding cause if a reasonable person knowing the situation existing when the act of the third person is done, would not regard the third persons actions as highly extraordinary, i.e., the third person's actions were a normal response to the situation created by the defendant's conduct and that the third person's intervening act was not extraordinarily negligent. *Stewart v. Cox* , 55 Cal.2d 857 (1961); *Stasulat v. Pacific Gas & Elec.* Co., 8 Cal.2d 631, 637 (1937); see also, Restatement (Second) of Torts, 447

Here, "it was a significant part of the risk" of TEPCO'S negligence that relief workers would be summoned to Fukushima and be exposed to the same radioactive release as others in the vicinity of Fukushima. Similarly, due to the nature of military culture and in particular, relief work, it is not "highly extraordinary" that U.S. Mililtary Command ("MC") would follow through with its orders to provide humanitarian assistance to the people of Fukushima. TEPCO'S unstated assertion however is that MC was somehow negligent in placing themselves and plaintiffs into a highly radioactive zone. Both factual allegations and reason belie this assertion; (1) there was no place for MC to hide in order to avoid their own exposure to the radioactive release and hence it is beyond reason to believe that MC would purposefully place themselves in harms way and (2) that such an allegation was untenable given the factual allegation that MC ordered its fleet further out to sea after apparently discovering a increasing level of radioactivity in the vicinity of the convoy. If in fact MC did encounter elevated levels of radioactivity while approaching their staging position, such conduct does not rise to the level of "highly extraordinary" or "extraordinarily negligent."

A reasonable person knowing that MC was traveling full steam ahead in order to provide emergency humanitarian relief for people facing life threatening conditions caused by a devastating earthquake and tsunami would not regard MC's decision to rapidly execute that mission. Thus, without the ability to brand MC's conduct as superseding, TEPCO is unable to resurrect the political questions doctrine as grounds for dismissing plaintiffs claims.

By requiring a third parties conduct to be "extraordinarily negligent" or "highly extraordinary" before determining that that conduct establishes a superseding cause, both the Restatement (Second) of Torts and case law effectively equate a showing of "extraordinarily negligent" or "highly extraordinary" conduct with a showing that such conduct was not foreseeable. Thus, to ask whether conduct is "highly extraordinary" is to ask whether said conduct was not foreseeable.

In light of the fact that it's unreasonable to believe that MC would place itself and its command in harms way by knowingly entering a zone of life endangering radioactivity, MC's conduct was neither "highly extraordinary," "extraordinarily negligent," nor beyond foreseeable. Such a conclusion is further substantiated by MC's conduct in moving the convoy further out to sea after registering an increase in radioactivity around its vessels.

TEPCO failed to raise Restatement 452(2) in their Motion to Dismiss plaintiffs' SAC and as a result, have effectively waived its application.

### 3. TEPCO'S Reliance on Restatement 452(s) is Inapplicable where TEPCO'S Duty of Care had at no Point "Shifted" to U.S. Military Command

It is reasonable to interpret the qualification of "exceptional circumstances" imposed on section 452(2) to mean that a third parties conduct must be "out of the ordinary" and hence closer to the "extraordinary" condition required of an

1   intervening act of a third person. See, Section 447; *Stewart*, supra, 55 Cal.2d at pp.
2   863-864

3       Primarily, plaintiffs take exception to whether section 452(2) is even
4   applicable to the circumstances at bar. The language of 452(2) clearly asserts that
5   some change in duty occurs during the course of a defendants' negligence. Section
6   452(2) states that "where, because the lapse of time, the duty to prevent harm to
7   another…is found to have shifted from the actor to a third person." This language
8   clearly connotes that a passage of time occurs wherein duty "shifts" from the actor
9   to a third person. Here, TEPCO'S negligence was ongoing and continuous as long
10  as the radiation was being released. Thus, TEPCO'S duty of care to plaintiffs and
11  every other person in Fukushima continued.[1]   On the other hand, from the very
12  beginning of Operation Tomodachi and even prior, MC had a duty of care for
13  plaintiffs. MC's duty continued when the U.S.S. Ronald Reagan entered the
14  territorial waters outside of Fukushima. TEPCO, on the other hand retained its duty
15  of care as radioactivity continued to be released. Hence, although the passage of
16  time occurred, at no point did TEPCO'S duty of care shift over to MC. MC held
17  the same authority over plaintiffs that it did prior to entering the territorial waters
18  of Japan.

