PAUL C. GARNER (State Bar No. 132524)
c/o LAW OFFICES OF CHARLES A. BONNER
475 Gate Five Road, Suite 212
Sausalito, California 94965
Telephone:   (760) 600-0081
Facsimile:   (760) 918-1984

CHARLES A. BONNER (State Bar No. 85413)
A. CABRAL BONNER (State Bar No. 247528)
LAW OFFICES OF CHARLES A. BONNER
475 Gate Five Road, Suite 212
Sausalito, California 94965
Telephone:   (415) 331-3070
Facsimile:   (415) 331-2738

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| LINDSAY R. COOPER; *et al.*,<br><br>          Plaintiffs,<br><br>vs.<br><br>TOKYO ELECTRIC POWER COMPANY, INC. aka TEPCO, GENERAL ELECTRIC, EBASCO, TOSHIBA, HITACHI and Does<br>5 through 200, inclusive<br><br>          Defendants. | Case No. 12-CV-3032 JLS JLB<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT GE'S MOTION TO DISMISS THIRD AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION, UNDER THE DOCTRINE OF INTERNATIONAL COMITY, THE POLITICAL QUESTION DOCTRINE, AND FORUM NON CONVENIENS, AND FOR FAILURE TO STATE A CLAIM**<br><br>Judge:  Hon. Janis L. Sammartino<br><br>Date:   April 2, 2015<br>Time:   1:30 PM<br>Crtrm:  4A (Schwartz Building)<br>        221 West Broadway<br>        San Diego |

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

STATEMENT OF FACTS ......................................................................................2

LEGAL STANDARD .............................................................................................3

LEGAL ARGUMENT .............................................................................................4

    A.   Under International Law, a Convention That Is Silent as to Retroactive Effect, is not Retroactive ...........................................4

    B.   Where a Domestic Statute Goes Beyond a Mere Change in Jurisdiction and Effects a Party's Substantive Entitlement of Relief," Jurisdictional "Retroactive" Affect is Inapplicable .................6

    C.   Retroactive Application of the CSC would Immunize GE from Suit and Severely curtail Plaintiffs ability to Obtain Sufficient Damages to Remediate Their Harms ......................................7

II.  CHOICE OF LAW WARRANTS APPLICATION OF CALIFORNIA LAW AS IMPAIRMENT TO CALIFORNIA'S POLICIES AND EQUITY CONCERNS FAR OUTWEIGH IMPAIRMENT TO JAPANESE INTERESTS ...................................................................9

    A.   As GE is Indemnified Under Japan's Compensation Act, Choice of Law is Really Question of Whether GE Will be Subject to Suit.................................................................................10

    B.   Calfornia's Public Policy Provides a Strong Interest in Having its Law Applied to Plaintiffs' Claims .................................10

    C.   California's Reliance on Punitive Damages as a Means of Deterring Corporate Conduct would be Severely Compromised were its Law Not Applied to Plaintiffs Claims ......................12

    D.   California's Interests Would be Much More Impaired Were its Policies Subordinated to Japan's Compensation Act............14

III.  COMITY ABSTENTION IS NOT REQUIRED AS UNITED STATES' INTERESTS IN THE RIGHTS OF ITS SERVICEMEMBERS AND IN ITS PUBLIC POLICIES OUTWEIGH JAPAN'S INTEREST IN PLAINTIFFS' CLAIMS .................15

IV.  LAW OF THE CASE HOLDS THAT POLITICAL QUESTIONS DOCTRINE DOES NOT APPLY AS THE COURT IS NOT REQUIRED TO STAND IN JUDGMENT OVER U.S. MILITARY COMMAND'S DECISIONMAKING AS SUCH DECISIONMAKING WAS NOT A SUPERSEDING CAUSE....................16

MEMO OF POINTS & AUTHS. IN OPPOSITION TO MOT. TO DISMISS

V.  PLAINTIFFS' CLAIMS FALL WITHIN CALIFORNIA STATUTE OF LIMITATIONS AND ARE THEREFORE JUSTICIABLE ...................18

    A.  Discovery Rule Delays the Commencement of the Running of the Statute until the Plaintiff is Aware of Her Injuries and its Negligent Cause .....................................................................................18

    B.  Plaintiffs Claims are Governed By CCP 340.8 Which Provides Discovery Rule for Exposure to Hazardous Materials...........................21

    C.  "John Doe" Averments Permit Plaintiffs to Name General Electric Which in Tandem with California's Discovery Rule, Relate Back to Plaintiffs Original Complaint. ......................................24

VI.  BY DISTINGUISHING BETWEEN TEPCO AND "GE DEFENDANTS," PLAINTIFFS HAVE PROPERLY PROVIDED GE WITH FAIR NOTICE OF THE CLAIMS AGAINST THEM AND THE GROUNDS UNDERLYING THOSE CLAIMS .........................27

VII.  PLAINTIFFS HAVE SUFFICIENTLY SET FORTH PRIMA FACIE CLAIMS FOR STRICT LIABILITY FOR MANUFACTURING DEFECT AND DESIGN DEFECT.....................................................................29

    A.  By Failing to Account for the Particular Circumstances Required of the Daiichi Program, GE is Strictly Liable for Manufacturing Defect. .....................................................................................................29

    B.  GE's Mark I Reactors and Components Thereof are Defective Under California's Risk Benefit Test as the Dangers Inherent in their Design Outweigh its Benefits ..........................................................32

VII.  BY ENGAGING IN ACTIVITIES INVOLVING THE USE OF HIGHLY RADIOACTIVE MATERIALS, GE IS STRICTLY LIABLE FOR PLAINTIFFS' HARMS. ............................................................36

VIII.  BY VIOLATING NRC REGULATIONS AND HAVING EXCLUSIVE CONTROL OVER THE DESIGN AND CONTINUED FUNCTIONING OF THE DAIICHI POWER PLANT, PLAINTIFFS CAN JUSTIFIABLY RELY ON NEGLIGENCE PER SE AND RES IPSA LOQUITUR ...................................................................................37

IX.  FAILURE TO (1) NAME SPOUSE FOR LOSS OF CORSORTIUM CLAIM AND (2) TO CERTIFY PERSONAL REPRESENTATIVE STATUS FOR WRONGFUL DEATH CLAIM, ARE DE- MINIMIS OVERSIGHTS THAT CAN EASILY BE CURED ........................................39

1

# TABLE OF AUTHORITIES

## Cases

*Adams v. Murakami* (1991) 54 Cal.3d 105 ............................................12

*Adela Chiminya Tachiona v. Mugabe*, 234 F.Supp.2d 401 (S.D.N.Y. 2002) ........13

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ....................................................3

*Austin* v. *Massachusetts Bonding & Insurance Co*., 56 Cal.2d 596, 602-603 (1961) ................................................................................................ 23, 25, 26

*Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 428 (1978)................................ 31, 32, 35

*Barrows v. American Motors Corp.* (1983) 144 Cal. App. 3d 1 ...........................27

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)....................................3

*Bramer v. United States*, 412 F. Supp. 569, 572 (C.D. Cal. 1976).........................36

*Brown v. Superior Court* (1988) 44 Cal.3d 1049 ..........................................11

*Bruner v. United States*, 343 U.S. 112, 115-117 (1952)..........................................8

*Call v. Kezirian* (1982) 135 Cal.App.3d 189(1982) ................................................22

*Campbell v. Gen. Motors Corp.,* 32 Cal. 3d 112, 127(1982) ................................32

*Castro v. Budget Rent-A-Car System, Inc.*, 154 Cal.App.4th 1162, 1182 (2007) ...14

*Chubb & Son v. Asiana Airlines*, 214 F.3d 301, 307 n. 4 (2d Cir. 2000).................5

*Conley v. Gibson*, 355 U.S. 41, 47-48 (1957)..........................................27

*Cook v. Rockwell Int'l Corp.*, 2006 LEXIS 89515, * 49 (D. Colo. 2006) ..............36

*Corazon v. Aurora Loan Servs.,* LLC, 2011 U.S. Dist. LEXIS 52712 * 10(N.D. Cal. 2011) .........................................................................................28

*Crawford v. Nat'l Lead Co.,* 784 F. Supp. 439, 443 (S.D. Ohio 1989) ..................36

*DeFazio v. Hollister, Inc.,* 2007 U.S. Dist. LEXIS 84706 *12, fn. 5 (E.D. Cal. 2007). ...........................................................................................16

*Dieckmann v. Superior Court* 175 Cal. App. 3d 345, 363 (1985)................... 24, 26

*Eastern Enterprises v. Apfel*, 524 U.S. 498, 532 ......................................5

*E-Fab, Inc. v. Accountants, Inc. Services*, 153 Cal. App. 4th 1308 (2007).............22

*Egan* v. *Mutual of Omaha Ins. Co*. 24 Cal.3d 809, 820(1979)................................12

MEMO OF POINTS & AUTHS. IN OPPOSITION TO MOT. TO DISMISS

*Ehrlich v. American Airlines, Inc.*, 360 F.3d 366, 372 (2d Cir. 2004 ......................5

*Elsner v. Uveges*, 34 Cal.4th 915, 927 (2004) .........................................37

*Erickson v. Pardus,* 551 U.S. 89, 93(2007) ............................................28

*Escola v. Coca Cola Bottling Co*. (1944) 24 Cal.2d 453.........................................11

*Fender v. Medtronic, Inc.*, 887 F. Supp. 1326, 1333 (E.D. Cal. 1995) ..................29

*Fox v. Ethicon Endo-Surgery, Inc.,* 35 Cal.4th 797, 807(2005) .......................18

*Fried v. United States*, 579 F. Supp. 1212, 1216 (N.D. Ill 1983)...........................36

*Garrett v. Crown Coach Corp*. 259 Cal. App. 2d 647, 650 (1968).................. 24, 25

*General Motors Corp. v. Superior Court (Jeffrey) (1996)* 48 Cal.App.4th 580, 594-595 ....................................................... 24, 25

*Gonzalez v. Autoliv ASP, Inc.*,154 Cal.App.4th 780, 788(2007)...........................13

*Greenman v. Yuba Power Products, Inc.,* 59 Cal.2d 57 (1963) ..............................11

*Gutierrez v. Mofid,* 39 Cal.3d 892, 899(1985)..........................................18

*Hallowell* v. *Commons,* 239 U.S. 506, 508 (1916); *Landgraf, supra,* 511 U.S. at 280 ......................................................................6

*Hill v. Novartis Pharm. Corp.,* 2012 U.S. Dist. LEXIS 38516 (E.D. Cal. 2012)....13

*Hufft v. Horowitz*, 4 Cal. App. 4th 8, 13, 5 Cal. Rptr. 2d 377 (1992) ....................31

*Hurtado v. Superior Court*, 11 Cal.3d 574, 583-584 (1974) ................................11

*In re Sagent Tech., Inc.,* 278 F. Supp. 2d 1079, 1094 (N.D. Cal. 2003) ................28

*Iowa Elec. Light & Power Co. v. Local Union 204,* 834 F.2d 1424, 1428 (8th Cir. 1987)....................................................................38

