1

2

3

4

ARNOLD & PORTER LLP
Maurice A. Leiter (State Bar No. 123732)
maurice.leiter@aporter.com
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone:  213.243.4000
Facsimile:   213.243.4199

5

6

7

8

ARNOLD & PORTER LLP
Michael D. Schissel (admitted *pro hac vice*)
michael.schissel@aporter.com
399 Park Avenue
New York, NY 10022-4690
Telephone:  212.715.1000
Facsimile:   212.715.1399

9

10

11

12

ARNOLD & PORTER LLP
David J. Weiner (State Bar No. 219753)
david.weiner@aporter.com
555 Twelfth Street, NW
Washington, DC 20004-1206
Telephone:  202.942.5000
Facsimile:   202.942.5999

13

Attorneys for Defendant
GENERAL ELECTRIC COMPANY

14

15

16

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

17

18

19

20

21

22

LINDSEY R. COOPER, et al.,

           Plaintiffs,

    v.

TOKYO ELECTRIC POWER
COMPANY, INC., et al.,

           Defendants.

Case No.: 3:12-cv-03032 JLS JLB

**DEFENDANT GENERAL
ELECTRIC'S REPLY IN SUPPORT
OF MOTION TO DISMISS THIRD
AMENDED COMPLAINT FOR LACK
OF SUBJECT MATTER
JURISDICTION, UNDER THE
DOCTRINE OF INTERNATIONAL
COMITY, THE POLITICAL
QUESTION DOCTRINE, AND
FORUM NON CONVENIENS, AND
FOR FAILURE TO STATE A CLAIM**

23

24

25

26

27

| | |
|---|---|
| Judge: | Hon. Janis L. Sammartino |
| Date: | April 2, 2015 |
| Time: | 1:30 p.m. |
| Crtrm.: | 4A (Schwartz Building) |
| | 221 W. Broadway |
| | San Diego, CA |

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... iii

INTRODUCTION ..................................................................................... 1

ARGUMENT ............................................................................................ 1

I.     THIS COURT LACKS SUBJECT MATTER JURISDICTION ................... 1

II.    JAPAN'S NUCLEAR COMPENSATION ACT BARS ALL CLAIMS AGAINST GE ..................................................................................... 3

III.   PLAINTIFFS FAIL TO REBUT GE'S COMITY ARGUMENTS ............... 7

IV.   THE "LAW OF THE CASE" DOCTRINE DOES NOT APPLY ................ 9

V.    IF CALIFORNIA LAW APPLIES, MOST OF PLAINTIFFS' CLAIMS AGAINST GE ARE TIME-BARRED ........................................................ 10

     A.    Plaintiffs' Claims Accrued in March 2011 and They Cannot Rely on Delayed Discovery ........................................................... 11

     B.    California's "Doe" Pleading Rule Does Not Apply Here ................. 15

VI.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST GE ........................ 16

     A.    Plaintiffs' Improper Group Pleading Warrants Dismissal ................. 16

     B.    Plaintiffs' Claims Fail for Additional Reasons ................................ 16

          1.    Strict Liability for Manufacturing Defect (Count 2) ............... 16

          2.    Strict Liability for Design Defect (Count 3)........................... 17

          3.    Strict Liability for Ultrahazardous Activities (Count 4).......... 18

          4.    Res Ipsa Loquitur (Count 5) and Negligence Per Se (Count 6) ....................................................................................... 19

          5.    Wrongful Death, Survival, and Loss of Consortium (Counts 7, 8, and 11) ....................................................................... 20

CONCLUSION........................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arno v. Club Med Inc.*,
  22 F.3d 1464 (9th Cir. 1994) ................................................................. 6

*Barker v. Lull Eng'g Co.*,
  573 P.2d 443 (Cal. 1978) ..................................................................... 18

*Bockrath v. Aldrich Chem. Co., Inc.*,
  21 Cal. 4th 71 (1999) .......................................................................... 12

*Bramer v. United States*,
  412 F. Supp. 569 (C.D. Cal. 1976) ....................................................... 20

*Carroll v. Bristol Park Med. Grp., Inc.*,
  No. G046113, 2012 WL 5328740 (Cal. Ct. App. Oct. 29, 2012) ....................... 13

*Carson v. Depuy Spine, Inc.*,
  365 F. App'x 812 (9th Cir. 2010) ......................................................... 17

*Castro v. Budget Rent-A-Car Sys., Inc.*,
  154 Cal. App. 4th 1162 (Cal. Ct. App. 2007) ............................................ 5

*Doe I v. Nestle USA, Inc.*,
  766 F.3d 1013 (9th Cir. 2014) ............................................................... 6

*Fox v. Ethicon Endo-Surgery, Inc.*,
  110 P.3d 914 (Cal. 2005) ................................................................ 11, 14

*Gickling v. Kimberlin*,
  170 Cal.App.3d 73 (Cal. Ct. App. 1985) .................................................. 20

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices and
  Prods. Liab. Litig.*,
  754 F. Supp. 2d 1208 (C.D. Cal. 2010) ................................................ 17, 18

*In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in Dec. 1984*,
  634 F. Supp. 842 (S.D.N.Y. 1986) ......................................................... 8

*Iwanowa v. Ford Motor Co.*,
  67 F. Supp. 2d 424 (D.N.J. 1999) .......................................................... 8

*Johnson v. Homecomings Fin.*,
  No. 09CV1262, 2011 WL 4373975 (S.D. Cal. Sept. 20, 2011)...........................7

*Lindh v. Murphy*,
  521 U.S. 320 (1997)...........................................................................................3

*Lueck v. Sunstrand Corp.*,
  236 F.3d 1137 (9th Cir. 2001) ..........................................................................8

*McCann v. Foster Wheeler LLC*,
  225 P.3d 516 (Cal. 2010)...............................................................................4, 7

*Moser v. Triarc Cos.*,
  No. 05CV1742, 2008 WL 2705159 (S.D. Cal. July 8, 2008) ...........................10

*Mujica v. AirScan Inc.*,
  771 F.3d 580 (9th Cir. 2014) .........................................................................7, 9

*Navarrette v. Armite Labs., Inc.*,
  No. PC033370, 2009 WL 1040304 (Cal. Ct. App. Apr. 20, 2009)....................11

*Nelson v. Indevus Pharmaceuticals, Inc.*,
  142 Cal. App. 4th 1202 (Cal. Ct. App. 2006)...................................................14

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*,
  491 U.S. 350 (1989)...........................................................................................8

*Newing v. Cheatham*,
  540 P.2d 33 (Cal. 1975)..............................................................................20, 21

*O'Connor v. Boeing N. Am., Inc.*,
  311 F.3d 1139 (9th Cir. 2002) ........................................................................13

