1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| LINDSAY R. COOPER, et al., | CASE NO. 12-CV-3032 JLS (WMC) |
| Plaintiffs, | **AMENDED ORDER AFTER RECONSIDERATION: (1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS, (2) DENYING DEFENDANT'S MOTION TO DISMISS UNDER *FORUM NON CONVENIENS* AND INTERNATIONAL COMITY, AND (3) GRANTING MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL** |
| vs. | |
| TOKYO ELECTRIC POWER COMPANY, INC., | |
| Defendant. | (ECF Nos. 69 & 73) |

Presently before the Court is Defendant Tokyo Electric Power Company, Inc.'s ("TEPCO") Motion for Reconsideration or, Alternatively, for Certification of Interlocutory Appeal Under 28 U.S.C. §1292(b). (Mot. Reconsideration, ECF No. 73.) TEPCO asks the Court to reconsider its prior Order granting in part and denying in part TEPCO's Motion to Dismiss Second Amended Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim or, in the Alternative, to Dismiss under the Doctrines of *Forum Non Conveniens* and International Comity. (*See* SAC Order, ECF No. 69 (granting in part and denying in part TEPCO's Mot. to Dismiss, ECF No. 55.))

12cv3032

1   Having carefully considered the Parties' arguments and the law, the Court (1)
2   **GRANTS** TEPCO's Motion for Reconsideration, (2) **MAINTAINS** its prior rulings,
3   and (3) **CERTIFIES** this case for interlocutory appeal.  This Order **AMENDS** and
4   **SUPERSEDES** the Court's prior Order docketed as ECF No. 69.

5                   **FACTUAL AND PROCEDURAL BACKGROUND**

6       This Order incorporates by reference the factual and procedural background set
7   forth in the Court's Nov. 26, 2013 Order dismissing Plaintiffs' First Amended
8   Complaint ("FAC") without prejudice.  (FAC Order, Nov. 26, 2013, ECF No. 46.)  This
9   section presents a brief summary of the most relevant facts in order to provide context
10  for the issues discussed below.

11      Plaintiffs are members of the U.S. military who allege that they were injured by
12  radiation exposure when they were deployed near the Fukushima-Daichi Nuclear
13  Power Plant ("FNPP") in Japan in the aftermath of the disastrous earthquake and
14  tsunami that struck that country on March 11, 2011.  On December 21, 2012 Plaintiffs
15  initiated this action against TEPCO, which owns and operates the FNPP, and
16  subsequently filed the FAC on June 4, 2013.

17  **1.      First Amended Complaint**

18      Plaintiffs' FAC alleged that TEPCO "conspired and acted in concert with the
19  Japanese Government . . . to create an illusory impression that the extent of the
20  radiation that had leaked from the site of the FNPP was at levels that would not pose
21  a threat" to human health and safety, and that TEPCO "failed to alert public officials,
22  including the U.S. Navy, the Plaintiffs, and the general public, to the danger of coming
23  too close to the FNPP."  (*See* FAC ¶¶ 70, 109, ECF No. 21.)

24      On November 26, 2013, the Court granted TEPCO's motion to dismiss the FAC,
25  concluding that subject matter jurisdiction was lacking because Plaintiffs' claims were
26  non-justiciable under the political question doctrine.  (FAC Order 9, Nov. 26, 2013,
27  ECF No. 46.)  The Court determined that adjudicating Plaintiffs' claims would require
28  impermissible scrutiny of the U.S. military's discretionary judgments regarding

deployment of personnel and would also require evaluation of the Japanese Government's communications with the U.S. Government regarding the FNPP. (*Id.* at 7–9.) The Court dismissed Plaintiffs' claims with leave to amend and declined to address TEPCO's arguments for dismissal on the merits or its arguments urging dismissal on the basis of *forum non conveniens* and international comity.

## 2. Second Amended Complaint

On February 5, 2014, Plaintiffs filed the Second Amended Complaint ("SAC"), omitting claims grounded in TEPCO's purported fraud and misrepresentation, and instead relying on allegations that TEPCO was negligent in the siting, design, construction, and operation of the FNPP. Plaintiffs maintain, *inter alia*, that TEPCO failed to adhere to basic safety requirements in designing and operating the FNPP, failed to take adequate measures to prevent and minimize nuclear accidents, and failed to develop a suitable evacuation plan in case of emergency. (SAC ¶ 109, ECF No. 50.) Plaintiffs further allege that TEPCO ignored warnings that the FNPP was at risk of significant damage from a tsunami, failed to make necessary repairs to the plant's cooling system, and failed to carry out timely inspections of other critical equipment. (*Id.* at ¶¶ 114, 118–19.) Plaintiffs contended that because they no longer relied on TEPCO's affirmative representations and fraud, the Court was not required to analyze any decision made by the Executive Branch of the U.S. Government, thereby avoiding the justiciability issue.

TEPCO moved to dismiss once again, arguing that Plaintiffs' revised claims did not remedy the deficiencies previously identified by the Court. (Mot. to Dismiss 1, ECF No. 55.) TEPCO filed the operative Motion to Dismiss Second Amended Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim or, in the Alternative, to Dismiss under the Doctrines of *Forum Non Conveniens* and International Comity. (Mot. to Dismiss, ECF No. 55.) In addition, Plaintiff filed a Response in Opposition (Plaintiff's Resp. in Opp'n, ECF No. 59.) and TEPCO filed a Reply in Support (Reply ISO Mot. to Dismiss, ECF No. 62.) of the Motion to Dismiss.

According to TEPCO, the new theory of liability elaborated in Plaintiffs' SAC remained inadequate because it still relied on an account of causation of injury that implicated the deployment decisions of the U.S. Navy and high-level communications between the Japanese and U.S. Governments, thereby raising the same issues of justiciability that warranted dismissal of the original pleading. (*Id.*)  In addition, TEPCO emphasized that Plaintiffs' claims failed on the merits and that this suit should be dismissed on the grounds of *forum non conveniens* and international comity to allow for litigation to proceed in Japan. (*Id.* at 4–6.)

Additionally Plaintiffs filed a Motion to Amend Second Amended Complaint to Add Doe Defendants and Doe Plaintiffs. (Mot. to File Am. Compl., ECF No. 65.) The Court considered TEPCO's Response in Opposition, (TEPCO's Resp. in Opp'n, ECF No. 67.), and Plaintiffs' Reply in Support (Reply ISO Mot. to File Am. Compl., ECF No. 68.) of the Motion to Amend.

After oral argument the Court took both matters under submission and on October 28, 2014, the Court issued its Order granting in part and denying in part TEPCO's motion. (Order, ECF No. 69.)  The Court granted TEPCO's motion to dismiss Plaintiff's strict liability and design defect claims as well as Plaintiff's claims on behalf of Doe plaintiffs. (*Id.*)  The Court denied TEPCO's motion to dismiss for lack of subject matter jurisdiction. (*Id.*)   In so deciding, the Court reasoned that Plaintiffs' amended theory of causation did not implicate any of the *Baker* factors and that the military judgment in this instance is not the kind that warranted application of the political question doctrine. (*Id.* at 9.)  Further, the Court found that Plaintiff adequately alleged proximate causation as against TEPCO. (*Id.* at 12.)  The Court determined that the Firefighter's Rule was not a bar to recovery because it does not apply to independent acts of misconduct which were not the cause of a plaintiff's presence at the scene. (*Id.* at 13.)  Lastly, the Court denied TEPCO's motions to dismiss under the doctrines of *forum non conveniens* and international comity. (*Id.*)

12cv3032

**3.     Motion for Reconsideration, or Alternatively, for Certification**

Subsequently, TEPCO filed a Motion for Reconsideration or, Alternatively, for Certification of Interlocutory Appeal Under 28 U.S.C. §1292(b).  (Mot. Reconsideration, ECF No. 73.)  Plaintiff filed a Response in Opposition to (Opp'n Reconsideration, ECF No. 84) and TEPCO filed a Reply in Support of (Reply Reconsideration, ECF No. 90) the Motion.  TEPCO premises its Motion for Reconsideration on the grounds of (1) an intervening change in controlling law in International Comity analysis and (2) clear error with respect to the Court's Causation and Firefighter's Rule analysis.  (Mot. Reconsideration 1–3, ECF No. 73-1.)

TEPCO requests that if the Court does not reconsider its Order and dismiss the case, then the Court should certify the Order (or an Amended Order) for interlocutory appeal.  The Court heard oral argument regarding the motion on March12, 2015.

# I.  RECONSIDERATION

**1.     Legal Standard**

In the Southern District of California, a party may apply for reconsideration "[w]henever any motion or any application or petition for any order or other relief has been made to any judge and has been refused in whole or in part."  Civ. L. R. 7.1(i)(1).  The moving party must provide an affidavit setting forth, *inter alia*, new or different facts which previously did not exist.  *Id.*

Generally, reconsideration of a prior order is "appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law."  *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (citation omitted).  Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources."  *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted).  Ultimately, whether to grant or deny a motion for reconsideration is in the sound discretion of the district

court.  *Navajo Nation v. Norris*, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing *Kona Enters.*, 229 F.3d at 883).  A party may not raise new arguments or present new evidence if it could have reasonably raised them earlier.  *Kona Enters.*, 229 F.3d at 890 (citing *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)).

**2.     Analysis**

TEPCO premises its Motion for Reconsideration on the grounds of (1) an intervening change in controlling law and (2) clear error.  (Mot. Reconsideration 1–3, ECF No. 73-1.)  The Court addresses each basis in turn.

*A.     Intervening Change in Controlling Law*

TEPCO alleges that an intervening change in controlling law justifies its Motion for Reconsideration.  (*Id.* at 9.)  Specifically, TEPCO argues that the Ninth Circuit's decision in *Mujica v. AirScan, Inc.*, 771 F.3d 580 (9th Cir. 2014)—handed down two weeks after this Court's Order—substantially alters the legal standard governing international comity.  (*Id.*)  In its Order denying dismissal based on international comity, the Court relied on the three-part *Ungaro-Benages* test, analyzing: (1) the strength of the U.S.'s interests in using a foreign forum, (2) the strength of the foreign government's interests, (3) and the adequacy of the foreign forum.  *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1232 (11th Cir. 2004).

TEPCO argues that reconsideration is warranted in light of the Ninth Circuit's substantial revision and elaboration of the factors to be considered in evaluating the first two elements of the *Ungaro-Benages* framework.[1]  (Mot. Reconsideration 10, ECF No. 73-1.)  TEPCO notes that while the court in *Mujica* endorsed *Ungaro-Benages*' framework as a useful starting point, it held that the framework lacked substantive standards for assessing its three factors and did not provide sufficient guidance to

---

[1] With respect to the third element—adequacy of the foreign forum—the *Mujica* court held that the focus should be on procedural fairness in the forum and whether the opponent has presented specific evidence of significant inadequacy.  *Id.* at 607–08.  TEPCO states that *Mujica* did not change the standards governing the adequacy of the foreign forum, and in any case, the Court found Japan to be an adequate alternative forum.

district courts. (*Id.* at 5.)  The *Mujica* court articulated a five-factor test that may be applied in assessing the interests of the respective countries[2] and TEPCO contends that the Court should consider this guidance now.  (*Id.*)  With respect to both the U.S. and foreign country's interests, the Ninth Circuit held that courts should consider the nonexclusive factors including:

> (1) the location of the conduct in question, (2) the nationality of the parties, (3) the character of the conduct in question, (4) the foreign policy interests of the United States, and (5) any public policy interests.

*Mujica*, 771 F.3d at 604, 607.  Under a renewed analysis using *Mujica*'s five factors, TEPCO contends that the case should be dismissed.  Plaintiff responds that although *Mujica* clarified how a district court should evaluate a comity claim, it left unchanged the primary factors a court should use in deciding the claim.  (Opp'n 8, ECF No. 84.)

