JOHN R. EDWARDS (N.C. State Bar No. 7706)(*pro hac vice*)
CATHARINE E. EDWARDS (State Bar No. 304137)
EDWARDS KIRBY, LLP
3201 Glenwood Avenue, Suite 100
Raleigh, North Carolina  27612
Telephone:   (919) 780-5400
Facsimile:    (919) 800-3099

CHARLES A. BONNER (State Bar No. 85413)
A. CABRAL BONNER (State Bar No. 247528)
PAUL C. GARNER  (State Bar No. 132524)
LAW OFFICES OF BONNER & BONNER
475 Gate Five Road, Suite 212
Sausalito, California 94965
Telephone:   (415) 331-3070
Facsimile:    (415) 331-2738

Attorneys for Plaintiffs
LINDSAY R. COOPER, *et al*.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDSAY R. COOPER, *et al.*,<br><br>            Plaintiffs,<br><br>vs.<br><br>TOKYO ELECTRIC POWER COMPANY, INC. aka TEPCO, GENERAL ELECTRIC, EBASCO, TOSHIBA, HITACHI and Does 5 through 200, inclusive<br><br>            Defendants. | Case No. 12-CV-3032 JLS JLB<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT TOKYO ELECTRIC POWER COMPANY'S MOTIONS TO DISMISS THIRD AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION, UNDER THE DOCTRINES OF INTERNATIONAL COMITY AND *FORUM NON CONVENIENS*, AND FAILURE TO STATE A CLAIM**<br><br>Judge:  Hon. Janis L. Sammartino<br><br>Date:    [To be set by Court, if needed]<br>Time:    [To be set by Court, if needed]<br>Crtrm:   4A (Schwartz Building)<br>            221 West Broadway<br>            San Diego |

1

# <u>TABLE OF CONTENTS</u>

2   Introduction                                                     1

3   I.     Factual and Procedural Background                    1

II.    Legal Standard                                            3

III.   Argument                                                 4

     A. Defendant TEPCO Has Waived Personal Jurisdiction.      4

         i.  TEPCO Has Manifestly Waived Personal Jurisdiction By
             Actively Litigating It For The Past Five Years—
             To The Ninth Circuit and Back.             5

        ii.  TEPCO Could Have Raised Personal Jurisdiction In An Earlier
            Motion, As The Opinion In *Bristol-Myers* Did Not Establish
            New Law Or Make The Defense Newly Available.      7

             a.  *Bristol-Myers* Did Not Change Personal Jurisdiction Law.   7

             b.  Even If *Bristol-Myers* Had Changed The Law, TEPCO
                Previously Had The Same Grounds For Its Personal Jurisdiction
                Defense That It Has Now.                8

             c.  The Holdings of *Bristol-Myers* Are Inapposite To This Case.   10

     B. This Court Has Personal Jurisdiction Over TEPCO, Pursuant To
       Either Specific Jurisdiction Law Or The Federal Long Arm Statute.   10

         i.  This Court Has Specific Jurisdiction Over TEPCO For The Claims
            Brought By Plaintiffs In This Action.          12

             a.  This Court Has Specific Jurisdiction Over Plaintiffs'
                Claims Because TEPCO Directed Its Gross Negligence
                At U.S. Naval Ships, Which Are United States Territory,
                And Those Ships Came from San Diego.        13

             b.  TEPCO Has Maintained Sufficient Contact With The
                State of California In Advancing Its Energy Business
                Interests To Support Specific Jurisdiction.     17

i

ii. This Court Has Jurisdiction Over TEPCO Pursuant to
Fed. R. Civ. P. 4(k)(2).                                                                 19

C. This Case Should Not Be Dismissed Based On International Comity
Or *Forum Non Conveniens*, As Nothing Has Changed Since the Ninth
Circuit Decided That Neither Warrant Dismissal.                              23

   i.   The Choice of Law Question Does Not Weigh Heavily In
Either Analysis, As It Has Not Been Made Yet And Because
This Court Is Able To Apply Any Potentially Governing Law.      23

      a.  Choice-of-Law Is Not Ripe For Determination.              24

      b.  In This Case, The Choice Of Law Is Unlikely To
Impact The Forum Non Conveniens Or International
Comity Analyses.                                                              25

   ii.   The Doctrine Of *Forum Non Conveniens* Still Does Not Apply
To This Case.                                                                        28

      a.  Private Interest Factors                                              29

      b.  Public Interest Factors                                               33

   iii.   This Case Still Should Not Be Dismissed Under The Doctrine
Of International Comity.                                                        34

D. Plaintiffs Have Sufficiently Pled Their Claims.                            41

   i.   Plaintiffs Have Sufficiently Pled Their Class Claims,
And TEPCO Has Raised Issues More Suited For When
Class Certification Is Briefed and Considered                       42

   ii.   Plaintiffs Have Sufficiently Pled Their Personal Injury Claims.   42

   iii.   Manuel Leslie Has Properly Pled His Wrongful Death
and Survival Claims, As An Affidavit Is Only Required
in State Court.                                                                     43

MEMORANDUM IN OPPOSITION TO DEFT. TEPCO'S MOTIONS TO DISMISS THIRD AMENDED COMPLAINT

17-cv-1671 JLS JLB

iv.   Plaintiffs Appropriately Bring Their Claims for
       Loss of Consortium, For Those Plaintiffs Who
       Are Spouses of the Injured.                                    44

IV.   Conclusion                                                      44

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Abrams Shell v. Shell Oil Co.*,
165 F. Supp. 2d 1096 (C.D. Cal. 2001) ............................................................. 9

*Altmann v. Austria*,
317 F.3d 954 (9th Cir.2002) ............................................................. 30, 31

*Alvarez v. NBTY, Inc.*,
No. 17-CV-00567-BAS-BGS, 2017 WL 6059159(S.D. Cal. Dec. 6, 2017) .............. 8, 9

*Am. Ass'n of Naturopathic Physicians v. Hayhurst*,
227 F.3d 1104 (9th Cir. 2000) ............................................................. 5

*Arno v. Club Med Boutique, Inc.*,
134 F.3d 1424 (9th Cir. 1998) ............................................................. 26

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................. 4, 41

*Baris v. Sulpicio Lines, Inc.*,
932 F.2d 1540 (5th Cir. 1991) ............................................................. 28

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................. 4, 41

*Boston Telecommunications Grp., Inc. v. Deloitte Touche Tohmatsu*,
249 F. App'x 534 (9th Cir. 2007) ............................................................. 4

*Brazil v. Dole Food Co.*,
No. 12-CV-01831-LHK, 2013 WL 5312418 (N.D. Cal. Sept. 23, 2013) .............. 24

*Bristol-Myers Squibb Co. v. Superior Court of California*,
137 S.Ct. 1773 (2017) ............................................................. *passim*

*Bruton v. Gerber Prod. Co.*,
No. 12–cv–2412, 2014 WL 172111 (N.D.Cal. Jan.15, 2014) .............. 24

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ............................................................. 12, 19

*Chatman-Bey v. Thornburgh*,
864 F.2d 804, 813 (D.C. Cir. 1988) .......................................................... 7

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*
856 F.3d 605 (9th Cir. 2017) .................................................................... 4

*CollegeSource, Inc. v. AcademyOne, Inc.*,
653 F.3d 1066, 1073 (9th Cir. 2011) ..................................................... 4, 12

*Cooper, et al v. Tokyo Electric Power Company, Inc., et al.*,
3:12-cv-3032-JLS-JLB (S.D.Cal. Dec. 21, 2012) ............................... *passim*

*Cooper v. Tokyo Elec. Power Co., Inc.*,
860 F.3d 1193 (9th Cir. 2017) ............................................................ *passim*

*Czuchaj v. Conair Corp.*,
No. 13-CV-1901-BEN RBB, 2014 WL 1664235 (S.D. Cal. Apr. 18, 2014) ....... 24

*Dalkilic v. Titan Corp.*,
516 F. Supp. 2d 1177 (S.D. Cal. 2007) ..................................................... 26

*Dawkins v. White Products Corp. of Middleville, Michigan*,
443 F.2d 589 (5th Cir. 1971) .................................................................. 16

*Dean v. Colgate-Palmolive Co.*,
No. EDCV 15–0107 JGB, 2015 WL 3999313 (C.D. Cal. June 17, 2015) .......... 24

*Dole Food Co., Inc. v. Watts*,
303 F.3d 1104 (9th Cir. 2002) ................................................................ 28

*Fireman's Fund Ins. Co. v. Murray*,
1992 U.S. App. LEXIS 15448 (9th Cir. 1992) ............................................ 26

*Frenzel v. AliphCom*,
76 F. Supp. 3d 999 (N.D. Cal. 2014) ....................................................... 24

*Gilmore v. Palestinian Interim Self-Gov't Auth.*,
843 F.3d 958 (D.C. Cir. 2016) ................................................................. 7

*Glater v. Eli Lilly & Co.*,
712 F.2d 735 (1st Cir. 1983) .................................................................... 7

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ........................................................................................... 8

*Greatship (India) Ltd. v. Marine Logistics Sols. (Marsol) LLC*,
No. 11 CIV. 420 RJH, 2012 WL 204102 (S.D.N.Y. Jan. 24, 2012) ................... 20

*Hamilton v. Atlas Turner, Inc.*,
197 F.3d 58 (2d Cir. 1999) ................................................................................ 6

*Hanna v. Plumer*,
380 U.S. 460 (1965) .......................................................................................... 44

*Hartford Fire Ins. Co. v. California*,
509 U.S. 764 (1993) .......................................................................................... 35

*Hawknet, Ltd. v. Overseas Shipping Agencies*,
590 F.3d 87 (2d Cir. 2009) ............................................................................... 9

*Helfant v. Kugler*
500 F.2d 1188, 1201 (3d Cir. 1974 ) ................................................................. 40

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408, 414 (1984) .................................................................................. 12

*Hellenic Lines, Ltd. v. Rhoditas*,
398 U.S. 306 (1970) .......................................................................................... 16

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
485 F.3d 450 (9th Cir. 2007) ............................................................................ 20

*Holzager v. Valley Hospital*,
646 F.2d 792 (2d Cir. 1981) ............................................................................. 7

*In re Atossa Genetics Inc Sec. Litig.*,
868 F.3d 784 (9th Cir. 2017) ............................................................................ 4

*In re Baycol Prods. Litig.*,
616 F.3d 778 (8th Cir. 2010) ............................................................................ 44

*In re Murchison*,

MEMORANDUM IN OPPOSITION TO DEFT. TEPCO'S MOTIONS TO DISMISS THIRD AMENDED COMPLAINT

349 U.S. 133 (1955)                                                                                     40

*In re Morning Song Bird Food Litig.*,
No. 12CV01592 JAH-AGS, 2018 WL 1382746 (S.D. Cal. Mar. 19, 2018)        8, 9

*In re TMI Gen. Pub. Utils. Corp.*,
67 F.3d 1103 (3rd Cir. 1995)                                                          35

*Insurance Corp. of Ireland Ltd. v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982)                                                                              4

*International Shoe Co. v. Washington*,
326 U.S. 310 (1945)                                                                            12

*J. McIntyre Mach., Ltd. v. Nicastro*,
564 U.S. 873 (2011)                                                                            11

*Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770 (1984)                                                                            12

*Kroger Company v. Dornbos*,
408 F.2d 813 (6th Cir. 1969)                                                               16

*L.A. Gem & Jewelry Design, Inc. v. An & Associates*,
No. CV17-2417-CAS(JEMX), 2017 WL 6209816 (C.D. Cal. Dec. 6, 2017)      19

*Lauritzen v. Larsen*,
345 U.S. 571 (1953)                                                                            16

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000)                                                             43

*Lueck v. Sundstrand Corp.*,
236 F.3d 1137 (9th Cir. 2001)                                                             28

*Matute v. Procoast Navigation Ltd.*,
928 F.2d 627 (3d Cir.1991)                                                                 16

*Milliken v. Meyer*,
311 U.S. 457 (1940)                                                                            12

*Moore v. Kayport Package Express*,
885 F.2d 531 (9th Cir. 1989)                                      43

*Mujica v. AirScan, Inc.,*
 771 F.3d 580 (9th Cir. 2014)                               35, 37, 40

*Pebble Beach Co. v. Caddy,*
453 F.3d 1151 (9th Cir. 2006)                                     4

*Peregrine Myanmar v. Segal*,
89 F.3d 41 (2d Cir. 1996)                                        32

*Peterson v. Highland Music, Inc.*,
140 F.3d 1313 (9th Cir. 1998)                                   4, 5

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981)                                          29, 32

*Putnam Res. v. Pateman*,
958 F.2d 448 (1st Cir. 1992)                                     26

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015)                                   28

*Ravelo Monegro v. Rosa*,
211 F.3d 509(9th Cir. 2000)                                     28