19      Similarly, TEPCO retained its duty of care not only to plaintiffs, but to MC as
20  well as to all foreseeable persons in the zone of danger of its negligent releases of
21  radiation. Thus, with the roles of both TEPCO and MC unchanged throughout the
22  mission, it is reasonable to hold that Section 452(2) does not apply to the facts at
23  bar. If Section 452(2) was meant to apply uniformly to third parties who held
24  absolute authority over potential plaintiffs, it would not have relied on "temporal"
25  terms, i.e., "lapse of time, "shifted" to indicate when and how a superseding cause

26  _____

27
28

takes place. Thus, without any change in duty occurring with respect to TEPCO or MC, Section 452(2) does not apply. See, *Meuller v. Jeffrey Mfg. Co.* 494 F.Supp. 275, 278(E.D.Pa. 1980)

Similarly, TEPCO'S assertion that its duty of reasonable care owed to plaintiffs was somehow passed to MC when command decided to place their own lives at risk, as well as those of plaintiffs by disregarding the severity of radiation present is unfounded for the following reasons.

### 4. "Exceptional Circumstances" did not Exist where U.S. Military Command did not Engage in "Extraordinary" conduct by Following Through and Carrying out their Mission of Providing Humanitarian Assistance to the People of Fukushima.

Primarily, the application of Restatement 452(2) is dependent and can only exist on a finding that "exceptional circumstances" were at play such that a defendant's duty shifts to a third person. Com. "d" to 452. *Lien Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1005)(9th Cir. 2006) The Ninth Circuit stated that "though not defined in the Restatement, we are convinced that a wide range of factors may bear upon the analysis. At a minimum, though, exceptional circumstances must be "out of the ordinary course," "unusual," or "special," citing, <u>Oxford English Dictionary</u> (2d ed. 1989)). Id. When read in light of well established principles of superseding causation, "exceptional circumstances" holds the same meaning and must rise to the same level as "highly extraordinary," i.e., unforeseeable. See, *Jackson v. Ryder Truck Rental, Inc.*, 16 Cal. App. 4th 1830, 1848 (3d Dist. 1993) (quoting 6 Witkin, Summary of Cal. Law § 975 (9th ed. 1988) *Mocettini v. Kenworth Truck Co.,* 2014 U.S. Dist. LEXIS 142828 (E.D. Cal. Oct. 6, 2014) *Stewart,* supra 55 Cal. 2d at 857 Hence, it is not an "exceptional circumstance" nor is it highly extraordinary for the military commanders onboard the U.S.S. Ronald Reagan to carry out their emergency mission while considering the health and well being of their crew. Not only did MC have their own

MEMO OF POINTS & AUTHS. IN OPPOSITION TO MOT. TO DISMISS TAC

independent duty of care for their crew, but in light of the circumstances, they had to consider their own well being as they were also at risk of being harmed by radiation. Thus, there's no conceivable justification for MC to place themselves in harms way in order to carry out a humanitarian mission. Furthermore, if MC were indeed on a 'suicide' mission, it defies reason that they would leave a location that had a heightened level of radioactivity and order their ships to head further out to sea and away from the source of the radioactive release.

When considering the above with the facts alleged in the TAC that MC ordered their ships further out to sea after determining that radiation levels were high, MC's conduct in no manner rose to the level of "exceptional" nor "highly extraordinary." See, *Cline v. Watkins*, 66 Cal.App.3d 174, 179(1977) where the court found that the substitution of one lawyer who negligently failed to cure the results of a prior counsel's negligent representation did not rise the level of an "exceptional circumstance" such that all duty and responsibility for the prevention of harm passed to the substituted counsel. *Id*. at 179.