*Jolly v. Eli Lilly & Co.,* 44 Cal.3d 1103, 1109 (1988).............................................18

*Landgraf* v. *USI Film Products,* 511 U.S. 244, 280 (1994) .................................5, 8

*Lazy Y Ranch LTD. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).........................3

*Lindh v. Murphy* 521 U.S. 320, 328 (1997).................................................6

*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).......................................3

*Lyles v. State of California* 153 Cal.App.4th 281, 286-287 (2007)......................21

*Mathews v. Kidder, Peabody & Co.,* 161 F.3d 156, 165(3d Cir. 1998) ...............7, 8

*McHenry v. Renne*, 84 F.3d 1172, 1177, 1178-79 (9th Cir. 1996).........................28

*Merkin v. United States*, 788 F.2d 172, 176 (3rd Cir., 1986) ..................................36

*Migliori v. Boeing N. Am., Inc.,* 97 F.Supp.2d 1001, 1011 (C.D. Cal. 2000) .........23

*Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989) .................4

*Muzzy Ranch Co. v. Solano County Airport Land Use Com.*164 Cal.App.4th 1(2008)..................................................................................................................11

*Nelson v. Indevus Pharmaceuticals, Inc.,* 142 Cal. App. 4th 1202, 1206 (2006) ...22

*Newing v. Cheatham,* 15 Cal. 3d 351, 362 (1975)....................................................39

*Nolin* v. *National Convenience Stores, Inc.,*95 Cal.App.3d 279, 288(1979) ..........12

*O'Connor v. Boeing North Am., Inc.* 92 F.Supp.2d 1026, 1038 (C.D.Cal. 2000)..19, 21

*Offshore Rental Co., Inc. v. Continental Oil Co.* 22 Cal.3d 157, 164 (1978) .........14

*Olsen v. States Line*, 378 F.2d 217, 220 (9th Cir. 1967) .........................................38

*Ovando v. County of Los Angeles,* 159 Cal. App. 4th 42, 61, 71 (2008) ...............21

*Pahle v. Colebrookdale Twp.,* 227 F. Supp. 2d 361, 374 n.8 (E.D. Pa. 2002)........39

*Pannu v. Land Rover North America, Inc.,* 191 Cal. App. 4th 1298, 1313-14 (2011)...................................................................................................................32

*Papasan v. Allain*, 478 U.S. 265, 286 (1986) ...........................................................3

*Parker v. Dean Transp., Inc.,* 2013 U.S. Dist. LEXIS 184386 (C.D. Cal. 2013) ...27

*Parker v. Robert E. McKee, Inc.*, 3 Cal. App. 4th 512, 518 (1992) .......................24

*Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)............3

*Pooshs v. Phillip Morris USA, Inc.*, 51 Cal.4th 788, 797-98 (2011)......................18

*Ramirez v. Nelson*, 44 Cal.4th 908, 917-18(2008) ..................................................37

*Silkwood v. Kerr-McGee Corp.,* 667 F.2d 908, 921 (10th Cir. 1981) ....................36

*Smeltzley v. Nicholson Mfg. Co.*, 18 Cal.3d 932, 939(1977)..................................26

*Stoddard v. Ling-Temco-Voight, Inc.*,1980 U.S. Dist. LEXIS 9649, * 13 (C.D. Cal. 1980) .................................................................................................................39

*Stonewall Surplus Lines Co. v. Johnson Controls*, 14 Cal. App. 4th 637, 649 (1993)12, 13

*Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993) ...............................................16

*United States v. Smith*, 389 F.3d 944, 948 (9th Cir. 2004)......................................16

*Washington Mutual Bank v. Superior Court,* 24 Cal.4th 906, 919–920(2001).........9

*Westlye v. Look Sports, Inc.,* 17 Cal.App.4th 1715, 1747(1993) ............................13

*Widson v. International Harvester Co.*, 153 Cal. App. 3d 45, 60 (1984)................13

*Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1134, 1143 n.17 (C.D. Cal. 2010) 23

Statutes

10 C.F.R. Part 50...................................................................................................37

42 U.S.C. §§ 2131-41 ...........................................................................................37

Cal. Civ. Code § 3294............................................................................................12

Cal. Civ. Code 2782...............................................................................................13

California Civil Code § 3333..................................................................................12

California Evidence Code § 669 .............................................................................37

Code of Civil Procedure section 340.8 ......................................................... 21, 22

F.R.C.P ..................................................................................................................27

Fed R. Civ. Pro. 8(a)(2) ..........................................................................................3

Other Authorities

CACI 1201 .............................................................................................................29

J. Mervyn Jones, *The Retroactive Effect of the Ratification of Treaties,* 29 AM. J.
   INT'L L. 51 (1935) ...........................................................................................4

Ninth Circuit Manual of Model Civil Jury Instructions, 5.5 Punitive Damages ......8

Peter Malanczuk, Akehurst's Modern Introduction to International Law 155 (7th
   rev. ed. 1997)...................................................................................................5

Rest.3d, § 5, subd. (a)............................................................................................13

Treatises

4 Witkin, Cal. Procedure (4th ed. 1997) Pleading ..................................................24

DAVID J. BEDERMAN ET AL., INTERNATIONAL LAW: A HANDBOOK
   FOR JUDGES 18 (Am. Soc'y of Int'l Law 2003) ............................................4

LORI FISLER DAMROSCH, LOUIS HENKIN, et al., INTERNATIONAL LAW
   CASES AND MATERIALS 452-54 (4th ed. 2001) ........................................4

Vienna Convention on the Law of Treaties, art. 28, 1155 U.N.T.S. 331 .............4, 5

1

**INTRODUCTION**

2

In their instant motion, Defendant General Electric vehemently argues that its

3

undeniable contribution to the meltdowns of the Daiichi reactors should go

4

unexamined and unaccounted for. GE attempts this by flagrantly displaying its ability

5

to assure that its conduct, no matter how egregious, would and could not be held

6

accountable. It is clear from GE's motion that they have been somehow able to

7

immunize their conduct both under Japanese and international law. Having now

8

received the brunt of GE's egregious conduct in contributing to the meltdowns of the

9

Daiichi complex, Plaintiffs hereby oppose GE's flagrant display of power by arguing

10

that: (1) the Convention on Supplementary Compensation for Nuclear Damage

11

("CSC"), which would otherwise immunize GE and others involved in the design,

12

manufacturing and provisioning of the nuclear energy industry, does not apply to the

13

case at bar as the CSC does not have retroactive effect; (2) the Japanese

14

Compensation Act, which would also immunize GE's negligence, does not outweigh

15

California's policies and interests in having its law apply in order to permit Plaintiffs

16

an opportunity to redress their harms; (3) that were this Court to abstain on comity

17

grounds and send Plaintiffs' case to Japan, the policies of the United States would be

18

severely compromised; (4) that the law of the case doctrine has already determined

19

that the role of U.S. Military command does not pose any separation of powers

20

concerns; (5) that under California's discovery rule, Plaintiffs' claims not only fall

21

squarely within the relevant statute of limitations period, but that GE is subject to suit

22

under Plaintiffs' "John Doe" place saving pleading; (6) that Plaintiffs have more than

23

provided GE with fair notice of their asserted claims and the grounds upon which

24

they rest; (7) that Plaintiffs have more than sufficiently alleged prima facie claims for

25

Strict Liability for Manufacturing Defect and Design Defect; (8) that by engaging in

26

activities involving the use of highly radioactive materials, GE is strictly liable for

27

Plaintiffs' harms; (9) and lastly, by the facts of GE violating NRC regulations and

28

MEMO OF POINTS & AUTHS. IN OPPOSITION TO MOT. TO DISMISS

having exclusive control along with Tepco over the design and continued functioning of the Daiichi Power plant, Plaintiffs can rely on the presumption of negligence under Negligence Per Se and  Res Ipsa Loquitur.

As the following arguments make plain, GE cannot merely rely on its power and influence to evade responsibility for its part in causing the horrific damage and suffering to the people of Fukushima and to U.S. service member Plaintiffs who are daily enduring the terrible aftermath of extreme radiation exposure due to GE and its Co-Defendants' unconscionable and inexcusable conduct.

### STATEMENT OF FACTS

The Fukushima Daiichi nuclear power plant consists of six reactors. All six reactors were designed by GENERAL ELECTRIC (GE). The architectural design for GENERAL ELECTRIC'S units was done by DEFENDANT EBASCO. Units 1 through 5 are based on the flawed Mark I design by these United States Companies, GE and EBASCO. GE supplied the reactors for Units 1, 2, 3 and 6. HITACHI and TOSHIBA provided, in collaboration with GE, the reactor for Units 4 and 5. DEFENDANTS TEPCO, GE, EBASCO, HITACHI AND TOSHIBA have all been involved in the maintenance and servicing of the nuclear power plant during the past decades. TAC ¶ 141.

DEFENDANTS GE, EBASCO, TOSHIBA, and HITACHI negligently and defectively designed, engineered and constructed the Mark 1 Boiling Water Reactors ("BWR"), creating several manufacturing and design defects. One design and manufacturing defect of the Mark 1 Boiling Water Reactors is that the containment vessel, which is supposed to contain radioactive material, was designed, manufactured and built too small for its purpose. TAC ¶ 142.

There were numerous design defects that lead to the March 2011 meltdown. TAC ¶¶ 143-175.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## LEGAL STANDARD

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleading standard of Fed R. Civ. Pro. 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

In reviewing a motion to dismiss, the court may also consider documents attached to the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted). In addition, the court may consider a matter that is properly the subject of judicial notice, such as matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing

party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## LEGAL ARGUMENT

### I. CONVENTION ON SUPPLEMENTARY COMPENSATION ("CSC") DOES NOT APPLY TO THE PROCEEDING AT BAR AS IT HAS NO RETROACTIVE EFFECT AND IS NOT MERELY A JURISDICTION STRIPPING STATUTE

#### A. Under International Law, a Convention That Is Silent as to Retroactive Effect, is not Retroactive

Although the Convention on Supplementary Compensation for Nuclear Damage ("CSC") was ratified by Japan following this Court's Order on October 28, 2014, application of the CSC will by no means impact this proceeding as the CSC is without retroactive effect.

A party is not bound by a treaty prior to the date such a treaty enters into force; treaties are not retroactive. Vienna Convention on the Law of Treaties, art. 28, 1155 U.N.T.S. 331, 339 ("Unless a different intention appears from the treaty or is otherwise established, its provisions do not bind a party in relation to any act or fact which took place or any situation which ceased to exist before the date of the entry into force of the treaty with respect to that party."); *see also* J. Mervyn Jones, *The Retroactive Effect of the Ratification of Treaties,* 29 AM. J. INT'L L. 51 (1935). The Vienna Convention on the Law of Treaties, albeit not ratified by the United States to date, is regarded as largely declaratory of existing law and has been recognized as such by the United States Department of State. LORI FISLER DAMROSCH, LOUIS HENKIN, et al., INTERNATIONAL LAW CASES AND MATERIALS 452-54 (4th ed. 2001); *see also* DAVID J. BEDERMAN ET AL., INTERNATIONAL LAW: A HANDBOOK FOR JUDGES 18 (Am. Soc'y of Int'l Law 2003) ("Even though the United States is not a party [to the Vienna Convention on the Law of Treaties], it

regards almost all of the [Convention]'s provisions as binding customary international law.").