*O'Connor v. Boeing N. Am., Inc.*,
  92 F.Supp.2d 1026 (C.D. Cal. 2000) ...............................................................12

*Offshore Rental Co. v. Continental Oil Co.*,
  583 P.2d 721 (Cal. 1978)...................................................................................6

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981)...........................................................................................8

*Quern v. Jordan*,
  440 U.S. 332 (1979)..........................................................................................10

*Ramirez v. Ghilotti Bros., Inc.*,
    941 F. Supp. 2d 1197 (N.D. Cal. 2013)...............................................7

*Stoddard v. Ling-Temco-Voight, Inc.*,
    513 F. Supp. 314 (C.D. Cal. 1980)................................................20

*Stroitelstvo Bulgaria Ltd. v. Bulgarian-Am. Enter. Fund*,
    589 F.3d 417 (7th Cir. 2009) .......................................................8

*Tachiona v. Mugabe*,
    234 F. Supp. 2d 401 (S.D.N.Y. 2002) ..........................................6

*Tucci v. Club Mediterranee, S.A.*,
    89 Cal. App. 4th 180 (Cal. Ct. App. 2001)....................................6

*United States v. Guy*,
    903 F.2d 1240 (9th Cir. 1990) .....................................................9

*United States v. Maybusher*,
    735 F.2d 366 (9th Cir. 1984) .......................................................9

*United States v. S. Cal. Edison Co.*,
    300 F. Supp. 2d 964 (E.D. Cal. 2004) .........................................19

*Woo v. Superior Court*,
    75 Cal. App. 4th 169 (Cal. Ct. App. 1999)..................................16

*Yumul v. Smart Balance, Inc.*,
    733 F. Supp. 2d 1134 (C.D. Cal. 2010) ......................................14

**CONSTITUTIONAL PROVISIONS, STATUTES, TREATIES, AND RULES**

Convention on Supplementary Compensation for Nuclear Damage, S. Treaty
    Doc. No. 107-21, 1997 WL 33474927 (1997) ..................................2, 3

Cal. Code Civ. Proc. § 474 .......................................................15

**OTHER AUTHORITIES**

Draft Articles on the Law of Treaties, with commentaries, Yearbook of the
    Int'l Law Comm'n, 1966, Vol. II .................................................2

J. Mervyn Jones, *The Retroactive Effect of the Ratification of Treaties*, 29 Am. J. Int'l L. 51 (1935)..................................................................................2

Malanczuk, Akehurst's Modern Introduction to International Law (7th rev ed. 1997) ....................................................................................................2

18B Wright & Miller, Fed. Prac. & Proc. Juris. (2d ed. 2014) ..................................9

REPLY I/S/O DEF. GE'S MOT. TO DISMISS

1

**INTRODUCTION**

Plaintiffs' opposition to GE's motion to dismiss is long on rhetoric and short on law. On issue after issue, Plaintiffs ignore binding case law and fail to respond to GE arguments that compel dismissal of all the claims against GE. In particular, Plaintiffs overlook two principles of law that govern tort claims arising from the operation of civil nuclear power plants. First, the courts of the place where the nuclear plant is located have exclusive jurisdiction over tort claims. Second, only the operator may be held liable in the event of an accident. Each of these principles, along with the additional grounds discussed below, independently dictates dismissal of Plaintiffs' claims against GE.

**ARGUMENT**

**I.    THIS COURT LACKS SUBJECT MATTER JURISDICTION**

Plaintiffs do not dispute that this Court lacks subject matter jurisdiction over the claims against GE if the exclusive jurisdiction provision of the Convention on Supplementary Compensation for Nuclear Damage (CSC) applies to this lawsuit, which it does. S. Treaty Doc. No. 107-21, 1997 WL 33474927 (1997). International and domestic law make clear that a treaty's jurisdictional provision applies to all disputes pending at the time the treaty enters into force, even if the dispute involves conduct predating the treaty's effective date. Mot. 6-7 & nn.2-4, ECF No. 87-1. Plaintiffs can point to no contrary authority.

Instead, Plaintiffs argue a proposition GE never disputed:  treaties generally lack retroactive effect. That simply begs the question of what constitutes retroactive application of a treaty. Plaintiffs rely on the Vienna Convention on the Law of Treaties. But they ignore entirely the official commentaries by the U.N. International Law Commission (ILC) and the Convention's Special Rapporteur, which confirm that applying a treaty's jurisdictional provision to pending cases is *not* impermissibly retroactive. Mot. 6-7 & n.2. Applying the jurisdictional provision "is not to give retroactive effect to the agreement because, by [conferring jurisdiction over]

'disputes' without any qualification, the parties are to be understood as accepting jurisdiction with respect to all disputes *existing* after the entry into force of the agreement." Draft Articles on the Law of Treaties, with commentaries, Yearbook of the Int'l Law Comm'n, 1966, Vol. II, at 212. The same is true of the CSC, which confers exclusive jurisdiction without any qualifications. Art. XIII, § 1.

Plaintiffs do not dispute that the International Court of Justice holds that the jurisdictional provisions of a newly enacted treaty apply to pending cases, Mot. 7 n.3, nor do they address the academic commentaries confirming that this is the established practice under international law, *id*. at 7 n.4. Plaintiffs cite an article and a treatise for the uncontested proposition that treaties generally lack retroactive effect (Opp. 4-5, ECF No. 93), but neither discusses the temporal reach of a treaty's *jurisdictional* provisions, much less disputes the principle that applying an exclusive jurisdiction provision to a pending case does not constitute retroactive application. In fact, the very treatise upon which Plaintiffs rely states that the ILC commentaries—which confirm that the CSC's jurisdictional provision applies here—are a "useful guide to the interpretation of the [Vienna] Convention," and hence to treaty interpretation. Malanczuk, Akehurst's Modern Introduction to International Law 130 (7th rev ed. 1997); Opp. 5.[1]

The same rule applies in domestic law. Plaintiffs concede, as they must, that in the U.S. a newly enacted jurisdictional provision governs all pending cases under long-settled Supreme Court precedent. Opp. 6, 8. And Plaintiffs do not dispute that the CSC provision GE seeks to apply to this case—which now constitutes U.S. federal law—is purely jurisdictional. Nor could they: the provision simply states that "jurisdiction over actions concerning nuclear damage from a nuclear incident shall lie

---

[1] *See also* J. Mervyn Jones, *The Retroactive Effect of the Ratification of Treaties*, 29 Am. J. Int'l L. 51 (1935) (cited at Opp. 4). Not one of the three U.S. court decisions Plaintiffs cite addresses retroactive application of a jurisdictional provision. Opp. 5.

only with" the courts of the country where the accident occurs. Art. XIII, § 1. These two concessions end the matter: this Court must apply Article XIII, § 1.