The Court **AGREES** with TEPCO that *Mujica*'s holding is relevant in this case, and a renewed analysis in light of the opinion is warranted.  Accordingly, the Court **AMENDS** its Order below to incorporate the *Mujica* factors.  (*See infra* pp. 39–49.)

## B.    *Clear Error*

TEPCO contends that reconsideration is warranted due to clear error in the Court's Order regarding its (1) superseding cause analysis and (2) application of the Firefighter's Rule.  (Mot. for Reconsideration 17, ECF No. 73-1.)

The Court **AGREES** with TEPCO that in light of its allegations of clear error, a renewed analysis of the Order is warranted.  Accordingly, the Court **AMENDS** its Order to incorporate the Parties' supplemental arguments and to clarify its ruling.  (*See infra* pp. 8–24.)

## C.    *Conclusion*

Accordingly, the Court **AMENDS** the following sections, taking into account the parties subsequent briefing on reconsideration: Subject Matter Jurisdiction, Proximate Causation, Firefighter's Rule, and International Comity.

---

[2] The *Mujica* court held that the "proper analysis of foreign interests essentially mirrors the consideration of U.S. interests."  771 F.3d at 607.

## II.  TEPCO'S MOTION TO DISMISS PLAINTIFFS' SAC FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM OR, IN THE ALTERNATIVE, TO DISMISS UNDER THE DOCTRINES OF FORUM NON CONVENIENS AND INTERNATIONAL COMITY

### SUBJECT MATTER JURISDICTION

TEPCO moves to dismiss Plaintiffs' SAC for lack of subject matter jurisdiction, arguing that the SAC raises nonjusticiable political questions.

### 1.  Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject matter jurisdiction.  Federal district courts are courts of limited jurisdiction that "may not grant relief absent a constitutional or valid statutory grant of jurisdiction" and are "presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *A–Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003) (internal quotations omitted).

"[D]isputes involving political questions lie outside of the Article III jurisdiction of federal courts." *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 980 (9th Cir. 2007).  The political question doctrine forecloses judicial review of controversies which revolve around policy choices constitutionally committed to Congress or the Executive branch. *Japan Whaling Ass'n v. Am. Cetacean Soc.*, 478 U.S. 221, 230 (1986).   Like other doctrines of justiciability, such as standing, mootness, and ripeness, the political question doctrine is grounded in respect for the Constitution's separation of powers. *See Baker v. Carr*, 369 U.S. 186, 210 (1962) ("The nonjusticiability of a political question is primarily a function of the separation of powers.").  A case should be dismissed on political question grounds if one of the following characteristics is present:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; [2] a lack of judicially discoverable and manageable standards for resolving it; [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches

of government; [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id.*

Determining whether a case involves a nonjusticiable political question requires a "discriminating inquiry into the precise facts and posture of the particular case." *Id.* at 217. Courts must analyze "the particular question posed, in terms of the history of its management by the political branches, of its susceptibility to judicial handling in light of its nature and posture in the specific case, and of the possible consequences of judicial action." *Id.* at 211–12. While many cases involving foreign relations or the military invoke the political question doctrine, "it is error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance." *Id.* at 211. Courts must determine, in light of the Baker factors, "whether the military judgment is the kind that warrants application of the political question doctrine." *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1358 (11th Cir. 2007). The court "must analyze [a plaintiff's] claim as it would be tried, to determine whether a political question will emerge." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1281 (11th Cir. 2009) (citing *Occidental of Umm al Qaywayn, Inc. v. A. Certain Cargo of Petroleum*, 577 F.2d 1196 (5th Cir. 1978)).

**2.     Analysis**

TEPCO argues that the first, second, third, and fourth Baker factors are implicated in Plaintiffs' theory of causation, and that the Court, therefore, lacks subject matter jurisdiction over this case. (Mot. to Dismiss 16–17, ECF No. 55.)

Plaintiffs maintain that they have "redirected the focus of their claims" away from TEPCO's alleged misrepresentations and fraud, and toward TEPCO's negligent acts and omissions prior to, and during, the nuclear accident at the FNPP. (Plaintiffs' Resp. in Opp'n 6, ECF No. 59.) According to Plaintiffs, because the SAC no longer rests on the theory that TEPCO's misrepresentations influenced military judgments

regarding deployment of personnel and assets, the Court need not "stand in judgment over any decision made by the Executive Branch of the U.S. Government." (*Id.* at 1.) Plaintiffs contend that their action as amended is now merely one for "ordinary negligence," which can be resolved through the application of "traditional tort standards" that do not raise political questions. (*Id.* at 10.)  In particular, the SAC seeks to impose liability for TEPCO's "intentional and negligent oversight in construction, design, regulatory compliance, maintenance, training, emergency readiness, emergency responses, and decision making during the emergency." (*Id.* at 11–12.)

TEPCO rejects this characterization of the SAC.  Despite Plaintiffs' efforts to re-style their pleading by dropping their cause of action for fraud, TEPCO contends that Plaintiffs are nonetheless required to "plead and prove that the chain of causation [of injury] was not broken by the U.S. Navy's independent decisionmaking about where to locate the vessels and what protective measures to take."  (Reply ISO Mot. to Dismiss 3, ECF No. 62.)  Because the Navy's contribution to causation remains in issue, TEPCO argues that the Court cannot adjudicate Plaintiffs' negligence claims without implicating several of the Baker factors.  TEPCO asserts that Plaintiffs continue to rely on concealment by TEPCO and the Japanese government.

After reevaluating the "chain of causation" in this case, the Court agrees with Plaintiffs that the SAC as amended no longer requires the Court to evaluate the discretionary actions of the U.S. military or communications between the Japanese and U.S. Governments.  In reaching this decision the Court must make a "discriminating inquiry into the precise facts and posture" of this case.

### A.    Factual Causation

Causation in fact is one necessary element in causation analysis.  *See USAir, Inc. v. U.S. Dept. of Navy*, 14 F.3d 1410, 1413 (9th Cir. 1994) (citing *Maupin v. Widling*, 192 Cal.App.3d 568, 237 Cal.Rptr. 521, 524 (Cal. Ct. App. 1987)).

12cv3032

1     As alleged, TEPCO's negligence was a factual cause of Plaintiff's injuries.
2  Plaintiffs allege that TEPCO failed to adhere to basic safety requirements in designing
3  and operating the FNPP, failed to take adequate measures to prevent and minimize
4  nuclear accidents, failed to develop a suitable evacuation plan in case of emergency,
5  failed to make necessary repairs to the plant's cooling system, failed to carry out timely
6  inspections of critical equipment, and ignored warnings that the FNPP was at risk of
7  significant damage from a tsunami.  (SAC ¶¶ 109, 114, 118–19, ECF No. 50.)  These
8  negligent acts, in conjunction with the earthquake and tsunami, led to the FNPP's
9  ultimate failure which caused Plaintiffs and many other people within the FNPP's
10  vicinity to fall ill.

11     The Navy's decision to deploy personnel and assets in support of Operation
12  Tomodachi is also a factual cause of Plaintiff's injuries.  Accepted as true, the SAC
13  states that the Navy transported Plaintiffs into the vicinity of the FNPP in response to
14  the earthquake and tsunami in order to provide humanitarian relief to Japan. Aside from
15  transporting Plaintiffs into the area, the executive branch had no role in the chain of
16  causation for Plaintiffs' injuries as alleged in the SAC.

17  **B.     Proximate Causation**

18     TEPCO contends that the U.S. military's contribution to causation should limit
19  its liability in this case.  If the U.S. military's actions were a superseding cause that cut
20  off TEPCO's liability, TEPCO's allegedly negligent acts or omissions were not a
21  proximate cause of Plaintiffs' injuries.  *See USAir*, 14 F.3d at 1413.

22     *(i)     Legal Standard*

23     The doctrine of proximate causation limits liability.  6 Witkin, Summary 10th
24  (2005) Torts, Cause in Fact and Proximate Cause s. 1186, p. 553 (2012).  In certain
25  situations where the defendant's conduct is an actual cause of plaintiff's harm, the
26  defendant will nevertheless be absolved where there is an independent intervening act
27  that was not reasonably foreseeable.  *Id.*; *Farr v. NC Mach. Co.*, 186 F. 3d 1165, 1169
28  (9th Cir. 1999) ("the doctrine of superseding intervening cause is at bottom an

expression of the requirement of foreseeability" (citing Robert E. Keeton, Legal Cause In the Law of Torts 38–41 (1963)); *See Akins v. Sonoma Cnty.*, 67 Cal. 2d 185, 199 (1967) (Whether defendant is liable "revolves around a determination of whether the later cause of independent origin . . . was foreseeable by the defendant or, if not foreseeable, whether it caused injury of a type which was foreseeable"). A superseding cause must be something more than a subsequent act in a chain of causation:

> It must be an act that was not reasonably foreseeable at the time of the defendant's negligent conduct. Moreover, even if the intervening act is negligent, it is not a superseding cause if the first actor should have known that a third person might so act.

*USAir*, 14 F.3d at 1413 (citing Restatement (Second) of Torts § 447(a)); *Earp v. Nobmann,* 122 Cal.App.3d 270, 175 Cal.Rptr. 767, 780 (Cal. Ct. App. 1981).

California has adopted sections 442 through 453 of the Restatement (Second) of Torts. *USAir*, 14 F.3d at 1413. These sections discuss whether an intervening force should be considered a "superseding cause" thereby limiting an actor's liability for harm which his antecedent negligence was a substantial factor in bringing about. Restatement (Second) of Torts §§ 440–53 (1965). Relevant considerations include:

> (a) the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence; (b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation; (c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation; (d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act; (e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him; (f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

Usually, "the failure of a third person to act to prevent harm to another threatened by the actor's negligent conduct is not a superseding cause of such harm."

12cv3032

*Id.* § 452(1).  However, section 452(2) covers the exceptional case where the entire responsibility for a situation has been shifted to a third party:

> Where, because of lapse of time or otherwise, the duty to prevent harm to another threatened by the actor's negligent conduct is found to have shifted from the actor to a third person, the failure of the third person to prevent such harm is a superseding cause.

Where a third person has the opportunity to take affirmative action to avert the threatened harm, various factors should be considered, including: "the degree of danger and the magnitude of the risk of harm, the character and position of the third person who is to take responsibility, his knowledge of the danger and the likelihood that he will or will not exercise proper care, his relation to the plaintiff or to the defendant, the lapse of time, and perhaps other considerations."  Restatement (Second) of Torts § 452(2) cmt. f.

### (ii)     Analysis

TEPCO argues that the Navy's independent decision to send the U.S.S. Reagan to Japan was a superseding cause of Plaintiffs' harm, which limited TEPCO's liability by breaking the chain of proximate causation.  To determine whether the Navy's decision was a superseding cause, TEPCO argues that the Court will be required to evaluate the discretionary decisions of military commanders, which would invoke a political question and deprive the Court of subject matter jurisdiction.

As a threshold matter, the Court notes that superseding cause is usually a factual issue that would be determined by a jury.  *See Benefiel v. Exxon Corp.*, 959 F.2d 805, 808 (9th Cir. 1992).  However in the instant case, TEPCO argues that where the military's discretionary decision making is a step in the chain of causation of injury, the inquiry into whether the Navy's decision *could be* a superseding cause would necessarily raise a nonjusticiable political question, thus depriving the Court of jurisdiction.  Although TEPCO argues that under these circumstances the inquiry itself raises a non-justiciable political question, the Court must look at the nature and extent of the military's involvement and decide whether it is the type of case where a political

question is necessarily implicated.  *See McMahon*, 502 F.3d 1331 (11th Cir. 2007) (not all cases involving the military are necessarily foreclosed by the political question doctrine).