*Satz v. McDonnell Douglas Corp.,*
244 F.3d 1279 (11th Cir. 2001)                                  40

*Schwarzenegger v. Fred Martin Motor Co.,*
374 F.3d 797 (9th Cir. 2004)                                    12

*Sloan v. Gen. Motors LLC*,
287 F. Supp. 3d 840 (N.D. Cal. 2018)                          5, 8

*Smith v. Specialized Loan Servicing, LLC*,
No. 16CV2519-GPC(BLM), 2017 WL 4050344 (S.D. Cal. Sept. 13, 2017)    44

*Sobol v. Imprimis Pharm.*,
No. CV 16-14339, 2018 WL 2424009 (E.D. Mich. May 29, 2018)        8

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
538 U.S. 408 (2003)                                                                   37

*TreeFrog Developments, Inc. v. Seidio, Inc.*,
No. 13CV0158-IEG KSC, 2013 WL 4028096 (S.D. Cal. Aug. 6, 2013)                        41

*United States v. Corey*,
232 F.3d 1166 (9th Cir. 2000)                                                         14

*United States v. Rodgers*,
150 U.S. 249 (1893)                                                                   14

*United States v. Swiss Am. Bank, Ltd.*,
191 F.3d 30 (1st Cir. 1999)                                                           20

*United Trading Company S.A. v. M.V. Sakura Reefer et al.*,
No. 95–2846, 1996 WL 374154 (S.D.N.Y. July 2, 1996)                                   20

*W. Africa Trading & Shipping Co. v. London Int'l Grp.*,
968 F. Supp. 996 (D.N.J. 1997)                                                        20

*Walker v. Univ. Books, Inc.*,
382 F. Supp. 126 (N.D. Cal. 1974)                                                     16

*Williams v. Gleneagle Ship Mgmt. Co.*,
No. CIV. A. 91-0927, 1991 WL 208989 (E.D. Pa. Oct. 8, 1991)                           15

*Won Kyung Hwang v. Ohso Clean, Inc.*,
No. C–12–06355, 2013 WL 1632697 (N.D.Cal. Apr.16, 2013)                           24, 25

*World Tanker Carriers Corp. v. M/V Ya Mawlaya*,
99 F.3d 717 (5th Cir. 1996)                                                           20

**STATE COURT CASES**

*Egan v. Mutual of Omaha Ins. Co*,
24 Cal.3d 809 (1979)                                                                  37

*Gray v. American Radiator and Standard Sanitary Corporation*,
22 Ill.2d 432, 176 N.E.2d 761 (1961)                                                  16

MEMORANDUM IN OPPOSITION TO DEFT. TEPCO'S MOTIONS TO DISMISS THIRD AMENDED COMPLAINT

*Metal-Matic, Inc. v. Eighth Judicial District Court*,
82 Nev. 263, 415 P.2d 617 (1966) ............................................................. 16

*Scandinavian Airlines Sys., Inc. v. Los Angeles Cty.*,
56 Cal. 2d 11, 30, 363 P.2d 25, 36 (1961) ................................................. 16

MILITARY COURT CASES

*United States v. Collins*,
6 M.J. 560, 562 (N.C.M.R. 1978) ......................................................... 14, 15

STATUTES AND RULES

10 U.S.C. § 404 ......................................................................................... 38

10 U.S.C. § 502 ......................................................................................... 36

10 U.S.C. § 7653 ....................................................................................... 16

18 U.S.C. § 7 ............................................................................................. 14

California Code of Civil Procedure § 377.32 ............................................ 43

California Code of Civil Procedure § 410.10 ............................................ 12

Fed. R. Civ. P. 4(k)(2) ......................................................................... 19, 20

Fed.R.Civ.P. 12 .................................................................................... 5, 10

TREATIES AND CONVENTIONS

CONVENTION ON THE HIGH SEAS, *opened for signature* April 29, 2958,
13 U.S.T. 2321 (entered into force September 20, 1962) ........................... 15

CONVENTION ON NUCLEAR SAFETY (ratified 1999) ................................... 35

UNITED NATIONS CONVENTION ON THE LAW OF THE SEA (1994),
http://www.un.org/depts/los/convention_agreements/texts/unclos/part2.htm ........ 15

IAEA CONVENTION ON EARLY NOTIFICATION OF A NUCLEAR ACCIDENT

x

(ratified 1988)                                                                        35

INTERNATIONAL ATOMIC ENERGY AGENCY CONVENTION ON ASSISTANCE IN THE
CASE OF A NUCLEAR ACCIDENT OR RADIOLOGICAL EMERGENCY (ratified 1988)    35

OTHER AUTHORITIES

William J. Broad, *Military Crew Said To Be Exposed to Radiation,*
*but Officials Call Risk in U.S. Slight*, NEW YORK TIMES (March 13, 2011),
http://www.nytimes.com/2011/03/14/world/asia/14plume.html              15

Energy Impact Partners Press Release, *Tokyo Electric Power*
*Company Holdings Joints Energy Impact Partners Utility Coalition*,
MARKET WIRED, http://www.marketwired.com/press-release/tokyo-electric-power-
company-holdings-joins-energy-impact-partners-utility-coalition-2199649.htm    18

*Energy Excelerator Partners with TEPCO,*
*World's Fourth Largest Utility to Bring Innvocation to Japan*,
ELEMENTAL EXCELERATOR BLOG,
https://elementalexcelerator.com/latest/articles/energy-excelerator-partners-with-tepco-
worlds-fourth-largest-utility-to-bring-innovation-to-japan.             18, 19

**INTRODUCTION**

Plaintiffs are American servicemen and women who, at the request of the Japanese government, provided humanitarian aid to the people of Japan in the wake of the 2011 earthquake and subsequent tsunami that demolished much of the nation.  The Plaintiffs were ultimately exposed to large amounts of radiation during their mission, as a result of the meltdown at the Fukushima Nuclear Power Plant, which resulted from the gross negligence of Defendant Tokyo Electric Power Company ("TEPCO").  Plaintiffs and Defendant TEPCO have been litigating this case for over five years.  TEPCO now, for the first time, brings a motion to dismiss based on personal jurisdiction.  Not only has TEPCO plainly waived its personal jurisdiction defense with respect to these claims, but personal jurisdiction over TEPCO properly lies with this Court.  In addition, Plaintiffs provide ample detail and factual information in their Complaint to meet pleading standards and therefore have stated claims for relief.  Plaintiffs submit that, for the reasons detailed below, TEPCO's Motion to Dismiss should be denied, and that it is now time to litigate their case on the merits.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On March 11, 2011, a 9.0 magnitude earthquake & resulting tsunami hit Japan. Almost immediately following the earthquake & tsunami, Japan requested help from the United States.  Shortly after the tsunami hit, there was a meltdown at the Fukushima Nuclear Power Plant, which resulted in the emission of huge amounts of radiation throughout the surrounding region. The boiling water reactors at the Fukushima Nuclear Power Plant had melted down and, during their aid mission ("Operation Tomodachi"), Plaintiffs were exposed to huge amounts of radiation.  It is undisputed that the negligence of Defendant Tokyo Electric Power Company Holdings (hereinafter "TEPCO"), which owned and operated the plant, was a primary cause of the meltdown.  It should be noted

1

that the Japanese government currently owns 50.1% of TEPCO's voting rights.[1]   A thorough investigation of the meltdown, conducted by the Japanese government conducted, revealed that TEPCO was grossly negligent in its ownership, operation and maintenance of the Fukushima Nuclear Power Plant.

Within 24 hours of the disaster, the United States Government diverted ships and military crews throughout the pacific to Japan to provide humanitarian aid. It was the biggest collaborative military effort in US-Japanese history. It was coined "Operation Tomodachi," the Japanese word for friendship. The first ship to be diverted, and the first to arrive, was the U.S.S. Ronald Reagan, whose home port is Naval Base San Diego, about three miles from the San Diego U.S. District Court for the Southern District of California.  TEPCO was aware of the radiation emanating from the plant, but lied to the United States government about it. They have since returned home to the United States—many here to San Diego—where many have experienced illnesses and medical conditions due to their radiation exposure at Fukushima.

On December 21, 2012, Lindsay Cooper and others filed this action against TEPCO asserting claims for personal injury resulting from their radiation exposure. TEPCO's first filing in this case was a Motion for Extension of Time to File Answer, on March 15, 2013.  (Dkt. No. 5.)  TEPCO subsequently filed thirty-five documents with the Court, including: Notice of Party with Financial Interests (Dkt. No. 6), Notice of Related Cases (Dkt. No. 7), Notices of Appearance of Counsel (Dkt.  Nos. 18, 25, 130, 131, 136), Joint Motions (Dkt. Nos. 19, 23, 27, 47, 53, 57, 74, 129), Evidentiary Objections (Dkt. Nos. 63, 91), Opposition to Motion to Amend (Dkt. No. 67), Motion for Reconsideration (Dkt. No. 73), Substantive Declarations (Dkt. No. 103), and Status Reports (Dkt. Nos. 109, 142).  TEPCO filed substantive Motions to Dismiss the *Cooper* complaint on June 21, 2013 (Dkt. No. 26) and March 27, 2014 (Dkt. No. 55), on grounds of Lack of Subject

---

[1] https://asia.nikkei.com/Politics-Economy/Policy-Politics/Fukushima-plant-operator-to-remain-under-state-control

2

Matter Jurisdiction, Failure to State a Claim, *Forum Non Conveniens* and International Comity.   It filed replies and objections to Plaintiffs' responses, participated in conferences with Plaintiffs' counsel and appeared at numerous substantive hearings before the Court.   TEPCO did not raise, nor has it ever raised in over five years of litigating this case, the issue of personal jurisdiction.

The Court granted in part and denied in part TEPCO's Second Motion to Dismiss on October 28, 2014, and granted Plaintiffs leave to file a Third Amended Complaint ("TAC").   (Dkt. No. 71.)   TEPCO then moved for reconsideration, which the Court allowed.   (Dkt. No. 73.)   The Court amended its Order, dismissing with prejudice claims that it had previously dismissed, but not disturbing the remainder of its October 28, 2014 Order.   (Dkt. No. 69.)   The Court also granted TEPCO's Motion for Certification of Interlocutory Appeal.   (Dkt. No. 107.)   GE and TEPCO had each filed additional Motions to Dismiss, which the Court denied as moot pending resolution of the interlocutory appeal.   (Dkt. No. 76.)   The Court also stayed this case pending appeal. (*Id.*)

TEPCO appealed the Court's decision to the Ninth Circuit on June 22, 2015. TEPCO filed three briefs with the Ninth Circuit, argued before the Ninth Circuit and made two presentations to the United States government regarding the issues on appeal. Again, at no time during the appeal did TEPCO raise the issue of personal jurisdiction. The Ninth Circuit issued its opinion affirming this Court's decision on June 22, 2017, and the mandate came down on July 24, 2017.   A companion case, *Bartel v. TEPCO, et al.*, 3:17-cv-01671-JLS-JLB, was filed on August 18, 2017 and transferred to this Court pursuant to the low number rule.   The Court held a Status Conference on August 31, 2017, wherein it determined to first hear motions in the *Bartel* matter before proceeding with responses on the Third Amended Complaint in this case.   The Court dismissed the *Bartel* case, without prejudice, as to both Defendants on separate jurisdictional grounds. Plaintiffs refiled the *Bartel* claims in a new case, *Bartel v. TEPCO, et al.*, 3:18-cv-00537-JLS-JLB, on March 14, 2018, which was low-numbered to this Court.   Defendants TEPCO and GE filed their instant Motions to Dismiss, which Plaintiffs now oppose.

## II.   <u>LEGAL STANDARD</u>

A complaint should only be dismissed if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   In evaluating the complaint, the court "accept[s] the [P]laintiffs' allegations as true and construe[s] them in the light most favorable to [P]laintiffs." *In re Atossa Genetics Inc Sec. Litig.*, 868 F.3d 784, 793 (9th Cir. 2017)(citing *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech.*, Inc. 856 F.3d 605, 612 (9th Cir. 2017)).   A complaint need not contain "detailed factual allegations" so long as the allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

At the motion to dismiss stage, Plaintiffs need only make a *prima facie* showing that personal jurisdiction is proper.  *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1319 (9th Cir. 1998), *as amended on denial of reh'g and reh'g en banc* (June 15, 1998); *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011).   While allegations controverted by affidavit need not be taken as true, all factual disputes must be resolved in the plaintiff's favor.  *Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1154 (9th Cir. 2006).