Comment "e" states that while responsibility may be shifted by an express agreement between the negligent actor and a third person, "in many cases this is not possible, since there are duties and obligations which cannot be delegated or shifted to another; and where the personal safety of third persons is threatened, it is probably true that normally any duty to exercise reasonable care for their protection cannot be shifted. Comment e to 452(emphasis added).  A careful reading of Comment e arguably speaks to the facts at bar. In this case, the "third person" is MC who, along with plaintiffs, were personally threatened by radiation exposure. Comment "e" directs that where this is the case, the negligent actor, i.e., TEPCO cannot shift its duty of care to the third party, i.e., commanding officers. Even without a strained reading of comment e, it is clear that TEPCO could not have shifted its duty of care to commanding officers. If this were true, then it is

beyond reason why TEPCO would be able to shift its duty of care to plaintiffs while not being able to shift that same duty to commanding officers. TEPCO'S duty to both commanding officers and plaintiffs was exactly the same, i.e., to exercise reasonable care in operating its nuclear power plants. With respect to the applicability of TEPCO'S duty, both plaintiffs and MC were similarly situated, i.e., both were physically situated in the vicinity of TEPCO'S nuclear power plant. Thus, without an express agreement that TEPCO would retain its duty towards commanding officers and release its duty for plaintiffs, this comment supports a conclusion that the facts at bar are not the kind of "exceptional circumstances" warranting a complete shift of responsibility from TEPCO to MC.

Hence, TEPCO'S attempt to point their finger at MC in order to drag this case into Political Questions doctrine is unavailing. TEPCO has no reasonable justification for claiming that MC engaged in "exceptional" or "highly extraordinary" conduct such that it would (1) justify shifting TEPCO'S duty and breach of reasonable care to MC which would thus, arguably (2) require this Court to scrutinize and stand in judgment over military decisions that thereby invoke the Political Questions Doctrine. It is clear that TEPCO'S attempt to call into question MC's conduct is a blatant attempt to drag this case back into the domain of the political questions doctrine. As the above arguments and applications of law make glaringly clear, it defies reason to hold MC responsible for causing plaintiffs harm. There's no justification for it and hence, no reasonable claim that the responsibility for plaintiffs harm lies with MC. TEPCO therefore has no viable claim that MC caused or contributed to plaintiffs harms and as such, an inquiry that would otherwise seek to invoke the political questions doctrine is unavailing.

### 5.    TEPCO'S Reliance on Section 452(2) is Inapplicable where TEPCO was Charged with a Non Delegable Duty of Care to Plaintiffs by Engaging in an Ultra-Hazardous Activity

1    TEPCO'S reliance on Section 452(2) is further undermined when considering

2 that by engaging in an ultra hazardous activity,[2]  TEPCO'S duty of reasonable care

3 is non-delegable and is strictly liable. *Van Buskirk v. Carey Canadian Mines, Ltd.*

4 760 F.2d 481, 497(3d Cir. 1985) (in the strict liability context, "the duty to provide

5 a non-defective product is non-delegable," and thus, cannot be shifted). With strict

6 liability, unlike negligence, it is unnecessary to prove duty and breach of duty.

7 Strict liability is "liability that is imposed on an actor apart from . . . a breach of

8 duty to exercise reasonable care." Prosser & Keeton on Torts, §75 at 534 (5th ed.

9 1984). See, *Hippele v. Palm Beach County Bd. of County Comm'rs*, 2010 U.S.

10 Dist. LEXIS 79906 * 25(S.D. Fla. 2010) The principle underlying the ultra

11 hazardous rule is that one who sets into motion an abnormally dangerous activity

12 cannot delegate the responsibility for harm resulting from that activity to others.