International law as a general proposition does not permit retroactive application. Akehurst's treatise refers to the "general principle that laws should not be applied retroactively." Peter Malanczuk, Akehurst's Modern Introduction to International Law 155 (7th rev. ed. 1997). [One] specific treaty example[] . . . demonstrate the proposition. Article 28 of the Vienna Convention on the Law of Treaties, titled the "non-retroactivity of treaties," provides that unless a special intention is established, a treaty's provisions "do not bind a party in relation to any act or fact which took place . . . before the date of the entry into force of the treaty with respect to that party." 1155 U.N.T.S. 331; *see also, Ehrlich v. American Airlines, Inc.*, 360 F.3d 366, 372 (2d Cir. 2004)(treaties generally do not apply retroactively); *Chubb & Son v. Asiana Airlines*, 214 F.3d 301, 307 n. 4 (2d Cir. 2000) (where the actions giving rise to a lawsuit took place in 1995, the amendment to the Warsaw Convention, known as the Montreal Protocol No. 4, did not affect the case despite the Senate's subsequent ratification of the protocol on September 28, 1998). *See also*, *Eastern Enterprises v. Apfel*, 524 U.S. 498, 532, 141 L. Ed. 2d 451(1998)(retroactivity is disfavored in the law, in accordance with "'fundamental notions of justice' that have been recognized throughout history).

The same holds true for domestic case law, i.e., if a statutory provision "would operate retroactively" as applied to cases pending at the time the provision was enacted, then "our traditional presumption teaches that it does not govern *absent clear congressional* intent favoring such a result." *Landgraf* v. *USI Film Products*, 511 U.S. 244, 280 (1994)(emphasis added). Courts however have determined that a blanket "non-retroactivity" rule is not without exception. Such an exception however has not been embraced by international law and as such, a convention or treaty

ratified after or during the pendency of an action has no retroactive effect on that pending action.

**B.   Where a Domestic Statute Goes Beyond a Mere Change in Jurisdiction and Affects a Party's Substantive Entitlement of Relief," Jurisdictional "Retroactive" Affect is Inapplicable**

Even if such an exception did pertain to an international convention or treaty, its application to the facts and circumstances of this case are unavailing. Courts have held that unlike other intervening changes in the law, a jurisdiction-conferring or jurisdiction-stripping statute usually "takes away no substantive right but simply changes the tribunal that is to hear the case." *Hallowell* v. *Commons,* 239 U.S. 506, 508 (1916); *Landgraf, supra,* 511 U.S. at 280(change in jurisdiction does not "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed).

However, where a statute "goes beyond mere procedure to affect substantive entitlement of relief," such jurisdictional "retroactive" affect is inapplicable. *Lindh v. Murphy* 521 U.S. 320, 328 (1997)("while the statute might not have a true retroactive effect, neither was it clearly "procedural" so as to fall within the Court's express approval of applying such statutes to pending cases").

Here, contrary to GE's categorical understatement that the only effect the CSC will have on plaintiffs is to remove their claims to Japan, CSC's application on Plaintiffs' claims will immeasurably strike at their "substantive entitlement of relief" such that retroactive application is unavailing.

In addition to the jurisdictional change, i.e., granting exclusive jurisdiction to the courts of the country where the nuclear catastrophe occurs, in this case, Japan, (Art. VIII) the CSC requires the channeling of all legal liability for nuclear damage to the nuclear facility operator, in this case Tepco and that the amount of liability is

severely limited in amount[1] and in time. CSC Art. III, IV. Additionally, state and/or federal common law would be replaced by law of the court in whose jurisdiction the catastrophe occurs.

### C.    Retroactive Application of the CSC would Immunize GE from Suit and Severely curtail Plaintiffs' ability to Obtain Sufficient Damages to Remediate Their Harms.

Thus, were the CSC to be applied retroactively, Plaintiffs would be forced to forego their claims against GE which they deem imperative, as GE significantly contributed to Plaintiffs' harms on account of GE's defective designs. The effect of CSC's indemnification of GE's liability would not only extinguish GE's rightful damages owed to Plaintiffs, but would deprive these Plaintiffs as well as future Plaintiffs the opportunity of exposing and determining the extent of the shortcomings of GE's Mark I reactors, as well as deterring future conduct through imposing punitive damages.(Twenty three GE Mark I reactors are currently on-line in the U.S.). *See, Mathews v. Kidder, Peabody & Co.,* 161 F.3d 156, 165(3d Cir. 1998)(taking away the right to certain damages e.g., compensatory and punitive,

---

[1] The CSC fixes the amount of the first tier at 300 million Special Drawing Rights (SDR)(SDRs," approximately US$427 million as of January 16, 2015). To the extent funds from the liable operator are insufficient to cover the first tier amount, the CSC requires the Installation State to make public funds available to cover the difference. If claims for compensation for nuclear damage exceed SDR 300 million, the CSC requires member countries to contribute to an international fund that will provide the second tier of compensation. The amount of the second tier of compensation is not fixed, but rather is dependent on the number of nuclear power plants in member countries and will increase as the number of such plants increase. If most generating States adhered to the CSC today, the amount of the second tier currently would be more than SDR 300 million. The CSC also permits a member country to establish a third tier of compensation in excess of the first two tiers. The CSC does not govern the distribution of this third tier, except for one situation relating to member countries with no nuclear installations on their territory

where they did exist "can be seen as creating a new cause of action, and its impact on parties' rights is especially pronounced); Ninth Circuit Manual of Model Civil Jury Instructions, 5.5 Punitive Damages (Punitive Damages).

Similarly, under CSC Compensation provisions (Article III), Plaintiffs' damages would be severely diminished and would fall significantly short of the financial needs required by Plaintiffs on account of their lifelong medical conditions avowedly contributed to by GE's faulty reactors. *Mathews, supra161* F.3d at 166(depriving a plaintiff of a claim constitutes a retroactive affect, affecting the substantive rights of the parties).

The above changes substantively impact Plaintiffs' theory of their case, as well as their ability to obtain sufficient damages to remediate their harms. Such changes far exceed the jurisdictional changes that otherwise warrant a court to apply a statute retroactively. *See*, *Bruner v. United States*, 343 U.S. 112, 115-117 (1952)(a jurisdictional statute "usually takes away no substantive right but simply changes the tribunal that is to hear the case."); *Landgraf*, 511 U.S. at 269(every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective).

Again, the CSC is not a U.S. State or Federal statute but rather an international convention whose parameters must be interpreted under international law. Contrary to GE's position, it is well established that where a convention is silent as to its retroactive affect, the thrust of the treaty or convention is only prospective. As acknowledged by GE, this prescription against retroactivity is even further imperative where, like the circumstances at bar, a party's substantive rights would be impacted, were retroactivity to take effect.

## II.   CHOICE OF LAW WARRANTS APPLICATION OF CALIFORNIA LAW AS IMPAIRMENT TO CALIFORNIA'S POLICIES AND EQUITY CONCERNS FAR OUTWEIGH IMPAIRMENT TO JAPANESE INTERESTS

Choice of law considerations do not warrant that Japanese law, in particular Japan's Act on Compensation for Nuclear Damage, should apply to the facts and circumstances at bar.

Primarily, if there is no contractual choice-of-law provision, and California is the forum state, California employs a three-step examination to determine which law to apply:

> [G]enerally speaking the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state. In such event [that party] must demonstrate that the latter rule of decision will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it."' The foreign law proponent must identify the applicable rule of law in each potentially concerned state and must show it materially differs from the law of California… If the trial court finds the laws are materially different, it must proceed to the second step and determine what interest, if any, each state has in having its own law applied to the case. Despite materially different laws, 'there is still no problem in choosing the applicable rule of law where only one of the states has an interest in having its law applied. Only if the trial court determines that the laws are materially different *and* that each state has an interest in having its own law applied, thus reflecting an actual conflict, must the court take the final step and select the law of the state whose interests would be 'more impaired' if its law were not applied. In making this comparative impairment analysis, the trial court must determine 'the relative commitment of the respective states to the laws involved' and consider 'the history and current status of the states' laws' and 'the function and purpose of those laws. These rules apply whether the dispute arises out of contract or tort, and a separate conflict of laws inquiry must be made with respect to each issue in the case."

*Washington Mutual Bank v. Superior Court,* 24 Cal.4th 906, 919–920(2001).

**A.  As GE is Indemnified Under Japan's Compensation Act, Choice of Law is Really Question of Whether GE Will be Subject to Suit**

Here, GE argues that Japan's Act on Compensation for Nuclear Damage ("Compensation act") should extinguish any interest on the part of California in presiding over Plaintiffs' claims. GE strenuously advocates for Japan's Compensation Act because under that act, GE is wholeheartedly indemnified. Thus, under the circumstances at bar, the choice of law is between Plaintiffs having a Defendant to sue in California or not having a Defendant to sue in Japan. Thus, the question before the court is not which law is proper to rely on in deciding this case, but rather whether GE can be held responsible at all for its negligent conduct. If the court were to determine that Japan's Compensation act furthers Japanese interests over the interests of California, Plaintiffs will effectively be precluded from suing GE in a court of law.

Contrary to Japan's Compensation act which would otherwise hold the designer of its nuclear reactors harmless for any part they played in causing a nuclear catastrophe, California, and for that matter the United States, would ensure that such negligence would be evaluated in a court of law and, if deemed viable, Defendant designer would be forced to pay damages in an amount that would serve as a deterrent for any future negligent conduct. Such is the extent of the distance between the Japanese Compensation act and the policies underlying corporate responsibility in the California courts.

**B.  Calfornia's Public Policy Provides a Strong Interest in Having its Law Applied to Plaintiffs' Claims**

Here, California has a strong interest in applying its laws to the case at bar. Primarily, with approximately 90,000 Navy personnel living in San Diego and with another 240,000 retired military personnel in the county, the U.S. Navy's presence in San Diego, let alone California is immense. Nearly one-sixth of the Navy's entire

fleet or 69 Navy ships are based in San Diego, and it is estimated that the Department of Defense brings about $9.6 billion annually into the county. Plaintiffs were or are stationed in San Diego with their assigned vessel, the U.S.S. Ronald Reagan which, up until January 2015, was stationed in San Diego. See, *Muzzy Ranch Co. v. Solano County Airport Land Use Com.*164 Cal.App.4th 1(2008)(the military is a key component of California's economy comprising the largest economic sector of the state).

Like all California residents, Plaintiffs and other military personnel stationed in California rely on California's strong public policy of protection from injuries that occur on account of defective products. *Greenman v. Yuba Power Products, Inc.,* 59 Cal.2d 57 (1963) (California adopts strict products liability); *Hurtado v. Superior Court*, 11 Cal.3d 574, 583-584 (1974) (California's strong interest in discouraging and deterring wrongful conduct within its borders, including the design and manufacture of defective products).