Plaintiffs thus turn to a second strawman argument: that *other* provisions of the CSC are substantive rather than jurisdictional. "*In addition to the jurisdictional change,*" Plaintiffs note, a separate article of the CSC requires channeling of all liability to TEPCO. Opp. 6-7 (emphasis added). But GE does not seek dismissal based on the CSC's liability-channeling provision. And courts determining whether application of a new law is impermissibly retroactive consider each provision separately; there is no all or nothing inquiry. In *Lindh v. Murphy*, for example, one portion of a statute applied to all cases pending on enactment, but a second portion did not. 521 U.S. 320, 327 (1997). "In sum, if the application of *a term* would be retroactive as to [a party], *the term* will not be applied." *Id.* at 326 (emphases added).

Plaintiffs' extended discussion of the CSC's compensation provisions is thus irrelevant. GE does not seek application of the substantive compensation provisions, but only the jurisdictional provision. If this Court dismisses for lack of subject matter jurisdiction, Plaintiffs can refile their lawsuit in Japan, and the Japanese courts can decide all issues relating to GE's substantive liability. To be sure, GE would continue to argue that Japanese rather than California law applied, and that the Japanese law in effect at the time of the incident bars all claims against GE. Mot. 9-17; *infra* at 3-6. But Plaintiffs do not contend that applying Japanese law is impermissibly retroactive.

## II.   JAPAN'S COMPENSATION ACT BARS ALL CLAIMS AGAINST GE

Plaintiffs agree that, if Japanese law applies, it bars all claims against GE. Opp. 10, 15. Plaintiffs do not dispute that the accident and injury in this case occurred in Japan (Mot. 12-13), and they do not dispute that Japan has a significant interest in applying its Compensation Act to limit GE's liability (Mot. 12-13). In fact, Plaintiffs admit that, if this case were to proceed, the Court must "consider GE's and Tepco's conduct in light of Japanese standards" and "determine whether said conduct satisfied those standards rather than imposing its own." Opp. 15. This is a remarkable

concession. Plaintiffs concede that Japan's interests predominate over California's for purposes of determining whether GE was negligent or whether its reactors were defective. Yet Plaintiffs offer no compelling explanation for why the applicable law should be any different when determining whether GE can be liable in the first place.

In fact, the law is no different. Under California's governmental interest test, foreign law rather than California law applies to an accident occurring in a foreign jurisdiction, even if the plaintiffs are California residents. *McCann v. Foster Wheeler LLC*, 225 P.3d 516, 534 (Cal. 2010) ("California choice-of-law cases ... recognize that a jurisdiction ordinarily has 'the predominant interest' in regulating conduct that occurs within its borders."); *see* Mot. 16 n.10 (citing additional Ninth Circuit and California cases so holding). Remarkably, Plaintiffs entirely ignore *McCann* and similar controlling decisions cited in GE's opening brief. Plaintiffs fail to identify a single case involving a tort committed outside of California where a court applied California law instead of foreign law limiting a defendant's liability.

Plaintiffs contend that California's interest predominates over Japan's for two reasons: Plaintiffs would purportedly receive insufficient compensation if California law is not applied, Opp. 14-15; and the deterrent effect of California's products liability regime would purportedly be compromised if California law is not applied, *id*. at 10-13. But California courts already have held these interests insufficient to justify application of California law to an accident occurring on foreign soil. For example, *McCann* recognized that California had an interest in compensating California residents for alleged negligence in connection with an accident involving a boiler at an Oklahoma oil refinery, and in ensuring that California would not be on the hook if those individuals received insufficient compensation. 225 P.3d at 518, 532-33. But Oklahoma's interest predominated even though applying Oklahoma law meant that the plaintiff could not recover anything at all from the defendant, *id.* at 528, 535-37, just as applying Japanese law means that Plaintiffs cannot recover from GE. This case is even easier than *McCann* because Plaintiffs *can* recover from

TEPCO. Finally, Plaintiffs do not dispute that California has no interest in applying its own law to compensate non-resident plaintiffs, and accordingly, this Court must dismiss the non-California plaintiffs under step two of the governmental interest test. Mot. 13 (citing cases).

Plaintiffs argue that California has an interest in "deterring wrongful conduct within its borders," Opp. 11, including by discouraging the manufacture and sale of defective products in California. But Plaintiffs fail to cite a single case holding that California has an interest in regulating the manufacture and sale of products *abroad* by a company like GE that is domiciled elsewhere. Opp. 11-14.[2] In any event, any such interest would be subordinate to Japan's interests in regulating the conduct of corporations doing business in Japan and in regulating the construction and operation of nuclear power plants within its borders. Mot. 15-16 & n.10.[3] Plaintiffs cite just two cases to support their claim that California's interest predominates over Japan's, and both stand for precisely the opposite proposition. Opp. 14-15. In *Castro v. Budget Rent-A-Car Sys., Inc.*, the California Court of Appeal applied Alabama tort law immunizing Budget Rent-A-Car from liability for a car crash in Alabama, even though the plaintiff was a California resident and even though California tort law permitted recovery against Budget. 154 Cal. App. 4th 1162, 1180-82 (Cal. Ct. App. 2007). Likewise, in *Offshore Rental Co. v. Continental Oil Co.*, the California Supreme Court applied Louisiana law to immunize an oil company in a tort suit stemming from an accident in Louisiana, even though California law permitted suit

---

[2] Plaintiffs do not explain how or why the Navy's presence in California bolsters its interest in applying its law to this tort in Japan, Opp. 10-11, and cite no caselaw to support this result. This private lawsuit will have no effect whatsoever on the Navy's presence in California or its contribution to California's economy; Plaintiffs do not suggest otherwise. Indeed, the U.S. military also has a large presence in Japan, and the U.S.S. Reagan is now stationed in Japan, but that is equally a non-factor.

[3] Plaintiffs vaguely reference GE reactors in the United States, but those reactors are not the subject of this suit and they are licensed and highly regulated by the Nuclear Regulatory Commission. And in the event a U.S. reactor caused nuclear damage, the Price-Anderson Act would channel liability to the operator. Mot. 11 n.7.

1  against the company and even though the plaintiff resided in California. 583 P.2d

2  721, 728-29 (Cal. 1978). And Plaintiffs entirely fail to address GE's argument that

3  California has no interest in imposing liability to deter GE, because liability would

4  not be imposed against GE if this accident had occurred *in California*. Mot. 14.

5  Also irrelevant is the fact that California law permits punitive damages while

6  Japanese law does not (Opp. 12-13). *Arno v. Club Med Inc.*, 22 F.3d 1464, 1468 (9th

7  Cir. 1994) (Guadeloupe's interest in regulating the "liability of an employer doing

8  business within its borders" predominates even though "California allows punitive

9  damages" and "[Guadeloupe] law does not"); *Tucci v. Club Mediterranee, S.A.*, 89

10  Cal. App. 4th 180, 188-89 (Cal. Ct. App. 2001) (applying Dominican law to accident

11  in Dominican Republic though "[p]unitive…damages [were] unavailable" and

12  despite any California interest in "industrial safety").[4] Plaintiffs cite no contrary case.