(a)   Foreseeability

At the outset, TEPCO argues that "it was *not* foreseeable that the most sophisticated military in the world [would] place its servicemembers 'two miles' from the FNPP and do so *after* Unit 1 had already exploded and the risk of radiation was well-known." (Mot. Reconsideration 18, n.5, ECF No. 73-1(citing NY Times articles which came out the day of and the day after the tsunami when Plaintiffs allegedly arrived off the coast of Japan).)

On the other hand, Plaintiffs argue that TEPCO was aware of the risks of engaging in an ultra-hazardous activity, aware of the applicable safety standards, aware of the potential for an earthquake, aware that in the past, the U.S. and other allies had provided humanitarian aid in the aftermath of earthquakes and other emergencies, and that harm to foreign relief workers in the vicinity was foreseeable.   (Opp'n Reconsideration 24–25, ECF No. 84.) Plaintiffs argue that TEPCO's unstated assertion is that the Navy was negligent in entering the radioactive zone. (*Id.* at 26.)  However, Plaintiffs allege that upon discovering the increasing radioactivity, the Military Command ordered its fleet further out to sea.  (*Id.*)  Plaintiffs contend that it is unreasonable to believe that Military Command would knowingly place itself and its crewmembers in a zone of life-threatening radioactivity.  (*Id.*)

At this early stage in the proceedings, TEPCO does not persuade the Court that the U.S. military's decision-making could constitute a superseding cause of Plaintiffs' injuries.  It is foreseeable that as a result of an improperly designed and maintained nuclear plant, people present in the vicinity would be adversely affected by radiation.  Likewise, the Navy's presence in this scenario was foreseeable.  In the aftermath of a natural disaster, it is foreseeable that foreign military and aid-workers would be among those in the vicinity.  It would be improper to shift the entire responsibility from

1   TEPCO to the Navy where the Navy's actions were a foreseeable consequence of the

2   very negligence alleged against TEPCO. "In line with the fundamental rule of

3   foreseeability, the courts have largely abandoned the effort to construct a rule of law

4   that exculpates the first actor merely because a second actor has discovered the danger

5   and could avoid it."  Dan B. Dobbs, Paul T. Hayden and Ellen M. Bublick, The Law

6   of Torts 213 (2d ed.).

7        Even if TEPCO claims that the Navy was somehow negligent, "it is not a

8   superseding cause if the first actor should have known that a third person might so act"

9   or if the action of the third party was not highly extraordinary given the circumstances.

10  *USAir*, 14 F.3d at 1413; Restatement (Second) of Torts § 447.  The SAC alleges that

11  the Navy's actions were reasonable.  Plaintiffs contend that once the U.S.S. Reagan

12  detected unsafe levels of radiation, the ship withdrew from the area.  Further, TEPCO

13  presents no facts showing the U.S. military's precautions were inadequate or

14  unreasonable.  TEPCO only points out that the Navy is a sophisticated entity with the

15  independent capability of knowing the risks incident to a natural disaster.  (Mot. to

16  Dismiss 25, ECF No. 55.)  As discussed above, the Navy's actions were foreseeable,

17  they appear to be reasonable in light of Plaintiffs' SAC, and they do not overwhelm and

18  supplant TEPCO's negligence.

19        (b)     Third Party's Failure to Prevent Harm

20        In addition, although TEPCO did not initially rely on the Restatement, in its

21  Motion for Reconsideration TEPCO states that its "superseding cause argument is

22  embodied by section 452(2)": Third Person's Failure to Prevent Harm.  (*Id.* at 20.)

23  TEPCO argues that the factors as outlined in the Restatement's comment show that the

24  Navy's decision to send servicemembers into this dangerous situation *may* act as a

25  superseding cause and litigation of this case will therefore require an inquiry into the

26  Navy's decision making. (*Id.* at 22.) First, TEPCO states that the Navy's character and

27  position enabled it to take responsibility to prevent Plaintiffs from radiation.  (*Id.*)

28  Second, TEPCO argues, it is unlikely that the Navy would not exercise proper care.

1    (*Id.*) Third, the Navy has complete control over servicemembers and a duty to care for

2    and protect them.  (*Id.*)  Fourth, TEPCO contends that the lapse of time makes it clear

3    that the Navy had actual knowledge of the danger of radiation.  (*Id.*)

4          The Court is not persuaded by TEPCO's "third party failure to prevent harm"

5    argument.  Analysis of the relevant factors does not establish that the Navy's actions

6    constituted a supervening cause and that duty shifted from TEPCO to the Navy.  First,

7    the degree of danger and the magnitude of the risk of harm were great because TEPCO

8    was conducting the ultra-hazardous activity of running a nuclear power plant.  In

9    addition, the Navy's knowledge of the danger is unclear at this stage in this litigation.

10   Although there appears to have been general knowledge of the potential nuclear leak,

11   the extent of the leak and the magnitude of danger were likely unknown, especially

12   given the close time frame between the disaster and the Navy's arrival.  Even assuming

13   the Navy knew of the existence of the leak, it is likely that the Navy exercised proper

14   care over the servicemembers.  Next, although the Navy was in the position to take

15   responsibility for the care of the servicemembers, it is not mutually exclusive that the

16   Navy acted reasonably and that harm also resulted.  In addition, the Navy had no

17   relationship with TEPCO.  Lastly, there was only a short lapse of time between the

18   disaster and the Navy's arrival, within one day, and this was amidst an ongoing

19   humanitarian disaster.

20         (c)   *Baker* Factors

21         Moreover, in light of the specific factual posture of this case, as discussed above,

22   the Court does not find any *Baker* factors or separation of powers concerns to be

23   implicated.  While deployment decisions regarding military personnel operating in a

24   disaster zone are essentially professional military judgments, and therefore could

25   implicate a political question, here no military judgments need be reviewed.  The crux

26   of the case is not whether the decision to deploy or the actions taken during the

27   deployment were reasonable. The Navy's choices only incidentally come into play as

28

a potential affirmative defense to Plaintiffs' theory of negligence, and as discussed above, that theory is likely not viable.

The first *Baker* factor "is primarily concerned with direct challenges to actions taken by a coordinate branch of the federal government. *Lane v. Haliburton*, 529 F.3d 548, 560 (5th Cir. 2008). Here, Plaintiffs are not challenging the executive decision to offer aid to Japan or questioning U.S. foreign relations decisions. Next, in resolving this case, the Court will rely on well-established tort standards for judging a private corporation's negligence, and thus the second *Baker* factor is not implicated.

Plaintiffs ask the court to judge TEPCO's policies and actions, not those of the military or Executive Branch, and accordingly, the third *Baker* factor is not implicated. To recover, Plaintiffs do not need this Court to evaluate the Executive's longstanding policy of deploying military to assist with humanitarian aid. All parties accept that the Executive acted within its discretionary authority to deploy the U.S.S. Reagan to support the humanitarian mission in Japan. (*See* RT 29, ECF No. 99.) TEPCO's "intended defense has not been shown as legitimately implicating this broad, policy-based decision." *See Lane*, 529 F.3d at 563.

And unlike the other cases presented before the court where the circumstances were thoroughly pervaded by military judgments and decisions, here, the allegedly negligent conduct is easily separated from the actions of the U.S. Navy both temporally and factually. *Cf. Carmichael, 572 F.3d at 1282–83* (suit against military contractor related to driver's negligence in an Iraqi convoy accident nonjusticiable because convoy controlled by U.S. military); *Corrie*, 503 F.3d at 980 (Palestine nationals suing private corporation for selling bulldozers to Israel where bulldozers approved and paid for by U.S.); *Taylor v. Kellogg Brown & Root Servs., Inc.*, 658 F.3d 402 (4th Cir. 2011) (political question barred negligence claim against military contractor working in combat zone when unauthorized military personnel interfered with repair of electrical box). TEPCO is not a military contractor or otherwise under the control or direction of the United States.

1    Were the actions of TEPCO and the military so intertwined that to question
2    TEPCO's decisions would necessarily question the Navy's decisions, any contribution
3    to causation could very well raise a nonjusticiable political question.  However, it is
4    unclear from TEPCO's briefing and oral argument how resolving this case would
5    question or impose upon the discretionary decisions of the executive branch.  (*See* RT
6    22-38, ECF No. 99.)  TEPCO thinks that in hearing this case, the Court would have to
7    question how the mission was conducted.  However, at this point, the Court thinks it
8    could hear evidence with respect to where certain ships were located and what
9    protective measures were taken without passing judgment on the executive's decisions.
10   Therefore, the fourth *Baker* factor is not implicated.  Accordingly, because the Court
11   finds that Plaintiffs' amended theory of causation does not implicate any of the *Baker*
12   factors, the Court need not delve into the discretionary decisions of the executive
13   branch, and the military judgment in this instance does not warrant application of the
14   political question doctrine.

15       The Court notes that Plaintiffs substantively changed their theory of the case in
16   the SAC in order to alleviate the Court's justiciability concerns.  Plaintiffs' FAC relied
17   on the Japanese Government and TEPCO's deception regarding the condition of the
18   FNPP.  Plaintiffs' alleged a chain of causation involving TEPCO's communications
19   with the Navy and the Navy's reliance on those misrepresentations.  This necessarily
20   included the issue of whether the Navy justifiably relied on TEPCO's
21   misrepresentations and whether the Navy made an informed decision in deploying
22   personnel near the FNPP.  *See Corrie*, 503. F.3d at 983 ("Whether to grant military or
23   other aid to a foreign nation is a political decision inherently entangled with the
24   conduct of foreign relations.").  Accordingly, the Court dismissed the FAC as
25   nonjusticiable.

26       However, the SAC omits these allegations. The SAC no longer alleges that had
27   it not been for TEPCO's distribution of false information regarding radiation levels at
28   the FNPP, military commanders would have adopted a different course of action.

1  Similarly, the SAC no longer alleges that "but for TEPCO's allegedly wrongful
2  conduct, the military would not have deployed personnel near the FNPP or would have
3  taken additional measures to protect service members from radiation exposure." (Order
4  7, Nov. 26, 2013, ECF No. 46.)  Moreover, Plaintiffs no longer specifically allege that
5  the Japanese Government was TEPCO's 'co-conspirator' in providing misleading
6  information to the Navy, (Mot. to Dismiss 18, ECF No. 55.), and, the Court therefore
7  need not examine the Japanese Government's disclosures to the U.S. military.  (*See*
8  Reply in Supp. 7–9, ECF No. 62.)

9       The "residual factual allegations asserting (1) TEPCO's affirmative
10  misrepresentations that the conditions at the reactor complex were within safe limits,
11  and (2) that the radioactive release was far more dangerous than TEPCO
12  communicated, are **not** the basis of Plaintiff's claims in the SAC." (Resp. in Opp'n 11,
13  ECF No. 59.)  TEPCO argues throughout its motion to dismiss that these statements
14  continue to support its political question defense.  However, these allegations,
15  "although included in the SAC," are not the basis for Plaintiffs current claims as is
16  evident from the briefing and oral argument. TEPCO's motion to dismiss for lack of
17  subject matter jurisdiction is therefore **DENIED**.

## FAILURE TO STATE A CLAIM

18
19  **1.    Legal Standard**

20       Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the
21  defense that the complaint "fail[s] to state a claim upon which relief can be granted."
22  The Court evaluates whether a complaint states a cognizable legal theory and sufficient
23  facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain
24  statement of the claim showing that the pleader is entitled to relief."  Although Rule 8
25  "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an
26  unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556
27  U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.
28  544, 555 (2007)).  In other words, "a plaintiff's obligation to provide the 'grounds' of

his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 557).

        "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting *Twombly*, 550 U.S. at 570); see also Fed. R. Civ. P. 12(b)(6).  A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).  Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.*  This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 1950 (citation omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* Moreover, "[f]or a complaint to be dismissed because the allegations give rise to an affirmative defense[,] the defense clearly must appear on the face of the pleading." *McCalden v. Ca. Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990) (internal quotation marks omitted).

        Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  In other words, where leave to

1  amend would be futile, the Court may deny leave to amend.  *See Desoto*, 957 F.2d at
2  658; *Schreiber*, 806 F.2d at 1401.