## III.   <u>ARGUMENT</u>

### A. Defendant TEPCO Has Waived Personal Jurisdiction.

TEPCO attempts to raise the defense of personal jurisdiction years into this litigation, but that defense has long been waived. It is black letter law that a defendant must raise the defense of personal jurisdiction in its first response to a complaint, or the defense is deemed waived.  Fed. R. Civ. P. 12(h)(1). "The requirement that a court have personal jurisdiction is an individual right that may be waived either explicitly or implicitly." *Boston Telecommunications Grp., Inc. v. Deloitte Touche Tohmatsu*, 249 F. App'x 534, 536 (9th Cir. 2007)*(citing Insurance Corp. of Ireland Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703–05, (1982)).   TEPCO has plainly waived the

4

defense of personal jurisdiction by failing to raise it at any point over the past half-decade it has been litigating this case.  Moreover, TEPCO's argument that the law of personal jurisdiction substantively changed by virtue of the decision in *Bristol-Myers Squibb* Co. *v. Superior Court of California*, 137 S.Ct. 1773 (2017), is deeply flawed and directly contradicts language in the decision itself explaining the basis for the Court's opinion.

### i.   TEPCO Has Manifestly Waived Personal Jurisdiction In This Case by Actively Litigating It For The Past Five Years—To The Ninth Circuit And Back.

As outlined *supra*, TEPCO has been actively litigating these claims for over five years.  TEPCO has filed over thirty-five documents in this case, including multiple motions to dismiss.  TEPCO even took an interlocutory appeal to the Ninth Circuit on the denial of its substantive motion to dismiss.  That appeal was unsuccessful, and TEPCO now attempts to further stonewall this case by raising the defense of personal jurisdiction far too late.

The defense of personal jurisdiction, unlike subject-matter jurisdiction, is waived if it is not raised in the initial responsive pleading.  *Id.*; *see also* Fed. R. Civ. P. 12(h).[2] Where a Defendant determines to litigate a case on its merits, it waives personal jurisdiction.  To that end, courts apply waiver of personal jurisdiction "as a result of the course of conduct pursued by a party during litigation." *Peterson*, 140 F.3d at 1318.  Indeed, courts deem the defense of personal jurisdiction waived when a defendant fails to raise it early or otherwise participates in the litigation.  *Am. Ass'n of Naturopathic*

---

[2] It is worth noting that Rule 12's language is mandatory, not discretionary. *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 855 (N.D. Cal. 2018), *order clarified*, No. 16-CV-07244-EMC, 2018 WL 1156607 (N.D. Cal. Mar. 5, 2018)(citing Fed. R. Civ. P. 12(g)(2)(a party making a motion "*must not* make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion") and Fed. R. Civ. P. 12(h)(1) ("A party *waives* any defense listed in Rule 12(b)(2)–(5) by: (A) omitting it from a motion in the circumstances described in Rule 12(g)(2) ....").

5

*Physicians v. Hayhurst*, 227 F.3d 1104 (9th Cir. 2000)(holding that defendant waived defense of personal jurisdiction by failing to include it in his motion to set aside default judgment).

TEPCO has manifestly waived the defense of personal jurisdiction by actively litigating this case—to the Ninth Circuit and back—for over five years.   Moreover, TEPCO's previous motions, as well as its appeal to the Ninth Circuit, were deeply substantive.   They raised issues of justiciability, the applicability of an assumption of risk doctrine—the firefighter's rule, *forum non conveniens,* and international comity. *Hamilton v. Atlas Turner, Inc.,* 197 F.3d 58 (2d Cir. 1999)(holding that defendant had forfeited defense of personal jurisdiction by participating in extensive pretrial proceedings during four-year interval that followed its inclusion of the defense in its answer).   TEPCO has engaged in active litigation before this Court and before the Ninth Circuit, including submission of substantive briefs and appearance at multiple hearings. In advancing its various arguments in this matter, at no time did it claim that this Court had no personal jurisdiction.   Moreover, TEPCO participated in several substantive conferences in this case—including meetings with Plaintiffs' counsel and meetings with the United States Government advocating their position in the Ninth Circuit.   At no time during any of *those* discussions did TEPCO raise the issue of personal jurisdiction.

Indeed, this Court tentatively, and correctly, found in the sister case, that the defense of personal jurisdiction has been waived in the instant case.   The Court directly stated: "**TEPCO has waived personal jurisdiction in the *Cooper* matter.**"   (Mot. To Dismiss Hr'g. Tr. at 4:15-16, *Bartel v. TEPCO, et al.*, 3:17-cv-01671-JLS-JLB)(emphasis added).   It is indeed evident, based on the long course of this litigation, that TEPCO waived the defense of personal jurisdiction.   TEPCO's argument to the contrary is specious.

### ii. TEPCO Could Have Raised Personal Jurisdiction In An Earlier Motion, As The Opinion in *Bristol-Myers* Did Not Establish New Law Or Make The Defense Newly Available.

The "newly available" exception to waiver is a high bar to meet, and Defendant TEPCO's argument falls far short. A defense is "unavailable" only "if its legal basis did not exist at the time of the answer or pre-answer motion." *Chatman-Bey v. Thornburgh*, 864 F.2d 804, 813 (D.C. Cir. 1988)(citing *Holzager v. Valley Hospital,* 646 F.2d 792, 796 (2d Cir.1981) and *Glater v. Eli Lilly & Co.,* 712 F.2d 735, 738–39 (1st Cir.1983)). A "legal basis" for the personal jurisdiction defense exists as long as "no Supreme Court or in-circuit precedent render[s] the personal-jurisdiction defense 'for all practical purposes impossible for the defendants to interpose.'" *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958, 964–65 (D.C. Cir. 2016), *cert. denied,* 138 S. Ct. 88, 199 L. Ed. 2d 26 (2017)(citing *Chatman-Bey*, 864 F.2d at 813).

Here, for the defense of personal jurisdiction to be "newly available," two things must be true: (1) it must have been practically impossible for TEPCO to have raised the defense of personal jurisdiction prior to the decision in *Bristol-Myers* and (2) the *Bristol-Myers* decision must have changed the law so significantly that the defense now, for the first time, applies to TEPCO. Neither is true. To the contrary, *Bristol-Myers* did not change the law. Even if it had, the holdings did not create a "newly available" defense for TEPCO, because it could have relied on the exact same factual arguments at the outset of this case and because the holdings of *Bristol-Myers* do not apply here. Accordingly, TEPCO's waiver of the personal jurisdiction still stands.

#### a. Bristol-Myers *Did Not Change Personal Jurisdiction Law.*

The *Bristol-Myers* case did not change the law as to personal jurisdiction, it simply clarified it. In issuing its decision, the Supreme Court specifically stated that "settled principles regarding specific jurisdiction control this case" and that the holding therein was "a straightforward application… of settled principles of personal jurisdiction." *Bristol-Myers Squibb Co.,* 137 S. Ct. at 1781, 1783. Indeed, only the

7

1   dissent in that case characterized the holding as creating new law.  *Id.* at 1789. In

2   reaching its finding, the Supreme Court specified that "the California court's use of a

3   sliding scale was not supported by precedent, including the Supreme Court's decision

4   in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011), which

5   required a connection between the forum and underlying controversy to support specific

6   jurisdiction." *In re Morning Song Bird Food Litig.,* No. 12CV01592 JAH-AGS, 2018

7   WL 1382746, at *2 (S.D. Cal. Mar. 19, 2018).

8        Courts examining the question have agreed with the majority that the *Bristol-*

9   *Myers* opinion did not create new law as to personal jurisdiction.  *In re Morning Song*

10  *Bird Food Litig.*, 2018 WL 1382746, at *2 (S.D. Cal. Mar. 19, 2018)("This Court

11  finds *Bristol-Myers* is not an intervening change in controlling law"); *Alvarez v. NBTY,*

12  *Inc.,* No. 17-CV-00567-BAS-BGS, 2017 WL 6059159, at *5 (S.D. Cal. Dec. 6,

13  2017)(S.D. Cal. Dec. 6, 2017)("[t]hough *Bristol-Myers* is arguably instructive to federal

14  courts handling class actions, its holding did not create a new defense for Defendants that

15  was not available before its decision"); *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d at 854

16  ("*Bristol–Myers* did not reverse any Ninth Circuit precedent foreclosing Defendant's

17  challenge"); *Sobol v. Imprimis Pharm.*, No. CV 16-14339, 2018 WL 2424009, at *2

18  (E.D. Mich. May 29, 2018)(finding that the "'narrow equitable exception' to the raise-or-

19  waive rule," for newly-available defenses does not apply to the personal jurisdiction

20  defense post-*Bristol-Myers*).  It is evident that *Bristol-Myers* did not constitute a change

21  in personal jurisdiction law, and TEPCO's argument otherwise—which <u>does not cite a</u>

22  <u>single case from this circuit</u> supporting its position—is acutely erroneous.

23                *b.*  *Even if* Bristol-Myers *Had Changed The Law, TEPCO Previously*
24                     *Had The Same Grounds For Its Personal Jurisdiction Defense*
25                     *That It Has Now.*

26        TEPCO could have raised the issue of personal jurisdiction in the first instance,

27  and its argument would have looked almost identical to the argument that it raises now.

28  As TEPCO concedes, the personal jurisdiction defense was available to it at the first pass

unless asserting the defense would have been "directly contrary to controlling precedent" which was "recently overruled." *Hawknet, Ltd. v. Overseas Shipping Agencies*, 590 F.3d 87, 92 (2d Cir. 2009). That is not true here. TEPCO could always have challenged personal jurisdiction in this case, as the "lack of personal jurisdiction defense was always available … because it is well settled law that a defendant can challenge personal jurisdiction relating to each named plaintiff in a class action." *Alvarez*, 2017 WL 6059159, at *5 (S.D. Cal. Dec. 6, 2017)(citing *Abrams Shell v. Shell Oil Co.*, 165 F. Supp. 2d 1096, 1107 n.5 (C.D. Cal. 2001)).

Even if TEPCO were correct that a defense can be "unavailable" if Ninth Circuit law precluded it, that proposition is inapplicable here. TEPCO could have raised the personal jurisdiction defense in 2012 under then-prevailing Ninth Circuit principles. Indeed, as the Court held in *In re Morning Song Bird Food Litig.,* "Defendants were not prevented from asserting lack of jurisdiction as to the named nonresident Plaintiffs prior to the ruling in *Bristol-Myers*" and "[t]herefore, the defense was available to them at the time they filed their original motion." 2018 WL 1382746, at *2 (S.D. Cal. Mar. 19, 2018)(citing *Abrams Shell v. Shell Oil Co.*, 165 F.Supp.2d 1096, 1107 n.5 (C.D. Cal. 2001)("Notwithstanding the relaxation of venue and personal jurisdiction requirements as to unnamed members of a plaintiff class, it is by now well settled that these requirements to suit must be satisfied for each and every named plaintiff for the suit to go forward."))

Even to the extent that *Bristol-Myers* elucidated the applicable standards, nothing in TEPCO's instant motion differs from what it could have presented prior to that decision. Under the Ninth Circuit's former sliding-scale approach to specific jurisdiction, "the more wide ranging the defendant's forum contacts, the more readily is shown a connection between the forum contacts and the claim." *Bristol-Myers Squibb Co.,* 137 S. Ct. at 1778. Here, TEPCO still argues that it has virtually no contacts with this forum—facts and analysis that were plainly available in 2012 when it filed its first motion to dismiss this case. TEPCO's arguments in 2018 rely exclusively on traditional and long standing jurisdictional principles that were unchanged by *Bristol-Myers*—namely that

9

TEPCO failed to "purposefully direct" its activity toward the fora or to "purposefully avail" itself "of the privilege of conducting activities in the forum." Thus, TEPCO now opportunistically relies on *Bristol-Myers* in an attempt to rectify its inexcusable failure to raise the defense earlier, as required by Rule 12. Unfortunately, *Bristol-Myers* cannot raise TEPCO's personal jurisdiction defense from the dead.

### c. The Holdings Of *Bristol-Myers* Are Inapposite To This Case.

Lastly, *Bristol-Myers* did not change the availability of TEPCO's personal jurisdiction defense because the holdings do not apply to this case. The *Bristol-Myers Squibb* is about state court jurisdiction and specifically reserved the question of whether the same restrictions would apply to federal court. "Since our decision concerns the due process limits on the exercise of specific jurisdiction by a State, we leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Bristol-Myers Squibb,* 137 S. Ct. at 1783–84. The *Bristol-Myers* court was also clearly concerned about widespread forum shopping. Unlike the *Bristol-Myers* plaintiffs, the Plaintiffs in this case have a direct connection to this forum. Most of them were on ships that deported from San Diego when they were injured, and many of them are or were residents of California. This Court is the most natural forum for the instant claims and the Plaintiffs bringing them. Also unlike the *Bristol-Myers* plaintiffs, the Plaintiffs here are strongly connected to one another through the very event about which they complain—their exposure to radiation during Operation Tomodachi. The *Bristol-Myers* plaintiffs, on the other hand, were unconnected consumers, many of whom did not buy or use the defective drug in California or have any relationship to the California plaintiffs.