13 Restatement (Second) of Torts, § 427A comment b (employment context).

14    Here, due to TEPCO'S engagement in ultra hazardous activities that carries

15 with it strict liability,  its non delegable duty of reasonable care to plaintiffs cannot

16 be shifted. Although MC had complete control over plaintiffs, and hence, held their

17 own duty of care, they were neither justified nor able to absorb TEPCO'S duty

18 under Section 452(2). TEPCO'S duty was all too decided under the strictures of

19 strict liability for its ultra hazardous activities at the Dai-ichi power plants. See,

20 Prosser & Keeton, Torts (5th ed 1984) § 44, pp. 318-319(there will be situations of

21 extreme danger in which, as a matter of policy, the defendant will not be allowed

22 to shift the responsibility). See also, Comment e of 452, which imagines such non

23 delegable duties by acknowledging that "there are duties and obligations which

24 cannot be delegated or shifted to another." Cmt. E 452. Hence, TEPCO'S non

25 delegable duty for engaging in ultra hazardous activities could not be shifted.

26

27

28

Section 452(2) is thus inapplicable.   Thus, with both a rule of law, i.e., non-delegable duty for engaging in ultra-hazardous activities and policies that exhort corporate responsibility and adherence to safe usage of radioactive materials, Section 452's conditions for permitting a shift in responsibility from TEPCO to MC are not met. Again, the circumstances at bar do not fall within the "exceptional circumstances" requirement of Section 452(2) and therefore it is inapplicable.

### 6.   TEPCO'S Reliance on Independent Governmental Decisionmaking as Grounds for Asserting Superseding Cause is Unavailing

Similarly, TEPCO'S assertion that plaintiffs have not sufficiently alleged proximate cause is equally unavailing. TEPCO argues that plaintiffs must allege that MC's decisionmaking was somehow impaired by TEPCO'S conduct in order to show that the independence of that decisionmaking was consequently undermined. TEPCO mistakenly relies on *Galen v. County of Los Angeles*, 477 F.3d 652, 663 (9th Cir. 2007) and *Jacob v. Curt*, 898 F.2d 838, 839 (1st Cir. 1990) for the general rule that anytime a government official exercises independent judgment, that judgment effectively supersedes all decisions that proceeded it unless it can be shown that the independence of that judgment was somehow impaired. Although TEPCO argues that this rule is applicable outside the context of Section 1983 actions and outside the context of an administrative process that depends on a series of successive decisions that ultimately contribute to a final decision, it is in fact not the case. Rather, this rule's focus is to limit the liability of those charged with making independent discretionary decisions that ultimately inform a final decision. In Galen, it was the arresting officers decision to arrest plaintiff and their subsequent duty to provide what they learned to the parole commission and in Jacob, it was the opinion/decision of a doctor who advocated for the closing of a medical clinic.

Contrary to TEPCO'S claim, this rule is not a general rule that whenever government decisions are at play, that, short of a showing that the independence of those decisions were compromised, that such decision supersedes all conduct proceeding it. Galen and Jacob make clear that when state actors face Section 1983 claims, their discretionary decisions are immunized in order to provide them with the protection necessary to carry out their jobs. Thus, the rule that independent governmental decisionmaking supersedes prior decisions or conduct is not a general proposition and hence, it is not applicable to the facts at bar.

TEPCO arguably persists with this argument as it purportedly, though mistakenly believes, that plaintiffs are still relying on TEPCO'S misrepresentation to MC as the basis for TEPCO'S liability. Plaintiffs however abandoned this theory in their Second Amended complaint.

Such refusal to acknowledge this stems in part to TEPCO'S sole focus of wanting to drag plaintiffs claims into political questions territory. TEPCO'S attempt to accomplish this by relying on both an inapplicable independent government decisionmaking rule and Restatement (Second) Section 452(2) are both unavailing.

Thus, without having to engage in questions pertaining to MC's decisionmaking, plaintiffs have more than sufficiently set out factual allegations that support their claim that TEPCO was both the actual and proximate cause of their harms.