As a means of enforcing such public policy, California imposes strict liability for product liability. It is well established that "a manufacturer should be absolutely liable if, in placing a product on the market, it knew the product was to be used without inspection, and it proved to have a defect that caused injury. The policy considerations underlying this suggestion are that the manufacturer, unlike the public, can anticipate or guard against the recurrence of hazards, that the cost of injury may be an overwhelming misfortune to the person injured whereas the manufacturer can insure against the risk and distribute the costs among the consuming public, and that it is in the public interest to discourage the marketing of defective products. *Escola v. Coca Cola Bottling Co*. (1944) 24 Cal.2d 453, 461; *Brown v. Superior Court* (1988) 44 Cal.3d 1049, 1056)(strict liability focuses not on the conduct of the manufacturer but on the product itself, and holds the manufacturer liable if the product was defective).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**C.      California's Reliance on Punitive Damages as a Means of Deterring Corporate Conduct would be Severely Compromised were its Law Not Applied to Plaintiffs' Claims**

As a further means of enforcing its policy of holding corporations responsible for harms caused by their defective products, California law allows recovery without limitation for all damages proximately caused by tort, California Civil Code § 3333, as well as for punitive damages. Cal. Civ. Code § 3294.

Punitive damages underscore California's policy and prerogative in not only punishing a wrongdoer, but in having punitive damages serve as a deterrent to others. *Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*14 Cal.App.4th 637 (1993). The purpose of punitive damages "is a purely *public* one." The public's goal is to punish wrongdoing and thereby protect itself from future misconduct, either by the same defendant or other potential wrongdoers. *Adams v. Murakami* (1991) 54 Cal.3d 105, 109-110. *See, e.g., Nolin* v. *National Convenience Stores, Inc.,*95 Cal.App.3d 279, 288(1979)(if a company intentionally proceeds with conduct which will expose a person to a serious potential danger known to the company in order to advance the company's own pecuniary interest, punitive damages may be assessed based on a finding that the company has shown a conscious disregard for the person's safety); *Egan* v. *Mutual of Omaha Ins. Co*. 24 Cal.3d 809, 820(1979) (deterrence of "objectionable corporate policies" serves one of the principal purposes for punitive damages).

Here, Plaintiffs' claims against GE are fundamentally founded upon the above California public policies. GE's product, its Mark 1 reactor, was fatally flawed such that its design defects significantly contributed to the Dai-ichi meltdowns and by extension, to Plaintiffs' harms. In order to hold a corporate entity such as GE responsible for its product liability, California permits those aggrieved to rely on

strict liability and punitive damages to not only obtain remunerations for their harms, but as a means of instilling future deterrence to GE and other corporate interests who manufacture products for the nuclear energy industry. See, Rest.3d, § 5, subd. (a); *Gonzalez v. Autoliv ASP, Inc.*, 154 Cal.App.4th 780, 788(2007)(suppliers of product components cannot escape liability when the raw materials or component parts are themselves defective).

Were Plaintiffs' claims to be heard under Japanese law, in particular, Japan's Compensation act, Plaintiffs' claims would be categorically dismissed, as under that act, GE would be completely indemnified. Such indemnification has been thoroughly rejected by California courts. *Widson v. International Harvester Co.*, 153 Cal. App. 3d 45, 60 (1984)(the California legislature has specifically provided that agreements which seek to indemnify a party for strict products liability are "void and unenforceable" because they are "against public policy," *citing* Cal. Civ. Code 2782)*; See also, Westlye v. Look Sports, Inc.,* 17 Cal.App.4th 1715, 1747(1993)(liability disclaimer is against public policy in products liability suit).

California's substantial interest in the deterrence of wrongful conduct would be substantially impaired, were Japanese rather than California law to apply to this dispute. As the above analysis makes clear, California has a significant interest in providing a forum for protecting its residents and deterring tortfeasors like GE. *Stonewall Surplus Lines Co. v. Johnson Controls*, 14 Cal. App. 4th 637, 649 (1993); *Hill v. Novartis Pharm. Corp.,* 2012 U.S. Dist. LEXIS 38516 (E.D. Cal. 2012)(noting the numerous cases expressing California's interest in the punishment and deterrence of corporate misconduct). Similarly, were Japan's Compensation Act applied to the case at bar, Plaintiffs' claims against GE would be effectually non-existent and as such, the question would not be one of "choice of law" but one of whether a claim is recognized or not. *See*, *Adela Chiminya Tachiona v. Mugabe*, 234 F.Supp.2d 401 (S.D.N.Y. 2002)(where the application of Zimbabwean law fails to recognize

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

plaintiffs particular claims and thus fails to permit recovery of the kinds of damages plaintiffs seek, U.S. and international law should be applied).

### D.   California's Interests Would be Much More Impaired Were its Policies Subordinated to Japan's Compensation Act

In light of the relevant facts of this case and the above analysis, California's interest would be much more impaired if its policies were subordinated to the Japanese Compensation Act. Primarily, GE's role in causing the Fukushima meltdown, as well as potential future catastrophes relating to GE reactors in the U.S., Japan and elsewhere around the world will go unexamined. GE will additionally evade any financial responsibility for Plaintiffs' harms, leaving Plaintiffs with the minimal and insufficient damages allocated under Japan's Compensation act. As a result, California, as well as the U.S. Federal government will be required to provide the financial balance necessary to attend to Plaintiffs' life-long medical expenses, as well as pension benefits for their survivors. See, *Castro v. Budget Rent-A-Car System, Inc.*, 154 Cal.App.4th 1162, 1182 (2007)(a legitimate governmental interest exists where application of California law recoups state financial resources that would otherwise be paid by the taxpayers of California); *Offshore Rental Co., Inc. v. Continental Oil Co.* 22 Cal.3d 157, 164 (1978)(reiterating that California has a real and legitimate interest in having its rule of law applied where it is determined that California's economy and tax revenues would be affected).

In addressing GE's concerns, Japan would arguably be less impaired, were GE to contribute to the damages currently being shouldered by the Japanese government. By obtaining complete indemnification, Japan's Compensation Act is more of a benefit to GE than to Japan who is effectively paying for the ramifications of GE's defective design. GE shamelessly asserts that in exchange for GE's expertise, Japan has immunized GE from any liability as to its role in causing the nuclear catastrophe.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Thus, GE insinuates that were GE to have to account for its conduct in California, it would arguably be forced to withhold its expertise and Japan would suffer as a result. GE similarly argues that since Japan is allocating money to its citizens for damages incurred, that Japan would "cheerfully" do the same for Plaintiffs, and that somehow Japan would be impaired if GE would have to pay its share of the damages. Lastly, GE's concern with a U.S. court applying its own standards for design and operation of Japanese reactors belies the fact that this Court will undoubtedly consider GE's and Tepco's conduct in light of Japanese standards and will determine whether said conduct satisfied those standards rather than imposing its own.

Thus, when comparing a complete indemnification of GE under the Japanese Compensation Act with an opportunity under California law to determine whether GE's designs were defective and thereby contributed to Plaintiffs harms, it is clear that California's interest would be more impaired were its policies of corporate accountability and responsibility be subordinated to Japan's wholesale indemnification of GE under its Compensation Act. As such, California's law should aptly be applied to the proceedings at bar.

## III. COMITY ABSTENTION IS NOT REQUIRED, AS UNITED STATES' INTERESTS IN THE RIGHTS OF ITS SERVICEMEMBERS AND IN ITS PUBLIC POLICIES OUTWEIGH JAPAN'S INTEREST IN PLAINTIFFS CLAIMS

Plaintiffs have more fully set out their arguments against comity abstention in their Oppositions to Tepco's Motion to Dismiss and Motion for Reconsideration, and incorporate these arguments by reference. Plaintiffs respectfully request that the Court rely on Plaintiffs' arguments opposing comity abstention in their Opposition to Tepco's Motion to Dismiss and Motion for Reconsideration Docket # 84 at Section II (pages 3-17). Nevertheless, as argued above, were this case to be decided under Japanese law, GE would completely evade liability and as such, a decision finding

comity would in fact be a decision of dismissal for GE. As comity is a discretionary doctrine "without imperative or obligation," this Court has the prerogative to curtail GE's corporate interest at evading its responsibility to U.S. servicemen and women who were harmed while heeding the call of Japanese citizens who were equally harmed by the same reprehensible negligent conduct.

Defendant GE indicates in its Notice of Motion that it brings its motion to dismiss under the doctrines of international comity and *forum non conveniens.* While GE's moving papers contain arguments specific to international comity, GE does not put forth any arguments under the doctrine *forum non conveniens.* Therefore, this argument is not properly before the Court. If it were before the court, as Defendant GE notes in their moving papers, on October 28, 2014, this Court denied TEPCO's motion to dismiss under the doctrine of *forum non conveniens.* GE does not provide any new or different argument, law or facts in their motion relevant to the doctrine of *forum non conveniens.* Accordingly, this Court should not revisit its prior ruling on this matter (see argument under law of the case below).

**IV.   LAW OF THE CASE HOLDS THAT POLITICAL QUESTIONS DOCTRINE DOES NOT APPLY AS THE COURT IS NOT REQUIRED TO STAND IN JUDGMENT OVER U.S. MILITARY COMMAND'S DECISIONMAKING AS SUCH DECISIONMAKING WAS NOT A SUPERSEDING CAUSE**

GE's arguments pertaining to the political questions doctrine are barred by the law of the Case doctrine.

Under the law of the case doctrine, a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher case in the identical action….For the doctrine to apply, the issue in question must have been "decided either expressly or by necessary implication in [the] previous disposition." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993). Thus, law of the

case doctrine applies to an amended complaint where the causes of action are substantially the same as the prior complaint and they involve substantially the same allegations. *DeFazio v. Hollister, Inc.,* 2007 U.S. Dist. LEXIS 84706 *12, fn. 5 (E.D. Cal. 2007). Further, the doctrine serves to advance the principle that in order to maintain consistency during the course of a single lawsuit, reconsideration of legal questions previously decided should be avoided. *United States v. Smith*, 389 F.3d 944, 948 (9th Cir. 2004)(issues that a district court determines during pretrial motions become law of the case).

As the following analysis clearly illustrates, the Court, in its Order, more than sufficiently and expressly addressed the merits of GE's concern with the political questions doctrine. In its October 28, 2014 Order, the Court stressed that:

> The Court finds that the SAC alleviates any potential separation of powers concerns. The crux of the case is not whether the decision to deploy or the actions taken during the deployment were reasonable… The choices by the U.S. military only incidentally come into play as a potential affirmative defense to Plaintiffs' theory of negligence, and as discussed above, this theory is not viable. Unlike the other cases presented before the court where the circumstances were thoroughly pervaded by military judgments and decisions, here the allegedly negligent conduct is easily separated from the actions of the U.S. Navy both temporally and factually... Because the Court finds that TEPCO has not set forth a tenable scenario where the Navy's actions could be considered a supervening cause, the Court need not delve into the discretionary decisions of the executive branch, and jurisdiction is no longer barred by the political question doctrine.