13  Plaintiffs end with a series of puzzling and ad hominem attacks, including that

14  GE "shamelessly" seeks "immuniz[ation]," "insinuates" that GE would "be forced to

15  withhold its expertise" from Japan if Japanese law is applied, and that Japan's interest

16  would be "less impaired" because Japan's laws are "more of a benefit to GE than to

17  Japan." Opp. 14-15. These arguments fly in the face of the settled rule that California

18  respects a foreign jurisdiction's decision to limit a corporation's liability, because

19  foreign jurisdictions reap significant economic benefits from such policies. *McCann*,

20  225 P.3d at 534-35 (citing cases). Plaintiffs also get the policy backwards: the United

21  States has embraced a policy similar to Japan's in the Price-Anderson Act and

22  likewise protects suppliers like GE because they are vital to the important national

23  interest of encouraging participation in the nuclear power industry. Mot. 14-15.

24

25  _____

26  [4] *Tachiona v. Mugabe*, 234 F. Supp. 2d 401 (S.D.N.Y. 2002) (cited at Opp. 13) is
irrelevant, because it is an Alien Tort Statute case governed by federal common law,
27  *Doe I v. Nestle USA, Inc.*, 766 F.3d 1013, 1018-19 (9th Cir. 2014). Plaintiffs do not
invoke federal common law here and the case has no bearing on California choice-of-
28  law analysis for tort claims brought under California tort law.

### III.   PLAINTIFFS FAIL TO REBUT GE'S COMITY ARGUMENTS

As to comity, Plaintiffs incorporate by reference their opposition to *TEPCO*'s earlier motion (Opp. 15) and fail altogether to address GE's arguments. Those arguments include Japan's paramount interest in resolving claims under the Compensation Act and in allowing Japanese courts to interpret and apply developing questions of Japanese law. Mot. 18–21. The argument in favor of comity is bolstered by Plaintiffs' admission that this Court must "undoubtedly consider GE's and TEPCO's conduct in light of Japanese standards." Opp. 15. Plaintiffs also ignore the clear interest of the United States and Japan in effectuating the CSC's requirement that any nuclear claims be resolved in the forum in which an accident occurs. Plaintiffs offer no response to these arguments, all of which support comity dismissal. The Court may treat those arguments as conceded.[5]

Plaintiffs complain that comity results in GE's dismissal. Opp. 15–16. But that objection misses the mark, because comity focuses on states' sovereign interests—not outcomes. This is necessary to advance comity's "concern[] with maintaining amicable working relationships between nations." *Mujica v. AirScan Inc.*, 771 F.3d 580, 598 (9th Cir. 2014). As the Supreme Court explained in the analogous context of *Younger* abstention between state and federal courts, "we do not look narrowly to [the State's] interest in the outcome of the particular case," but rather look to "the importance of the generic proceedings to the State." *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 365 (1989).

Thus, as long as the foreign forum "permit[s] litigation of the *subject matter* of the dispute," *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981) (emphasis added), courts will dismiss based on comity or *forum non conveniens* even when the plaintiff could not recover in the foreign forum from a particular defendant. The

---

[5] *See, e.g.*, *Ramirez v. Ghilotti Bros., Inc.*, 941 F. Supp. 2d 1197, 1210 & n.7 (N.D. Cal. 2013) (failure to respond to an argument raised in a motion to dismiss is a concession); *Johnson v. Homecomings Fin.*, No. 09CV1262, 2011 WL 4373975, at *7 (S.D. Cal. Sept. 20, 2011) (same).

Seventh Circuit in *Stroitelstvo Bulgaria Ltd. v. Bulgarian-Am. Enter. Fund*, 589 F.3d 417 (7th Cir. 2009), rejected a similar "argument about losing a defendant" because it "is more or less the same as [plaintiff's] argument about losing its preferred American-law tort claims." *Id.* at 423. Plaintiff's "real concern is that any Bulgarian-law substitutes that it might come up with for its complex American-law claims against [one of the defendants] will ultimately fail." *Id.* The court concluded that "whatever the chances of any particular claim against either defendant in this case, Bulgarian law gives [plaintiff] some potential avenue for redress." *Id.*; *see also In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in Dec. 1984*, 634 F. Supp. 842, 865 (S.D.N.Y. 1986); *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 490 (D.N.J. 1999).

And in *Lueck v. Sunstrand Corp.*, the Ninth Circuit affirmed the dismissal to New Zealand of tort claims relating to an aviation accident in New Zealand even though New Zealand abolished tort claims in favor of an administrative compensation scheme where the state—but not the defendants—would compensate the plaintiffs. 236 F.3d 1137, 1143-44 (9th Cir. 2001). It was sufficient, the Ninth Circuit reasoned, that plaintiffs could obtain compensation for the type of damages they sought. *Id.* Thus, because comity does not guarantee a plaintiff a right to recover against any *particular* defendant, the effect of GE's dismissal is not grounds to disregard the paramount interest of a foreign sovereign to adjudicate a domestic dispute.[6]

Although Plaintiffs have in the past suggested that it would be burdensome for them to travel to Japan for trial, that is not relevant to determining whether the international comity doctrine applies. In any event, Japan will be a more convenient forum for those Plaintiffs who still are on the U.S.S. Ronald Reagan since its home

---

[6] Plaintiffs complain that "GE does not put forth any arguments under the doctrine of *forum non conveniens*," Opp. 16, but GE expressly "join[ed] TEPCO's argument that this action should be dismissed under the forum non conveniens doctrine." Mot. 5 (referencing TEPCO TAC Mem. at 35-56, ECF No. 55-1). Rather than repeat those arguments verbatim, GE incorporated TEPCO's arguments by reference.

port will be in Japan. As to any Plaintiff who does not wish to travel to Japan, they can provide testimony in the U.S. that will be admissible in Japanese courts. *See* Declaration of Yasuehi Taniguchi ¶¶ 11-17, ECF No. 55-7.

Japan's predominant interest in resolving this dispute is not "mere conjecture" (ECF No. 84, at 6). Counsel understands that the Government of Japan recently expressed its interest to the U.S. Department of State regarding this litigation. This development strongly supports requesting the U.S. State Department's views regarding this litigation, its possible impact on U.S.-Japan relations, and the respective interests of the United States and Japan. As the Supreme Court and the Ninth Circuit have made clear, the Court should give "'serious weight'" to such a Statement of Interest from the State Department recommending dismissal, which is constitutionally significant as an expression of "'the Executive Branch's view of [this] case's impact on foreign policy,'" *Mujica*, 771 F.3d at 610 (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 733 n.21 (2004)).