3  **2.      Analysis**

4         TEPCO moves to dismiss each of Plaintiffs' asserted causes of action for failure
5  to state a claim for which relief could be granted.  The Court considers each of
6  TEPCO's arguments in turn.

7  ***A.      Proximate Causation***

8         TEPCO contends that Plaintiffs fail to satisfy the crucial element of proximate
9  causation, such that all nine of their claims must be dismissed because there is no
10  plausible connection between TEPCO's allegedly wrongful conduct and Plaintiffs'
11  injuries.  TEPCO relies on the same argument discussed above regarding the U.S.
12  military's role in causation and its unlikely reliance on TEPCO's representations.
13  (Mot. to Dismiss 21, ECF No. 55.) As discussed above, the Court finds that Plaintiffs
14  have sufficiently pled proximate causation.  As alleged, Plaintiff's harms were directly
15  caused by TEPCO's negligence and Plaintiffs no longer contend that the military based
16  its decision to deploy on TEPCO's representations.

17         Additionally, the Court finds TEPCO's reliance on the Ninth Circuit's decision
18  in *Galen v. Cnty. of L.A.*, 477 F.3d 652 (9th Cir. 2007), and the First Circuit's decision
19  in *Jacob v. Curt*, 898 F.2d 838 (1st Cir. 1990), to be misplaced. TEPCO contends that
20  "when the decisionmaking of a government body is an essential step in the chain of
21  causation of injury, a plaintiff's burden to plead and prove proximate causation requires
22  a showing that the government's decisionmaking was not the result of its own
23  independent judgment."  (Mot. to Dismiss 21, ECF No. 55.)

24         In both cases, plaintiffs sued individuals who had made statements leading to a
25  later independent government decision.  In *Galen*, the court identified that California
26  law vests judicial officers with "the exclusive authority to enhance or reduce bail." 477
27  F.3d at 663.  Therefore, a deputy's recommendation with respect to setting bail could
28  not subject that deputy to liability for the judicial officer's decision.  *Id.*  In *Jacob*, the

court held that a researcher could not be found liable for a foreign government's decision to close a health clinic because of the researcher's prior article criticizing the clinic. 898 F.2d at 839. In *Galen* and *Jacob*, due to the nature of the successive independent decisions, the government officials who made the subsequent decisions were the exclusive proximate cause of plaintiffs' harm. In both cases, the courts held that the independent government decisions were superseding causes that broke the chain of causation.

The situation before the Court is factually and legally distinguishable from these two cases. As alleged, TEPCO's negligence was unrelated to the Navy's decision to offer aid to Japan. As discussed previously, the Navy's decision to offer aid to Japan and to transport servicemembers into the area as part of that mission did not supplant TEPCO's allegedly negligent behavior. The Court finds that the SAC sufficiently alleges that TEPCO's negligence was a proximate cause of Plaintiffs' injuries. Accordingly, the Court **DENIES** TEPCO's motion to dismiss on this basis.

## B.    *Firefighter's Rule*

TEPCO contends that Plaintiffs' recovery is barred under the "firefighter's rule," because as professional rescuers, they cannot recover for injuries caused by a hazard incident to the situation to which they responded. (Mot. to Dismiss 22, ECF No. 55.) TEPCO maintains that Plaintiffs, as members of the U.S. Armed Forces participating in Operation Tomodachi, were acting as professional rescuers and are therefore covered by the "firefighter's rule." (*Id.* at 23 (citing *Maltman v. Sauer*, 530 P.2d 254, 257–58 (Wash. 1975).)

TEPCO argues that the same event which drew the Navy also caused, in combination with another's tortious conduct, a further consequence that harmed the responders. (Mot. Reconsideration 24, ECF No. 73-1.) TEPCO argues that this factual situation is evident in several cases and that the Firefighter's Rule consistently bars liability. TEPCO contends that the case that most squarely addresses this fact pattern is *White v. Edmond*, 971 F.2d 681 (11th Cir. 1992), in which the plaintiff firefighter

responded to a fire and then, as a direct result of the fire, the allegedly negligently designed shock absorbers on a Volvo in the garage exploded and injured the firefighter. *Id*. at 682–83. The Court held that the Fireman's Rule barred suit against the manufacturer because the "possibility of an unexpected explosion" was within the range of "anticipated risks of firefighting." *Id*. at 689.

TEPCO points to a distinction within the cases where a defect manifests itself coincident with rather than because of the event. (*Id.* at 25–26.)   For example, in *Stapper v. GMI Holdings, Inc.*, 73 Cal. App. 4th 787 (1999), the plaintiff firefighter was injured when, during the course of a house fire, the defendant's allegedly defectively designed garage door opener malfunctioned and plaintiff was trapped in the garage. *Id*. at 790. The Court noted that, because the plaintiff alleged that the door malfunction was not caused by the fire, plaintiff's claim was not barred by the firefighter's rule. *Id*. at 793 n.2; *see also Lipson v. Superior Court*, 31 Cal. 3d 362 (1982) (explaining firefighter's rule would not apply to a gasoline tank explosion which occurred independently of an electrical fire which was responsible for a fireman's presence at the house) and *Rowland v. Shell Oil Co.*, 179 Cal. App. 3d 399 (1986) (where truck driver failed to properly handle his vehicle and it tipped over, leading in turn to a "chemical spill" from the vehicle, the court held that the negligence that triggered the accident was *not* independent of the resulting spill, and therefore the firefighter's ultrahazardous-liability claim for injuries incurred while responding to the spill were barred by the firefighter's rule).

Here, TEPCO argues, the negligence was not independent of the tsunami/earthquake, but a shared underlying cause of Plaintiffs' injuries. (Mot. Reconsideration 26, ECF No. 73-1.) Further, TEPCO argues that the Navy knew of the risk of radiation, so it was reasonable to anticipate the harm and therefore it was a risk inherent in responding to the natural disaster. (*Id.* at 26–27.) Accordingly, because Plaintiffs' injuries were due to a shared underlying cause created by defendant and the condition that brought the rescuer to the scene, the Firefighter's Rule should be a bar

to liability. (*Id.* at 27.)  However, Plaintiffs contend that the firefighter's rule does not apply to them because a nuclear meltdown is not a risk inherent in offering humanitarian assistance.  *See Solgaard v.Guy F. Atkinson Co.*, 6 Cal.3d 361, 369 (1971).  Further, the firefighter's rule does not bar recovery for independent acts of misconduct which were not the cause of the plaintiff's presence on the scene. *Donahue v. S.F. Hous. Auth.*, 16 Cal.App.4th 658, 663 (1993).

Although TEPCO draws on similarities between certain cases and the current situation, the Court agrees with Plaintiffs that the SAC is not barred by the firefighter's rule.  First, there is no authority extending the application of the Firefighter's Rule outside of the context of domestic first responders such as firefighters or police officers.[4]  The Court will not extend the Firefighter's Rule to this type of circumstance absent authority to do so.  Second, the cases on which TEPCO relies are distinguishable based on the scope of the scene and the associated scope of risk.  In contrast to providing humanitarian aid to a country after a natural disaster, when a firefighter or police officer responds to a fire or a car accident, the geographic area is limited and the anticipated risks are confined to that fixed situation.   In light of the facts of this case, the Court finds that radiation exposure due to a private corporation's negligence was not a risk inherent in the Navy's mission of providing humanitarian assistance, including: supplying food, water, and emergency shelter.  Accordingly, the Court **DENIES** TEPCO's motion to dismiss Plaintiffs' claims on this basis.

## C.    *TEPCO's Duty of Care with Respect to Plaintiffs' Claims of Negligence, Negligence Per Se, Res Ipsa Loquitur, Failure to Warn, and Nuisance*

TEPCO argues that Plaintiffs' claims for negligence, failure to warn, and nuisance must be dismissed because TEPCO owed no duty of care to Plaintiffs.  TEPCO relies on two arguments in support of it's contention.  First, there was no need

---

[4]TEPCO cites to *Maltman v. Sauer*, to support the proposition that "Army servicemembers responding to accidents" are barred by the Firefighter's Rule.  530 P.2d 254, 257–58 (Wash. 1975). The Court finds that broad statement to be misleading.  In *Maltman*, an army helicopter was dispatched to a car accident scene in Washington state as part of the Military Assistance to Safety and Traffic rescue program.  (*Id.* at 256.) Subsequently the helicopter crashed en route to the accident.  (*Id.*)

12cv3032

to warn the U.S. military about potential radiation because "it would be inappropriate, as a matter of substantive tort law, for the court to recognize an innovative judge-made duty of foreign sovereigns and foreign entities to provide disclosures to other sovereigns in the context of a large-scale humanitarian crisis." (Mot. to Dismiss 25, ECF No. 55).  Second, TEPCO contends that it had no duty to warn a sophisticated entity such as the Navy regarding known risks of operating in a disaster zone especially as the U.S.S. Reagan had nuclear detection capabilities.  (*Id.*)  Both of these arguments appear to be only related to TEPCO's duty to warn the U.S. military in the context of negligence.  TEPCO does not address any independent duty owed to Plaintiffs as individuals in the area.  (Reply ISO Mot. to Dismiss 14, ECF No. 6.)  Further, TEPCO does not address the merits of Plaintiffs' Strict Products Liability Failure to Warn or Nuisance claims.[5]

Plaintiffs respond by arguing that TEPCO owed an absolute duty to all persons within the vicinity of the FNPP.  (Plaintiff's Resp. in Opp'n 18, ECF No. 59.)  As discussed above, the SAC alleges a chain of causation independent from the decisions made by the Navy.  Thus, TEPCO owed Plaintiffs the same duty of care it owed to those in the vicinity of the FNPP in reasonably operating the FNPP.  TEPCO's two arguments have no bearing on whether it owed a duty to the individual servicemembers.  In light of the Court's decision regarding causation and the Parties' arguments, the Court **DENIES** TEPCO's motion to dismiss Plaintiffs' claims on this basis.

## D.    *Actual and Justifiable Reliance*

TEPCO moves to dismiss Plaintiffs' negligence claim arguing that the claim is based in large part on negligent misrepresentation and argues that Plaintiff did not demonstrate actual and justifiable reliance.  (Mot. To Dismiss 26, ECF No. 55.) Plaintiffs contend that this issue is irrelevant because they are not asserting a negligent

---

[5]The Court has serious concerns that Plaintiffs claims for Strict Liability Failure to Warn and Nuisance cannot stand as a matter of law.

misrepresentation claim.   (Plaintiff's Resp. in Opp. 24, ECF No. 59.)   Because Plaintiffs are pursuing no such claim, the Court **DENIES** as moot TEPCO's motion to dismiss Plaintiffs' negligence claim on this basis.

### E.   *Strict Liability for Design Defect*

A strict liability for design defect claim has four elements: (1) the product is placed on the market, (2) there is knowledge that it will be used without inspection for defect, (3) the product is defective, and (4) the defect causes injury. *Nelson v. Sup. Ct.*, 50 Cal. Rptr. 3d 684, 688 (Cal. Ct. App. 2006).

TEPCO moves to dismiss Plaintiffs' strict liability design defect claim, arguing that Plaintiffs fail to allege facts supporting the claim that the FNPP is a product "placed on the market."  (Mot. to Dismiss 28, ECF No. 55.)  Because the FNPP is a nuclear power facility that was owned by TEPCO at all times and was never transferred to a different "user," TEPCO argues that Plaintiffs' design defect claim must fail. (*Id.* at 28–29.)  Plaintiffs argue that Defendants placed the electricity from the FNPP on the market which was stored and manufactured in the FNPP and that this should lead to strict liability for design defect.  (Plaintiff's Resp. in Opp'n 31, ECF No. 59.)