### B. This Court Has Personal Jurisdiction Over TEPCO, Pursuant To Either Specific Jurisdiction Law Or The Federal Long Arm Statute.

This case is simply not like any other the United States courts have seen. Plaintiffs are United States servicemen and women Plaintiffs who were exposed to massive amounts of radiation while aboard U.S. naval ships providing humanitarian aid to the

17-cv-1671 JLS JLB

people of Japan.  They were injured due to the gross negligence of a large foreign utility, TEPCO, which is now primarily owned by the Japanese government and the negligent design of nuclear reactors by GE, one of the largest companies in America.  When Plaintiffs returned home to the United States, many started to experience serious illnesses abnormal for such a young, healthy population, and several have died.  Due to its extraordinarily distinct nature, no precedent cited by TEPCO is comparable to this case.  The Court must look instead to guiding constitutional principles to make its own determination about whether the exercise of personal jurisdiction over TEPCO is proper.  Plaintiffs resolutely submit that it is.

The touchstone of any jurisdictional analysis is whether the exercise of jurisdiction would offend traditional notions of "fundamental fairness," "fair play" and "substantial justice."  *See, e.g*, *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 906, 131 S. Ct. 2780, 2801–02, 180 L. Ed. 2d 765 (2011)("it would undermine principles of fundamental fairness to insulate the foreign manufacturer from accountability in court at the place within the United States where the manufacturer's products caused injury").  Plaintiffs submit that, under the unique circumstances presented by this case, it is fundamentally fair to retain personal jurisdiction over TEPCO.  As described in detail *infra*, TEPCO has maintained substantial contacts with the United States.  TEPCO clearly can and will mount a full defense to this lawsuit here in the United States—it has already hired skilled local lawyers who have mounted half-decade long defense in this Court and the Ninth Circuit.[3]

---

[3] Notably, and as discussed in detail *infra*, the Plaintiffs in this case would have a significant disadvantage if they were forced to litigate their claims in Japan.  These individual service members would have to hire costly foreign lawyers, face a costly language barrier, and would need to endure costly travel to a foreign court; none of this they can afford.  While the analysis may focus on TEPCO's contacts with the forum, this fact certainly does bear on the notion of fundamental fairness.

11

A court can exercise personal jurisdiction over a defendant if the requirements of federal due process and state law are met. *CollegeSource,* 653 F.3d at 1073.  California's long-arm statute, codified in Cal.Civ.Proc.Code § 410.10, exercises jurisdiction to the full extent allowed by federal due process, such that "the jurisdictional analyses under state law and federal due process are the same." *Id.* (citing *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800–01 (9th Cir. 2004)).  Due process requires only that a defendant have "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)(quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)).  Specific jurisdiction "is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985)(citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984) and *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984)).  For the reasons discussed further below, this standard is met both by TEPCO's contacts in this District and by the United States as a whole, under the federal long arm statute.

### i.      This Court Has Specific Jurisdiction Over TEPCO for the Claims Brought By Plaintiffs in This Action.

In this case, TEPCO's substantial contacts with California, *vis-à-vis* the very conduct that gives rise to the instant claims, meets the specific jurisdiction standard. First, the United States Naval ships that Plaintiffs were assigned to when they were radiated constitute United States soil. As those ships came primarily from San Diego and had their home port in San Diego, it is natural that jurisdiction would lie in San Diego. Second, TEPCO has maintained regular contact with California in advancing its energy business interests, the very interests that were at the core of the Fukushima meltdown. Accordingly, TEPCO is subject to specific personal jurisdiction for Plaintiffs claims here in California.

Plaintiffs also note that TEPCO's heavy reliance on *Bristol-Myers* is deeply misplaced, as that decision clearly does not apply to this case.  First, the Plaintiffs here have a direct connection to this forum—most were on ships that deported out of San Diego when they were injured and many of them are residents of California, or were during the relevant period.  The primary issue addressed by *Bristol-Myers* was that many of the plaintiffs in that case had no connection to the forum.  137 S.Ct. 1773.  Underlying that issue was concern about widespread forum shopping.  *Id.*  That is simply not the case here, as this Court is the most natural forum for the instant claims and the Plaintiffs bringing them.  Second, unlike the *Bristol-Myers* plaintiffs, Plaintiffs in this case are strongly connected to one another through the very event about which they complain.  The *Bristol-Myers* plaintiffs were unconnected consumers, many of whom did not buy or use the defective drug in California or have any relationship to the California plaintiffs. *Id.*  To the contrary, here even Plaintiffs who are not residents of California are connected to the forum, as well as the other Plaintiffs, through their joint participation in Operation Tomodachi.  Lastly, the *Bristol Myers* Court specifically held that its ruling only applied to state court and reserved the question of whether it would apply in federal court.  *Bristol-Myers Squibb,* 137 S.Ct. at 1783-84 ("since our decision concerns the due process limits on the exercise of specific jurisdiction by a State, we leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court").  Accordingly, *Bristol-Myers* has no real bearing on this case and this Court has specific jurisdiction over TEPCO for Plaintiffs' claims.

> *a. This Court Has Specific Jurisdiction Over Plaintiffs' Claims Because TEPCO Directed Its Gross Negligence at U.S. Naval Ships, Which are United States Territory, And Those Ships Came from San Diego.*

Defendant's Motion ignores a fundamental fact: Plaintiffs were all on United States soil when they were exposed to radiation from the Fukushima Nuclear Power Plant, because vessels of the United States Navy constitute United States territory.

13

Plaintiffs then returned with these ships to their home ports in California, where they disembarked. Plaintiffs, most of whom are or were California residents, suffered illness and injury as a result of their exposure to the toxic radiation at Fukushima here in California. Accordingly, TEPCO has "purposefully directed" its grossly negligent activity at the State of California.

It is black letter law that any vessel of the United States Navy is considered sovereign United States territory. *See*, e.g., 18 U.S.C. §7 (extending U.S. territory to U.S. military naval ships and U.S. military bases worldwide). Accordingly, the vessels at issue are considered territory of the United States. *See* 18 U.S.C. §7(1).[4] Because Plaintiffs stationed on the vessels comprising Operation Tomodachi suffered harm while located on U.S. territory, U.S. jurisdiction is automatically triggered. *United States v. Corey*, 232 F.3d 1166, 1183 (9th Cir. 2000)(recognizing district court jurisdiction over claims that fall within section 7's purview). Indeed, our Courts have consistently recognized that a public vessel constructively constitutes a part of the territory of the nation to which it belongs. "As we have before stated, a vessel is deemed part of the territory of the country to which she belongs." *United States v. Rodgers*, 150 U.S. 249 (1893); *United States v. Collins*, 6 M.J. 560, 562 (N.C.M.R. 1978), *aff'd,* 7 M.J. 188 (C.M.A. 1979). The United States Navy Ships on which Plaintiffs were deployed constitute United States soil.

---

[4] 18 U.S.C. 7(1) provides in relevant part:

> Special maritime and territorial jurisdiction of the United States defined, 1.) The high seas, any other waters within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State, and *any vessel belonging in whole or in part to the United States* or any citizen thereof, or to any corporation created by or under the laws of the United States, or of any State, Territory, District, or possession thereof, when such vessel is within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State.

(emphasis added)

14

That principle further provides that jurisdiction for acts or omissions aboard those vessels rests with the nation to which it belongs.   "Federal statutes, even though not written to specifically include the high seas within their jurisdiction, are as enforceable aboard U.S. ships as on U.S. soil." *Collins*, 6 M.J. at 562–63.  The Convention on the High Seas, a multi-lateral treaty to which the United States and Japan are both signatories, states that "[s]hips have the nationality of the State whose flag they are entitled to fly" and that ships "shall be subject to [that State's] exclusive jurisdiction." Convention on the High Seas art. 5 and art. 6, *opened for signature* April 29, 2958, 13 U.S.T. 2321 (entered into force September 20, 1962).  Moreover, "[w]arships on the high seas," which includes all United States Navy ships, as well as "[s]hips owned or operated by a State" for government use "have complete immunity from the jurisdiction of any State other than the flag State."  Convention on the High Seas art. 8 and art. 9.  It is worth clarifying that the ships at issue were primarily anchored in international waters—or "the high seas"—outside of Japan's territorial waters.  The U.S.S. Reagan, for example, was located 100 miles from the shore, plainly in international waters, when it first detected large amounts of radiation emitting from the FNPP.  William J. Broad, *Military Crew Said To Be Exposed to Radiation, but Officials Call Risk in U.S. Slight*, NEW YORK TIMES (March 13, 2011), http://www.nytimes.com/2011/03/14/world/asia/14plume.html. Japan's territorial waters cannot extend more than 12 nautical miles—or 13.8 miles— beyond its land territory. UNITED NATIONS CONVENTION ON THE LAW OF THE SEA, Part II (1994), http://www.un.org/depts/los/convention_agreements/texts/unclos/part2.htm. Accordingly, the servicemen and women aboard the United States Naval ships that were part of Operation Tomodachi were on United States soil when they suffered the radiation exposure at issue here.

Moreover, when determining the jurisdiction of seagoing vessels, courts have looked to the home port or the port of origin. *Williams v. Gleneagle Ship Mgmt. Co.*, No. CIV. A. 91-0927, 1991 WL 208989, at *1 (E.D. Pa. Oct. 8, 1991)(eight factors should be considered in determining the forum and law applied in a personal injury case at sea: the

15

place of the injury, the law of the flag, the allegiance or domicile of the injured seaman, the allegiance of the ship owner, the place of contract, the inaccessibility of a foreign forum, law of the forum and the base of operations)(citing *Lauritzen v. Larsen,* 345 U.S. 571 (1953); *Matute v. Procoast Navigation Ltd.,* 928 F.2d 627, 631–32 (3d Cir.1991); *Hellenic Lines, Ltd. v. Rhoditas,* 398 U.S. 306 (1970)); *Scandinavian Airlines Sys., Inc. v. Los Angeles Cty.*, 56 Cal. 2d 11, 30, 363 P.2d 25, 36 (1961) (ships "may not be taxed by any jurisdiction other than that of their home port"); 10 U.S.C. § 7653 (requiring adjudication of any prize to be brought "in the district in which the port is located").   The home port for the U.S.S. Ronald Reagan, the first ship to arrive at Fukushima, was San Diego, California.[5]  It disembarked from San Diego and returned to San Diego.  The servicemen and women aboard the U.S.S Reagan were domiciled in San Diego, with their assigned ship, at the time of the incident. Accordingly, jurisdiction lies with the Southern District of California, the home port of the vessel and its crew.

TEPCO's gross negligence, as outlined in the Complaint, was clearly directed at these United States Naval ships coming from California.  TEPCO's negligent acts gave rise to Plaintiff's exposure to large amounts of radiation on those ships.  That alone is sufficient to assert personal jurisdiction over TEPCO for the injuries of which Plaintiffs now complain, as it "purposefully directed" these activities at the home forum.  *Walker v. Univ. Books, Inc.*, 382 F. Supp. 126, 130 (N.D. Cal. 1974)([c]ourts… frequently find a constitutional basis for personal jurisdiction if a defendant commits a tortious act outside the forum state which causes a personal injury to a resident of the state, even though the defendant did not engage in any other activity within the forum); *Dawkins v. White Products Corp. of Middleville, Michigan*, 443 F.2d 589 (5th Cir. 1971); *Kroger Company v. Dornbos*, 408 F.2d 813 (6th Cir. 1969); *Metal-Matic, Inc. v. Eighth Judicial District Court*, 82 Nev. 263, 415 P.2d 617 (1966); *Gray v. American Radiator and Standard*

---

[5] It is worth noting that, further, the remaining *Lauritzen* factors all indicate that jurisdiction lies in California and choice of law lies in California and the United States.

*Sanitary Corporation*, 22 Ill.2d 432, 176 N.E.2d 761 (1961).

> ### b. *TEPCO Has Maintained Sufficient Contact With The State of California In Advancing Its Energy Business Interests to Support Specific Jurisdiction.*

Defendant TEPCO also has purposefully availed itself of the State of California with respect to its energy business enterprise, generating sufficient contacts with the State to support specific personal jurisdiction in this case. TEPCO registered to do business in the State of California on May 16, 2003, stating that its principal office in the State of California was located at 601 South Figueroa Street in Los Angeles, California. (Ex. 1) At that time, it described its business purposes as including the "business of supply of electricity" and the "development, exploitation, processing… of energy resources." (Ex. 1.) These are the very activities that give rise to Plaintiffs' claims—namely, that TEPCO's gross negligence caused the nuclear meltdown at Fukushima that resulted in their exposure to large amounts of radiation.