## IV. FIREFIGHTER'S RULE IS INAPPLICABLE TO FACTS AT BAR

### A. Where Court Correctly Applied the "Independent Act" Exception to the Firefighter's Rule, Court's Ruling Constitutes the Law of the Case

In their current Motion, TEPCO reasserts its argument that the Firefighter's Rule applies to the facts and circumstances at bar. TEPCO reasserts wholesale the same arguments they made in their dismissal motion of plaintiff's SAC. TEPCO

argued then and argues now that their negligent conduct in causing the spectacular radioactive release on March 11, 2011 was in no manner "independent" from the tsunami and earthquake that summoned plaintiffs to Fukushima to provide humanitarian relief. TEPCO argues that radiation exposure was inherent in the risk of attending to an earthquake and tsunami. The Court squarely addressed and rejected this argument. It held that "nuclear failure and radiation exposure-due to a private corporation's negligence-are not risks inherent in responding to an earthquake and tsunami, and thus the Firefighter's Rule does not bar Plaintiff's claims as a matter of law." Order, p. 13, ¶¶ 25-28. TEPCO'S attempt to reassert the same arguments the Court had summarily rejected is in clear disregard of the law of the case and must be dismissed.

However, were the Court to permit TEPCO'S arguments to proceed, plaintiffs make the following counter arguments to show that the Firefighter's Rule is inapplicable to the facts and circumstances at bar.

**B.      As an Independent Act of Misconduct, TEPCO'S Negligent Radioactive Release was not the "Risk" which Necessitated Plaintiffs Presence at Fukushima.**

It is well established that the firefighters rule barring causes of action was not intended to bar recovery for independent acts of misconduct which were not the cause of the plaintiff's presence at the . . . scene. *Hubbard v. Boelt*, 28 Cal.3d 480, 486(1980); *Lipson v. Superior Court* 31 Cal.3d 362, 367(1982)  (it is . . . unmistakably clear that in California, the [firefighter's] rule has never been construed as shielding a defendant from liability for acts of misconduct which are independent from those which necessitated the summoning of the [firefighter]… The rule has only been applied to prohibit a [firefighter] from recovering for injuries caused by the very misconduct which created the risk which necessitated his [or her] presence); *Kocan v. Garino* 107 Cal.App.3d 291, 292 (1980)(police in hot pursuit of suspect injured when property owners fence gave way. Property

1   owners negligence did not create the risk which necessitated police presence on

2   property); *Terhell v. Am. Commonwealth Assocs.*172 Cal. App.3d 434,

3   44(1985)(having an unguarded hole in the roof was not the cause of appellant's

4   presence at the scene and the firefighter's rule has never been applied to negligence

5   which did not cause the fire); *Donohue v. San Francisco Housing Authority*,16

6   Cal.App.4th 658(1993)(firefighter who slipped on stairs when called to conduct a

7   safety inspection is not barred. plaintiff was not summoned to the scene to inspect

8   the slipperiness of the stairs, he was there to inspect for fire code violations);

9   *McCormack v. Pac. Gas & Elec. Co.*, 2013 Cal. App. Unpub. LEXIS 2624, *

10  33(Cal. App. 2013)(fireman who arrived at scene in response to a fire was injured

11  by a downed power line. Negligence of power company was justiciable).

12      Here, plaintiffs have clearly alleged that they were called to Fukushima in

13  order to provide humanitarian relief, i.e., distribution of food, water, blankets and

14  assistance for those who were severely impacted by the devastating earthquake and

15  tsunami of March 11, 2011. They were in no manner called to assist in controlling

16  the nuclear catastrophe that was occurring due to TEPCO'S negligence. Plaintiffs

17  have sufficiently alleged facts from which it can be reasonably inferred that they

18  were unaware of a nuclear meltdown, let alone of any radioactive release. See,

19  *Lipson*, 31 Cal.3d at 367 (firefighter rule does not apply to situations where

20  defendant's negligence occurred after the [firefighter] arrived on the scene and

21  materially enhanced the risk of harm or created a new risk of harm). Hence, the

22  well established rule barring application of the firefighters rule more than

23  sufficiently applies to the circumstances at bar. While TEPCO has a differing

24  opinion of the facts of the case, it is premature to assert such facts as being

25  dispositive. In a motion to dismiss, the court assumes the Amended Complaint's

26  factual allegations are true. See, e.g., *Savage v. Glendale Union High Sch.*, 343