Order dated Oct 28, 2014, pp. 8-9.

Therefore, GE's attempt to reargue the political questions defense under the guise of non-economic damages falls squarely within considerations this Court has already undertaken. Additionally, in Plaintiffs' Opposition to Tepco's Motion to Dismiss TAC, Plaintiffs have provided further credence to the Court's holding that conduct by U.S. Military Command did not rise to the level of a superseding cause.

1
2      Plaintiffs respectfully request that this Court incorporate those arguments by

3      reference in addressing the GE political questions arguments. See, Plaintiffs'

4      Opposition to Tepco's Motion to Dismiss TAC., Docket # 85, Section III p.7-18.

5          GE fails to consider this but simply argues roughshod that Military

6      Command's role will automatically have to be considered at some point during the

7      proceeding, which would therefore warrant a determination violating the separation

8      of powers.  As this Court has already rejected such an assertion, GE's arguments are

9      barred by the law of the case.

10     **V.   PLAINTIFFS' CLAIMS FALL WITHIN CALIFORNIA STATUTE OF**
       **LIMITATIONS AND ARE THEREFORE JUSTICIABLE**
11
          **A.   Discovery Rule Delays the Commencement of the Running of the**
12             **Statute until the Plaintiff is Aware of Her Injuries and its Negligent**
               **Cause**
13

14         GE's attempt at dismissing Plaintiffs' claims en masse on statute of limitation

15     grounds clearly displays GE's disregard of fundamental principles underlying the

16     extension of limitation periods based on discovery of latent illness. Thus, GE's

17     arguments are unavailing.

18         It is well established that the statute of limitations ... begins to run upon the

19     occurrence of the last element essential to the cause of action." *Gutierrez v. Mofid,* 39

20     Cal.3d 892, 899(1985). Therefore, for personal injury claims, the date of accrual of

21     the cause of action is generally the date of physical injury. *See Jolly v. Eli Lilly &*

22     *Co.,* 44 Cal.3d 1103, 1109 (1988). As a result, the discovery rule delays the

23     commencement of the running of the statute until the plaintiff "is aware of her injury

24     and its negligent cause." *Jolly*, 44 Cal.3d at 1109. More specifically, under the

25     discovery rule, the statute of limitations begins to run not when the plaintiff sustains

26     her injury, but rather "when the plaintiff suspects or should suspect that her injury

27     was caused by wrongdoing, that someone has done something wrong to her." *Id.* at

28     1110. The discovery rule is therefore commensurate with traditional notions of

limitation periods as it "delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.,* 35 Cal.4th 797, 807(2005). The policy reason behind the discovery rule is to ameliorate a harsh rule that would allow the limitations period for filing suit to expire before a plaintiff has or should have learned of the latent injury and its cause. " *Pooshs v. Phillip Morris USA, Inc.*, 51 Cal.4th 788, 797-98 (2011).

Here, Plaintiffs in their initial verified complaint, dated April 1, 2013 (Docket #1) have alleged that

> "27. Plaintiffs have only recently, within all the relevant statutes of limitation periods, discovered the facts pertaining to the nature and extent of their injuries, and facts that Defendants' conduct, including Defendants' fraudulent misrepresentations, which induced Plaintiffs reasonable and justifiable reliance, is the actual and proximate cause of their injuries, damages and harm. This delayed discovery tolls, both in equity and in law, the expiration of the statutes of limitation."

Plaintiffs' Verified Complaint, 27 (Dkt # 1). Such allegation sufficiently apprised Defendants that Plaintiffs were relying on the discovery rule to properly extend the limitation period as their claims had only accrued upon the existence of physical ailments requiring medical attention. This is contrary to GE's assertion that Plaintiffs had only alleged that they had suffered injury upon exposure. Accrual of personal injury claims occur on the date that a Plaintiff is diagnosed with an allegedly resulting illness. *O'Connor v. Boeing North Am., Inc.* 92 F.Supp.2d 1026, 1038 (C.D.Cal. 2000).

Similarly, in their Verified Complaint (Dkt # 1), Plaintiffs have sufficiently alleged that in addition to Tepco, there existed Defendants whose identity had not yet been determined. Plaintiffs stated, "49. Plaintiffs do not know the true names and capacities, whether individual, corporate, associate, or otherwise of DEFENDANT Does 1 through 200 inclusive and therefore sues these Defendants by such fictitious

names. Plaintiffs will amend their complaint to allege their true names and capacities when this has been ascertained." Plaintiffs' Verified Complaint, para. 49 (Dkt # 1).

In their FAC, SAC, and TAC, Plaintiffs carried over the above allegations in order to invoke both the discovery rule and to preserve yet to be determined John Doe Defendants. See Plaintiffs FAC (Docket # 21), para. 28, 49; SAC (Docket # 50), para. 83, 102,[2] TAC (Docket # 71), para. 84[3], 106.[4] Although Plaintiffs have not

---

[2] Plaintiffs SAC 83 states, "Plaintiffs have only recently, within all the relevant statutes of limitation periods, discovered the facts pertaining to the nature and extent of their injuries, as well as the facts that show DEFENDANTS' conduct, including DEFENDANTS' negligent conduct in the construction, maintenance, management, and operation before, during and after the March 11, 2011 earthquake and tsunami. Within all the relevant statutes of limitation periods, Plaintiffs discovered the facts which prove that DEFENDANT TEPCO is the actual and proximate cause of their injuries, damages and harm. This delayed discovery tolls, both in equity and in law, the expiration of the statutes of limitation."

[3] Plaintiffs TAC, 84 states, "PLAINTIFFS have only recently, within all the relevant statutes of limitation periods, discovered the facts pertaining to the nature and extent of their injuries. PLAINTIFFS also have just recently discovered facts which show DEFENDANTS' illegal conduct, as well as DEFENDANTS' negligent conduct in the engineering, construction, maintenance, operation, management and control of the defectively designed Fukushima Nuclear Power Plant. PLAINTIFFS recently discovered facts showing that DEFENDANTS' negligence and defective design of FNPP which caused injuries to PLAINTIFFS occurred before, during and after the March 11, 2011 earthquake and tsunami. Within all the relevant statutes of limitation periods, PLAINTIFFS discovered the facts which prove that DEFENDANTS, and each of them, are the actual and proximate cause of their injuries, damages and harm. This delayed discovery tolls, both in equity and in law, the expiration of the statutes of limitation."

[4] Plaintiffs TAC, 106 states, "PLAINTIFFS have identified the names and capacities and illegal actions resulting in harm to PLAINTIFFS. PLAINTIFFS have recently learned,  since the filing of the Second Amended Complaint, evidence proving that  DEFENDANTS GE, EBASCO, TOSHIBA, and HITACHI negligently designed, maintained, managed, and prepared the subject Mark 1 Boiling Water Reactors ("BWR"). These DEFENDANTS are now sued as Does 1-

included the precise "term of art" allegation that "despite diligent investigation of the circumstances of the injury, they could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period," *Lyles v. State of California* 153 Cal.App.4th 281, 286-287 (2007) they have sufficiently apprised GE that they have recently expressed physical illness such that their claims have only then legally accrued. *O'Connor, supra* 92 F.Supp.2d at 1038.

### B.   Plaintiffs' Claims are Governed By CCP 340.8 Which Provides Discovery Rule for Exposure to Hazardous Materials

Here, Plaintiffs' personal injury claims are governed by Code of Civil Procedure section 340.8, which states in relevant part: "In any civil action for injury or illness based upon exposure to a hazardous material or toxic substance, the time for commencement of the action shall be no later than either two years from the date of injury, or two years after the plaintiff becomes aware of, or reasonably should have become aware of, (1) an injury, (2) the physical cause of the injury, and (3) sufficient facts to put a reasonable person on inquiry notice that the injury was caused or contributed to by the wrongful act of another, whichever occurs later." Code Civ. Proc., § 340.8, subd. (a). Throughout the time period between Plaintiffs' Verified Complaint (4-1-13) and their TAC (11-18-14), Plaintiffs' illnesses, as caused by GE's contribution to the Daiichi reactors melt down and hazardous release of radiation, have developed and expressed themselves such that their claims have legally accrued. Unlike an explosion or fire where injuries result immediately from

---

4 respectively. DEFENDANT GE was the lead designer and creator of the BWR, in collaboration with DEFENDANTS EBASCO, TOSHIBA, and HITACHI. (Hereinafter collectively referred to as, "GE DEFENDANTS"). PLAINTIFFS do not know the true names and capacities, whether individual, corporate, associate, or otherwise of DEFENDANT Does 5 through 200 inclusive, and therefore sue these DEFENDANTS by such fictitious names. PLAINTIFFS will amend their complaint to allege their true names and capacities when this has been ascertained."

the cause of injury, exposure to hazardous or toxic substances takes time to manifest and will do so at different rates and will take on different expressions, depending on the person exposed. Therefore, GE's assertion that Plaintiffs en masse have alleged that their injuries occurred upon exposure, utterly belies the facts and circumstances of this case.

Unless the evidence can support only one reasonable conclusion, the question when a Plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact and cannot be decided on demurrer. *Ovando v. County of Los Angeles,* 159 Cal. App. 4th 42, 61, 71 (2008); *see also E-Fab, Inc. v. Accountants, Inc. Services*, 153 Cal. App. 4th 1308 (2007) (resolution of the statute of limitations issue is normally a question of fact. More specifically, as to accrual, once properly pleaded, belated discovery is a question of fact. As our state's high court has observed: "There are no hard and fast rules for determining what facts or circumstances will compel inquiry by the injured party and render him chargeable with knowledge. It is a question for the trier of fact;" *See Call v. Kezirian* (1982) 135 Cal.App.3d 189(1982)(the reasonableness of a delayed discovery may be a question of law [only if the] … allegations of the complaint … are susceptible to only one legitimate inference.).

Although GE passionately argues that Plaintiffs should have been aware of its role in causing the release of radiation closer to the events of March 14, 2011, GE is unfortunately attempting to conflate its role in causing Plaintiffs' harms with that of Tepco. GE's Motion to Dismiss, p. 27. As the first three complaints make clear, Plaintiffs were expressly focused on Tepco's role in causing the reactors' meltdown. The extent of GE's role only became apparent to Plaintiffs after shifting the theory of their case from Tepco's misrepresentation to Tepco's negligent operation of the Dai-ichi's reactors. At the point of responding to Tepco's Motion to Dismiss Plaintiffs Second Amended Complaint, it did become clear that GE and other Defendants

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

shared in Tepco's liability. Upon conducting the relevant and requisite research, Plaintiffs moved this Court to Amend their complaint on or about August 21, 2014.