## IV.   THE "LAW OF THE CASE" DOCTRINE DOES NOT APPLY TO GE'S POLITICAL QUESTION ARGUMENTS

This case presents an unavoidable political question because "if these claims were to proceed, GE would be entitled *in its defense* to present . . . a full account of the Navy's actions so that the fact-finder can appropriately apportion liability among all potentially responsible parties for Plaintiff's alleged non-economic injuries." Mot. 24. Plaintiffs do not respond substantively, claiming instead that the "law of the case doctrine" bars this Court from considering GE's political question argument. Plaintiffs are wrong for two reasons.

First, GE was not a party when the Court entered its previous orders. "[A] party joined in an action after a ruling has been made should be free to reargue the matter without the constraints of law-of-the-case analysis." 18B Wright & Miller, Fed. Prac. & Proc. Juris. § 4478.5 (2d ed. 2014). *See also United States v. Guy*, 903 F.2d 1240, 1242 (9th Cir. 1990); *United States v. Maybusher*, 735 F.2d 366, 370 (9th Cir. 1984);

*Moser v. Triarc Cos.*, No. 05CV1742, 2008 WL 2705159, at *3 (S.D. Cal. July 8, 2008). "The doctrine of law of the case comes into play only with respect to issues previously determined." *Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979); *see also* 18B Fed. Prac. & Proc. Juris. § 4478.5 ("a ruling with respect to one party's issue does not resolve another party's different issue"). GE's argument does not rest on the issue of "supervening causation" previously addressed by the Court, but rather on an assessment that the Court necessarily will be required to make of the Navy's *relative* culpability for Plaintiffs' non-economic damages. Mot. 23. Indeed, Plaintiffs' case and GE's defense requires an assessment of, among other things, the Navy's actions in placing ships off Japan's coast, the subsequent movements of those ships, the roles individual Plaintiffs played on the Navy's ships, and the measures the Navy took to detect and monitor radiation. *Id*. at 24. Because GE's political-question arguments were not previously made—and thus not determined—in this case, the law of the case doctrine does not apply. Plaintiffs offer no substantive response.

## V. IF CALIFORNIA LAW APPLIES, MOST OF PLAINTIFFS' CLAIMS AGAINST GE ARE TIME-BARRED

California's two-year statute of limitations bars Plaintiffs' claims (except the wrongful death claims). Notwithstanding Plaintiffs' rhetoric, the Third Amended Complaint alleges no injury other than exposure on March 11 or 12, 2011. Because Plaintiffs sued GE more than two years after that time, each Plaintiff must individually allege facts establishing delayed discovery. Thus, each Plaintiff must "specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 920-21 (Cal. 2005). The TAC does not plead *any* facts that satisfy this standard, and so this Court must dismiss. Further, Plaintiffs' own pleadings prove that they could not replead delayed discovery. Mot. 25-31. To the contrary, Plaintiffs concede that they could have discovered their claims against GE if they had conducted "the relevant and requisite research." Opp. 22-23.

### A. Plaintiffs' Claims Accrued in March 2011 and They Cannot Rely on Delayed Discovery

Plaintiffs do not dispute that they all allege exposure to radiation on March 11 or 12, 2011. Mot. 25; *see* TAC ¶¶ 262, 271 ("Based on PLAINTIFF'S repeated exposure to ionizing radiation, PLAINTIFFS have a reasonable fear that said exposure more likely than not increased their risk of developing cancer in the future."); *see also id.* ¶ 252. Plaintiffs sued GE in December 2014, after the two-year limitations period expired, and rely on delayed discovery to save their claims. TAC ¶ 84. "A plaintiff who doesn't allege that he was injured within the limitations period and instead invokes the discovery rule concedes by implication that, without the discovery rule, his claims are barred." *Navarrette v. Armite Labs., Inc.*, No. PC033370, 2009 WL 1040304, at *6 (Cal. Ct. App. Apr. 20, 2009) (internal quotation marks and brackets omitted).

Plaintiffs now contend that personal injury claims accrue "on the date that a Plaintiff is diagnosed with an allegedly resulting illness," Opp. 19 (citing *O'Connor v. Boeing N. Am., Inc.*, 92 F.Supp.2d 1026, 1038 (C.D. Cal. 2000)), and that, "throughout the time period between" April 1, 2013 and November 18, 2014, "Plaintiffs' illnesses … have developed and expressed themselves," Opp. 21, triggering the statute of limitations. But the TAC does not specifically identify any Plaintiff as having sustained any injury beyond the initial alleged exposure (on March 11 or 12, 2011), much less one diagnosed between April 2013 and November 2014. Mot. 25. Counsel's arguments in an opposition are no substitute for proper pleading. Moreover, it is implausible that each Plaintiff is suing for an injury beyond exposure when no such allegation was made in a *third* amended complaint filed just four months ago. It is even more implausible that each and every Plaintiff was diagnosed with such an injury between April 1, 2013 and November 18, 2014.

Lead plaintiff Lindsey R. Cooper, for example, filed suit against TEPCO on December 12, 2012, alleging that she had suffered injury as a consequence of exposure to radiation from Fukushima. Complaint ¶¶ 2, 143-146, ECF No. 1. Yet she

now alleges that, as of November 18, 2014, she (and every other Plaintiff) had "only recently, within all the relevant statutes of limitations periods, discovered the facts pertaining to the nature and extent of [her] injuries." TAC ¶¶ 3, 84. Cooper, however, previously alleged that she had only "recently" discovered *the same injury* in June 2013, and again in February 2014. SAC ¶¶ 3, 83; FAC ¶¶ 2, 28. Cooper cannot plausibly claim that she discovered the same injury four times over two years.

To describe these allegations is to illustrate why plaintiffs must allege their injury, and the "time and manner" of their delayed discovery, with specificity. If some Plaintiffs are relying on an injury or diagnosis that manifested after exposure, they must *individually* allege, in the complaint, what that injury is. In *O'Connor*, each plaintiff identified a specific "serious illness" with which he or she had been diagnosed. 92 F. Supp. 2d. at 1030 & n.5; *see also Bockrath v. Aldrich Chem. Co., Inc.*, 21 Cal. 4th 71, 80 (1999) (toxic tort plaintiffs must allege "specific illness"). And as Plaintiffs do not dispute, the Constitution requires Plaintiffs individually to identify their injury with particularity. Mot. 25 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 & n.1 (1992)). None do here beyond exposure, and so no Plaintiff can contend that their injury accrued after March 2011.[7]

Plaintiffs contend that the TAC "sufficiently apprised [GE]" of their discovery rule argument by alleging that "'Plaintiffs have only recently … discovered the facts pertaining to the nature and extent of their injuries.'" Opp. 19 (quoting 4/1/2013 Complaint, No. 13-cv-0773, ECF No. 1).[8] But the question is not whether GE is on "notice" of Plaintiffs' intention to rely on the discovery rule, but rather whether

---

[7] GE does not concede that a post-exposure diagnosis would trigger a new limitations period. Discovery of a latent injury triggers a new limitations period only if it is unrelated to a prior injury about which plaintiffs knew. *Carroll v. Bristol Park Med. Grp., Inc*., No. G046113, 2012 WL 5328740, at *7 (Cal. Ct. App. Oct. 29, 2012). Any injury from exposure in this case would have accrued at the time of exposure.