Plaintiff's design defect claim lacks merit.  Plaintiffs may not ignore elements of the design defect cause of action simply because it would make sense to apply liability in light of the potential for injury to the public.  Plaintiffs do not persuasively explain how a design defect claim is viable in light of these facts.  The product, electricity, was not defectively designed and did not cause Plaintiff's injuries.  The FNPP was evidently not a product "placed on the market."  The alleged defects in storage and design do not support a defective design claim.  Accordingly, the Court **GRANTS** TEPCO's motion to dismiss Plaintiffs' design defect claim **WITH PREJUDICE** because Plaintiffs can not cure the defects in this claim by alleging additional facts consistent with their pleading.

///

///

1    ### F.    *Intentional Infliction of Emotional Distress ("IIED")*

2         A claim for IIED requires (1) extreme and outrageous conduct by the defendant

3    with the intention of causing emotional distress, (2) the plaintiff's suffering severe

4    emotional distress, and (3) actual and proximate causation of the emotional distress.

5    *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 819 (Cal. 1993).  Thus, "it is not

6    enough that the conduct be intentional and outrageous.  It must be conduct *directed*

7    *at the Plaintiff*."  *Id.*  This distinguishes IIED from negligent infliction of emotional

8    distress.  *Id.* at 820.

9         TEPCO contends that Plaintiffs' claim for IIED fails for two reasons: (1) the

10   federal statutory scheme for compensating victims of nuclear incidents, known as the

11   Price-Anderson Act, prohibits claims for emotional distress in the absence of physical

12   injury, suggesting that common law liability should not provide recovery in such cases

13   either; and, (2) Plaintiffs do not allege facts establishing that TEPCO engaged in

14   "extreme and outrageous conduct" or that any such conduct was "directed at" Plaintiffs,

15   two necessary elements of the IIED cause of action.  (Mot. to Dismiss 29–30, ECF No.

16   55).  Plaintiffs maintain that the Price-Anderson Act does not apply to foreign

17   producers of nuclear power.  (Resp. in Opp'n 24–25, ECF No. 59).  Plaintiffs also

18   contend that TEPCO's degree of negligence rises to the level of extreme and

19   outrageous.  (*Id.* at 25.) Plaintiffs make no effort to respond to TEPCO's argument that

20   no conduct was "directed at" Plaintiffs, a prerequisite for imposing liability for IIED.

21        Plaintiffs' IIED claim lacks merit.  Plaintiffs attempt to cast TEPCO's alleged

22   negligence as extreme and outrageous conduct.  However, negligence is insufficient

23   to state a claim for IIED.  Plaintiff must establish intentional conduct or reckless

24   disregard.  *Potter*, 863 P.2d 795 at 819.  Plaintiffs also fail to allege facts sufficient to

25   establish that TEPCO engaged in any conduct specifically "directed at" them.  Because

26   IIED imposes liability for ambiguous injuries that are easily feigned, Plaintiffs may not

27   recover in the absence of facts indicating that the defendant's conduct specifically

28   targeted them and sought to cause them harm.  There is no plausible way to claim that

1  TEPCO engaged in any conduct directed at the U.S. servicemembers. Much of the

2  alleged negligence occurred years before the Plaintiffs were deployed and they never

3  had any contact with TEPCO other than suffering from the radiation.

4       Accordingly, the Court **GRANTS** TEPCO's motion to dismiss Plaintiffs' IIED

5  claim **WITH PREJUDICE**.

6  ## G.    *Strict Liability for Ultrahazardous Activities*

7       TEPCO also moves to dismiss Plaintiffs' claim for strict liability for injuries

8  resulting from an inherently dangerous activity.  TEPCO makes a similar argument as

9  with the IIED claim that the Price-Anderson Act prohibits strict liability claims for

10  releases of radiation below federal limits, and suggests that common law liability

11  should not provide recovery absent pleading that their exposure to radiation exceeded

12  federal limits.  (Mot. to Dismiss 32–33, ECF No. 55.)  Second, TEPCO argues that the

13  Convention on Supplementary Compensation for Nuclear Damage ("CSCND")

14  specifies that all claims concerning nuclear accidents should be resolved in the country

15  where the accident occurred.  (*Id.* at 33–34.)  TEPCO apparently concedes that

16  operation of a nuclear power facility is an inherently dangerous or "ultrahazardous"

17  activity. (Reply ISO Mot. to Dismiss 18 n. 7, ECF No. 62 (TEPCO's Motion assumed

18  *arguendo* that the operation of a nuclear power plant qualifies as an ultrahazardous

19  activity).)  Plaintiffs again argue that the Price-Anderson Act does not apply to a

20  foreign nuclear operator and that the CSCND is not yet in force and has not been

21  ratified by Japan.  (Plaintiff's Resp. in Opp. 24–25, 29–30, ECF No. 59.)  Also,

22  Plaintiffs argue that TEPCO's activities meet the criteria of abnormally dangerous. (*Id.*

23  at 27–29.)

24       The Court finds TEPCO's arguments unpersuasive.  TEPCO offers no legal

25  support for applying the Price-Anderson Act by analogy to a foreign corporation and

26  the Court declines to do so. Also, the Court will not dismiss a claim that is sufficiently

27  pled because of the pending CSCND.  Accordingly, the Court **DENIES** TEPCO's

28  motion to dismiss the strict liability for ultra-hazardous activity claim.

1  *H.*      *Loss of Consortium*

2      TEPCO moves to dismiss Plaintiffs' loss of consortium claim arguing that since

3  Plaintiffs' tort claims fail there is no valid loss of consortium cause of action.  (Mot.

4  to Dismiss 34, ECF No. 55.)  Plaintiffs clarify that a tort claim and a spouse's loss of

5  consortium claim are separate claims.  (Plaintiff's Resp. in Opp'n 31–32, ECF No. 59.)

6  Because the Court finds that Plaintiffs have stated a claim for which relief may be

7  granted for several tort claims, the loss of consortium claim survives.

8      **MOTION TO DISMISS CLAIMS ON BEHALF OF DOE PLAINTIFFS**

9      Finally, TEPCO moves to dismiss the claims purportedly brought by Plaintiffs

10  on behalf of "John & Jane Does 1-70,000." (Mot. to Dismiss 34, ECF No. 55.) TEPCO

11  argues that this is an impermissible attempt by Plaintiffs' counsel to bring claims on

12  behalf of "placeholder plaintiffs" so as to buy time while they try to drum up 70,000

13  future clients.  (*Id.* at 34–35.)  Additionally, TEPCO states that this designation is

14  inappropriate in the context of a class action because absent class members are not

15  formal parties which could be designated as Doe parties.  (Reply ISO Mot. to Dismiss

16  18–19, ECF No. 62.)  Plaintiffs insist that they are seeking to certify a class action and

17  that Defendant's motion to dismiss the John and Jane Does is premature.  (Plaintiff's

18  Resp. in Opp'n 32–33, ECF No. 59.)

19      The continued use of "placeholder plaintiffs" is likely unjustified and

20  inappropriate at this point as Plaintiffs have had over two years to name additional

21  parties.  Absent class members are not formal parties which can be designated as

22  pseudonymous Doe plaintiffs.  Accordingly, the Court **GRANTS** TEPCO's motion to

23  dismiss the claims on behalf of the "DOE" plaintiffs.

24      **FORUM NON CONVENIENS**

25  **1.    Legal Standard**

26      "A federal court has discretion to decline to exercise jurisdiction in a case where

27  litigation in a foreign forum would be more convenient for the parties." *Lueck v.*

28  *Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001) (citing *Gulf Oil Corp. v.*

*Gilbert*, 330 U.S. 501, 504 (1947)).  "The doctrine of *forum non conveniens* is a drastic exercise of the court's 'inherent power' because, unlike a mere transfer of venue, it results in the dismissal of a plaintiff's case." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011).  TEPCO bears the burden of proving the Plaintiffs' choice of forum results in "'oppressiveness and vexation . . . out of all proportion'" to Plaintiffs' convenience.  *Id.* at 1227 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981).  Where the plaintiff is a U.S. citizen, a court should afford more deference to the plaintiff's choice of a U.S. forum and should assume the forum is convenient.  *Id.*  "While a U.S. citizen has no absolute right to sue in a U.S. court, great deference is due plaintiffs because a showing of convenience by a party who has sued in his home forum will usually outweigh the inconvenience the defendant may have shown." *Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1449 (9th Cir. 1990).

To dismiss on the ground of forum non conveniens, a court must examine: "(1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favors dismissal." *Id.* (citations omitted).  An adequate alternative forum is available to the plaintiff when (1) the defendant is amenable to service of process in the foreign forum and (2) the foreign forum provides the plaintiff with a satisfactory remedy.  *Id.* at 1225.  Only where the remedy provided is "clearly unsatisfactory" is this second requirement not met.  *Id.* (citing *Lueck*, 236 F.3d at 1144.).

Courts must consider the following private interest factors: "(1) the residence of the parties and witnesses; (2) the forum's convenience to the litigants; (3) access to the physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical issues that make trial of a case easy, expeditious, and inexpensive." *Id.* at 1229.  Courts also must consider the following public interest factors: (1) local interest of the lawsuit; (2) the court's familiarity with

12cv3032

1    governing law; (3) the burden on local courts and juries; (4) congestion in the court;
2    and, (5) the costs of resolving a dispute unrelated to this forum. *Id.* at 1232.

3    **2.    Analysis**

4        TEPCO moves to dismiss on the basis of forum non conveniens, arguing that this
5    case should be heard in a Japanese court.  TEPCO provides documentation in support
6    of its request, detailing the customs and practices of the Japanese legal system and
7    examining the factors that would complicate trial of this action in a U.S. court.

8    ***A.    Adequate Alternative Forum***

9        To begin with, TEPCO maintains that Japan's court system is an adequate
10   alternative forum because TEPCO is unquestionably subject to jurisdiction and
11   amenable to process in Japan, and because Plaintiffs would be able to recover for their
12   injuries under Japanese tort law, assuming their claims are meritorious.[6]  According to
13   TEPCO, "[t]he Japanese judicial system is held in high regard and has consistently
14   been found to be adequate for *forum non conveniens* purposes."  (Mot. to Dismiss. 38,
15   ECF No. 55.)

16       Plaintiffs deny that Japan is an adequate alternative forum, arguing that they
17   "will be denied a fair and impartial proceeding, due to the highly sensitive and
18   politicized circumstances surrounding TEPCO."  (Plaintiff's Resp. in Opp'n 36, ECF
19   No. 59).  Additionally, Plaintiffs contend that they will be unable to receive a fair trial
20   because of the lack of discovery and jury trials available to Plaintiffs in Japan.  (*Id.*)
21   Plaintiffs rely on the declaration of two Japanese attorneys and discuss a Japanese case
22   rejecting an appeal to evacuate school children suffering from radiation illness.  (*Id.* at
23   34–35.)

24       The Court agrees with TEPCO that Japan is an adequate alternative forum.
25   There is no doubt that TEPCO is amenable to service in Japan.  Further, Japanese
26   courts are well-respected and independent of government control and Plaintiffs provide

27

28       [6]TEPCO emphasizes that Plaintiffs could also file a special statutory cause of action that
     provides for recovery from a nuclear operator for injuries resulting from a nuclear incident.

no evidence to the contrary.  Courts in this Circuit have not previously rendered Japan an inadequate forum, despite the country's  more limited discovery system and lack of jury trials.  *Lockman Found v. Evangelical Alliance Mission*, 930 F.2d 764, 768 (9th Cir. 1991); *Philippine Packing Corp. v. Maritime Co. of Philippines*, 519 F.2d 811, 812 (9th Cir. 1975) (per curiam); *Creager v. Yoshimoto*, No. 05-1985, 2006 WL 680555, at *2 (N.D. Cal. Mar. 14, 2006).  Further, Plaintiffs' concerns about the secrecy law are unpersuasive in light of the Japanese Government's statements indicating it would be inapplicable to a case like this.  (Reply ISO Mot. to Dismiss 20, ECF No. 62 ("the Japanese government has specifically stated that the [privacy] Act does not apply to . . . information concerning nuclear power plant accidents.").)  Because the Court finds that Japan is an adequate alternative forum, the Court must next balance various private and public factors and dismiss the case if the Japanese forum would be more convenient for the Parties.