During the period that TEPCO did business in California, it was negligent in maintaining, operating, repairing and inspecting the Fukushima Nuclear Power Plant. Plaintiffs do not contest that TEPCO surrendered its California business license at the end of 2006, but assert that their claims of negligence arose during the period that TEPCO was doing business in California. They assert that, prior to the incident in March 2011, TEPCO had been negligent in its ownership and operation of the power plant, including its engineering, construction, management, maintenance, repair, inspection and control. (TAC ¶¶ 109-140.) Plaintiffs specifically allege that Defendant TEPCO's negligence dated back forty years before the incident, and that long-term negligence the cause of the incident. (TAC ¶ 140.) Plaintiffs allege specific incidents of misconduct during this period, including a steam explosion in August 2004 and the 2006 negligent release of radioactive steam at Fukushima. (TAC ¶ 140.)

TEPCO is a forty-percent owner of Eurus Energy America Corporation (hereinafter, "Eurus"), a United States energy company incorporated in Delaware with its

principal executive office at 402 West Broadway, Suite 1750, San Diego, California 92101.  Eurus bills itself as an industry pioneer that "has been active in wind energy development in the United States since 1987," and that "welcomes its role as the North American representative of an international corporation with a longstanding commitment to renewable energy technology."  EURUS ENERGY AMERICA CORPORATION, https://eurusenergy.com/about/ (last visited June 13, 2018).  Eurus has wind and solar energy projects throughout the State of California, including in this District, that are among the biggest energy projects in the United States.

Moreover, TEPCO has maintained recent contact with California, relying on California businesses for investment.  For example, TEPCO has partnered with companies in California to expand its energy interests and platforms.  This includes a partnership with Elemental Accelerator, an energy innovation company headquartered in Honolulu, Hawaii and Palo Alto, California.  Last year, TEPCO announced its strategic partnership with Energy Impact Partners, a California-based private equity firm that invests in energy businesses.  Energy Impact Partners Press Release, *Tokyo Electric Power Company Holdings Joints Energy Impact Partners Utility Coalition*, MARKET WIRED, http://www.marketwired.com/press-release/tokyo-electric-power-company-holdings-joins-energy-impact-partners-utility-coalition-2199649.htm.    Specifically, TEPCO stated it joined this network to "enable us to identify and support the most advanced technologies and business models in the industry to the benefit of our customers."  *Id.*  In 2016, TEPCO partnered with Energy Excelerator, a Hawaii and Palo Alto-based nonprofit that funds innovative energy solutions.  *Energy Excelerator Partners with TEPCO, World's Fourth Largest Utility to Bring Innovcation to Japan*, ELEMENTAL                    EXCELERATOR                    BLOG, https://elementalexcelerator.com/latest/articles/energy-excelerator-partners-with-tepco-worlds-fourth-largest-utility-to-bring-innovation-to-japan.    TEPCO's interest in the partnership is business-oriented, looking to further expand its energy market in Japan: "At a time when TEPCO is adapting to rapidly changing market conditions, this

18

partnership will allow us to meet companies with innovative business models and technologies that can help us to better serve our customers in Japan." *Id*.  All of these partnerships focus on the very action that gave rise to Plaintiffs' claims–the delivery of power on a large scale.

Based on the foregoing, TEPCO has purposefully availed itself of the State of California by maintaining its business interests and contacts during the relevant period, and Plaintiffs' claims arise from this energy business.  Indeed, it would be appropriate for California to here assert its "'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Rudzewicz*, 471 U.S. at  473. Accordingly, this Court has specific jurisdiction over TEPCO for the claims at issue here.

### ii.      This Court Has Jurisdiction Over TEPCO Pursuant to Fed. R. Civ. P. 4(k)(2).

If this Court finds that it does not have specific jurisdiction over TEPCO in this action, then it should exercise jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2), the nationwide jurisdictional provision.  Rule 4(k)(2) exists because the United States has an important interest in ensuring that its laws are enforced in federal court against foreign defendants who might otherwise evade state long arm statutes.  *L.A. Gem & Jewelry Design, Inc. v. An & Associates,* No. CV17-2417-CAS(JEMX), 2017 WL 6209816, at *9 (C.D. Cal. Dec. 6, 2017).  This case is a paradigmatic example of the purpose of the federal long arm rule. The United States has a compelling interest in this case—indeed, the United States government weighed in at the Ninth Circuit to express its belief that the case should be heard here in the United States.

Under Rule 4(k)(2), jurisdiction is conferred when (1) the exercise of jurisdiction is consistent with the Constitution and laws of the United States, (2) serving a summons or filing a waiver of service is also effective, (3) the claims arise under federal law, and (4) the defendant is not subject to the jurisdiction of the courts of general jurisdiction of any state.  Fed. R. Civ. P. 4(k)(2); *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d

450, 461 (9th Cir. 2007). There is no dispute that service in this matter was effective, and TEPCO itself argues that it is not subject to general jurisdiction anywhere in the United States.

Plaintiffs' claims also "arise under federal law," as required by Fed. R. Civ. P. 4(k)(2). Notably, the federal long arm statute is not limited to federal question cases, but also applies to diversity cases that rely on federal law. *World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 721 (5th Cir. 1996)("the Advisory Committee intended Rule 4(k)(2) to reach not just federal question cases under § 1331 but all claims arising under substantive federal law"); *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 42 (1st Cir. 1999)(a case in which the rule of decision must be drawn from federal common law presents a uniquely federal question); *Greatship (India) Ltd. v. Marine Logistics Sols. (Marsol) LLC*, No. 11 CIV. 420 RJH, 2012 WL 204102, at *5 (S.D.N.Y. Jan. 24, 2012)(claims arise under the New York Convention, and therefore under federal law); *United Trading Company S.A. v. M.V. Sakura Reefer et al.*, No. 95–2846, 1996 WL 374154, at *4 (S.D.N.Y. July 2, 1996)(holding that Rule 4(k)(2) does apply to admiralty cases); *W. Africa Trading & Shipping Co. v. London Int'l Grp.*, 968 F. Supp. 996, 999–1000 (D.N.J. 1997)(holding that "the Rule applies to any claims brought under substantive federal law" because "if the Committee had intended to limit the Rule's application to federal question cases, it would have excluded admiralty and diversity matters"). Here, while Plaintiffs' complaint sets forth diversity as a basis for federal jurisdiction, their claims still rely on substantive federal law. Several sources of federal law are likely to govern certain rules of decision in this case, including treaties of the United States, admiralty law, maritime law and federal common law. The application of any of these sources would mean this case "arises under federal law" for purposes of Rule 4(k)(2). *See, e.g.*, *World Tanker Carriers Corp.* 99 F.3d at 721 (maritime law); *Swiss Am. Bank,* 191 F.3d at 42 (federal common law); *Greatship,* 2012 WL 204102, at *5 (treaties). Indeed, this Court found that aspects of this case are likely to be governed by maritime and federal common law. *Cooper,* 166 F. Supp. 3d at 1136. As such,

Plaintiffs have met the "arising under federal law" prong of the 4(k)(2) analysis. Accordingly, if the first prong is satisfied, then this Court can assert jurisdiction under the federal long-arm statute.

The United States' exercise of jurisdiction over TEPCO plainly comports with due process. TEPCO is a foreign utility that has entered into a joint venture with a United States company, GE, its codefendant in this lawsuit.[6] TEPCO has a United States headquarters, located in Washington, D.C., presumably to advance its energy business here in the United States, legally, financially and politically. To hold TEPCO accountable in United States courts for the harm they have caused our servicemen and women patently comports with due process.

Indeed, TEPCO has "purposefully availed" itself of the United States, maintaining extensive contacts with the U.S., including investment and energy-related business. TEPCO's subsidiary, Eurus, is registered to do business in several states throughout the United States, including Illinois, Iowa, Nebraska, Oregon, Texas, Wisconsin and Wyoming. Eurus also has registered land holdings in several states—including Illinois, Iowa, Nebraska, Oregon, Texas and Wisconsin—and has registered wind holdings in several states—including Illinois, Iowa, Oregon, Texas and Wyoming. TEPCO has also acquired substantial interests in nuclear projects in the United States. TEPCO entered into an agreement, for example, with Nuclear Innovation North America LLC (NINA) to invest in the South Texas Project, in exchange for a 10% equity interest in NINA, amounting to a 9.75% interest in the South Texas Project. TEPCO has invested and acquired interests in other companies throughout the United States, including Via

---

[6] As explained *supra*, TEPCO's relationship with GE is substantial, and they jointly ventured to operate the Fukushima Nuclear Power Plant at issue in this case. At the relevant time, GE was headquartered in San Jose, California and its nuclear division was located in California. GE designed and built the boiling water reactors at in California. GE installed the nuclear reactors at Fukushima, and there is a continuing relationship between TEPCO in GE to maintain and service those reactors.

17-cv-1671 JLS JLB

Science, a software application company headquartered in Cambridge, Massachusetts. TEPCO has also partnered with companies throughout the United States to expand its energy interests and platforms here. These include partnerships with Energy Impact Partners, a private equity firm investing in energy throughout the United States; United Wind, a wind energy company based in Brooklyn, New York; and Elemental Accelerator, an energy innovation company headquartered in Honolulu, Hawaii and Palo Alto, California.

Moreover, for the reasons discussed *supra*, TEPCO "purposefully directed" its conduct at the United States when its gross negligence exposed U.S. Naval ships, and Plaintiffs aboard them, to enormous amounts of radiation. (TAC ¶ 109.) The United States Naval ships constitute United States territory for jurisdictional purposes. TEPCO's argument that it could not have "purposefully directed" its conduct at the U.S. Naval ships because it took no actions after their arrival fails because (1) that is not the legal standard[7] and (2) it is factually erroneous. Indeed, TEPCO knew that United States vessels were on their way to the Fukushima prefecture while radiation was released. (TAC ¶ 109.) After the Fukushima meltdown, although TEPCO knew that the United States had its ships located near the facility, TEPCO willfully disseminated false information about the safety of the plant and the radiation emanating therefrom. (TAC ¶ 118.) Moreover, TEPCO intentionally dumped in excess of 11,500 tons of radioactive water into the Pacific Ocean during and following the meltdown of the Fukushima Nuclear Power Plant, knowing that the United States Naval ships were in nearby waters. (TAC ¶ 269.) All of this misconduct by TEPCO was clearly "purposefully directed" at the United States. There is, accordingly, personal jurisdiction over TEPCO in the United

---

[7] Defendant TEPCO cites no authority for the proposition that for conduct to be "purposefully directed" at the U.S. Naval ships, it would have had to occur after their arrival. To the contrary, it is foreseeable that a disaster of the magnitude Japan experienced would draw humanitarian aid from the United States and TEPCO was surely aware once the U.S. ships were deployed to Japan.

17-cv-1671 JLS JLB

States for the instant claims.  Accordingly, the Court should apply the federal long-arm statute to exercise jurisdiction in here in the Southern District of California.[8]

### C. This Case Should Not Be Dismissed Based On International Comity or *Forum Non Conveniens*, As Nothing Has Changed Since the Ninth Circuit Decided Neither Warrant Dismissal.

This Court's June 11, 2015 ruling, which was affirmed by the Ninth Circuit, properly held that dismissal on grounds of international comity and *forum non conveniens* was unwarranted.  *Cooper v. Tokyo Elec. Power Co., Inc.*, 166 F. Supp. 3d 1103 (S.D. Cal. 2015), *aff'd,* 860 F.3d 1193 (9th Cir. 2017).  Nothing has changed.  Unfortunately, the facts of this case, even those which might bear on the applicability of those doctrines, have not been further developed since that time because of continued delay *vís a vís* Defendants' continual motions practice.  TEPCO would now like the Court to reconsider its well-reasoned decision based on the mere passage of time.  It remains, however, inappropriate to dismiss this case based on either international comity or *forum non conveniens*.

### i.  The Choice Of Law Question Does Not Weigh Heavily In Either Analysis, As It Has Not Been Made Yet And Because This Court Is Able To Apply Any Potentially Governing Law.

As it stands, the Ninth Circuit has upheld the Court's position that it "would be applying some version of U.S. law, be it maritime law, federal common law, or California state law." *Cooper* 166 F. Supp. 3d at 1136.  As the Court has not conducted—and the parties have not briefed—a full choice of law analysis, it remains undecided what law will apply.  Indeed, that issue is not ripe for determination at this stage in the litigation.  Moreover, it is likely that the Court will cobble together a mixed set of governing laws for this case, as it will likely be appropriate to apply different law

---

[8] Application of this provision will only be necessary if the Court finds that no forum within the United States has personal jurisdiction over TEPCO.

to different aspects of the case.  For that, this Court is as equip to apply a mixed law framework, which is likely to include American law, as any Japanese court.  For all of these reasons, the choice of law determination simply does not impact the *forum non conveniens* or international comity analyses.