27  F.3d 1036, 1039 n.1 (9th Cir. 2003).

28

Similarly, the firefighter's rule is equally inapplicable to TEPCO when considering the rationale underlying the rule. The firefighter's rule is largely " 'based upon a public policy decision to meet the public's obligation to its officers collectively through tax-supported compensation rather than through individual tort recoveries. This spreads the costs of injuries to public officers among the whole community, making the public in essence a self-insurer against those wrongs that any of its members may commit." *Calatayud v. State of California* 18 Cal.4th 1057, 1062(1998). Public safety officers are compensated through public benefits for injuries sustained in the line of duty. If they were also permitted private recovery for those injuries, the public would in effect pay the bill twice: first through taxes and then from insurance. *Yamaguchi v. Harnsmut*, 106 Cal.App.4th 472, 479-480(2003). As a private corporation based in Japan, TEPCO does not pay United States taxes and therefore, cannot be considered a member of the "public" who is supporting U.S. military personnel who carry out relief work on behalf of the United States. Similarly, TEPCO does not contribute to the public benefits that relief workers receive when they are injured in the line of duty. Therefore, the rationale for curtailing "double payment" has no barring on the case at bar as TEPCO is not a member of the public that the rule was meant to benefit.

Hence the firefighter rule is inapplicable to the facts at bar.

## IV.   FAILURE TO (1) NAME SPOUSE FOR LOSS OF CORSORTIUM CLAIM, (2) PROVIDE NOTHING MORE THAN NAMES FOR 156 PLAINTIFFS, AND (3) CERTIFY PERSONAL REPRESENTATIVE STATUS FOR WRONGFUL DEATH CLAIM, ARE DE- MINIMIS OVERSITES THAT CAN EASILY BE CURED

TEPCO raises de minimis procedural omissions that can easily be remedied and that have in no way hindered their ability to be placed on notice as to the identity of plaintiffs and the nature of their claims. At this juncture of the proceeding, TEPCO is fully apprised of plaintiffs claims and is in no way prejudiced by not having the information they desire. However, such allegations

1  are easily remedied and although much of what TEPCO is asking for is reserved
2  for discovery requests, plaintiffs can easily provide birthdates and service
3  assignments for the remaining 156 plaintiffs.

4      The same holds true for providing allegations under the loss of consortium
5  claims although it is a question of whether the complaint satisfies the federal rules
6  requirement. See, Pahle v. Colebrookdale Twp., 227 F. Supp. 2d 361, 374 n.8
7  (E.D. Pa. 2002)(finding that co-plaintiff spouse had adequately pleaded a state-law
8  claim for loss of consortium under the federal rules' requirement for notice
9  pleading, even though the spouse was not specifically mentioned in the complaint).
10  Similarly, with respect to Manuel Leslie's Wrongful Death claim, although the
11  affidavit might be lacking the specific designation required, TEPCO is sufficiently
12  apprised of the claims against it and the proper declaration of personal
13  representative can and will be noticed accordingly.

15                          **CONCLUSION**
16      Plaintiffs respectfully request that this Court deny TEPCO'S Motion to
17  Dismiss Plaintiffs' Third Cause of Action and leave intact its holdings set out in its
18  October 28, 2014 Order.

19  DATED:  January 29, 2015   RESPECTFULLY SUBMITTED,

21                          By:   */s/ CHARLES A. BONNER*
22                                CHARLES A. BONNER
23                                Attorney for Plaintiffs

1

## **CERTIFICATE OF SERVICE**

2    I, CHARLES A. BONNER, am an attorney at Law Offices of Bonner & Bonner,

3    counsel of record for Plaintiffs in this action. I certify that on January 29, 2015, I

4    caused the attached document to be served via this Court's Electronic Filing

5    System on JOHN B. OWENS, DANIEL P. COLLINS, GREGORY P. STONE,

6    RONALD L. OLSON, and BRYAN HECKENLIVELY counsel for Defendant,

7    who are registered users of that system. *See* Local Civil Rule 5.4.

8    DATED: January 29, 2015

9                                    **BY:**_/S/ CHARLES A. BONNER_

10                                   CHARLES A. BONNER
                                     ATTORNEY FOR PLAINTIFFS

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28