GE's reliance on media reports as an attempt to discredit Plaintiffs' time frame in discovering GE's role in causing their harms is similarly precluded by statute and case law. It is well established that media reports regarding a hazardous material or toxic substance contamination do not, in and of themselves, constitute sufficient facts to put a reasonable person on inquiry notice that the injury or death was caused or contributed to by the wrongful act of another. Code Civ. Proc., § 340.8, subd (d); see, *Nelson v. Indevus Pharmaceuticals, Inc.,* 142 Cal. App. 4th 1202, 1206 (2006)(there is no rule of "constructive suspicion" that triggers the statute of limitations simply when the dangers of a product are publicized); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1134, 1143 n.17 (C.D. Cal. 2010) (rejecting defendant's argument that media reports would suffice to show that plaintiff was on inquiry notice as a matter of law); *Migliori v. Boeing N. Am., Inc.,* 97 F.Supp.2d 1001, 1011 (C.D. Cal. 2000) (the mere fact of publicity ... does not conclusively show that a plaintiff must be imputed with knowledge" and does not establish that plaintiffs' claims are time-barred as a matter of law). Thus, GE's citation to references that place responsibility on it for its part in causing the catastrophe in Fukushima does not by itself provide a strong inference that Plaintiffs were on notice as to GE's role in causing their harms.

In sum, it cannot be concluded that the only reasonable inference to be drawn from plaintiffs' allegations is that a reasonable person in plaintiffs' position would have been on inquiry notice by March 2013, at the latest. Thus, GE has not met its burden of showing that Plaintiffs should have suspected GE's wrongful conduct prior to the filing of their Third Amended complaint such that Plaintiffs are precluded from relying on the discovery rule.

C.    "John Doe" Averments Permit Plaintiffs to Name General Electric Which, in Tandem with California's Discovery Rule, Relate Back to Plaintiffs' Original Complaint.

Similarly, GE's arguments that Plaintiffs are unable to rely on their John Doe averments are equally misplaced.

The purpose of the fictitious name statute (Cal. Code Civ. Proc., § 474) is to enable plaintiff to commence suit in time to avoid the bar of the statute of limitations where he/she is ignorant of the identity of the defendant. The statute should be liberally construed to accomplish that purpose. *Austin* v. *Massachusetts Bonding & Insurance Co.*, 56 Cal.2d 596, 602-603 (1961). In keeping with this liberal interpretation of section 474, it is well established that even though the plaintiff knows of the existence of the defendant sued by a fictitious name, and even though the plaintiff knows the defendant's actual identity (that is, his name), the plaintiff is "ignorant" within the meaning of the statute if he lacks knowledge of that person's connection with the case or with his injuries. *Parker v. Robert E. McKee, Inc.*, 3 Cal. App. 4th 512, 518 (1992). The fact that the plaintiff had the means to obtain knowledge is irrelevant. *Garrett v. Crown Coach Corp.* 259 Cal. App. 2d 647, 650 (1968); see generally 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, §§ 445, 446, pp. 540–545. A plaintiff does not relinquish her rights under section 474 simply because she has a suspicion of wrongdoing arising from one or more facts she does know. *General Motors Corp. v. Superior Court (Jeffrey) (1996)* 48 Cal.App.4th 580, 594-595. Code of Civil Procedure "[s]ection 474 allows a plaintiff in good faith to delay suing particular persons as named defendants until [plaintiff] has knowledge of sufficient facts to cause a reasonable person to believe *liability is probable*." *Dieckmann v. Superior Court* 175 Cal. App. 3d 345, 363 (1985)(emphasis added). "[S]ection 474 does not impose upon the plaintiff a duty to go in search of facts she

does not actually have at the time she files her original pleading. *General Motors Corp. v. Superior Court, supra,* at p. 596 and fn. 15.

Here, Plaintiffs were only able to determine that GE and the other design Defendants were liable after engaging in further research on Tepco's negligent conduct regarding design, installation, repair, and renovations to the Dai-ichi nuclear facilities. See, Plaintiffs TAC, para. 84 ("PLAINTIFFS also have just recently discovered facts which show DEFENDANTS' illegal conduct, as well as DEFENDANTS' negligent conduct in the engineering, construction, maintenance, operation, management and control of the defectively designed Fukushima Nuclear Power Plant. PLAINTIFFS recently discovered facts showing that DEFENDANTS' negligence and defective design of FNPP which caused injuries to PLAINTIFFS occurred before, during and after the March 11, 2011 earthquake and tsunami); *Garrett* v. *Crown Coach Corp.*, 259 Cal.App.2d 647, 650-651 (1968) (proper to amend the complaint to bring in other defendants on warranty and product liability theories since the amendment involves the same accident and injury); *General Motors Corp., supra,* 48 Cal. App. 4th at pp. 593-594(the phrase "ignorant of the name of a defendant" is broadly interpreted to mean not only ignorant of the defendant's identity, but also ignorant of the facts giving rise to a cause of action against that defendant).

The amendment of the discovered defendant will relate back to the date of filing of the original complaint if it seeks recovery on the same general set of facts as those alleged in the original complaint. *Austin, supra*, 56 Cal.2d at 600, The *Austin* court reasoned that a defendant sued by a fictitious name and later brought into the case by an amendment substituting his true name is considered a party from its commencement; as to a named party where an amendment is sought after the statute has run, the amended complaint will be deemed filed as of the date of the original complaint provided recovery is sought in both pleadings on the same general facts; a

defendant unaware of a suit against him by a fictitious name is in no worse position if, in addition to substituting his true name, the amendment makes other changes in the allegations based on the same general facts; and from the point of view of the plaintiff, he has at least as great a need for liberality in amendment as a plaintiff who knew the defendant's name throughout.[5]

Here, GE again construes Plaintiffs' injuries to have occurred upon their initial exposure to radiation on March 14, 2011. As the above analysis makes plain, for purposes of the discovery rule such a designation is erroneous. Here, Plaintiffs' initial December 2012 verified complaint was rejected for its failure to comply with local rules. Plaintiffs thereafter filed a complaint on April 1, 2013 which expressly alleged John Doe Defendants. See, Plaintiffs' Verified Complaint, para. 48. This complaint was subsequently voluntarily dismissed on June 4, 2013. Plaintiffs' First Amended Complaint was then filed on the same day, June 4, 2013 which also designated Doe Defendants. See, Plaintiffs' First Amended Complaint, para. 49. Thus, when

---

[5] In *Garrett,* supra 259 Cal.App.2d at 650-651, plaintiff brought an action to recover damages for injuries sustained when his vehicle was struck by a school bus. The complaint named two school districts, two named defendants and several Doe defendants. The named defendants were charged with negligently maintaining and operating the bus. After the one-year statutory period had run, plaintiff filed an amended complaint substituting the Crown Coach Corp. for Doe I and alleging a cause of action against it for the negligent design and manufacture of the school bus. The reviewing court reversed a judgment of dismissal following an order sustaining Crown Coach's demurrer based on the statute of limitations. The court held that the case was governed by the principle enunciated in *Austin*, stating: "In the case at bench plaintiff is seeking to hold Crown legally responsible for the same accident and the same injuries referred to in the original complaint. The amendment changes the alleged obligation of 'Doe One' from that of an operator to that of a manufacturer. Therefore, it is proper to amend the complaint to bring in other defendants on warranty and product liability theories; since the amendment involves the same accident and injury, the amendment relates back to satisfy the statute of limitations." *Id*. at 651.).

Plaintiffs had sufficient facts to "cause a reasonable person to believe [GE's] liability [was] probable," *Dieckmann, supra,* 175 Cal. App. 3d at 363 it named GE in its Third Amended complaint. As such, Plaintiffs' Third Amended complaint, naming GE as a Defendant, is deemed filed as of the date of Plaintiffs' Verified Complaint on April 2013, the first complaint naming John Doe Defendants. *Austin, supra* 56 Cal.2d at 600(the amended complaint will be deemed filed as of the date of the original complaint provided recovery is sought in both pleadings on the same general facts).

Additionally, defendants must also show not only that the plaintiff was dilatory but also 'that defendant suffered prejudice from any such delay.' *Smeltzley v. Nicholson Mfg. Co*., 18 Cal.3d 932, 939(1977)(the only prejudice even mentioned by respondents, in supporting points and authorities, is the prejudice generally presumed from the policy of the statute of limitations). Thus in establishing the prejudice required by *Smeltzley*, a defendant cannot rely simply on the general policy of the applicable statute of limitations. *Barrows v. American Motors Corp*. (1983) 144 Cal. App. 3d 1, 7-10. Here, GE made no showing of any specific prejudice nor can it show any. Thus, Plaintiffs have sufficiently relied upon a John Doe designation to relate GE's conduct back to its April 2013 complaint.

## VI.   BY DISTINGUISHING BETWEEN TEPCO AND "GE DEFENDANTS," PLAINTIFFS HAVE PROPERLY PROVIDED GE WITH FAIR NOTICE OF THE CLAIMS AGAINST THEM AND THE GROUNDS UNDERLYING THOSE CLAIMS

GE's assertion that Plaintiffs significantly failed to differentiate their pleadings as to the particular conduct of each Defendant is specious and unavailing. Plaintiffs TAC more than sufficiently satisfies Federal Rule of Civil Procedure 8 requirement that a pleading merely set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." F.R.C.P 8(a). Where a complaint satisfies Section 8's underlying requirement that a pleading give "fair notice" of the claim being asserted and the "grounds upon which it rests," *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957)

an assertion of "undifferentiated pleading" is defeated. *Parker v. Dean Transp., Inc.,* 2013 U.S. Dist. LEXIS 184386 (C.D. Cal. 2013)(pleading is sufficient to put Defendants on notice as to the allegations against them).

Here, Plaintiffs have carefully differentiated their claims between Tepco and "GE Defendants" who were responsible for designing, repairing and renovating the Dai-ichi reactors. At this pre-discovery juncture of the pleadings, distinguishing Tepco from the manufactures and designers as one unit sufficiently apprises each "designer" Defendant of the conduct that Plaintiffs hold them responsible for. Unlike situations where Plaintiffs have entirely relied on the designation "Defendants" throughout the entirety of the complaint, *Corazon v. Aurora Loan Servs.,* LLC, 2011 U.S. Dist. LEXIS 52712 * 10(N.D. Cal. 2011)(plaintiff simply refers to "Defendants" in nearly all of her allegations) Plaintiffs here have differentiated between Tepco's negligent conduct and that of the designer Defendants. *Corazon, supra,* at *12(undifferentiated pleading is improper were plaintiff lumps together and confuses the roles of the different defendants). When Plaintiffs do rely on "Defendants" in their pleading, they are alleging that the entirety of the designated conduct applies to all Defendants. Additionally, Plaintiffs' allegations are factually coherent and do not confuse Defendants' responsibilities; Plaintiffs distinguish between operator negligence, i.e., Tepco and designer, installer negligence, GE, Ebasco, Hitachi. *See, In re Sagent Tech., Inc.,* 278 F. Supp. 2d 1079, 1094 (N.D. Cal. 2003)(although relying on the generic term, "defendants," plaintiffs relied on factual allegations that were particular to individual defendants that did not and could not apply to all defendants); *Cf. McHenry v. Renne*, 84 F.3d 1172, 1177, 1178-79 (9th Cir. 1996)(where complaint contains mere generalities with no specifics relating to the instant case, or where allegations in a complaint are "argumentative, prolix, replete with redundancy and largely irrelevant," the complaint is properly dismissed for failure to comply with Rule 8(a)).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

As the pleadings in Plaintiffs' TAC sufficiently place GE, as well as other Defendants on proper notice as to their part in causing the Dai-ichi reactors to melt down and release the deadly radiation that caused Plaintiffs harms, FRCP 8 is well satisfied, and GE's assertion of undifferentiated pleading is unfounded. *Erickson v. Pardus,* 551 U.S. 89, 93(2007)(Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . claim is and the grounds upon which it rests).