[8] This complaint was filed in a separate action that was dismissed, but Plaintiffs have made identical allegations in this lawsuit. FAC ¶ 28; SAC ¶ 83; TAC ¶ 84.

1   Plaintiffs' delayed discovery allegations satisfy California's requirements. They do

2   not: no individual Plaintiff "identifies the facts that he or she claims put him or her on

3   notice," and "when" he or she learned those facts. *O'Connor v. Boeing N. Am., Inc.*,

4   311 F.3d 1139, 1157 (9th Cir. 2002); *see* Mot. 26-27 (citing additional cases).

5   Plaintiffs' opposition entirely ignores this rule, which mandates dismissal.

6          Plaintiffs' affirmative allegations and concessions independently require

7   dismissal with prejudice, because they demonstrate that Plaintiffs cannot establish

8   delayed discovery. Plaintiffs do not dispute that they suspected wrongdoing at the

9   latest by March 14, 2011, when the Navy announced that it was moving its ships in

10  response to the release of radiation from Fukushima. Mot. 27; *see* Opp. 22. Instead,

11  Plaintiffs contend that they were unaware of *GE*'s role at Fukushima until TEPCO

12  moved to dismiss the SAC. Opp. 22. First, Plaintiffs' assertion is demonstrably false:

13  as GE observed in its prior motion, the SAC itself makes express allegations about

14  GE's negligence. Mot. 27 (quoting SAC ¶ 127). Plaintiffs ignore this point.

15         Second, it is legally irrelevant whether Plaintiffs knew about GE. "The

16  discovery rule . . . allows accrual of the cause of action even if the plaintiff does not

17  have reason to suspect the defendant's identity." Mot. 28 (quoting *Fox*, 110 P.3d at

18  920). Plaintiffs do not respond or attempt to distinguish this unambiguous precedent.

19         Third, Plaintiffs do not deny that they *could* have discovered GE's identity

20  upon "diligent investigation." *Fox*, 110 P.3d at 921. Rather, Plaintiffs admit that they

21  "shifted the theory of their case" following TEPCO's motion to dismiss the SAC, and

22  at that point readily discovered GE's involvement "[u]pon conducting the relevant

23  and requisite research." Opp. 22-23.[9] As noted, Plaintiffs clearly knew about GE's

24  role even before then. But even if this most recent assertion were true, the fact that

---

[9] Plaintiffs cannot plausibly suggest that they were excused from naming GE in their initial complaint against TEPCO because it focused on misrepresentation rather than the operation of the reactors. Opp. 22. In fact, the initial December 2012 complaint asserted design and manufacturing claims against TEPCO. ¶¶ 120-129, 141-43.

Plaintiffs chose not to investigate until years after learning of their claims does not justify casting aside the statute of limitations. Quite the contrary: Plaintiffs' admission precludes application of the discovery rule. *Fox*, 110 P.3d at 921.

Finally, Plaintiffs argue that GE "has not met its burden" of disproving delayed discovery because media reports unknown to a plaintiff do not establish inquiry notice. Opp. 23.[10] Plaintiffs, however, must allege facts establishing delayed discovery. *Fox*, 110 P.3d at 920-21. But they do not. In any event, Plaintiffs miss the point. Plaintiffs concede they were on notice of suspected wrongdoing in March 2011, Opp. 22, and they certainly knew of their alleged exposure to radiation, which is the injury that forms the basis of the TAC. The media reports confirm that Plaintiffs could have discovered their claims against GE if they had exercised reasonable diligence once they were on notice. In any event, Plaintiffs cited the media reports describing GE's involvement in Fukushima *in earlier versions of their complaints*, including in their initial complaint. Mot. 28-30 & nn. 13-15. GE thus does not rely on the media reports solely to show that its role in the design of these reactors was easily discoverable, but also to establish that documents *attached to the complaint* conclusively establish Plaintiffs' *actual knowledge* regarding GE.

In sum, Plaintiffs have failed to allege with the constitutionally requisite particularity any injury beyond exposure, an injury they concede occurred well over two years before they sued GE. Mot. 25. Plaintiffs have likewise failed to allege delayed discovery in the individualized and particularized manner required by

---

[10] Plaintiffs cite inapposite cases involving persons who alleged they were unaware they suffered an injury, unaware of any wrongdoing by anyone, and unaware of the news reports. Plaintiffs make no such allegations. Moreover, the cases Plaintiffs cite confirm the inadequacy of their pleading. *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1134, 1143 (C.D. Cal. 2010) (class claim did not "plead the time and *manner* of discovery") (internal quotation marks omitted); *Nelson v. Indevus Pharmaceuticals, Inc.,* 142 Cal. App. 4th 1202, 1208 (Cal. Ct. App. 2006) (plaintiffs must "conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation" (quoting *Fox*, 110 P.3d at 920)).

California law, and their existing allegations demonstrate that they could not allege delayed discovery even if they were given leave to replead.

### B. California's "Doe" Pleading Rule Does Not Apply Here

Plaintiffs concede that, under Cal. Code Civ. Proc. § 474, their complaint naming GE relates back only to "the first complaint naming John Doe Defendants." Opp. 27; *see* Mot. 30-31. The TAC therefore does not relate back to the December 2012 Complaint, which was the only complaint filed within two years of the Fukushima incident. Mot. 30-31. Accordingly, and as Plaintiffs concede, they can only rely on the Doe rule if they have first properly pleaded delayed discovery. Opp. 24 (Plaintiffs agreeing that their "'John Doe' Averments" permit their claim against GE only "in Tandem with California's Discovery Rule"). Plaintiffs' failure to properly plead delayed discovery therefore precludes application of the Doe rule.