**B.**     ***Balancing of Private Interests***

TEPCO argues that the relevant private interest factors all indicate that Japan is the appropriate forum for this action.  Plaintiffs disagree.  The Court considers each private interest factor in turn.

*(i)     Residence of the Parties and Witnesses*

TEPCO argues that Japan is where the overwhelming majority of the witnesses reside.  (Mot. to Dismiss. 40, ECF No. 55.)  TEPCO maintains that Japan is the more convenient forum for the litigants because all current and former TEPCO officers and employees that they expect to testify are located in Japan, as are nearly all of the Japanese Government officials and private citizens that were involved in the response to the FNPP meltdown.  (*Id.*)  TEPCO emphasizes that, not only will it be difficult or impossible to produce many non-party witnesses for trial, but it will also be extremely challenging to obtain even pre-trial deposition testimony from them in light of Japan's restrictions on taking depositions for use in foreign litigation.  Further, TEPCO argues that although Plaintiffs are all located in the U.S., Plaintiffs' testimony is unnecessary

at the liability stage, such that there is no need for them to travel to the forum at this time.  If it eventually becomes necessary for Plaintiffs to provide testimony regarding their injuries, TEPCO indicates that Japanese courts have established procedures for procuring testimony from parties located overseas who cannot travel to Japan.

Plaintiffs insist that this factor favors a U.S. forum.  Plaintiffs argue that all of the service members named as plaintiffs in this action are located in the U.S. and that TEPCO even has a Washington, D.C. office.  (Plaintiff's Resp. in Opp'n 37, ECF No. 59).  Plaintiffs downplay the inconvenience of seeking deposition or trial testimony from witnesses residing in Japan, arguing that these procedural obstacles will primarily affect Plaintiffs, not TEPCO.

The presence of numerous non-party witnesses in Japan weighs in favor of dismissal.  The difficulty of accessing these witnesses will affect both parties and, in any case, the principal consideration is the convenience of the witnesses.  Plaintiffs' residence in the U.S. and distance from Japan favors retaining the case.  However, plaintiff's testimony will likely play a minimal role in the initial, critical stages of the proceeding and would be more important during the damages portion of trial.  Overall, the Court finds that this factor is neutral.  Plaintiffs all reside in the U.S. and TEPCO's witness mostly reside in Japan.  Each side has established that it would be inconvenient for them to conduct proceedings in the opposite country.  However, the Court dos not find it this factor to clearly weigh in favor of one side or the other.

*(ii)    Forum's Convenience to the Litigants*

TEPCO does not separately address this factor in its motion to dismiss.  Plaintiffs maintain that their choice of forum is entitled to substantial deference.  (Plaintiff's Resp. in Opp'n 39, ECF No. 59).  Plaintiffs argue that it would be "simply impossible" for them to pursue their cases in Japan.  (*Id.* at 40.)  They attach numerous declarations to their opposition detailing their "radiation related injuries," which they claim would prevent them from traveling to Japan at all.  (*Id.* at 40–44.)  On the other hand,

1  Plaintiffs argue, TEPCO has a long history of doing business in the U.S. and would not
2  be inconvenienced by litigating in a U.S. forum.

3      This factor strongly favors retaining jurisdiction in this forum.  Plaintiffs would
4  be comparatively disadvantaged if they were required to file suit in Japan and likely
5  would not proceed with their claims.  The comparative hardship for Plaintiffs is much
6  greater than it would be for TEPCO given the alleged medical conditions and ability
7  to travel. On the other hand, TEPCO could necessarily defend itself in this forum, albeit
8  at a significant cost.

9      *(iii)    Access to the Physical Evidence and Other Sources of Proof*

10     TEPCO contends that the critical documents that will be needed in this suit are
11 nearly all located in Japan.  (Mot. to Dismiss. 44, ECF No. 55.)  Although TEPCO
12 concedes that the U.S. Navy may have some important documents, TEPCO argues that
13 the Navy is unlikely to disclose those documents in either forum.  (*Id.* at 45.)
14 Additionally, TEPCO argues that information from the Japanese government may be
15 necessary to adjudicate Plaintiffs' claims and that the Japanese government may refuse
16 to disclose this information or make witnesses available in a U.S. court. (*Id.* at 46–47.)
17 TEPCO contends that with respect to documents outside of TEPCO's possession and
18 located in Japan, a U.S. forum could not obtain them, even by letters rogatory, since
19 Japanese judges have no authority to compel document production for foreign
20 litigation.

21     Plaintiffs insist that the key inquiry is which forum will facilitate access to
22 documents, rather than where the documents themselves are located. (Plaintiff's Resp.
23 in Opp'n 45, ECF No. 59). Plaintiffs argue that TEPCO will be required to produce
24 documents in its possession and control if this suit proceeds in this Court, such that
25 access to documents does not favor a Japanese forum.  (*Id.*)  This is especially true
26 given the prevalence of electronic documents and current technology.  (*Id.* at 45–46.)
27 Moreover, Plaintiffs claim that there is no evidence indicating that TEPCO will have
28 difficulty obtaining documents held by the Japanese Government or by other non-

parties. (*Id.* at 46.) And, "Plaintiffs have no intention to compel documents from the Japanese government." (*Id.*) Plaintiffs maintain that TEPCO cannot meet its high burden of proving that the current forum is inadequate by relying on mere speculation.

The Court finds that this factor is neutral. While this suit arises from a nuclear incident at the FNPP and most of the operative facts took place in Japan, many of the obstacles TEPCO identifies would be present no matter where the litigation takes place. It is true that because TEPCO is subject to personal jurisdiction in the Southern District, it would be required to turn over all of the documents in its possession. These documents would undoubtedly be the most important source of information in this litigation and would be available in the District Court. Although the majority of the relevant documents and physical proof remain in Japan, TEPCO has not satisfied its burden of proving that litigation in California would be oppressive or vexing.

### (iv)   Whether Unwilling Witnesses Can Be Compelled to Testify

TEPCO argues that U.S. courts have no ability to compel testimony from unwilling non-party witnesses located in Japan, such as Japanese Government officials, former TEPCO officers, and other potential witnesses. TEPCO's argument is that many witnesses, which might be willing to testify in a Japanese court, would not do so in a U.S. court. Further, what little could be done by way of letters rogatory would be burdensome and expensive compared to the summary procedures available in Japan. According to TEPCO, this means that critical witnesses will be unavailable in the U.S. forum, indicating that a Japanese forum is highly preferable to a fair and unbiased determination of this action. Plaintiffs argue that there is nothing to suggest that Japanese Government officials or former TEPCO directors and employees would be unwilling to testify or to cooperate with this litigation.

The Court agrees with TEPCO that the difficulties in obtaining testimony from non-party witnesses located in Japan, and outside of TEPCO's control, weigh in favor of a Japanese forum. Plaintiffs err in continuing to argue that these challenges are not relevant to TEPCO's ability to present a defense. As these witnesses can be

1  conveniently accessed in a Japanese forum, but can be accessed only with difficulty,
2  if at all, in this Court, this factor favors dismissal.

3          (v)     The Cost of Bringing Witnesses to Trial

4          TEPCO contends that the presence of witnesses and evidence in Japan would
5  make a trial in this Court very costly, requiring significant travel expenses for TEPCO
6  employees to attend trial and for TEPCO's U.S. counsel to conduct depositions of non-
7  party witnesses at the U.S. Embassy in Japan.  Accordingly, TEPCO argues that this
8  factor favors dismissal.

9          Plaintiffs maintain, on the other hand, that they would incur several hundred
10  thousand dollars in travel expenses in order to try this case in Japan.  Plaintiffs claim
11  that they would have to fly all 80 individual named plaintiffs, at least 40 treating
12  physicians, and many expert damages witnesses to Japan, far outweighing any expenses
13  that TEPCO might incur to fly a few officers or employees to the U.S.  (Plaintiffs'
14  Resp. in Opp'n 48, ECF No. 59).  Travel to Japan would take a "physical and
15  psychological toll" on Plaintiffs, as well as a financial one, whereas Plaintiffs claim
16  that TEPCO is a "multi-billion dollar company" that can easily afford the costs of
17  defending itself in this forum. (Id.)

18          Because of the nature of international litigation, each side would incur expenses
19  related to traveling and procuring witnesses in either forum.  Although Plaintiffs might
20  incur additional expenses to retain counsel in Japan, it is not at all clear that they would
21  be required to travel to Japan to testify if it is inconvenient for them to do so, especially
22  in the initial stages of litigation. (see Supp. Decl. of Prof. Yasuhei Taniguchi ¶¶ 6,
23  13–17, ECF No. 43-1) (detailing procedures for procuring testimony from willing
24  witnesses overseas who cannot travel to Japan).  However, any willing witnesses in
25  Japan would almost certainly have to travel to the U.S. for trial or provide pre-trial
26  depositions through the expensive and cumbersome process specified by Japanese law.
27  However, the Japanese deposition process is feasible and is not a bar for litigating in
28  the District Court. It is also unlikely that Plaintiffs would be required to procure the

1  number of witnesses and experts they detail in their Opposition.  Therefore, the Court

2  finds this factor to weigh only slightly in favor of dismissing the case.

3       *(vi)    Enforceability of the Judgment*

4       TEPCO is headquartered in Tokyo, Japan and also has significant assets in the

5  U.S.  Accordingly, any judgment rendered against TEPCO either in Japan or in the U.S.

6  would be enforceable.  This factor is therefore neutral.

7       *(vii)   Other Practical Problems*

8       TEPCO argues that translation costs would be high if this case is tried in the

9  U.S., as most of the witnesses associated with TEPCO or with the Japanese

10  Government would have to testify in Japanese and most of the relevant documents will

11  also be in Japanese.  (Mot. to Dismiss. 51, ECF No. 55.)  Plaintiffs respond that

12  translation to English would be necessary in a Japanese forum in order to "apprise and

13  include" Plaintiffs, and that testimony from U.S. military witnesses would also have to

14  be translated into Japanese.  (Plaintiffs' Resp. in Opp'n 50, ECF No. 59).  Plaintiffs

15  insist that translation costs are "an expected cost of litigating in a global world."  (*Id.*)

16       This factor is neutral.  The available documents and testimony pertaining to

17  liability are all likely to be in Japanese, while Plaintiffs will have English-language

18  materials and witnesses as well.  The translation costs may be higher in this forum,

19  however the Court does not find this to be a decisive factor in light of the necessary

20  costs of translation in either forum.

21  **C.    Balancing of Public Interests**

22       TEPCO contends that the relevant public interest factors also favor dismissal.

23  The Court considers each in turn.

24       *(i)    Local Interest in the Lawsuit*

25       TEPCO argues that Japan has the strongest interest in this dispute because the

26  Japanese Government has enacted several measures to provide compensation to those

27  harmed by the FNPP incident.  (Mot. to Dismiss. 52–53, ECF No. 55.)  Moreover,

28  TEPCO observes that the Japanese Government, through its instrumentality, the

Nuclear Damage Liability Facilitation Fund, is now TEPCO's principal shareholder and has committed billions of dollars in aid to TEPCO to ensure that it is able to pay out compensation to those affected by the FNPP incident.   (*Id.* at 53–54.)   TEPCO emphasizes that the Japanese Government has been "heavily involved in the overall response to the earthquake, the tsunami, and the FNPP accident," such that no interest in this forum can "compare to the singular importance of the FNPP accident to Japan and its Government."  (*Id.* at 54–55.)