### a.  Choice-Of-Law Is Not Ripe for Determination.

To make a determination on the choice of law, a court must have sufficient factual information and legal briefing before it.  *Czuchaj v. Conair Corp.,* No. 13-CV-1901-BEN RBB, 2014 WL 1664235, at *9 (S.D. Cal. Apr. 18, 2014).  Here, the Court has neither.  The parties have only provided cursory briefing on choice-of-law, all of which have been imbedded in multi-factor analyses of other issues.  Given the significance of choice-of-law in this case, the brief, tangential analyses provided by the parties to date is insufficient for the Court to fully evaluate the issue.  Moreover, this case requires that the parties conduct discovery to develop the factual record prior to a choice-of-law determination.

"The question of whether a choice-of-law analysis can be properly conducted at the motion to dismiss stage depends on the individual case."  *Czuchaj,* 2014 WL 1664235, at *9 (S.D. Cal. Apr. 18, 2014)(citing *Bruton v. Gerber Prod. Co.,* No. 12–cv–2412, 2014 WL 172111, at *13 (N.D.Cal. Jan.15, 2014) and *Won Kyung Hwang v. Ohso Clean, Inc.,* No. C–12–06355, 2013 WL 1632697, at *21 (N.D.Cal. Apr.16, 2013)).  Many courts, however, reserve the issue until after discovery, when the choice-of-law analysis can be informed by a full factual record.  *See, e.g., Brazil v. Dole Food Co.*, No. 12-CV-01831-LHK, 2013 WL 5312418 at *11 (N.D. Cal. Sept. 23, 2013); *Dean v. Colgate-Palmolive Co.*, No. EDCV 15–0107 JGB, 2015 WL 3999313 at *11 (C.D. Cal. June 17, 2015)(finding that the choice-of-law analysis "is not appropriate at this stage of litigation," but should instead be conducted "after the parties have engaged in discovery"); *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1007 (N.D. Cal. 2014)(finding that a "choice of law analysis is a fact-specific inquiry which requires a more developed factual record than is generally available on a motion to dismiss"); *Won Kyung*

24

*Hwang,* 2013 WL 1632697, at *21 ("Such an inquiry is most appropriate at the class certification stage of the case, after the parties have engaged in discovery").

Discovery, and development of a fuller factual record, would certainly inform the choice-of-law analysis in this case.  For example, Plaintiffs and the Court are not privy to the terms of the contract between GE and TEPCO for the design, manufacture and installation of the boiling water reactors at the Fukushima Nuclear Power Plant.  There may be choice-of-law and venue provisions contained in that contract that would weigh heavily in the instant choice-of-law evaluation.  Plaintiffs and the Court similarly lack knowledge about the breakdown in operational responsibilities of the Fukushima Nuclear Power Plant, including the operational and maintenance role of GE at the plant and the involvement (if any) of the Japanese government in management of the plant's finance and operations.   Plaintiffs and the Court would also need to know what information TEPCO had about the incoming United States naval ships that carried Plaintiffs, when it had such information, and details regarding the dissemination of false information regarding the radiation emissions from the Fukushima Nuclear Power Plant.  Several other critical aspects of the factual record are similarly within the Defendants' exclusive control, and the Plaintiffs have a right to discover that information prior to briefing the. Moreover, that complete factual record must be before the Court for it to conduct the thorough and complex choice-of-law analysis required here.

For all of these reasons, a choice-of-law analysis is premature at this stage, and Plaintiffs respectfully submit that the Court should reserve the choice-of-law determination until a fuller factual record can be developed in discovery.

### b.   *In This Case, The Choice-of-Law Is Unlikely To Impact the* Forum Non Conveniens *Or International Comity Analyses.*

Once the choice of law issue is ripe for determination, it is very likely that the Court will develop its own mixed-law framework for the different issues in this case.  In so doing, it may apply some American law—for example, admiralty, maritime, state and

17-cv-1671 JLS JLB

federal common law—as well as some Japanese law.  Under a mixed-law framework, this Court would be in as good a position as any—including Japanese courts—to render that legal framework.  Moreover, because there is no question of liability against TEPCO, the outstanding issues of causation and damages rely on relatively straightforward law, which the Court is certainly equip to apply, even if it were Japanese law.  For these reasons, the choice of law question will not weigh in favor of transfer to Japan under either the *forum non conveniens* or the international comity analysis.

It is well established that "courts are endowed with the authority to erect a framework under which issues in a single case, arising out of a common nucleus of operative facts, may be decided according to the substantive law of different states." *Dalkilic v. Titan Corp.*, 516 F. Supp. 2d 1177, 1187 at n.4 (S.D. Cal. 2007); *Putnam Res. v. Pateman*, 958 F.2d 448, 465 (1st Cir. 1992).  Under the doctrine of depecage, a court can apply the law of different states for different issues. *Fireman's Fund Ins. Co. v. Murray*, 1992 U.S. App. LEXIS 15448, at *12 n.4 (9th Cir. 1992); *Arno v. Club Med Boutique, Inc.*, 134 F.3d 1424 (9th Cir. 1998) (applying California law to attorneys', fees even though French law governed the underlying tort dispute). Thus, this Court has the power to set the applicable law, potentially even cobbling together the appropriate law from California, Japan, American federal law and other appropriate sources. As such, while Plaintiffs maintain that United States law will apply to this case, a blanket determination of Japanese or United States law is not prescribed.  This Court will be in as good a position as any Japanese court to apply a mixed law framework, particularly given its previous finding that there is a high likelihood that American law will primarily, if not completely, apply.

Moreover, even if the Court were to determine that Japanese law should apply, this Court is fully capable of applying the necessary law in this case.  TEPCO has not pointed to a single source of Japanese law that this Court would find troubling or difficult to

apply. Regardless of the choice-of-law, the only issues with respect to TEPCO will be causation and damages.[9]   Accordingly, the only issues to which law must be applied are the issues of causation and damages, and it is clear that this Court is able to apply the law of either forum to these issues.

As TEPCO has acknowledged, the choice-of-law question for causation is whether the standard of proof will be preponderance of the evidence, as required under American law, or the Japanese standard of proof.[10]   Even assuming that Japanese law requires the standard set forth by TEPCO—a "high probability" standard—this is simply the application of a standard.  As described by TEPCO, this standard looks like the American "clear and convincing" standard, which the Court has undoubtedly applied in the past.  There is nothing new or difficult about applying such a standard of proof, and the Court is certainly capable of applying the standard in accordance with Japanese law.

On the issue of damages, the only choice-of-law question is what damages will be available to Plaintiffs.  TEPCO admits that Plaintiffs can recover compensatory damages regardless of what law applies.  The only meaningful difference between Japanese and United States law that TEPCO identifies is the availability of punitive damages.  (Notably, TEPCO has previously argued that punitive damages will not be available under any law, but Plaintiffs strongly dispute that position.)  Based on the choice-of-law, the Court will either allow punitive damages or it will not.  There is nothing complex about the application of Japanese law, which simply does not permit punitive damages, on this issue.  This Court has undoubtedly presided over many cases in which punitive damages were not available, and could certainly do so here if required.  To the contrary,

---

[9] TEPCO has already admitted that it is liable for any injury caused to Plaintiffs by the radiation from the Fukushima Nuclear Power Plant.  (Status Conf. Tr. 20:9-11.)

[10]  Plaintiffs do not concede that the standards set forth by TEPCO are the proper standards under Japanese law for this case. It does not matter, however, for the instant analysis.  Accordingly, and solely for the purpose of argument, Plaintiffs take TEPCO's position as true to demonstrate that the choice-of-law on causation will not impact the *forum non conveniens* and international comity analyses.

17-cv-1671 JLS JLB

this Court would be uniquely qualified to administer United States law if punitive damages are allowed.  Indeed, as Japanese law does not permit punitive damages, a Japanese court would struggle to apply our law on that issue.  Accordingly, regardless of the choice-of-law, this Court is capable of applying the law of either forum on the issue of damages; in fact, this Court is ***more capable*** of applying punitive damages than a Japanese Court would be.

## ii.  The Doctrine Of *Forum Non Conveniens* Still Does Not Apply To This Case.

This Court and the Ninth Circuit held that private and public *forum non conveniens* factors weigh in favor of maintaining these claims here in the United States.  After a thorough and comprehensive analysis of all the relevant factors, this Court ruled that "although Japan is an adequate alternative forum, the balance of the private and public interest factors suggests that it would be more convenient for the parties to litigate in a U.S. court."  *Cooper*, 166 F. Supp. 3d at 1136.  The Ninth Circuit upheld this Court's opinion that policy considerations do not require the dismissal based on *forum non conveniens*. *Cooper v. Tokyo Electric Power Company, Inc.*, 860 F.3d 1193, 1211 (9th Cir. 2017).  No new developments inform these rulings, and TEPCO simply renews those arguments already rejected by this Court and the Ninth Circuit.

*Forum non conveniens* is a common law doctrine allowing a court to decline to exercise its jurisdiction in cases where litigation in the forum would place an undue burden upon one of the parties. *Forum non conveniens* is a discretionary, but "exceptional tool to be used sparingly."  *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001); *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000).  The burden is on the moving party to make "a clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent."  *Ravelo*, 211 F.3d at 514; *see also Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1549 (5th Cir. 1991).  The moving party "bears the

28

burden of showing (1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002). A plaintiff's choice of home forum is generally granted deference, although such deference is not absolute. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1076 (9th Cir. 2015)(citing *Piper Aircraft*, 454 U.S. at 255). Here, the Court has ruled that Japan offers an adequate alternative forum, so the instant analysis focuses primarily on the balance of public and private interests.[11]

### a.   Private Interest Factors

The private factors include the following: (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive. Cooper, 860 F.3d at 1211. This Court has already ruled that a balancing of the public and private *forum non conveniens* factors weighs in favor of maintaining these claims here in the United States. After a thorough and comprehensive analysis of all the relevant factors, including those raised again by TEPCO, this Court ruled that "it would be more convenient for the parties to litigate in a U.S. court." *Cooper,* 166 F. Supp. 3d at 1136. The Ninth Circuit affirmed this Court's ruling, holding that policy considerations do not require the dismissal based on *forum non conveniens*. *Cooper,* 860 F.3d at 1211.

---

[11] "[A]n alternative forum ordinarily exists when the defendant is amenable to service of process in the foreign forum." *Lueck*, 236 F.3d at 1137 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981)). "The foreign forum must provide the plaintiff with some remedy for his wrong in order for the alternative forum to be adequate." *Id.* Plaintiffs do not concede that Japan is an adequate forum. However, in light of the Court's previous ruling, Plaintiffs will focus their arguments on the public and private factors.

*The Residence of the Parties and the Witnesses*

The Plaintiffs—over 200 named in this suit alone—and Defendant GE all reside here in the United States.  While TEPCO is located in Japan, it does have a United States headquarters located in Washington, D.C.

*The Forum's Convenience to the Litigants*

Many of the servicemen and servicewomen involved in this action have severe medical issues that will greatly reduce their ability to prosecute their case in the foreign forum.  Indeed, the Ninth Circuit confirmed this Court's holding that "it would be more difficult for Plaintiffs to travel to Japan given their alleged medical conditions."  *Cooper,* 860 F.3d 1193, 1211 (9th Cir. 2017).   Given the severe medical conditions of the Plaintiffs, the convenience of this Court weighs heavily in favor of retaining jurisdiction in California.

The condition of the Plaintiffs and their ability to travel is an important consideration in the private interest balancing test. *See Altmann v. Austria*, 317 F.3d 954, 972-73 (9th Cir.2002), aff'd on other grounds, 541 U.S. 677 (2004).  In *Altmann*, the plaintiff filed an action in the United States District Court for the Central District of California against the Republic of Austria and the state-owned Austrian gallery, for the recovery of paintings stolen by the Nazis in violation of international law. *Id.* Defendants sought to have the matter dismissed for forum non conveniens arguing that the "evidentiary sources, the witnesses, and the paintings are all located in Austria and a United States district court would be required to apply Austrian law." *Id* at 973.    In upholding the District Court's denial of the defendants' motion to dismiss for *forum non conveniens*, the *Altmann* court held:

> We do not agree that these factors outweigh Altmann's choice of forum. Maria Altmann is an elderly United States citizen, who has resided in this country for over sixty years. The requisite foreign travel, coupled with the significant costs of litigating this case in Austria, weigh heavily in favor of retaining jurisdiction in the United States.

*Id.* at 973-974.

30

Similarly, here, the condition of the Plaintiffs and their choice of forum outweigh any discovery issues raised by Defendants. Certainly, if concerns over the travel of one plaintiff was sufficient for the court to maintain the *Altmann* in the United States, the requirement of travel for the hundreds of servicemen and servicewomen in this case makes their interest in the chosen forum that much more magnified.