## VII.   PLAINTIFFS HAVE SUFFICIENTLY SET FORTH PRIMA FACIE CLAIMS FOR STRICT LIABILITY FOR MANUFACTURING DEFECT AND DESIGN DEFECT

### A.   By Failing to Account for the Particular Circumstances Required of the Daiichi Program, GE is Strictly Liable for Manufacturing Defect.

Although GE asserts that Plaintiffs' claim for Strict Liability for Manufacturing defect fails due to a failure to allege that the manufacturing process had in some way deviated from an otherwise suitable design, it appears that such an allegation is not an expressly required element of the claim.

To establish a claim for manufacturing defect under a strict liability theory, a plaintiff has the burden of establishing that: (1) he has been injured by the product; (2) the injury occurred because the product was defective; and (3) the defect existed when the product left the hands of the defendant. *Fender v. Medtronic, Inc.*, 887 F. Supp. 1326, 1333 (E.D. Cal. 1995). *See* California Civil Jury Instructions CACI 1201:

1201. Strict Liability - Manufacturing Defect - Essential Factual Elements[*Name of plaintiff*] claims that the [*product*] contained a manufacturing defect. To establish this claim, [*name of plaintiff*] must prove all of the following:
1. That [*name of defendant*] [manufactured/distributed/sold] the [*product*];
2. That the [*product*] contained a manufacturing defect when it left [*name of defendant*]'s possession;

3. That [*name of plaintiff*] was harmed; and

4. That the [*product*]'s defect was a substantial factor in causing [*name of plaintiff*]'s harm.

CACI 1201.

Plaintiffs have sufficiently set out the above elements in their TAC. See for example, ¶ 141(GE designed 6 reactors at the Daiichi power plant); ¶ 136(GE designed and manufactured reactor buildings to an improper size); ¶ 142(GE designed and manufactured containment vessels for Mark 1 Boiling Water Reactors too small for its purpose…and although designed to contain radioactive leaks, failed to do so by allowing radioactive materials to leak into the ground water and into the Pacific Ocean); ¶ 143(GE failed to account for the likelihood of hydrogen generation in their design and therefore had to retrofit the reactors which failed during the events of March 11, 2011); ¶ 144(GE designed the reactors by allowing their control rods to enter through holes in the reactors floor which allowed melted core materials to leak into the containment floor. Such a result was exacerbated by designing and manufacturing the reactors too small for their purpose at the Daiichi plant); ¶ 145(GE defectively position the spent fuel pools on the top of the reactor buildings which upon explosion of the reactors exposed and radioactive material directly into the atmosphere); ¶ 147(GE manufactured the reactors to be separately individuated but on March 2011, a pipe which connected reactor 3 and 4 caused the last explosion due to a build up of hydrogen; ¶ 148(Although manufactured by GE to open, the reactor's SR valves failed to open which significantly contributed to the chain of meltdowns; ¶ 151(GE failed to construct a storage facility for auxiliary power electric power; ¶ 153(GE failed to manufacture the Isolation Condensers to operate continuously such that they could not be manually turned off); ¶ 155(Upon design and manufacture, GE failed to consider the topography and landscape of the Daiichi plant such that remediation of the topography was necessary to accommodate GE's reactors. This remediation significantly contributed to destruction caused by the tidal wave that

struck the plant); ¶ 159(GE failed to consider the topography and landscape of the Daiichi plant by manufacturing and designing the buildings such that the emergency power diesel generators were placed in the basement without waterproof containment); ¶ 166(GE failed to revise their manufacture and design in order to incorporate Japanese anti-seismic standards into the Mark I construction); ¶ 175(GE knew that its Mark I system could not withstand the degree of an accident it was purportedly designed to withstand…Upon the reactors explosion in March 2011, radioactive cesium, strontium, iodine, and hot particles including molten uranium, from the four reactors were released over Fukushima and Northern Japan, as well as the radioactive plume blowing across the Pacific Ocean and around the world); ¶ 182(In a leaked TEPCO report dated June 2011, it was revealed that plutonium-238, -239,-240, and -241 were released "to the air" from the site during the first 100 hours after the earthquake, the total amount of plutonium said to be120 billion becquerels (120 GBq); ¶ 217. (GE's contribution to the reactors' meltdown and release of radiation caused Plaintiffs to endure a lifetime of radiation poisoning and suffering which could have and should have been avoided).

Thus, Plaintiffs have sufficiently alleged facts that support each element of their claim for strict liability for manufacturing defect, including allegations that GE failed to acknowledge and accommodate the particular needs and requirements of the Daiichi program, including its location, topography, building requirements and proclivities towards earthquakes and other natural disasters. (Plaintiffs TAC, ¶¶ 155-157). Such oversights or defects existed when GE's designs and manufactured structures and systems "left GE's hands" and were constructed and installed in Fukushima."

1
2

### B.     GE's Mark I Reactors and Components Thereof are Defective Under California's Risk Benefit Test as the Dangers Inherent in their Design Outweigh its Benefits

3
4

Similarly, Plaintiffs have more than sufficiently set out allegations that satisfy the necessary elements of a Strict Liability for Design Defect claim.

5
6
7
8
9
10
11
12
13
14
15

A manufacturer is strictly liable for injuries caused by a product that is (1) defectively manufactured, (2) defectively designed, or (3) distributed without adequate instructions or warnings of its potential for harm." *Hufft v. Horowitz*, 4 Cal. App. 4th 8, 13, 5 Cal. Rptr. 2d 377 (1992) (citing *Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 428 (1978)). Generally, design defects exist where a product is built in accordance with its intended specifications, but the design itself is inherently defective. *Barker*, 20 Cal. 3d at 429. "[A] product is defective in design either (1) if the product has failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, or (2) if, in light of relevant factors . . . , the benefits of the challenged design do not outweigh the risk of danger inherent in such design.

16
17
18
19
20
21
22
23
24
25
26
27

A product is defective under the risk-benefit test if the plaintiff demonstrates that the product's design proximately caused his injury and the defendant fails to establish, in light of the relevant factors, that, on balance, the benefits of the challenged design outweigh the risk of danger inherent in such design. *Barker*, *supra* 20 Cal. 3d at 432. The relevant factors include: "the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from an alternative design." *Id.* at 431. Once the plaintiff has made a prima facie showing that his or her injury was caused by the product's defective design, the burden shifts to the defendant to establish that, in light of the relevant factors, the product is not

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

defective." *Pannu v. Land Rover North America, Inc.*, 191 Cal. App. 4th 1298, 1313-14 (2011).

Although Plaintiffs have alluded in their complaint that the consumer expectations test might apply to the facts of their case, such a test is clearly unavailing, as nuclear reactors are obviously not a "product within the common experience of ordinary consumers. *Campbell v. Gen. Motors Corp.,* 32 Cal. 3d 112, 127(1982). Thus, it is clear that GE's design defect must be analyzed under the risk-benefit test. *Id.* at 1233.

Plaintiffs have sufficiently satisfied the pleading requirements of the "risk-benefit test," by alleging facts that satisfy the test's relevant factors. For example, **(1) the gravity of the danger posed by the challenged design**: ¶ 142 by designing the reactor's containment vessel too small, the potential that the lower temperature of the reactor water would infiltrate into the reactor core causing thermal damage and cracking. This is what occurred in March 2011; ¶ 143 by failing to design a means for the containment vessel to vent over-pressurization without enhancing the potential for radiation release. Such release did in fact occur in March 2011; ¶ 144 by having the reactor's control rods enter through the floor of the reactor vessel, GE's design enhanced the potential for melted core materials to leak directly onto the containment floor which immeasurably contributed to reactors meltdown; ¶ 145 by positioning the spent fuel pools on top of the reactors, GE increased the risk that upon explosion, the pools and subsequent release of radiation would easily be exposed to the atmosphere; ¶ 148 defective design of the SR valves significantly contributed to the chain of meltdowns in the four reactors by failing to provide a mechanism to release the built up of pressure; by failing to design and build a storage facility for auxiliary electric power, operators at the plant were stymied in their ability to regulate the pressure inside the reactors without the electricity to open the SR valves; ¶ 153 by failing to design Isolation Condensors that were not dependent on electrical current to regulate

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the cooling of the reactors, GE failed to consider the history, likelihood and impact of the recurring natural disasters in Japan. Such oversight directly lead to the meltdowns; ¶ 155 by failing to consider the topology and siting of the reactors, GE's design required reducing the height of the cliff on which the plant was built. Thus the sea wall was reduced from 35 meters to 10 meters which in light of the history and size of that tsunami's that hit Japan in the past, such decision was overtly reckless; ¶ 159 by placing the emergency power generators in the basement, GE again disregarded the effect of the topology on the likelihood of flooding which would render the back-up power inoperable; ¶ 161 GE's emergency back-up cooling systems was defectively designed as the fresh water that was attempted to cool the reactors during this emergency was diverted into auxiliary pipes which defeated any cooling effect envisioned. **(2) the likelihood that such danger would occur**; ¶ 156 As many of the design defects and failures were related to a failure to fully consider the impact that a large scale natural disaster would have on Fukushima Daiichi, GE failed to consider the history and likelihood of an occurrence of a large scale natural disaster on their designs, siting, and construction on the Daiichi complex. This includes loss of power, flooding, siting of reactors, and radioactive containment; **(3) the mechanical feasibility of a safer alternative design**, ¶ 142 upon information and belief, GE was not under any design constraints as to the size of the reactor's containment vessels and as such, the remediation undertaken to correct this oversight would not have failed in the manner that it did that significantly contributed to the meltdowns; para. 145 similarly, the siting of the spent radioactive fuel pools on top of the reactor buildings was arguably an afterthought as not only does such a design defy forces of gravity, but failed to consider questions of containment in light of a natural disaster; ¶ 148 GE's oversight as to the effect of an increase in pressure on the SR valves particularly highlights the necessity of an alternative design where GE's design of the emergency back-up SR valves were rendered inoperable by the

very forces they were designed to contend with; ¶ 153 it defies reason that the most important check on ensuring the reactor's cooling during an emergency, i.e., Isolation Condensors was rendered inoperable due to the unavailability of back-up power. Clearly, a safer, more reliable system was feasible, considering the importance of the condensors in preventing a meltdown; ¶ 155 the reduction of the seawall from 35 to 10 meters illustrates GE and other defendants disregard of safety concerns in light of the high probability that Fukushima would experience heightened sea levels due to frequently occurring earthquakes and tsunamis. Such conduct illustrates GE's indifference to safer, alternative designs; ¶ 159 similarly, the siting of the emergency power generators in the basement also illustrates GE's disregard of the particular geological and climatological circumstances of the Daiichi complex; **(4) the financial cost of an improved design**, ¶ 169-172 plaintiffs cite to complacency and cost cutting pressures that overrode safety concerns. As the primary designer of the Mark I reactors, GE had a non delegable duty to ensure that design decisions that impacted safety concerns would be implemented regardless of economical and budgetary concerns; **(5) the adverse consequences to the product and to the consumer that would result from an alternative design;** para. 162 plaintiffs set out allegations showing that GE and other defendants were on notice as to the design deficiencies of the Mark I reactor. As GE and Tepco were aware of the design problems both with the Mark I reactor generally, ¶ 162-168 and specifically with how it was realized at Fukushima Daiichi, the consequences to the "consumer," i.e., the people in the vicinity of Fukushima, including plaintiffs would have been far superior had GE and other defendants acted with safety as the predominant consideration.