Plaintiffs also cannot rely on the Doe rule because they were not "genuinely ignorant" of GE's identity when they filed their complaint naming Doe defendants. Mot. 31 (citing cases). The December 2012 complaint quotes at length from an article that describes GE's alleged role in the accident, as does the June 2013 FAC naming Doe defendants for the first time. *Id*.[11] Plaintiffs do not explain how they could have been ignorant of GE's identity in 2013 when they had read an article in 2012 (or earlier) describing GE's involvement. Plaintiffs contend that GE must show "specific prejudice" from their failure to comply with the Doe rule's requirements, Opp. 27, but that is not true. Because Plaintiffs had actual knowledge of GE's identity at the time they made their Doe allegations, they cannot rely on the Doe rule "even if the new defendant cannot establish prejudice resulting from the delay." *Woo v. Superior Court*, 75 Cal. App. 4th 169, 177 (Cal. Ct. App. 1999) (citing cases).

---

[11] Plaintiffs contend that they first named Doe defendants in April 2013. Opp. 27. But the complaint to which they refer was in a different action and was voluntarily dismissed. No. 13-cv-773, ECF Nos. 1, 19. The first complaint with Doe defendants in this case was the June 2013 FAC. Besides, the December 2012 complaint demonstrates that Plaintiffs were aware of GE's identity in April 2013 too.

# VI.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST GE

## A.   Plaintiffs' Improper Group Pleading Warrants Dismissal

Plaintiffs concede that "undifferentiated pleading" that "lumps together" multiple defendants is "improper." Opp. 28. They also do not dispute that the TAC refers specifically to GE in only a handful of instances, and otherwise refers generically to all Defendants or to the "GE Defendants." Mot. 32-33.

Plaintiffs instead argue that they "carefully differentiated their claims between Tepco and 'GE Defendants' who were responsible for designing, repairing and renovating the Dai-chi reactors." Opp. 28. This is simply untrue, as paragraph after paragraph of the TAC makes clear.[12]

Even if the TAC had differentiated between TEPCO and the GE Defendants, Plaintiffs' group pleading as to those *four* separate and independent companies—GE, EBASCO, Toshiba, and Hitachi (TAC ¶ 107)—alone is improper and does not provide the notice required by Rule 8(a). *See, e.g.*, TAC ¶¶ 155, 159–63, 174.

## B.   Plaintiffs' Claims Fail for Additional Reasons

### 1.   Strict Liability for Manufacturing Defect (Count 2)

Plaintiffs cannot state a manufacturing defect claim absent an allegation "that the manufacturing process had in some way deviated from an otherwise suitable design." Opp. 29. As GE explained (Mot. 34), "[t]he 'manufacturing defect' theory posits that 'a suitable design is in place, but that the manufacturing process has in some way deviated from that design.'" *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices and Prods. Liab. Litig.*, 754 F. Supp. 2d 1208, 1222 (C.D. Cal. 2010) (quoting *In re Coordinated Latex Glove Litig.*, 99 Cal.App.4th

---

[12] *See* TAC ¶ 99 ("Defendants, and each of them, … operated the FNPP"); *id.* ¶ 100 ("Defendants, and each of them, … engineered, constructed, maintained, operated, managed, and controlled the FNPP"); *id.* ¶¶ 104–05 (similar); *id.* ¶ 133 ("TEPCO and each of the GE Defendants negligently failed nuclear power plant operation LESSON NO. 1"); *id.* ¶¶ 135, 138–39 (similar); *id.* ¶ 136 ("TEPCO and each of the GE Defendants negligently designed, maintained, managed, and prepared the reactor buildings"); *id.* ¶ 141 ("TEPCO, GE, EBASCO, HITACHI AND TOSHIBA have all been involved in maintenance and servicing of the nuclear power plant"); *id.* ¶¶ 142–43, 150, 154, 157–58, 161–63, 191.

595, 613 (Cal. Ct. App. 2002)). "If a product meets the design specifications applicable at the time of manufacture, there is no manufacturing defect." *Carson v. Depuy Spine, Inc.,* 365 F. App'x 812, 814 (9th Cir. 2010). Thus, Plaintiffs must "*identify/explain how* the product either deviated from the defendant's intended result/design or *how* the product deviated from other seemingly identical product models." *Toyota*, 754 F. Supp. 2d at 1222 (internal quotation marks omitted).

The case and jury instruction cited by Plaintiffs are not to the contrary; they recognize that plaintiffs must establish a "defect" or "manufacturing defect" (Opp. 29), meaning that the product "differs from the manufacturer's intended result or from other ostensibly identical units of the same product." *Barker v. Lull Eng'g Co.*, 573 P.2d 443, 454 (Cal. 1978). Plaintiffs' flawed theory erases the distinction between manufacturing and design defect claims. Plaintiffs also err in relying on allegations that concern exclusively *design* issues, ignoring the fundamental need to allege that the *manufacturing* process deviated from the FNPP's design. Opp. 30–31.

### 2.    Strict Liability for Design Defect (Count 3)

This Court dismissed Plaintiffs' design defect claim against TEPCO because the "FNPP was evidently not a product 'placed on the market.'" 10/28/14 Order at 16. The TAC does nothing to cure this defect. Nor could it; the Court previously held that "Plaintiffs cannot cure the defects in this claim by alleging facts consistent with their pleading." *Id.*; Mot. 35 (quoting same). Plaintiffs' opposition does not argue otherwise. The design defect claim must be dismissed for this reason alone.

Further, Plaintiffs ignore GE's argument that the TAC fails to allege the second element of this claim: the defendant's "knowledge that [the product] will be used without inspection for defect." 10/28/14 Order at 15; Mot. 35 (quoting same). The TAC in fact alleges that the FNPP *was* inspected by its sole user, TEPCO. *See* Mot. 35. The design defect claim must be dismissed for this reason as well.

Plaintiffs also concede, as they must, that the "consumer expectations test"—to which Plaintiffs "alluded in their complaint"—is "clearly unavailing, as nuclear

1  reactors are obviously not a product within the common experience of ordinary
2  consumers." Opp. 33 (internal quotation marks omitted). Plaintiffs rely exclusively
3  on the "risk-benefit test," *id.*, but the TAC nowhere alleges that "the risks of the
4  design outweigh the benefits," as required to satisfy the test. *Toyota*, 754 F. Supp. 2d
5  at 1220 ("To meet the strictures of *Twombly* and *Iqbal*, Plaintiffs should identify
6  which design defect theory is being utilized and allege facts to support that theory.").
7  Plaintiffs' design defect claim should be dismissed for these additional reasons.

8  ### 3.   Strict Liability for Ultrahazardous Activities (Count 4)

9  Plaintiffs do not dispute that the design or manufacture of a product—as
10  opposed to the product's use—is not itself ultrahazardous. Mot. 37. And Plaintiffs
11  disavow any allegation that GE operated the FNPP, arguing instead that the TAC
12  "distinguish[es] between operator negligence, i.e., TEPCO and designer, installer
13  negligence, GE, Ebasco, Hitachi." Opp. 28. Plaintiffs point to their vague allegation
14  that "TEPCO, GE, EBASCO, Hitachi and Toshiba have all been involved in
15  maintenance and servicing of the nuclear power plant during the decades." TAC
16  ¶ 141 (cited at Opp. 36). But the TAC asserts that the relevant "ultrahazardous
17  activity" is "producing nuclear power"—not any "maintenance" or "servicing." *Id.* ¶
18  253. Plaintiffs thus admit that the TAC does not allege that GE undertook the
19  purported ultrahazardous activity. This concession alone warrants dismissal.