Plaintiffs maintain that the U.S. has a strong interest in seeing that its service members are compensated for their injuries. (Plaintiffs' Resp. in Opp'n 52, ECF No. 59).  In particular, because many of the Plaintiffs reside in the Southern District, this Court in particular has a strong interest in providing resolution for them.  Plaintiffs point to the myriad institutions dedicated to caring for military veterans as evidence that the U.S. is interested in ensuring that "those who have served . . . receive benefits for [their] service."  (*Id.*) Plaintiffs deny that Japan's efforts to centralize compensation for victims of the tsunami support dismissal because the allegations of negligence distinguish Plaintiffs from other Japanese citizens who were merely harmed by a natural catastrophe.  (*Id.*)

Japan has an interest in adjudicating claims arising from the March 11, 2011 earthquake and tsunami that devastated large swaths of the country as evidenced by Japan's large investment in responding to the disaster.  The U.S. also has a strong interest in seeing that members of the Armed Forces are compensated for their service. Especially as it is the V.A. system and the U.S. taxpayers who will ultimately pay for the injuries to Plaintiffs.  The Court thinks that both countries have a strong interest in this litigation.  This factor slightly favors retaining jurisdiction because of the strong interest in providing compensation for servicemembers and the ultimate costs of medical treatment lying with U.S. taxpayers.

///

///

1    *(ii)    Court's Familiarity with the Governing Law*

2         The parties do not address this factor.  Although TEPCO does not concede the

3    applicability of California law, TEPCO does not suggest at any point that Japanese law

4    would govern the dispute if the Court retained jurisdiction.  In all likelihood, the Court

5    would be applying some version of U.S. law, be it maritime law, federal common law,

6    or California state law.  Accordingly, this factor weighs against dismissal.

7    *(iii)   Remaining Public Interest Factors: Burden on Local Courts and Juries,*

8    *Congestion in the Court, Costs of Resolving a Dispute*

9         The parties hardly touch upon the remaining public interest factors, suggesting

10   that these issues need not substantially affect the Court's inquiry.  Although litigating

11   this case in this forum would add to an already busy docket and would require time and

12   resources to be dedicated to the matter, these factors alone do not justify dismissal.

13   Moreover, litigating in Japan would impose significant costs on the Japanese judicial

14   system.  Accordingly, these factors are neutral.

15   **D.    Summary and Conclusion**

16        In sum, although Japan is an adequate alternative forum, the balance of the

17   private and public interest factors suggests that it would be more convenient for the

18   parties  to litigate in a U.S. court.  Accordingly, the Court **DENIES** TEPCO's motion

19   to dismiss on this basis.

20                                   **INTERNATIONAL COMITY**

21        Lastly, TEPCO argues that the doctrine of international comity warrants

22   dismissal of this action in favor of a Japanese forum.

23   **1.    Legal Standard**

24        International comity is an abstention doctrine that permits federal courts to defer

25   to the judgment of an alternative forum where the issues to be resolved are "entangled

26   in international relations."  *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227,

27   1237 (11th Cir. 2004) (quoting *In re Maxwell Comm'n Corp.*, 93 F.3d 1036, 1047 (2d

28   Cir. 1996)).  Adjudicatory comity can be viewed as a "discretionary act of deference

by a national court to decline to exercise jurisdiction in a case properly adjudicated in a foreign state." *Mujica v. AirScan, Inc.*, 771 F.3d 580, 599 (9th Cir. 2014).  Courts consider whether to dismiss or stay the action based on "the strength of the United States' interest in using a foreign forum, the strength of the foreign governments' interests, and the adequacy of the alternative forum."  *Id.* at 603 (citing *Ungaro-Banages*, 379 F.3d at 1238).

In assessing the interests of the respective countries, courts should consider five nonexclusive factors:

> (1) the location of the conduct in question, (2) the nationality of the parties, (3) the character of the conduct in question, (4) foreign policy interests, and (5) any public policy interests.

*Id.* at 604, 607.  With respect to the third element—adequacy of the foreign forum—the focus should be on procedural fairness in the forum and whether the opponent has presented specific evidence of significant inadequacy.  *Id.* at 607–08.

**2.    Analysis**

TEPCO contends that the interests of the U.S., Japan, and the international community support consolidating Plaintiffs' claims in Japan in light of the Japanese Government's comprehensive scheme for providing relief to individuals harmed by the FNPP incident.

***A.    United States and Japanese Interests***

*(i)    Location of the Conduct in Question and Nationality of the Parties*

Courts have "afforded far less weight, for comity purposes, to U.S. or state interests when the activity at issue occurred abroad."  *Id.* at 605 (citing cases involving foreign plaintiffs).  The court must consider "whether any of the Parties are United States citizens or nationals, and also whether they are citizens of the relevant state."  *Id.*  This factor, together with the location of the conduct, determines the overall strength of the connection to the U.S. and the justification for adjudicating the matter in U.S. courts.  *Id.* at 605–06.  The Court affords the most weight to these factors.

Although TEPCO's allegedly negligent actions took place in Japan, the Court finds that the overall strength of the connection to the U.S. weighs heavily in favor of maintaining the case in the Southern District.

The Plaintiffs, as U.S. citizens, have an undeniably strong connection to the U.S. As U.S. citizens and servicemembers, Plaintiffs argue that they expect and should receive full protection and care under the laws of the United States.   (Opp'n Reconsideration 14, ECF No. 84.)  Plaintiffs are United States citizens who allege that they were harmed by TEPCO, and accordingly, the U.S. has an interest in maintaining the suit in this country and providing a forum for Plaintiffs to seek relief. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985).

While TEPCO is correct that each country has an interest in adjudicating the case based on the citizenship of the Parties,[7] TEPCO is a large corporation with a significant physical presence in the United States and is registered as a foreign corporation in California.  Whereas, Plaintiffs are individuals who have no connection to Japan, many suffering from alleged illnesses that might prohibit international travel.  It would be far more reasonable for TEPCO to litigate in the U.S. than for Plaintiffs to litigate in Japan.  In light of the Parties' connections to the U.S. and the global nature of the harm, the Court finds a strong justification for retaining the case in the Southern District. Furthermore, California also has a strong interest in adjudicating Plaintiffs' claims as many of the Plaintiffs are California residents.

   *(ii)   Character of Conduct in Question*

In evaluating the nature of the conduct in question, the court should ask whether the conduct is "civil or criminal; whether it sounds in tort, contract, or property; and whether the conduct is a regulatory violation or is a violation of international norms against torture, war crimes, or slavery." *Mujica*, 771 F.3d at 606. These "inquiries may inform our judgment of the importance of the issue" to the United States, California,

---

[7]TEPCO argues that this factor is neutral because TEPCO is a Japanese corporation and Plaintiffs are U.S. citizens.  (Mot. Reconsideration 12, ECF No. 73-1.)

1   or Japan, because "[t]he closer the connection between the conduct and the core
2   prerogatives of the sovereign, the stronger that sovereign's interest."  *Id.*

3       TEPCO argues that the alleged conduct is not a human rights violation nor aimed
4   at harming American commerce.  (Mot. Reconsideration 13, ECF No. 73-1.) Further,
5   TEPCO contends that the negligence and strict liability claims do not implicate the core
6   prerogatives of the U.S., rather the nature of the claims implicate Japan's "prerogative
7   to regulate its domestic utilities and power plants." (*Id.*)  TEPCO argues that Japan has
8   shown its prerogative by addressing the situation at the FNPP and establishing a
9   centralized system for prompt resolution of damage claims. (*Id.*)  In contrast, Plaintiffs
10  argue that although the meltdown had a catastrophic impact on Japan, the impact of
11  TEPCO's negligence did not remain in Japan.  (Opp'n Reconsideration 15, ECF No.
12  84.) Plaintiffs argue that the U.S. has a strong interest in regulating the safety of nuclear
13  power facilities domestically and internationally, and that the U.S. is also the largest
14  governmental provider of humanitarian aid in the world. (*Id.* at 16.)

15      This is a civil tort case regarding a Japanese company's negligence and personal
16  injury to U.S. Plaintiffs.  The Court agrees with TEPCO that Japan has an interest in
17  regulating its nuclear utilities, compensating those injured by one of its domestic
18  corporations, and that the effects of the FNPP meltdown were more significant in Japan
19  where the majority of damage occurred.  However, the U.S. also has an interest in the
20  safe operation of nuclear power plants around the world, especially when they endanger
21  U.S. citizens.  This factor is not particularly helpful to the Court's analysis and, on
22  balance, is fairly neutral.

23      *(iii)    Foreign Policy Interests*

24      The Court should also take cognizance of both the U.S. and Japanese foreign
25  policy interests. *Mujica*, 771 F.3d at 606. A Court "must respect the Constitution's
26  commitment of the foreign affairs authority to the political branches." *Id.*  U.S.
27  interests weigh against hearing cases that would be harmful to U.S. foreign policy. *Id.*

28

TEPCO argues that the U.S.'s ratification of the Convention on Supplementary Compensation for Nuclear Damage (the "CSCND" or "Convention") reflects a long-expressed policy that "all claims arising from a nuclear incident are handled in a comprehensive and coordinated fashion by centralizing all such claims in the courts of the country where the nuclear incident occurred." (Mot. to Dismiss 57–58, ECF No. 55.)  The CSCND, which was ratified by the U.S. in 2006, provides that "jurisdiction over actions concerning nuclear damage from a nuclear incident shall lie only with the courts of the Contracting Party within which the nuclear incident occurs." (*Id.* at 58.)

According to TEPCO, both the CSCND and the comments of Executive officials regarding the Convention make clear that the U.S. has an interest in seeing that claims for damages from a nuclear incident are consolidated in the country where the incident occurred, even if that means that U.S citizens are diverted to a foreign court system. (*Id.* at 58–59.) TEPCO also contends that just recently, the Japanese Diet approved the CSCND.  (Mot. Reconsideration 14, ECF No. 73-1.)  Accordingly, because the "exclusive territoriality principle" is now an official element of U.S.-Japanese foreign relations policy, TEPCO argues that the Court must defer to that policy judgment. (*Id.*) TEPCO concedes that the CSCND itself may not require dismissal, but argues that it reflects a policy judgment independent of the treaty. (Reply Reconsideration 7, ECF No. 90.)

Although TEPCO points to the CSCND as evidence of U.S. foreign policy interest in support of declining jurisdiction, the Court gives it minimal weight. First, TEPCO does not provide any evidence that the Court's jurisdiction of this lawsuit would in any way harm U.S.-Japanese foreign relations. (RT 16–17, ECF No. 99.) In response to the Court's inquiry during oral argument, TEPCO discussed that a global regime for resolving nuclear civil litigation would have many benefits for the U.S., including: facilitating efforts by U.S. agencies to use nuclear suppliers overseas, allowing nuclear suppliers to compete for the growing market in other countries, increasing jobs in the U.S., helping the balance of payments, helping the U.S. nuclear

infrastructure, allowing U.S. nuclear suppliers to be leaders in technology, and providing incentives for students to go into nuclear technology. (*Id.* at 16.)  In order to achieve these goals under the CSCND, TEPCO stated that courts where the incident occurred must have exclusive jurisdiction. (*Id.* at 16–17; Collins Decl. 26, ECF No. 90-3.)

Although TEPCO explains the policy goals behind the CSCND and notes the importance of "respect for the courts of another nation," the Court is not persuaded that hearing this case would be harmful to U.S. foreign policy.  This is especially so because the CSCND has not yet been ratified. (RT 15, ECF No. 99.)  Further, the Court gives less weight to this policy of limiting liability because the supplemental remedy written into the treaty is not yet available to these Plaintiffs. (*See* Collins Decl. 30, ECF No. 90-3 (Under the CSCND, "there will be substantial compensation, and . . . rules that allow victims to get compensation quickly and without litigating questions like fault or negligence").)