Moreover, it would not appear inconvenient for TEPCO to litigate here. As detailed *supra* at pages 16-18 and 21, TEPCO has significant ties to the United States, including a subsidiary and ongoing contracts and partnerships with U.S. companies. Given its regular business dealings here, TEPCO undoubtedly has access to the U.S. Particularly when compared with the difficulty Plaintiffs would face in traveling to Japan, a U.S. court is not inconvenient to TEPCO, and this factor thus weighs in favor of litigation here in the United States.

### Access to Physical Evidence and Other Sources of Proof

While much of the information maintained by TEPCO may be located in Japan, the Plaintiffs' medical evidence and evidence related to the claims against GE are located here in the United States. Plaintiffs allege that the latent design defects and construction decisions—which were made by GE here in the United States— set the reactor on a collision course with disaster. (TAC ¶¶ 141-194.) Information regarding these known defects primarily requires discovery here in the United States. Moreover, the contract between GE and TEPCO—an integral document for this case—should be here in the United States within the possession of GE. Likewise, evidence related to GE's design and the work GE did in maintaining the reactors is in the United States and in the possession of GE.[12]

---

[12] As to TEPCO separately, the Ninth Circuit found it reasonable that the Court "agreed that most of the relevant documents and physical proof remained in Japan, and also that litigating in the United States would make it more difficult to obtain testimony from non-party witnesses located in Japan, but did not believe that these considerations outweighed

17-cv-1671 JLS JLB

*Whether Unwilling Witnesses*
*Can Be Compelled To Testify*

Although the availability of compulsory process is properly considered when witnesses are unwilling, it is less weighty when it has not been alleged or shown that any witness would be unwilling to testify. See, *Peregrine Myanmar v. Segal*, 89 F.3d 41, 47 (2d Cir. 1996). Here, Defendant has only speculated as to whether third party witnesses, (i.e., U.S. military commanders and Japanese government officials) will consent to testify.  As no witnesses has been demonstrated to be unwilling to testify, the Court should not attach much weight to the compulsory process factor. *Peregrine*, 89 F.3d at 47.

*The Cost of Bringing Witnesses to Trial*

The Ninth Circuit confirmed that this is a relatively neutral factor.  It found this Court's determination that, "[b]ecause of the nature of international litigation, *each* side would incur expenses related to traveling and procuring witnesses in *either* forum," to be reasonable.  *Cooper,* 860 F.3d 1193, 1211 (9th Cir. 2017).  If anything, this factor weighs slightly in favor of maintaining the case here in the United States.  Indeed, for a trial in Japan, all of the parties would have to travel to Japan.  This would include over four hundred plaintiffs, their physicians and other relevant damages witnesses, and all of the GE witnesses who were involved in the defective design and maintenance of the boiling water reactors. While a trial in the United States will also require international travel, it would not be as oppressive and vexing to Defendant TEPCO, as most such witnesses are or were in TEPCO's employ.  *See Piper Aircraft Co*., 454 U.S. at 241. This fact strongly favors maintaining the action in this Court.

---

Plaintiffs' interest in suing at home." *Cooper,* 860 F.3d 1193, 1211 (9th Cir. 2017). However, that decision was made absent consideration of GE's presence in the lawsuit.

*The Enforceability of the Judgment*

A judgment against TEPCO should be enforceable in either forum, particularly given TEPCO's deep ties, through its partners and subsidiaries, to the United States.

### b.   Public Interest Factors

The public interest factors also weigh in favor of maintaining the action in California.   The public interest factors relevant to a *forum non conveniens* analysis include "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Cooper*, 860 F.3d at 1211. On the weighing of the public factors, the Ninth Circuit has already upheld the decision of this Court that these factors were neutral.   *Id*.   Despite GE's representation to the contrary, the public factor analysis would be the same between GE and TEPCO.

*Local Interest in the Lawsuit*

While both governments may have a strong interest in the dispute, this factor slightly favors retaining the lawsuit here in the United States because of the strong interest in providing compensation for servicemembers and the ultimate costs of medical treatment lying with U.S. taxpayers.  *Cooper*, 166 F. Supp. 3d at 1136.

*Court's Familiarity with the Governing Law*

As explained *supra* at pp. 23-27, the law to be applied should be United States law, or some combination of laws that includes United States law.  It is thus premature for the Court to conclude that it is unfamiliar with the governing law and the public factors favor maintaining jurisdiction in this Court.  The Court will determine the applicable law after full briefing on the issues related to choice of law.  The parties will fully address the specific laws that should apply to the various issues raised in the case.  Even so, the Court will have the time and opportunity to become familiar with any Japanese laws that the Court deems to be controlling, and can consult with Japanese law experts if necessary.

33

*Burden on Local Courts and Juries, Congestion in the Court and*
*Costs of Resolving a Dispute Unrelated to a Particular Forum*

These factors appear to be relatively neutral, as none of these factors weigh heavily in favor of either forum. In affirming the District Court's ruling, the Ninth Circuit held that the United States' position was entitled to "deference." *Id.* at 1209.  In light of this deference and since there is no meaningful change in the complexion of the lawsuit with GE's involvement, there is no reason for this Court to modify its prior ruling that it rightfully had jurisdiction when considered under a comity analysis.

The sum of all these factors makes clear that there is no reason to disturb the decisions of this Court and the Ninth Circuit holding that *forum non conveniens* does not counsel dismissal of this case and maintaining the matter in this Court.

### iii.  This Case Still Should Not Be Dismissed Under The Doctrine Of International Comity.

This Court has already ruled that the doctrine of international comity does not warrant dismissal in favor of a Japanese forum.  As with *forum non conveniens,* the Court provided a through and detailed analysis of the five nonexclusive factors in an international comity analysis.  *Cooper* 166 F. Supp. 3d at 1137.  The Court concluded:

> [B]oth the U.S. and Japan have an interest in having this suit heard within their forum. TEPCO has pointed to several reasons supporting dismissal of the present claims; and the Court concedes that some of TEPCO's arguments are persuasive. However, the reasons for maintaining jurisdiction of this case are more compelling, namely the Parties' strong connection with this forum.

*Id.* at 1140.

Since GE is a U.S. based company, their inclusion in the lawsuit only weighs in favor of the Court's conclusion, since GE, like Plaintiffs, is connected to this forum. During the appeal, the U.S. Government provided an amicus brief that urged affirmance of the district court's order, explaining that issues of international comity raised by this case did not warrant dismissal. *Cooper*, 860 F.3d at 1207. In affirming the District Court's ruling, the Ninth Circuit held that the United States' position was entitled to

34

"deference." *Id.* at 1209. In light of this deference and since there is no meaningful change in the complexion of the lawsuit, even with GE's involvement, there is no reason for this Court to modify its prior comity analysis and ruling that it should retain this case

Comity is a "rule of 'practice, convenience, and expediency' rather than of law," *Mujica v. AirScan, Inc.,* 771 F.3d 580, 589 (9th Cir. 2014), and a discretionary act of deference by a national court to decline to exercise jurisdiction in a case properly adjudicated in a foreign state. *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 817 (1993). In this case, the *Mujica* factors for weighing concerns of international comity still do not counsel in favor of dismissal.

### *Location of Conduct in Question*

*Mujica* directs that the "location" factor consider both the locus of the harm *inflicted* (on the U.S.S. *Ronald Reagan* and other U.S. naval ships, off the coast of Japan) and the locus of the ensuing harm *suffered* (U.S.), and then weighs these in the balance to decide the U.S. interest in using – or not using – a foreign forum. *Mujica*, 771 F.3d at 605.

As described *supra* at pp. 13-16, it is well established that U.S. territorial jurisdiction extends beyond the land and sea boundaries of the United States. The fact that Plaintiffs' harms were caused by radiation, a trans-boundary danger that cannot be contained within a nation's borders, further emphasizes location of harm as an important consideration that justifies the United States retaining jurisdiction. *In re TMI Gen. Pub. Utils. Corp.*, 67 F.3d 1103, 1119, fn.34 (3rd Cir. 1995). This is particularly true when considering the value the U.S. places on international conventions[13] whose purpose is to

_____

[13] Convention on Nuclear Safety (ratified 1999)(obligating parties with land-based nuclear power plants to maintain high level safety re: siting, design, construction, operation, emergency preparedness); International Atomic Energy Agency Convention on Assistance in the Case of a Nuclear Accident or Radiological Emergency (ratified 1988) (international framework to speed assistance to countries responding to a radiological emergency); IAEA Convention on Early Notification of a Nuclear Accident

coordinate rapid response to nuclear emergencies with the understanding that without rapid containment, released radiation will cross sovereign boundaries and cause unmediated harm. The trans-boundary nature of a radioactive release significantly undermines the notion that the situs of a nuclear accident automatically warrants that the local government has the greater concern.

The fact that U.S. military personnel suffered the effects of TEPCO's negligence while on U.S. territory means that the United States' interest in retaining jurisdiction is immeasurably enhanced.

*Nationality of the Parties*

As service members, Plaintiffs are the embodied representatives of the United States. This Court has noted that enlisted U.S. service members, who have otherwise forfeited their individual freedom in the service of their country, 10 U.S.C § 502, rightfully expect to receive full protection and care under the laws of the United States. *Cooper*, 166 F.Supp.3d at 1137. This undeniably includes a reasonable expectation of a U.S. forum to adjudicate their claims.[14]

The mandate to protect its soldiers makes it reasonable for the United States to insist that its laws and its courts preside over its service members' claims. This is especially true when its soldiers are charged with serving humanitarian needs overseas and are harmed due to the gross negligence of a private, for-profit corporation. It is imperative that the harms be redressed in a U.S. court of law (1) to ensure opportunity to obtain compensation commensurate with the severity of the harms, and (2) to assert the

---

(ratified 1988)(addresses the potential for trans-boundary radioactive releases in one country that threaten public health and environment of another country). The United States is a signatory to these Conventions. http://www-ns.iaea.org/conventions.

[14] The Court noted Plaintiffs' physical illnesses to underscore their expectation of receiving "full protection and care under the laws of the United States." *Cooper*, 166 F.Supp.3d at 1137. As soldiers who were harmed by a private corporation's negligence during a humanitarian relief effort, it is reasonable that the United States would consider this variable when weighing its interest as opposed to deferring jurisdiction to Japan.

36

court's role in incentivizing corporations to reform their practices and deter such conduct from occurring in the future. *State Farm Mut. Auto. Ins. Co. v. Campbell* 538 U.S. 408, 416 (2003)(punitive damages serve the twin goals of punishment and deterrence); *Egan v. Mutual of Omaha Ins. Co*, 24 Cal.3d 809, 820 (1979)(deterrence of such "objectionable corporate policies" serves one of the principal purposes of punitive damages).

In deciding whether to cede adjudication of Plaintiffs' claims to a Japanese forum, this Court already determined, and was upheld by the Ninth Circuit, that Plaintiffs' interests as U.S. citizens and service members outweighed those of TEPCO, a publicly traded, private Japanese corporation. *Cooper*, 166 F.Supp.3d at 1137.

### Nature of the Conduct in Question

In evaluating this factor, a court must consider how the conduct in question elicits the core prerogatives of the countries. *Mujica*, 771 F.3d at 606. While the District Court acknowledged the undisputed concerns Japan has with respect to a nuclear accident occurring on its soil, it rightfully concluded that this alone did not warrant jurisdictional deference under comity. When viewed within the framework of international comity, U.S. service members injured while providing humanitarian assistance in Japan should not be perceived as having the same legal status as Japanese citizens, but rather that of representatives of the U.S. government on U.S. territory. Their true status similarly attenuates TEPCO's repeated insistence that Plaintiffs can simply take their place in line with their Japanese counterparts and await compensation under the Nuclear Damage Liability and Decommissioning Facilitation Corporation Act ("NDF"). Such perspective refuses to acknowledge the larger context under which Plaintiffs were called to Japan, and how that context informs the manner in which their harms are to be redressed.

One of the core prerogatives of the United States is to provide humanitarian assistance globally in response to disasters. As such, the United States is by far the largest

17-cv-1671 JLS JLB

provider of humanitarian assistance worldwide.[15] The U.S. military's role in providing humanitarian assistance is sizeable, with Congress allocating resources and authority to the Department of Defense to carry out disaster relief missions. When enlisting the U.S. military to undertake humanitarian missions, those missions are an unequivocal expression of U.S. foreign policy and the military personnel carrying them out are representatives of the U.S. government.