Here, Plaintiffs have sufficiently alleged a factual basis for concluding that the risks of GE's design and omissions thereof clearly outweighed its benefits and that, as alleged, GE designs and omissions significantly contributed to Plaintiffs' harms. Plaintiffs TAC, ¶¶ 210, 211, 216, 217, 220, 230, 231, 232, 240, 241.

1

2

3

4

Thus, having made a prima facie showing that their injuries were caused by the product's defective design, the burden shifts to GE to establish that, in light of the relevant factors, their Mark I designs and implementation at Fukushima Daiichi are not defective. *Barker, supra*, 20 Cal.3d at p. 431.

5

## VII.  BY ENGAGING IN ACTIVITIES INVOLVING THE USE OF HIGHLY RADIOACTIVE MATERIALS, GE IS STRICTLY LIABLE FOR PLAINTIFFS' HARMS.

6

7

8

9

10

11

12

13

14

Contrary to GE's assertion that Strict Liability for Ultra Hazardous Activity does not apply to them as they did not engage in any activity involving highly radioactive materials, Plaintiffs have alleged that GE did in fact continue to maintain and service the Daiichi reactors well after its initial design and construction. TAC, 141, 143(…GE…ha[s] been involved in maintenance and servicing of the nuclear power plant during the past decades). Plaintiffs have sufficiently alleged that "GE maintained lucrative contracts to service GE reactors in Japan…" TAC 169.

15

16

17

18

19

20

21

22

23

24

25

26

27

Similarly, GE's attempt to distance itself from any connotation that the Daiichi plant relies on ultra hazardous radioactive materials in order to produce electricity is patently misleading. The Restatement makes expressly clear that the handling and manipulating of highly radioactive materials is an ultra hazardous activity. Restatement section 520, comment g., p. 38. Case law reaffirms such a conclusion. See, *Merkin v. United States*, 788 F.2d 172, 176 (3rd Cir., 1986)(the handling and processing of radioactive materials is an inherently dangerous activity as it involves a grave and peculiar risk of harm to others); *Bramer v. United States*, 412 F. Supp. 569, 572 (C.D. Cal. 1976)(there is little question that working with radioactive materials must be considered "inherently dangerous); *Fried v. United States*, 579 F. Supp. 1212, 1216 (N.D. Ill 1983)(there can be no doubt that the operation of a nuclear reactor and the handling and testing of nuclear wastes are inherently dangerous activities. The release of excess radiation into the atmosphere or a malfunction of the

28

reactor, causing radiation leaks, cooling fluid spills, or a partial or total melt-down of the core unit, are all possible results of unsafe practices of the Laboratory); *Cook v. Rockwell Int'l Corp.*, 2006 LEXIS 89515, * 49 (D. Colo. 2006)(it is beyond dispute that the generation, use, storage and disposal of plutonium and other hazardous materials in the course of nuclear weapons production constitute inherently dangerous activities under this test); *Silkwood v. Kerr-McGee Corp.,* 667 F.2d 908, 921 (10th Cir. 1981)(fabricating nuclear fuel is abnormally dangerous activity); *Crawford v. Nat'l Lead Co.,* 784 F. Supp. 439, 443 (S.D. Ohio 1989) (finding production of uranium is an abnormally dangerous activity).

As GE is unable to distance itself from both its continuing role in the operation of the Daiichi reactors and the fact that the Daiichi power plant relies entirely on the handling, manipulation and production of ultra-hazardous radioactive materials, GE holds a non-delegable duty of care and is strictly liable for the harms incurred by Plaintiffs.

**VIII.  BY GE'S VIOLATION OF NRC REGULATIONS AND HAVING EXCLUSIVE CONTROL OVER THE DESIGN AND CONTINUED FUNCTIONING OF THE DAIICHI POWER PLANT, PLAINTIFFS CAN JUSTIFIABLY RELY ON NEGLIGENCE PER SE AND RES IPSA LOQUITUR**

As codified in California Evidence Code § 669, negligence per se "allows proof of a statutory violation to create a presumption of negligence in specified circumstances." *Elsner v. Uveges*, 34 Cal.4th 915, 927 (2004). Evidence Code § 669(a) provides that the "failure of a person to exercise due care is presumed if: (1) he violated a statute, ordinance, or regulation of a public entity; (2) the violation proximately caused death or injury to person or property; (3) the death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute,

ordinance, or regulation was adopted." Cal. Evid. Code § 669(a); *Ramirez v. Nelson*, 44 Cal.4th 908, 917-18(2008).

Here, Plaintiffs rely on the Nuclear Regulatory Commission regulations that govern safety in the nuclear power context. *See, e.g.,* 42 U.S.C. §§ 2131-41; 10 C.F.R. Part 50.[6] In particular, 10 CFR 50 Appendix A, Design Criterion 16 *(Criterion 16—Containment design*. Reactor containment and associated systems shall be provided to establish an essentially leak-tight barrier against the uncontrolled release of radioactivity to the environment and to assure that the containment design conditions important to safety are not exceeded for as long as postulated accident conditions require). Plaintiffs have alleged that GE's Mark One reactors were defectively designed such that the Mark One reactors are prone to permitting melted core materials to leak directly onto the containment floor. This is what occurred with the Daiichi reactors. TAC 142, 144. Plaintiffs acknowledge that although 10 CFR 50 distinctly relates to the licensing of domestic nuclear power plants, this particular design flaw has been well documented, and it is an acknowledged fact that such a flaw inherently exists with the Mark One reactors. TAC 165-168.

Thus, with an extremely strong public policy concern over safety in the operation of nuclear power plants, *Iowa Elec. Light & Power Co. v. Local Union 204,* 834 F.2d 1424, 1428 (8th Cir. 1987), NRC regulations should apply in holding GE negligent per se for failing to remediate this well-documented design flaw.

---

[6] The NRC regulations represent "a strict regulatory scheme devised by Congress for the protection of the public from the hazards of **nuclear** radiation." *Iowa Elec. Light & Power Co. v. Local Union 204,* 834 F.2d 1424, 1428 (8th Cir. 1987). There is a dominant and well-defined **public policy** "requiring strict adherence to **nuclear** safety rules." 834 F.2d at 1427.

Similarly, as an additional form of circumstantial evidence permitting an inference of negligence to be drawn from a set of proven facts, res ipsa loquitur should also apply to the facts at bar.

The traditional elements needed to invoke *res ipsa* are (1) an injury-producing event of a kind that ordinarily does not occur in the absence of someone's negligence; (2) the event must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) the event must not have been due to any voluntary action or contribution on the part of the Plaintiff. *Olsen v. States Line*, 378 F.2d 217, 220 (9th Cir. 1967).

Here, Plaintiffs have alleged ample factual allegations to show that both Tepco and GE's conduct undeniably contributed to the meltdown of the Daiichi reactors whose immense radioactive release caused Plaintiffs' harms. Plaintiffs' claims clearly show that when coupling GE's design and maintenance with Tepco's operation of the Daiichi reactors, both Defendants can readily be deemed to have had "exclusive control" over the reactors. *Stoddard v. Ling-Temco-Voight, Inc.*,1980 U.S. Dist. LEXIS 9649, * 13 (C.D. Cal. 1980)(res ipsa loquitur has been applied to multiple defendants); *Newing v. Cheatham,* 15 Cal. 3d 351, 362 (1975)(exclusivity of control is a flexible concept, and serves "to link the defendant with the probability, already established, that the accident was negligently caused). As nuclear reactors do not melt down without operator and designer negligence, the application of res ipsa loquitur is aptly appropriate to the circumstances at bar.

## IX.   FAILURE TO (1) NAME SPOUSE FOR LOSS OF CORSORTIUM CLAIM AND (2) TO CERTIFY PERSONAL REPRESENTATIVE STATUS FOR WRONGFUL DEATH CLAIM, ARE DE- MINIMIS OVERSIGHTS THAT CAN EASILY BE CURED

GE raises de minimis procedural omissions that can easily be remedied and that have in no way hindered their ability to be placed on notice as to the identity of

Plaintiffs and the nature of their claims. At this juncture of the proceeding, GE is fully apprised of Plaintiffs' claims and is in no way prejudiced by not having the information they desire. However, such allegations are easily remedied and although much of what GE is asking for is reserved for discovery requests, Plaintiffs can easily provide allegations under the loss of consortium claims, although it is a question of whether the complaint satisfies the federal rules requirement. *See*, *Pahle v. Colebrookdale Twp.,* 227 F. Supp. 2d 361, 374 n.8 (E.D. Pa. 2002)(finding that co-plaintiff spouse had adequately pleaded a state-law claim for loss of consortium under the federal rules' requirement for notice pleading, even though the spouse was not specifically mentioned in the complaint).

## <u>CONCLUSION</u>

Plaintiffs respectfully request that this Court deny GE's Motion to Dismiss based on the legal and factual arguments raised above. In the alternative, Plaintiffs respectfully request that this Court provide them leave to amend their complaint in accordance with the Court's Order.

DATED:  March 1, 2015          RESPECTFULLY SUBMITTED,


By:   */s/ CHARLES A. BONNER*
      CHARLES A. BONNER
      Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I, CHARLES A. BONNER, am an attorney at Law Offices of Bonner & Bonner counsel of record for Plaintiffs in this action. I certify that on Marcy 1, 2013, I caused the attached document to be served via this Court's Electronic Filing System on counsel for Defendant General Electric Company, Maurice A. Leiter, Michael D. Schissel, and David J. Weiner and on Daniel P. Collins, Gregory P. Stone, and John B. Owens, counsel for defendant Tokyo Electric Power Company Inc. Each is a registered user of that system. See Local Civil Rule 5.4.

DATED: March 1, 2015

**BY:** *_/S/ CHARLES A. BONNER_*
CHARLES A. BONNER
ATTORNEY FOR PLAINTIFFS