20  Even if GE had produced nuclear power (and it did not), the claim would fail
21  because this activity is not ultrahazardous. Plaintiffs ignore multiple California
22  federal and state court decisions holding that "[u]nder California law, the activities of
23  power plants are not classified as ultrahazardous for purposes of the strict liability
24  doctrine," because California law limits the doctrine exclusively to activities that "are
25  neither commonplace nor customary." *United States v. S. Cal. Edison Co.*, 300 F.
26  Supp. 2d 964, 991 (E.D. Cal. 2004); Mot. 37 (quoting same). And Plaintiffs do not
27  dispute the generation of nuclear power is pervasive in the U.S. and Japan. Mot. 38.
28  Plaintiffs cite a Restatement provision and mostly out-of-circuit cases indicating that

"the handling and manipulating of highly radioactive materials" is hazardous. Opp. 36. But Plaintiffs do not allege that GE handled radioactive material.[13] Moreover, *none* of those cases applied California law (and some involved nuclear *weapons*, not nuclear power). The one California case cited by Plaintiffs did not involve a strict liability claim for ultrahazardous activities at all, and applied New Mexico—not California—law. *Bramer v. United States*, 412 F. Supp. 569, 572 (C.D. Cal. 1976) (cited at Opp. 36). Because the generation of nuclear power is commonplace, Plaintiffs' ultrahazardous activities claim fails as a matter of California law.

### 4. Res Ipsa Loquitur (Count 5) and Negligence Per Se (Count 6)

Res ipsa loquitur and negligence per se are not claims at all, but rather evidentiary doctrines. Mot. 38. Plaintiffs' opposition does not contend otherwise. Counts 5 and 6 accordingly should be dismissed.

Furthermore, the TAC does not allege that GE had "exclusive control" of the FNPP at the time of the incident, as res ipsa loquitur requires. *Gickling v. Kimberlin*, 170 Cal.App.3d 73, 75 (Cal. Ct. App. 1985); Mot. 38–39 (quoting same). Plaintiffs assert only that "both [TEPCO and GE] can readily be deemed to have had 'exclusive control' over the reactors." Opp. 39. The TAC alleges that *all* Defendants "controlled" the plant at the time of the incident. TAC ¶ 258. This undifferentiated pleading is insufficient to establish that GE controlled the plant and undermines the notion that GE had *exclusive* control. The cases cited by Plaintiffs (Opp. 39) do not support their position. In *Stoddard v. Ling-Temco-Voight, Inc.*, 513 F. Supp. 314 (C.D. Cal. 1980), the court held that plaintiffs need not allege exclusive control if multiple defendants shared "joint responsibility for the safe *operation* of [the product at issue]." *Id.* at 321 (emphasis added). The TAC does not plausibly allege that GE

---

[13] Plaintiffs never allege that GE engaged in the activities at issue in the cited cases— *e.g.*, "handling and processing of radioactive materials," "operation of a nuclear reactor," "handling and testing of nuclear wastes," "generation, use, storage and disposal of plutonium [in] … nuclear weapons production," "fabricating nuclear fuel," or "production of uranium." Opp. 36-37.

operated the plant. And in *Newing v. Cheatham*, 540 P.2d 33 (Cal. 1975), the California Supreme Court found that the sole defendant had exclusive control of an airplane that crashed, because he was "the owner of the aircraft" and "at the controls when the plane took off on its final flight." *Id.* at 41. Plaintiffs do not and cannot allege that GE owned the plant or operated the plant at the time of the accident.

Plaintiffs also did not allege facts that could establish GE violated a statute, as required to trigger the negligence per se doctrine. Count 6 (negligence per se) alleged only the GE had violated the 1972 Convention on the Prevention of Marine Pollution. TAC ¶¶ 263-71. In response to GE's showing that the Convention does not apply, Mot. 39, Plaintiffs assert for the first time that GE violated regulations of the U.S. Nuclear Regulatory Commission. Opp. 38. But Plaintiffs acknowledge that these regulations relate exclusively to "the licensing of domestic nuclear power plants," and therefore have no application to GE's work on the FNPP in Japan. Plaintiffs cannot rely on inapplicable U.S. regulations to invoke a presumption of negligence per se.

### 5.   Wrongful Death, Survival, and Loss of Consortium (Counts 7, 8, and 11)

Plaintiffs concede that their wrongful death, survival, and loss of consortium claims suffer from "oversights" and "omissions." Opp. 39. Plaintiffs assert that these errors are "de minimis" and "can easily be remedied." *Id.* But Courts routinely dismiss claims based on these same errors. Mot. 40. Anyway, Plaintiffs filed this case more than two years ago and already are on their *third* amended complaint. If Plaintiffs could remedy these errors, they should have sought leave to file yet another amended complaint. Having failed to do so, the Court should dismiss the claims.

### CONCLUSION

For the reasons set forth above and in GE's opening memorandum, the Court should dismiss the TAC with prejudice under Rule 12(b)(1), the political question doctrine, or Rule 12(b)(6), or the Court should dismiss the TAC without prejudice to refiling in Japan under the doctrines of international comity or *forum non conveniens*.

1

Dated:  March 13, 2015

Respectfully submitted,

2

3

ARNOLD & PORTER LLP

4

*/s/ Maurice A. Leiter*

Maurice A. Leiter

5

777 South Figueroa St.

6

Forty-Fourth Floor

Los Angeles, CA 90017-5844

7

(213) 243-4000

8

9

Michael D. Schissel

399 Park Avenue

10

New York, NY 10022-4690

(212) 715-1000

11

12

David J. Weiner

555 Twelfth Street, NW

13

Washington, DC 20004-1206

14

(202) 942-5000

15

*Counsel for General Electric Company*

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I, Maurice A. Leiter, am an attorney at Arnold & Porter LLP, counsel of record for Defendant General Electric Company in this action. I certify that on March 13, 2015, I caused the attached document to be served via this Court's Electronic Filing System on Paul C. Garner, Charles A. Bonner, and A. Cabral Bonner, counsel for Plaintiffs, and on Daniel P. Collins, Gregory P. Stone, and John B. Owens, counsel for defendant Tokyo Electric Power Company Inc. Each is a registered user of that system. See Local Civil Rule 5.4.

DATED: March 13, 2015

By:   */s/ Maurice A. Leiter*
Maurice A. Leiter