TEPCO contends that if the Court harbors doubts about whether the strength of the U.S. interests favor dismissal, it would be appropriate to solicit the views of the U.S. Department of State. (Mot. Reconsideration 17, ECF No. 73-1 (citing *Mujica*, 771 F.3d at 610, 612.).)  The Court notes that neither the Japanese nor the U.S. government has expressed interest in the location of this litigation.  *See Mujica*, 771 F.3d at 611. At this time, in its discretion, the Court will not solicit the views of the U.S. government because it would cause unnecessary delay and TEPCO's arguments provide adequate information on the issue.

*(iv)    Public Policy Interests*

Lastly, the Court may also weigh U.S., California, and Japanese public policy interests. *Mujica*, 771 F.3d at 607.  Courts will respect differences in foreign practices so long as the variances do not violate strongly held state or federal public policy.  *Id.*

TEPCO claims that allowing this lawsuit to be heard in a U.S. court is inconsistent with Japanese public policy interests. (Mot. Reconsideration 15, ECF No.

73-1.)  Further, TEPCO states that if the Court does consider the countries' respective financial interests, Japan has a stronger financial interest because a majority of TEPCO's shares are now owned by the Nuclear Damage Liability and Decommissioning Facilitation Corporation ("NDF"), which is an agency or instrumentality of the Japanese government. (Mot. Reconsideration 16, ECF No. 73-1.)  The Japanese government has funded, through the issuance of bonds to the NDF, $37.8 billion in aid to compensate for nuclear damage.  (*Id.*)

Plaintiffs contend that without relief, Plaintiffs, the U.S., and U.S. taxpayers would ultimately bear the burden of paying for Plaintiffs' care.  Plaintiffs also argue that TEPCO has not been forthcoming about the FNPP meltdown, such that dismissal in deference to Japan's interests would be improper.  Further, Plaintiffs argue that the U.S. has a strong public policy in favor of nuclear safety.  (Opp'n Reconsideration 20, ECF No. 84.)   Plaintiffs note that in furtherance of this policy, the U.S., both domestically and internationally, has signed and ratified a number of conventions. (*Id.*) Plaintiff states that these conventions set out protocols and standards; however there is neither regulatory oversight nor means of enforcement. (*Id.*) Next, Plaintiff contends that it has long been public policy to award punitive damages as a means of deterring private corporations from recklessly endangering the public.  (*Id.* at 21.)  Plaintiffs argue that in light of the international concerns and the U.S.'s dedication to providing humanitarian assistance, public policy favors retaining the case.  (*Id.*)  Lastly, to the extent that jurisdiction is appropriate; Plaintiffs should be permitted to bring their claims in the forum of their choice.

On balance, the Court finds that both countries have public policy interests in litigating the case and that neither side makes especially compelling arguments with respect to this factor.  Accordingly, the Court finds that the public policy interests of the U.S. and Japan are neutral and do not weigh in favor of dismissal.

///

///

*B.*     *Adequacy of the Japanese Forum*

The standards for evaluating the adequacy of a forum are the same under the international comity doctrine as they are under *forum non conveniens* analysis.  *See Jota v. Texaco Co.*, 157 F.3d 153, 160 (2d Cir. 1998).  Neither party adds any argument regarding this factor.  As discussed above, the Court finds Japan to be an adequate alternative forum.

*C.*     *Summary and Conclusion*

Accordingly, the Court finds that both the U.S. and Japan have an interest in having this suit heard within their forum.  TEPCO has pointed to several reasons supporting dismissal of the present claims; and the Court concedes that some of TEPCO's arguments are persuasive.  However, the reasons for maintaining jurisdiction of this case are more compelling, namely the Parties strong connection with this forum.  The Court finds that the United States has a strong interest in hearing this case and declines to exercise its discretion in dismissing this case under the doctrine of international comity.

### III.  PLAINTIFFS' MOTION TO AMEND

Plaintiffs seek leave to amend the SAC to add four Doe Defendants: General Electric, EBASCO, Toshiba, and Hitachi.  Plaintiffs also wish to add additional servicemember plaintiffs.  Plaintiffs assert that they only recently "discovered the nature and extent of conduct of the Doe Defendants giving rise to liability and causation of Plaintiffs' harms, damages, injuries and losses." (Mot. to File Am. Compl. 3, ECF No. 65.)  Plaintiffs allege that each of the four Doe Defendants was responsible in part for the design, procurement, maintenance, management, or servicing of the FNPP.  (*Id.*)

**1.     Legal Standard**

Leave to amend should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  But while the rule should be interpreted extremely liberally, leave should

not be granted automatically. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990). The opposing party bears the burden of demonstrating why denial is necessary. A trial court may deny a motion for leave to amend based on various factors, including bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the party has previously amended. *Foman v. Davis*, 371 U.S. 178 (1962).

**2.      Analysis**

TEPCO argues that the Court should deny Plaintiffs' Motion to Amend SAC as futile because of the previously discussed justiciability issue. However, as the Court finds that the SAC is not barred by the political question doctrine, this argument is not persuasive. TEPCO does not address the other *Foman* factors. The burden fell on TEPCO to demonstrate that leave to amend would be inappropriate. Because TEPCO failed to meet that burden and did not establish the presence of any of the five *Foman* factors, the Court finds no reason to deny leave to amend. However, the Court does not accept as filed the third amended complaint, attached as Exhibit A. Rather, Plaintiffs shall amend in light of the Court's rulings in this Order.


## IV.  CERTIFICATION FOR INTERLOCUTORY APPEAL

TEPCO also requests that if the Court does not reconsider its Order and dismiss the case, then the Court should certify the Order (or an Amended Order) for interlocutory appeal.

**1.      Legal Standard**

Pursuant to 28 U.S.C. § 1292(b):

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order.

12cv3032

1    The Ninth Circuit cautions that district courts should only certify an interlocutory
2    appeal in "rare circumstances" because "[s]ection 1292(b) is a departure from the
3    normal rule that only final judgments are appealable, and therefore must be construed
4    narrowly." *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002).
5    Thus, certification pursuant to section 1292(b) is appropriate "only in exceptional
6    situations." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982) (citing
7    *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966) (per curiam); *Milbert v.*
8    *Bison Labs.*, 260 F.2d 431, 433–35 (3d Cir. 1958)). The party seeking the interlocutory
9    appeal bears the burden of establishing that the requirements for certification are met.
10   *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).

11   **2.   Analysis**

12   *A.   Controlling Question of Law*

13   "To meet the requirement that the proposed interlocutory appeal raises a
14   controlling question of law, the moving party must show 'that resolution of the issue
15   on appeal could materially affect the outcome of litigation in the district court.'"
16   *Hawaii* ex rel. *Louie v. JP Morgan Chase & Co.*, 921 F. Supp. 2d 1059, 1065 (D. Haw.
17   2013) (quoting *In re Cement Antitrust Litig.*, 673 F.2d at 1026). "Controlling questions
18   of law include 'determination[s] of who are necessary and proper parties, whether a
19   court to which a cause has been transferred has jurisdiction, or whether state or federal
20   law should be applied.'" *Id.*

21   The Court **FINDS** a controlling question of law exists here. If the Ninth Circuit
22   were to find that TEPCO's causation analysis does not invoke a political question—as
23   this Court decided in its October 28, 2014 Order—then this Court would maintain
24   jurisdiction. If, however, the Ninth Circuit were to hold that the Court lacks subject
25   matter jurisdiction, this Court could no longer hear the case as against TEPCO.
26   Further, if the Ninth Circuit were to find the Firefighter's Rule was an absolute bar to
27   TEPCO's liability, the case would be terminated as against TEPCO. Accordingly, the
28   Ninth Circuit's resolution of this issue "could materially affect the outcome of [this]

1    litigation" because it would affect whether the Court has jurisdiction.   Thus, a
2    controlling question of law is at issue.

3    **B.    *Substantial Ground for Difference of Opinion***

4        There is a "substantial ground for difference of opinion" if "there is a genuine
5    dispute over the question of law that is the subject of the appeal."   *In re Cement*
6    *Antitrust Litig.*, 673 F.2d at 1026.   Such a dispute exists, for example, if the circuits are
7    in disagreement and the court of appeals in which the district court sits has not decided
8    the issue, the issue involves complicated questions of foreign law, or the issue is a
9    novel and difficult one of first impression.   *Couch*, 611 F.3d at 633.   "However, just
10   because a court is the first to rule on a particular question or just because counsel
11   contends that one precedent rather than another is controlling does not mean" that
12   sufficient grounds exist.   *Id.*

13       TEPCO argues that there are substantial grounds for a difference of opinion as
14   to application of the political question doctrine and the firefighter's rule.   (Mot.
15   Reconsideration 24, ECF No. 73-1.)   TEPCO points out that the Court found these
16   issues to be close and difficult based on the tentative ruling which was altered in the
17   ultimate Order.   (*Id.*) Plaintiffs, on the other hand, argue that the issues do not elicit a
18   substantial ground for difference of opinion.   (Opp'n Reconsideration 30, ECF No. 84.)

19       The Court **FINDS** that there is a substantial ground for difference of opinion on
20   this question due to the novelty and complexity of the issue.

21   **C.    *Materially Advances the Ultimate Termination of the Litigation***

22       Certification "materially advances the ultimate termination of the litigation"
23   when "allowing an interlocutory appeal would avoid protracted and expensive
24   litigation," saving both the court and the parties "unnecessary trouble and expense."
25   *In re Cement Antitrust Litig.*, 673 F.2d at 1026; *Hawaii* ex rel. *Louie*, 921 F. Supp at
26   1067 (quoting *United States v. Adam Bros. Farming, Inc.*, 369 F. Supp. 2d 1180, 1182
27   (C.D. Cal. 2004)).

28

Given the potential burdens of litigating the transnational and novel claims presented in this extraordinarily large and complex litigation, TEPCO argues that the Court should seek guidance from the Ninth Circuit now as to threshold legal issues which could end the case. (Mot. Reconsideration 28, ECF No. 73-1.) Plaintiff, on the other hand, argues that an interlocutory appeal would delay the litigation and unduly impact Plaintiffs who are dying and battling cancers and other illnesses allegedly caused by TEPCO's negligence. (Opp'n Reconsideration 30, ECF No. 84.)

The Court **FINDS** that resolution of this issue would materially advance the ultimate termination of this litigation. If the lawsuit proceeded and then TEPCO successfully appealed this Court's determination regarding the lack of subject matter jurisdiction or the firefighter's rule, much time and expense would be wasted by all of the parties, Plaintiffs included.

### D.    Conclusion

For the reasons stated above, the Court **GRANTS** TEPCO's Motion for Certification of Interlocutory Appeal. The Court has concerns as to the wording of the issues proposed by TEPCO in its Motion. Therefore the Parties shall take this Amended Order into account and confer and file a joint statement of the issues to be certified on appeal on or before June 26, 2015.

## CONCLUSION

1.    The Court **GRANTS** TEPCO's Motion for Reconsideration.

2.    The Court **GRANTS** TEPCO's motion to dismiss Plaintiffs' strict liability for design defect and IIED claims **WITH PREJUDICE**. Additionally, the Court **GRANTS** TEPCO's motion to dismiss the SAC's claims on behalf of "Doe" plaintiffs. Plaintiffs' other claims survive.

3.    The Court **DENIES** TEPCO's Motion to Dismiss under the doctrines of *forum non conveniens* and international comity.

4.    The Court does not disturb its prior Order **GRANTING** Plaintiffs Motion to Amend their SAC. Plaintiffs timely filed an amended pleading.

5.   The Court **GRANTS** TEPCO's Motion for Certification of Interlocutory Appeal. The Court has concerns as to the wording of the issues proposed by TEPCO in its Motion.  Therefore the Parties shall take this Amended Order into account and confer and file a joint statement of the issues to be certified on appeal on or before June 26, 2015.

**IT IS SO ORDERED.**

DATED:  June 11, 2015

_Janis L. Sammartino_
Honorable Janis L. Sammartino
United States District Judge

12cv3032