This generosity of spirit is greatly disrespected when military personnel are injured, not as a consequence of performing their mission's duties, but due to a private, for-profit corporation's gross negligence. TEPCO suggests that Plaintiffs should go to Japan and have their claims resolved by a bureaucracy that is disbursing an amount of compensation that pales in comparison with what Plaintiffs will actually need to attend to their harms.  The only claims being compensated in Japan through the NDF are for *economic* damages.  TEPCO is arguing that the harm their conduct created should be borne by the U.S. government and the U.S. taxpayers.

The United States recognizes that, due to the extremely dangerous nature of radioactive materials and their inability to be contained within a nation's boundaries when released, international protocols are necessary to set safety standards for both handling and responding to a nuclear emergency. When any private corporation patently disregards safety protocols and injures service members, the interests of the United States are directly affected.

---

[15] United States has heavily relied upon the U.S. military to provide humanitarian assistance and disaster relief. *See*, 10 U.S.C. § 404 Foreign Disaster Assistance ("the President may direct the Secretary of Defense to provide disaster assistance outside the United States to respond to manmade or natural disasters when necessary to prevent loss of lives or serious harm to the environment"); Department of Defense DoD 5100.46(4.1). The U.S. government spends nearly $4.7 billion annually responding to humanitarian emergencies worldwide. *See* Serafino, Nina, Department of Defense Role in Foreign Assistance. Congressional Research Service, Dec. 9, 2008 at http://www.fas.org/sgp/crs/natsec/RL34639.pdf.

*Foreign & Public Policy Interests of the U.S. and Japan*

The United States, in its *amicus* brief to the Ninth Circuited, articulated its foreign policy interest:

> Nor does the Convention on Supplementary Compensation for Nuclear Damage reflect a policy that the State in which a nuclear incident occurred must be the exclusive forum for adjudicating claims of civil liability when the Convention does not apply to the incident….

> Most significantly, while the United States acknowledges Japan's concerns that adjudication of claims outside its compensation scheme might undermine that scheme, Japan does not assert that the scheme is exclusive on its own terms. There is no provision of Japanese law foreclosing lawsuits arising out of the Fukushima….

> Retroactive application would significantly undermine the liability regime established by the Convention. For U.S. interests in the Convention to be fulfilled, it is essential that the treaty regime be widely adhered to internationally. The Convention creates a compensation regime whereby, if an incident occurs for which the baseline compensation is not sufficient, States Parties must pay into a supplementary compensation fund. See Convention art. III, IV. If a State were allowed to receive the benefit of the exclusive jurisdiction provisions and perhaps even access to the supplementary compensation fund by becoming a party to the treaty after a nuclear incident has taken place in its territory, there would be no need for any State to join the Convention prior to such an incident occurring.

Ex. 2 at 2, 11-15.

Although it is not the role of the judiciary to judge government policies, it is the judiciary's responsibility to *weigh* those policies when determining which country has a stronger interest. The United States, as the originator and drafter of the Convention, has a strong interest in seeing the Convention succeed.  As the government has asserted, however, retroactive adherence to the "exclusive jurisdiction" clause actually undermines the force of the Convention.  Accordingly, the policy interests of the United States strongly counsel in favor of retaining jurisdiction here in the United States.

On the other hand, Japan's motivation for ratifying the Convention may not reflect its policy interests at all, but rather reflect its immediate desire to attend to the dire

cleanup challenges at Fukushima.  Japan was arguably "forced" to ratify the Convention in order to access the technologies that will enable it to clean up the reactor sites.  The fact that Japan had not ratified the Convention prior to this litigation is evidence that Japan's foreign policy interests did not favor exclusive jurisdiction until TEPCO's corporate interests favored it.

The underlying rationale for the CSC is to indemnify third-party nuclear industry corporations. For purposes of deciding comity, the Court should also consider that another U.S. foreign policy, a commitment to providing worldwide humanitarian assistance, would be undermined by transferring this case to Japan. In allocating tremendous resources to providing humanitarian assistance worldwide, the United States ought not to also bear the difference between the limited compensation received under the Japanese Compensation Act and the actual costs for medical and disability expenses in the event that its relief workers are injured by a for-profit corporation while undertaking their duties.

Both in equity and law, the U.S. interest in these cases is stronger than that of Japan. As comity is a discretionary "prudential abstention...that counsels voluntary forbearance," *Mujica*, 771 F.3d at 598, this Court correctly decided that on balance, comity does not warrant that it defer jurisdiction in favor of Japan.

### *The Adequacy of the Forum*

Although this Court has found Japan to be an adequate forum for adjudication of Plaintiffs' claims, Plaintiffs maintain that if they were forced to bring suit in Japan they would face severe partiality, due to the political nature of the Japanese government's allocation of relief funds. Partiality may render an alternative forum inadequate. *Satz v. McDonnell Douglas Corp.,* 244 F.3d 1279 (11th Cir. 2001).

The fact that the agency mandated to address citizens' claims is not a private, independent entity, but an agency of the Japanese Government, creates a strong possibility that political concerns will overshadow Plaintiffs' claims, were they forced to bring them in Japan. Japanese attorneys Toshio Yanagihara and Kenichi Ido and Kentaro

40

Abe, member of the Fukushima Collective Evacuation Trial Team, all familiar with the civil justice system in Japan, state unequivocally and emphatically that the Plaintiffs in this action will not receive a fair trial in the courts in Japan.  Ex. 3 at 5, Ex. 4 at 6, Ex. 5 at 2.) These seasoned Japanese attorneys cite instances of unfair rulings by the Japanese courts responding to the Fukushima disaster. (Ex. 3 at 3-6, Ex. 4 at 3, Ex. 5 at 2-9.)

The right to adjudication by an impartial decision maker is a bedrock principle of due process. *In re Murchison*, 349 U.S. 133, 136 (1955). The fact that TEPCO has essentially been nationalized by the Japanese Government will make it difficult to obtain a fair and impartial proceeding in Japan. Plaintiffs will effectively be suing the Japanese government in Japanese courts on an issue that holds significant shame and disappointment for TEPCO and the Japanese government. *Cf. Helfant v. Kugler* 500 F.2d 1188, 1201 (3d Cir. 1974 )(courts are sometimes asked to resolve controversies in which a party holds some power to affect adversely the very judges who are deciding the dispute).  There is a reasonable concern that Plaintiffs will not receive impartial and fair treatment, either in a Japanese court or through levying claims with the NDF.

## IV.   Plaintiffs Have Sufficiently Plead Their Claims.

Plaintiffs provide ample detail and factual information in their Complaint to state a claim for relief.  "To avoid a Rule 12(b)(6) dismissal, a pleading need not contain detailed factual allegations, it need only plead "enough facts to state a claim to relief that is plausible on its face." *TreeFrog Developments, Inc. v. Seidio, Inc*., No. 13CV0158-IEG KSC, 2013 WL 4028096, at *2 (S.D. Cal. Aug. 6, 2013)(citing *Twombly*, 550 at 570).  Indeed, there is "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  Here, Plaintiffs have far exceeded that bar, providing substantial factual detail regarding the basis for their claims.

41

17-cv-1671 JLS JLB

i.  **Plaintiffs Have Sufficiently Pled Their Class Claims, And TEPCO Has Raised Issues More Suited When Class Certification Is Briefed and Considered.**

Plaintiff's class allegations are sufficient for purposes of Rule 12(f) and the issues that TEPCO raises are more appropriate for consideration at the class certification stage of this litigation.  Contrary to TEPCO's contention, Plaintiffs have defined the class of plaintiffs as the more than 70,000 members of the armed forces who served in Operation Tomodachi and were exposed to radiation as a result of the Fukushima disaster. Plaintiffs have averred that the core set of facts—the negligence of TEPCO and GE that led to the meltdown—and injuries—radiation exposure—are common to all class plaintiffs. Regardless, these are all issues that can be narrowed and briefed during the class certification process, at which time Plaintiffs are required to provide additional information to Defendants and the Court regarding the proposed parameters of the class. To the extent that the Court finds that further definition of the class is necessary at this stage, then Plaintiffs seek leave to amend this portion of their complaint to so provide.

ii.  **Plaintiffs have sufficiently and pled their personal injury claims.**

Defendant appears to primarily complain that Plaintiffs did not provide enough personal information about themselves or the nature of their injuries.  To the contrary, Plaintiffs have described that they are all "among the members of the U.S. Navy crews of the U.S.S. RONALD REAGAN…[and] crews of other vessels participating as part of the Reagan Strike Force, 7th Fleet, land-based service personnel, and/or their dependents."  (TAC ¶ 4.)  They describe that they were all "repeatedly exposed to ionizing radiation on or after March 11, 2011, due to the release of radioisotopes from the Fukushima Nuclear Power Plant." (TAC ¶ 4.)  The Complaint also considerably details the grossly negligent acts and omissions of TEPCO that led to the release of that radiation.

Although specific description of their injury is not required at the pleading stage,

42

Plaintiffs also allege that they each suffered injury as a result of the radiation exposure caused by TEPCO's gross negligence, including: "illnesses such as Leukemia, ulcers, gall bladder removals, brain cancer, brain tumors, testicular cancer, dysfunctional uterine bleeding, thyroid illnesses, stomach ailments, birth defects, death, and a host of other complaints unusual in such young adults and victims." (TAC ¶ 83.)  They also allege that they "will require treatment for their deteriorating health, medical monitoring, payment of their medical bills, appropriate health monitoring for their children, and monitoring for possible radiation induced genetic mutations." (TAC ¶ 83.)

If Defendant would like additional detail, Plaintiffs invite them to pursue discovery in this matter and have already consented to independent medical examinations of Plaintiffs. Plaintiffs are more than willing to engage in the exchange of additional information during discovery.  Indeed, they would be happy to finally litigate this case on its merits.

If the Court determines the Complaint does not contain sufficient allegations, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).   In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

### iii. Manuel Leslie Has Properly Pled His Wrongful Death and Survival Claims, As An Affidavit Is Only Required in State Court.

Defendant TEPCO erroneously avers that Manuel Leslie failed to comply with the state procedural requirements of California Code of Civil Procedure section 377.32.  That is a rule of California state court procedure, however, and does not apply to federal court actions.  "Section 377.32 is a state procedural rule, and in federal court, the Federal Rules

of Procedure govern." *Smith v. Specialized Loan Servicing, LLC*, No. 16CV2519-GPC(BLM), 2017 WL 4050344, at *2 (S.D. Cal. Sept. 13, 2017)(citing *Hanna v. Plumer*, 380 U.S. 460, 471 (1965)(federal rules of procedure apply in the district courts) and *In re Baycol Prods. Litig.*, 616 F.3d 778, 787 (8th Cir. 2010)(district court abused its discretion in relying on California Code of Civil Procedure section 377.32 to make a determination under Rule 25)). Plaintiff has established that he is the successor-in-interest of decedent's claims,[16] and therefore his claims are proper.

### iv. Plaintiffs Appropriately Bring Their Claims for Loss of Consortium, For Those Plaintiffs Who Are Spouses Of The Injured.

Many of Plaintiffs are the spouses of injured servicemen and women, and therefore have properly brought these claims. To the extend the Court believes additional information is required regarding the identity of these Plaintiffs, they request leave to amend the complaint to so provide.

### CONCLUSION

Five years into litigating these claims, and after appeal to the Ninth Circuit, TEPCO for the first time raises the defense of personal jurisdiction in its Motion to Dismiss.  It has plainly waived the defense, and there has been no change in law that made this defense "newly available."   In addition, TEPCO points to no persuasive developments in this case that merit reconsideration of this Court's well-reasoned *forum non conveniens* and international comity analyses.  Lastly, Plaintiffs have properly and sufficiently pled all of their claims.  For these reasons, Plaintiffs respectfully submit that Defendant TEPCO's Motion to Dismiss should be denied.

---

[16] If the Court requires, Plaintiffs can cure the alleged defect in these claims by filing the affidavits Defendant demands.

44

DATED:  June 20, 2018          RESPECTFULLY SUBMITTED,


By:    */s/ CHARLES A. BONNER*
       CHARLES A. BONNER

       */s/  JOHN R. EDWARDS*
       JOHN R. EDWARDS

       */s/  A. CABRAL BONNER*
       A. CABRAL BONNER

       */s/  PAUL C. GARNER*
       PAUL C. GARNER

       */s/  CATHARINE E. EDWARDS*
       CATHARINE E. EDWARDS

       Attorneys for Plaintiffs

45

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I, CATHARINE E. EDWARDS, am an attorney at Edwards Kirby LLP, counsel of record for Plaintiffs in this action. I certify that on June 20, 2018, I caused the attached document to be served via this Court's Electronic Filing System on counsel for Defendants Tokyo Electric Power Company and General Electric, who are registered users of that system. *See* Local Civil Rule 5.4.

DATED: June 20, 2018

BY:   ***/S/ CATHARINE E. EDWARDS***

CATHARINE E. EDWARDS

ATTORNEY FOR PLAINTIFFS

17-cv-1671 JLS JLB