ARNOLD & PORTER KAYE SCHOLER LLP
David J. Weiner (State Bar No. 219753)
Sally L. Pei (State Bar No. 296561)
david.weiner@arnoldporter.com
sally.pei@arnoldporter.com
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Telephone: 202.942.5000
Facsimile: 202.942.5999

ARNOLD & PORTER KAYE SCHOLER LLP
Michael D. Schissel (*pro hac vice*)
michael.schissel@arnoldporter.com
250 West 55th Street
New York, NY 10019-9710
Telephone: 212.715.1000
Facsimile: 212.715.1399

Attorneys for Defendant
GENERAL ELECTRIC COMPANY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDSEY R. COOPER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TOKYO ELECTRIC POWER COMPANY, INC., et al.,<br><br>Defendants. | Case No.: 3:12-cv-03032 JLS JLB<br>**DEFENDANT GENERAL ELECTRIC'S REPLY IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION, FORUM NON CONVENIENS, THE POLITICAL QUESTION DOCTRINE, FAILURE TO STATE A CLAIM, AND UNDER THE DOCTRINE OF INTERNATIONAL COMITY**<br><br>Judge:     Hon. Janis L. Sammartino<br>Date:       TBD<br>Time:       TBD<br>Crtrm.:    4A (Schwartz Building)<br>               221 W. Broadway<br>               San Diego, CA |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................ iii

INTRODUCTION ......................................................................................... 1

ARGUMENT ................................................................................................ 2

I.  JAPAN'S COMPENSATION ACT BARS ALL CLAIMS AGAINST
    GE ....................................................................................................... 2

II.  THIS CASE INVOLVES INEXTRICABLE POLITICAL QUESTIONS ... 12

III.  IF CALIFORNIA LAW APPLIES, MOST OF PLAINTIFFS' CLAIMS
      AGAINST GE ARE TIME-BARRED ................................................. 9

IV.  PLAINTIFFS FAIL TO STATE A CLAIM AGAINST GE ..................... 18

    A.  Plaintiffs' Undifferentiated Pleading Fails To Satisfy Rule 8 ........... 18

    B.  Plaintiffs' Claims Fail for Additional Reasons ................................. 19

        1.  Strict Liability for Manufacturing Defect (Count 2) ............... 19

        2.  Strict Liability for Design Defect (Count 3) .......................... 20

        3.  Strict Liability for Ultrahazardous Activities (Count 4) .......... 21

        4.  Res Ipsa Loquitur (Count 5) and Negligence Per Se (Count
            6) ...................................................................................... 22

        5.  Wrongful Death, Survival, and Loss of Consortium ............... 22

V.  PLAINTIFFS' CLAIMS AGAINST GE ARE MORE
    APPROPRIATELY HEARD IN JAPAN ............................................ 9

VI.  THIS CASE SHOULD BE DISMISSED FOR LACK OF SUBJECT
     MATTER JURISDICTION .............................................................. 22

VII.  THE DOCTRINE OF INTERNATIONAL COMITY REQUIRES
      DISMISSAL ................................................................................... 23

CONCLUSION ............................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altmann v. Austria*,
    317 F.3d 953 (9th Cir. 2004) ............................................................ 11, 12

*Arno v. Club Med Inc.*,
    22 F.3d 1464 (9th Cir. 1994) .................................................................... 6

*Barker v. Lull Eng'g Co.*,
    573 P.2d 443 (Cal. 1978) ......................................................................... 19

*Barrows v. American Motors Corp.*,
    144 Cal. App. 3d 1 (Cal. Ct. App. 1983) ............................................... 17

*Bockrath v. Aldrich Chem. Co., Inc.*,
    21 Cal. 4th 71 (1999) .............................................................................. 15

*Bramer v. United States*,
    412 F. Supp. 569 (C.D. Cal. 1976) (cited at Opp. 43) ........................... 21

*Carson v. Depuy Spine, Inc.*,
    365 F. App'x 812 (9th Cir. 2010) ............................................................ 19

*Castro v. Budget Rent-A-Car Sys., Inc.*,
    154 Cal. App. 4th 1162 (Cal. Ct. App. 2007) ....................................... 2, 5

*Collins v. Plant Insulation Co.*,
    185 Cal. App. 4th 260 (Cal. Ct. App. 2010) ........................................... 12

*Consolidated Data Terminals v. Applied Digital Data Sys., Inc.*,
    708 F.2d 385 (9th Cir. 1983) .................................................................... 8

*Cooper v. TEPCO*,
    166 F. Supp. 3d 1103 (S.D. Cal. 2015) ..........................................*passim*

*Cooper v. TEPCO*,
    860 F.3d 1193 (9th Cir. 2017) .......................................................*passim*

*Corrie v. Caterpillar, Inc.*,
    503 F.3d 974 (9th Cir. 2007) ................................................................... 13

*Dunbar v. Medtronic, Inc.*,
    2014 WL 3056026 (C.D. Cal. June 25, 2014) ........................................................ 22

*Executive Jet Aviation, Inc. v. City of Cleveland*,
    409 U.S. 249 (1972) .......................................................................................... 3

*Ford v. Brown*,
    319 F.3d 1302 (11th Cir. 2003) ........................................................................ 10

*Fox v. Ethicon Endo-Surgery, Inc.*,
    110 P.3d 914 (Cal. 2005) .................................................................................. 15

*Gillian v. CDCR*,
    2015 WL 4964836 (E.D. Cal. Aug. 19, 2015) ................................................ 22

*In re Coordinated Latex Glove Litig.*,
    99 Cal. App. 4th 595 (Cal. Ct. App. 2002) .................................................... 19

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
    Practices & Prods. Liab. Litig.*,
    754 F. Supp. 2d 1208 (C.D. Cal. 2010) .................................................... 19, 20

*In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in
    December, 1984*,
    634 F. Supp. 842 (S.D.N.Y. 1986) ................................................................... 9

*Kuehne & Nagel (AG & Co.) v. Geosource, Inc.*,
    874 F.2d 283 (5th Cir. 1989) ............................................................................ 3

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................ 15

*McCann v. Foster Wheeler LLC*,
    225 P.3d 516 (Cal. 2010) ..................................................................... 2, 3, 4, 7

*Miller v. Bechtel Corp.*,
    663 P.2d 177 (Cal. 1983) ................................................................................. 17

*Mississippi ex rel. Hood v. AU Optronics Corp.*,
    571 U.S. 161 (2014) ........................................................................................ 22

*Navarrette v. Armite Labs., Inc.*,
    2009 WL 1040304 (Cal. Ct. App. Apr. 20, 2009) ......................................... 15

*Nelson v. Indevus Pharmaceuticals, Inc.*,
   142 Cal. App. 4th 1202 (2006) ................................................................ 16

*O'Connor v. Boeing N. Am., Inc.*,
   92 F. Supp. 2d 1026 (C.D. Cal. 2000) ................................................... 15

*Offshore Rental Co. v. Cont'l Oil Co.*,
   583 P.2d 721 (Cal. 1978) .................................................................... 2, 5

*Paracor Finance, Inc. v. Gen. Electric Capital Corp.*,
   96 F.3d 1151 (9th Cir. 1996) .................................................................. 8

*Peregrine Myanmar Ltd. v. Segal*,
   89 F.3d 41 (2d Cir. 1996) ..................................................................... 11

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) .............................................................................. 10

*Smeltzley v. Nicholson Mfg. Co.*,
   559 P.2d 624 (Cal. 1977) ...................................................................... 17

*Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*,
   971 F.2d 401 (9th Cir. 1992) .................................................................. 8

*Taghadomi v. United States*,
   401 F.3d 1080 (9th Cir. 2005) ................................................................ 3

*Taylor v. John Crane, Inc.*,
   113 Cal. App. 4th 1063 (Cal. Ct. App. 2003) ................................... 12, 13

*Tucci v. Club Mediterranee, S.A.*,
   89 Cal. App. 4th 180 (Cal. Ct. App. 2001) ............................................ 6

*United States v. S. Cal. Edison Co.*,
   300 F. Supp. 2d 964 (E.D. Cal. 2004) .................................................. 21

*Woo v. Superior Court*,
   75 Cal. App. 4th 169 (Cal. Ct. App. 1999) ........................................... 18

*Yumul v. Smart Balance, Inc.*,
   733 F. Supp. 2d 1134 (C.D. Cal. 2010) ................................................ 16

**Statutes**

28 U.S.C. § 1332(d)(11) ........................................................................... 22

28 U.S.C. § 1332(d)(11)(B)(i) ................................................... 22

California Civil Code § 1431.2(a) ...................................... 12, 14

Class Action Fairness Act of 2005 (CAFA),
  Pub. L. No. 109-2, 119 Stat. 4 ............................................ 22

Japan's Act on Compensation for Nuclear Damage,
  Act No. 147 of 1961 ............................................ 2, 4, 6, 8, 10

Price-Anderson Act, Pub. L. No. 85-256, 71 Stat. 576 (1957) ................ 5, 6

**Other Authorities**

Fed. R. Civ. P. 8 ...................................................... 18

Fed. R. Civ. P. 12(b)(1) .............................................. 23

Fed. R. Civ. P. 12(b)(6) .......................................... 22, 23

*In the Matter of All General Electric Mark I Boiling-Water Reactor
  Operating Licensees*, 81 N.R.C. 193 (2015), available at
  https://goo.gl/brf6Wa .............................................. 20

*In the Matter of All Operating Reactor Licenses* (June 17, 2015), 81
  N.R.C. 884 (2015), available at https://goo.gl/yQPKt8 ................ 20

*USS Ronald Reagan to Depart San Diego for U.S. 7th Fleet* (Aug. 28,
  2015), http://www.cpf.navy.mil/news.aspx/010444 ...................... 5

1

## INTRODUCTION

Plaintiffs' opposition to GE's motion to dismiss is long on rhetoric and short on law. Plaintiffs consistently ignore binding case law and fail to respond to arguments that compel dismissal of all claims against GE. Plaintiffs concede that, if Japanese law applies to the question of GE's liability for claims arising from a nuclear accident in Japan, GE is not liable for any of Plaintiffs' claims. Yet Plaintiffs offer no response to numerous California cases holding that foreign law, not California law, governs liability for an accident that occurs in a foreign jurisdiction. Instead, Plaintiffs argue that a choice of law analysis would be premature and should await discovery. That contention is meritless. Choice of law is fully briefed and ripe for decision.

Even assuming California law applies, Plaintiffs' remaining arguments fare no better. Plaintiffs fail to explain why this Court is not a convenient forum for adjudicating their claims against GE arising from injuries suffered in Japan— particularly when much of the critical evidence supporting the claims and defenses is likely accessible only in Japan. Moreover, adjudicating Plaintiffs' claims will require the Court to evaluate the Navy's actions in order to determine what proportion of noneconomic damages GE should bear. Plaintiffs' arguments to the contrary ignore the differences between TEPCO's superseding causation defense in *Cooper* and the inevitable political question presented here. Even if Plaintiffs could clear that hurdle, Plaintiffs' claims against GE are time-barred. Plaintiffs invoke the discovery rule, but have entirely failed to meet their burden to plead specific facts justifying application of that rule to extend the limitations period. And on the merits, Plaintiffs make no effort to address the glaring pleading deficiencies in the TAC, not to mention the basic conceptual failings of each of their claims against GE. Finally, Plaintiffs' claims against GE should also be dismissed on the grounds of lack of subject matter jurisdiction and international comity.

For all these reasons, Plaintiffs' claims against GE should be dismissed.

**ARGUMENT**

## I.   JAPAN'S COMPENSATION ACT BARS ALL CLAIMS AGAINST GE

Under California choice of law rules, Japan's Compensation Act applies and channels all liability to the FNPP's operator—i.e., TEPCO. Mem. 8-19. Plaintiffs contend that the law allocating liability is jurisdictional, and thus a procedural question that is governed by California law. Opp. 6–7. But they provide no authority for the remarkable suggestion that the channeling law could be anything other than substantive. Numerous cases cited by GE where California courts applied the law of a different state to limit liability demonstrate that such an issue is plainly substantive and governed by the law of the state with the predominant interest in application of its law. *E.g.*, *McCann v. Foster Wheeler LLC*, 225 P.3d 516 (Cal. 2010); *Offshore Rental Co. v. Cont'l Oil Co.*, 583 P.2d 721 (Cal. 1978); *Castro v. Budget Rent-A-Car Sys., Inc.*, 154 Cal. App. 4th 1162 (Cal. Ct. App. 2007). In none of those cases did the court ever describe the liability-limiting law as jurisdictional or procedural. Indeed, Plaintiffs themselves describe procedural laws as "merely the mode by which a legal substantive right, i.e., that part of the law which creates, defines, and regulates rights and duties of the parties, is enforced." Opp. 7. But the channeling provision itself, in directing all liability to the plant's operator, "creates, defines, and regulates rights and duties of the parties." *Id.* Under Plaintiffs' own definition, it is a quintessentially substantive provision, and whether it applies is answered by reference to the ordinary California choice of law analysis.

Plaintiffs argue that the Court should "reject[]" Japan's overriding interests in the application of its law to determine liability in this case because the Court may apply different jurisdictions' laws to different issues. Opp. 7-8. That is a non sequitur. GE does not dispute that different issues in a case may be governed by the laws of different jurisdictions. But the question here is what law applies to the specific question of GE's liability. Plaintiffs nowhere explain why Japan's interests should be subordinated to California's interests in determining the applicable law and whether

GE is liable. Japan has substantial, compelling national interests in the application of its law to allocate liability for harms caused by a nuclear power plant accident occurring in its own territory. Mem. 13-17. In contrast, any interests California has in applying its law to determine liability here are minimal.

First, Plaintiffs do not dispute that the accident and injury in this case occurred outside California. *See* Opp. 12 ("harms … took place in the vicinity of Japanese territory"). Plaintiffs argue that the tort took place "on the naval vessels," presumably to suggest that this militates against applying Japanese law. *Id.* As an initial matter, the cases they cite did not involve choice of law; rather, they concerned whether the claims lay within federal admiralty jurisdiction. *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 250 (1972); *Kuehne & Nagel (AG & Co.) v. Geosource, Inc.*, 874 F.2d 283, 288-90 (5th Cir. 1989); *Taghadomi v. United States*, 401 F.3d 1080, 1084 (9th Cir. 2005). Regardless, even if Plaintiffs suffered harms aboard the naval vessels, California's governmental interests test still requires this Court to weigh and compare the interests of the jurisdictions involved to determine what law applies to determine GE's liability.

Here, Japan is indisputably the location of the FNPP and where the accident that precipitated Plaintiffs' injuries occurred. California courts have long recognized that foreign law rather than California law applies to injury-producing conduct in a foreign jurisdiction, even if the plaintiffs are California residents. *McCann*, 225 P.3d at 534 ("[A] jurisdiction ordinarily has 'the predominant interest' in regulating conduct that occurs within its borders."); *see* Mem. 15-16 (citing additional Ninth Circuit and California cases). Plaintiffs entirely ignore *McCann* and similar controlling decisions cited in GE's opening brief. Plaintiffs fail to identify a single case involving tortious conduct committed outside of California where a court applied California law instead of foreign law limiting a defendant's liability.

Plaintiffs claim that, if California law is not applied, they will receive insufficient compensation, Opp. 11 n.2, and that the deterrent effect of California's

products liability regime will be compromised, *id.* at 10-13. But California courts already have held these interests insufficient to justify applying California law to an accident occurring on foreign soil. For example, *McCann* acknowledged California's interest in compensating California residents for alleged negligence in connection with asbestos exposure at an Oklahoma oil refinery, and in ensuring that California would not be on the hook if those individuals received insufficient compensation. 225 P.3d at 518, 532-33. But the California Supreme Court found that Oklahoma's interest predominated even though applying Oklahoma law meant the plaintiff could not recover at all from the defendant. *Id.* at 528, 535-37.

Japan's interests in this case are more compelling than Oklahoma's interests in *McCann* in attracting and protecting out-of-state business. The Compensation Act is essential to the structure of Japan's entire nuclear power industry, enabling actors at every step of the nuclear power chain to participate in the industry with adequate insurance, while also ensuring proper compensation for persons injured by the operation of a nuclear power plant. Mem. 16-17. Applying California law, or the law of any other jurisdiction that does not similarly channel liability to the FNPP's operator, completely undercuts the important sovereign interests that the Compensation Act reflects. And to the extent California has some interest in compensating Plaintiffs (wherever they are from), applying the Compensation Act to their claims against GE still serves that interest because it does not interfere with Plaintiffs' ability to recover from TEPCO full damages for injuries proximately caused by the FNPP accident. *See* Decl. of Norihito Yamazaki, ¶ 6, ECF No. 153-17. Japan's Compensation Act sets no limit on the amount of recovery for such injuries. *See id.*; *see also* Decl. of Kohei Nasu, ECF No. 152-22, at 5-6. Indeed, TEPCO has openly acknowledged its liability for all such injuries, so there is no question that Plaintiffs can be fairly and adequately compensated by TEPCO. Plaintiffs nowhere contend otherwise. Finally, Plaintiffs do not dispute that California has no interest in applying its own law to compensate non-resident plaintiffs. This Court must

unquestionably apply Japanese law to, and dismiss, any non-California plaintiffs under step two of the governmental interest test. Mem. 13-14 (citing cases).

Plaintiffs argue that California has an interest in "deterring wrongful conduct within its borders," Opp. 9, 11, including by discouraging the manufacture and sale of defective products in California. But Plaintiffs fail to cite a single case holding that California has an interest in regulating the manufacture and sale of allegedly defective products *abroad* by a company like GE that is domiciled elsewhere. Opp. 9-12.[1] Regardless, any such interest would be subordinate to Japan's interests in ensuring the stability of its nuclear power industry. Mem. 14-19. Plaintiffs cite two cases to support their claim that California's interest predominates over Japan's, but both stand for precisely the opposite proposition. Opp. 11 n.2. In *Castro*, the court applied Alabama tort law immunizing Budget Rent-A-Car from liability for a car crash in Alabama, even though the plaintiff was a California resident and California tort law permitted recovery against Budget. 154 Cal. App. 4th at 1180-82. Likewise, in *Offshore Rental Co.*, the California Supreme Court applied Louisiana law to immunize an oil company in a tort suit stemming from an accident in Louisiana, even though California law permitted suit against the company and even though the plaintiff resided in California. 583 P.2d at 728-29. Plaintiffs' rhetoric regarding accountability for corporate misfeasance entirely ignores that California has no interest in imposing liability to deter GE, since, under the Price-Anderson Act, GE

---

[1] Plaintiffs do not explain how or why the Navy's presence in California bolsters California's interest in applying its law to this tort in Japan, Opp. 9 n.1, and cite no cases in support. This lawsuit will have no effect whatsoever on the Navy's presence in California or its contribution to California's economy; Plaintiffs do not suggest otherwise. Indeed, the U.S. military also has a large presence in Japan, and the U.S.S. Reagan is now stationed in Japan, but that is equally a non-factor. *See USS Ronald Reagan to Depart San Diego for U.S. 7th Fleet* (Aug. 28, 2015), http://www.cpf.navy.mil/news.aspx/010444. Nor do Plaintiffs explain why their status as U.S. servicemembers contributes to California's interest in the application of its law. *See* Opp. 8-9.

would not be financially responsible if this accident had occurred *in California* or anywhere else in the United States. *See* Mem. 10, 18 n.6.[2]

Also irrelevant is the fact that California law permits punitive damages while Japanese law does not (Opp. 10). *Arno v. Club Med Inc.*, 22 F.3d 1464, 1468 (9th Cir. 1994) (Guadeloupe's interest in regulating the "liability of an employer doing business within its borders" predominates even though "California allows punitive damages" and "[Guadeloupe] law does not"); *Tucci v. Club Mediterranee, S.A.*, 89 Cal. App. 4th 180, 188-89 (Cal. Ct. App. 2001) (applying Dominican law to accident in Dominican Republic though "[p]unitive…damages [were] unavailable" and despite any California interest in "industrial safety"). Plaintiffs cite no contrary case.

At bottom, Plaintiffs have no answer to Japan's significant, overriding interests in the application of its Compensation Act here. They simply contend that the Ninth Circuit has somehow already decided the choice of law question, and that this determination is law of the case. Opp. 13. That is wrong. The Ninth Circuit emphasized that no choice of law determination had yet been made, that the parties had not yet briefed the choice of law question, and that this Court would need to conduct a choice of law analysis in the first instance. *Cooper v. TEPCO*, 860 F.3d 1193, 1215 (9th Cir. 2017) ("The district court has yet to undergo a choice of law analysis … . Without knowing what body of law applies—whether it is California law, Japanese law, federal common law, or something else—we cannot know what Plaintiffs must demonstrate in order to prove their claims or what defenses are available to TEPCO."); *id.* at 1217 ("We decline the invitation to rule on this issue of California law … before the district court has determined what law applies."); *id.* at

---

[2] Plaintiffs cite California cases holding that contracts that indemnify a party for strict products liability are unenforceable (Opp. 9-10), but again ignore that the Price-Anderson Act embodies precisely the opposite policy in the context of nuclear regulation. Moreover, the issue here involves the application of a sovereign nation's statutory framework for regulating conduct within its borders, not a contractual undertaking between private parties.

1215 n.14 ("[T]he parties have not briefed the choice of law issue. … [W]e will defer consideration of the matter until after the parties fully brief the issue in the district court and the district court makes a determination in the first instance."); *id.* at 1210 n.12 ("[T]he district court has yet to determine whether U.S. or Japanese law will govern Plaintiffs' claims."). This is especially so as to the question of whether Japan's Compensation Act applies to determine GE's liability, which was *not* before the Ninth Circuit. That is the *only* choice of law question now before this Court.

Nor does anything about the Ninth Circuit's disposition of the international comity and *forum non conveniens* issues in TEPCO's appeal preclude a comprehensive choice of law analysis. *Cf.* Opp. 13. The question is which jurisdiction's law applies, not whether the court has discretion to retain a case or dismiss in favor of a foreign forum. And that question is answered by applying California's governmental interest test—which, as explained, compels the application of Japanese law.

Plaintiffs distort GE's argument that Japan's policy of limiting liability for commercial activity within its borders should apply here, claiming that GE is trying to "evade liability" by arguing for "limited liability … to out of state companies that conduct business in the state." Opp. 8, 9. GE's argument is simply that a weighing of the governmental interests at stake here ultimately tilts decisively in favor of "allocat[ing] [to Japan] the predominating lawmaking power under the circumstances of the present case." *McCann*, 225 P.3d at 534.

Finally, there is no weight to Plaintiffs' contention that a decision on choice of law would be "premature." Opp. 13. Plaintiffs assert that the parties have provided "only cursory briefing" on this issue. *Id.* at 13-14. But choice of law is the *central* issue at this stage of the proceedings. That is why GE presented extensive argument in its motion to dismiss, *see* Mem. 8-19, and Plaintiffs have had every opportunity to respond to those arguments, *see* Opp. 6-16. In fact, this is the second time these Plaintiffs have briefed the issue. *See* Response in Opposition to GE's Mot. to Dismiss

SAC, ECF No. 93, at 9-15. Moreover, there is no dispute at all about the content of Japanese law on GE's liability or the proper interpretation of the Compensation Act. Plaintiffs agree that, if Japanese law applies to the issue of GE's liability, Japan's Compensation Act bars all claims against GE. Opp. 10, 21. GE should not be required to remain in a lawsuit where its liability is clearly barred. TEPCO has already accepted liability for injuries actually and proximately caused by radiation from the FNPP. *See* Defs.' Joint Status Report ¶ 6, ECF No. 142. Thus, if GE is dismissed, the remaining issues in the case will focus primarily on the nature and extent of Plaintiffs' injuries, and causation. This issue must be adjudicated now to simplify the case and streamline the remainder of the proceedings.

Plaintiffs' contention that the choice of law analysis requires discovery is likewise frivolous. The choice of law turns on the policy interests of the jurisdictions involved. "[C]hoice-of-law and venue provisions" contained in any contracts between GE and TEPCO, Opp. 15, are irrelevant to what law governs liability for third parties' tort claims against GE. *See Paracor Finance, Inc. v. Gen. Electric Capital Corp.*, 96 F.3d 1151, 1165 (9th Cir. 1996) ("A choice-of-law clause … is a contractual right and generally may not be invoked by one who is not a party to the contract in which it appears.); *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992) ("Claims arising in tort are not ordinarily controlled by a contractual choice of law provision."). Indeed, if GE and TEPCO contracted for the application of Japanese law, Plaintiffs would undoubtedly argue this would not be binding as regards tort claims by third parties—and Plaintiffs would be correct. California law requires an analysis of the interests of the states involved to determine the law that most appropriately applies to each issue. *Consolidated Data Terminals v. Applied Digital Data Sys., Inc.*, 708 F.2d 385, 390 n.3 (9th Cir. 1983). Nor are such details as "the breakdown of operational responsibilities" at the FNPP, "what information TEPCO had regarding the incoming naval ships that carried Plaintiffs," or the purported "dissemination of false information regarding the

radiation emissions from the [FNPP]," Opp. 15, germane to the analysis. The division of operational responsibilities at the FNPP is a question for the merits, not for the threshold identification of governing law. What TEPCO knew about the incoming ships and the information it disseminated regarding radiation emissions is not relevant to Plaintiffs' claims against GE. The Court has all it needs to determine the governing law for purposes of GE's liability. There is no reason for further delay in deciding this critical threshold issue.

## II.   PLAINTIFFS' CLAIMS AGAINST GE ARE MORE APPROPRIATELY HEARD IN JAPAN

Plaintiffs' claims against GE should be heard and decided by a Japanese forum. There is no question that Japan is an adequate alternative forum, *see* Opp. 17, and the balance of public and private interests weighs decisively in favor of dismissal under the doctrine of *forum non conveniens*.

The public interests clearly favor Japan. Plaintiffs do not dispute that their claims against GE necessarily implicate design standards for nuclear power plants in Japan; nor do they dispute that "fact-intensive determinations about the appropriate design and operational standards" for nuclear power plants in Japan should be made by a Japanese forum. Mem. 25. Plaintiffs instead invoke the Ninth Circuit's decision that, on the record then before it, the Court did not abuse its discretion in concluding that the United States' interest in compensating military service members outweighed Japan's interest in centralizing litigation in Japan. Opp. 21. But that analysis on its face did not consider Japan's interest in adjudicating issues relating to the design standards for Japanese nuclear power plants, because neither TEPCO nor Plaintiffs had then raised the choice-of-law issue. Japan's weighty interest in this regard tips the balance in favor of proceeding in Japan. *See In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in December, 1984*, 634 F. Supp. 842, 864 (S.D.N.Y. 1986) ("The Indian government, which regulated the Bhopal facility, has an extensive and deep interest in ensuring that its standards for safety are complied with. … [A U.S.

court] is not the appropriate tribunal to determine whether the Indian regulations were breached, or whether the laws themselves were sufficient to protect Indian citizens from harm.").

And while Plaintiffs try to suggest that further briefing on choice of law is needed, Opp. 21-22, they have already effectively conceded that GE's and TEPCO's conduct must be measured by Japanese standards—assuming that the Compensation Act does not apply and does not render further evaluation of GE's liability unnecessary, ECF No. 93 at 15. Plaintiffs blithely contend that "the Court will have the time and opportunity to become familiar with any Japanese laws that the Court deems to be controlling." Opp. 21. But "tort law (like all areas of the law) is rife with nuances that are not consistently found throughout all jurisdictions." *Ford v. Brown*, 319 F.3d 1302, 1310 n.24 (11th Cir. 2003). That is why numerous courts have explained that the need to apply foreign law plainly favors dismissal. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 260 (1981).

The private factors likewise compel dismissal in favor of a Japanese forum. Whether GE designed the reactors in the United States, Opp. 17, is beside the point. Much of the key evidence in this case that is critical to both Plaintiffs' claims and GE's defenses will be difficult, if not impossible to obtain for proceedings in the United States. *See* Mem. 22-23. Plaintiffs' only response is to state that GE could obtain any necessary documents from TEPCO. Opp. 18. But it is not GE's burden to solicit from third parties evidence that is necessary to Plaintiffs' case. Regardless, it is implausible that TEPCO—which contends it is not subject to personal jurisdiction in this Court at all for claims arising out of the Fukushima accident, TEPCO Mot. to Dismiss TAC, at 3-19, ECF No.153-1—would nonetheless willingly subject its evidence and corporate witnesses to examination in a foreign court proceeding.

Moreover, as GE explained, Mem. 23, full adjudication of Plaintiffs' claims against GE and GE's defenses to liability will necessarily entail determining whether other entities—beyond TEPCO—that constructed or maintained the FNPP were

responsible for Plaintiffs' injuries. Those entities are based in Japan and not before this Court, thus testimony and evidence about the scope of their involvement in constructing and maintaining the FNPP will be extremely difficult, if not impossible, to obtain. *Id.* As GE explained, many of the key witnesses are not subject to this Court's compulsory jurisdiction. Plaintiffs cite *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 47 (2d Cir. 1996), for the proposition that GE must do more than "speculate[]" that witnesses would be unwilling to testify. Opp. 20. That case is inapposite; there, neither side even argued that any witness would have to be compelled to testify. Regardless, Toshiba has already demonstrated its unwillingness to be involved in these proceedings, and Plaintiffs have not been able to effect service on either Toshiba or Hitachi. *See* ECF No. 100 Exs. 1-2.

Plaintiffs claim that trial in Japan would impose additional costs given the residence of the parties and the Plaintiffs' "alleged medical conditions." Opp. 18. But the Complaint does not even "allege[]" any specific injuries for any specific Plaintiff. In any event, this Court and the Ninth Circuit both recognized that "[b]ecause of the nature of international litigation, *each side* would incur expenses related to traveling and procuring witnesses in either forum." *Cooper*, 860 F.3d at 1211 (quoting *Cooper*, 166 F. Supp. 3d at 1135) (emphasis added). And as this Court previously noted, it is not at all clear that all Plaintiffs would have to travel to Japan to pursue their claims, *Cooper*, 166 F. Supp. 3d at 1135, and non-California plaintiffs would have to travel to California in any event.

Regardless, the inconvenience and cost of travel to a different forum must be weighed against the serious implications of the absence of relevant evidence at trial if the case proceeds in this Court. Plaintiffs cite *Altmann v. Austria*, 317 F.3d 953 (9th Cir. 2004), where the Ninth Circuit concluded that the burden and expense that an elderly plaintiff would have to endure in traveling to a foreign forum weighed in favor of retaining jurisdiction in that case. But in reaching that conclusion, the court also made clear that the defendants had not presented countervailing considerations—

such as facts "establish[ing] such oppression or vexation of a defendant as to be out of proportion to the plaintiff's convenience, which may be shown to be slight" or "mak[ing] trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems." *Id.* at 974. Here, trial in a U.S. court would be rife with complications and barriers. At least with regard to GE, particularly if TEPCO is dismissed for lack of personal jurisdiction, the difficulties in obtaining relevant evidence will be greatly magnified.

## III.   THIS CASE INVOLVES INEXTRICABLE POLITICAL QUESTIONS

To be clear, GE submits that Japanese law applies and that this Court therefore need not even reach the political question doctrine. But if the Court were to agree with Plaintiffs that California law applies, it would squarely confront a political question: this Court will inevitably have to determine GE's culpability to allocate damages. Mem. 26-30. And that analysis will necessarily require an evaluation of the Navy's responsibility for Plaintiffs' injuries, which will in turn entail review of the Navy's decisions and actions in the course of rendering aid to a foreign nation.

Plaintiffs' statement that § 1431.2(a) of the California Civil Code "only applies to tortfeasors" misses the point. Opp. 23. California law allows GE to argue that the Navy's actions were a factual cause of Plaintiffs' injuries that reduce GE's proportion of liability for nonpecuniary damages, even if the Navy is immune from suit or not a party to the litigation. Mem. 27-28; *Collins v. Plant Insulation Co.*, 185 Cal. App. 4th 260, 266-67, 277 (Cal. Ct. App. 2010); *Taylor v. John Crane, Inc.*, 113 Cal. App. 4th 1063, 1068-69, 1071 (Cal. Ct. App. 2003). The only exception is if this Court or the jury were to determine that the Navy was *not* negligent or did not intentionally place Plaintiffs in harm's way. *Taylor*, 113 Cal. App. 4th at 1071 (fault will be allocated to entities that are absent or immune, but not "one whose actions have been declared not to be tortious"). It is this precise determination—assessing the reasonableness of the

Navy's conduct—that implicates the political question doctrine.[3]

Plaintiffs contend that *Taylor* demonstrates that apportionment of fault to the Navy "does not categorically preclude adjudication." Opp. 24. But GE's point is not that every tort case involving the Navy automatically presents a political question. In *Taylor*, the plaintiff sued the manufacturer of asbestos-containing products to which he was exposed during his employment as a Navy machinist. There is no indication that the political question doctrine was ever raised or that an assessment of the claims implicated naval decision-making. There certainly was no suggestion that the plaintiff's injuries were the result of U.S. military decisions to deploy personnel overseas to provide aid to a foreign nation. *Cooper*, 166 F. Supp. 3d at 1119. While Plaintiffs state that reviewing those military decisions here will not "inescapably lead to a political question," Opp. 24, the Ninth Circuit has stated otherwise: decisions to provide military or other aid to foreign countries are "inherently entangled with the conduct of foreign relations." *Cooper*, 860 F.3d at 1213 (quoting *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 983 (9th Cir. 2007)).

Plaintiffs put up another straw man in contending that this Court should not rely on the Department of Defense report cited in GE's motion to dismiss. GE does not contend that the Court should resolve the issues of causation or damages now. *Cf.* Opp. 24. Rather, the contradictions between Plaintiffs' allegations and statements by the U.S. government regarding Navy sailors' potential exposure to radiation highlight the extent to which adjudicating Plaintiffs' claims will require this Court to pass

---

[3] Plaintiffs similarly miss the mark in arguing that "[s]imply being the agent that delivered the Plaintiffs to the location where GE and TEPCO's negligence injured them does not … mean the Navy was negligent." Opp. 23. Assessing whether the Navy was negligent would go far beyond this limited inquiry. It would require a direct evaluation of the Navy's decision-making: what information was available and why—not just whether—the Navy moved the ships to locations where Plaintiffs allegedly were exposed to excessive radiation, and why—not just whether—the Navy did not take additional preventative measures.

judgment on the Navy's actions, and to disagree with the Navy's own assessment of the steps it took to avoid exposure. Mem. 28-30.

Finally, the political question issues implicated by § 1431.2(a) are entirely different from those addressed by the Ninth Circuit in relation to TEPCO's superseding cause defense. Mem. 27-28. As the Ninth Circuit recognized, it was not yet clear that adjudicating TEPCO's superseding cause defense would necessarily require an evaluation of whether the Navy's actions were reasonable. *See Cooper*, 860 F.3d at 1216. The allocation of liability required under § 1431.2(a) cannot be resolved at any stage of this case without this Court evaluating the reasonableness of the Navy's actions in deciding both the Navy's negligence and its level of culpability.

## IV.   IF CALIFORNIA LAW APPLIES, MOST OF PLAINTIFFS' CLAIMS AGAINST GE ARE TIME-BARRED

California's two-year statute of limitations bars Plaintiffs' claims (except the wrongful death claims). In an apparent concession that the statute of limitations would otherwise doom their claims, Plaintiffs now try to ignore the TAC's allegation that they suffered the injury of exposure to radiation on March 11 or 12, 2011. Instead, they now claim that they suffered latent illnesses as a result of such exposure and have "only recently" discovered "the nature and extent of their injuries." TAC ¶ 84. But even on that newly reconfigured theory, the statute of limitations still bars Plaintiffs' claims against GE.

First, Plaintiffs come nowhere close to pleading with the requisite particularity that they have suffered any latent illnesses. The only reference in the TAC to specific illnesses is the shotgun-style allegation that Plaintiffs—all 239—suffered a list of physical ailments that "include, but are not limited to … [i]llnesses such as leukemia, ulcers, gall bladder removals, brain cancer, brain tumors, testicular cancer, dysfunctional uterine bleeding, thyroid illnesses, stomach ailments, birth defects, death, and a host of other complaints unusual in such young adults and victims." TAC ¶ 83. It is implausible that each of the 239 Plaintiffs was diagnosed with all of these

conditions between March 11 or 12, 2013 (two years from the date of injury) and November 18, 2014, when Plaintiffs filed the TAC.

It is incumbent on Plaintiffs to *individually* allege, in their complaint, what that injury is, and when it manifested. *O'Connor v. Boeing N. Am., Inc.*, 92 F. Supp. 2d 1026, 1038 (C.D. Cal. 2000). In *O'Connor*, each plaintiff identified a specific "serious illness" with which he or she had been diagnosed, and the date of diagnosis. *Id.* at 1030 & n.5; *see also Bockrath v. Aldrich Chem. Co., Inc.*, 21 Cal. 4th 71, 80 (1999) (toxic tort plaintiffs must allege "specific illness"). And as Plaintiffs do not dispute, the Constitution requires each Plaintiff individually to identify his or her injury with particularity. Mem. 31 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 & n.1 (1992)). But the TAC does not state whether or when any individual Plaintiff sustained injury. Mem. 30-31. In fact, Plaintiffs' attempt to invoke the discovery rule is itself an implicit concession that Plaintiffs' injuries manifested themselves outside the limitations period. "A plaintiff who doesn't allege that he was injured within the limitations period and instead invokes the discovery rule concedes by implication that, without the discovery rule, his claims are barred." *Navarrette v. Armite Labs., Inc.*, 2009 WL 1040304, at *6 (Cal. Ct. App. Apr. 20, 2009) (internal quotation marks and brackets omitted).

Second, even beyond Plaintiffs' failure to adequately identify their injuries and dates of diagnosis, Plaintiffs rely on the vague and conclusory allegation that they "have, only recently, within the relevant statutes of limitation periods, discovered the facts pertaining to the nature and extent of their injuries," and "the facts which prove that DEFENDANTS, and each of them, are the actual and proximate cause of their injuries, damages, and harm." TAC ¶ 84; *see* Opp. 26 (quoting allegation in original complaint, which did not name GE). But to invoke the rule, each Plaintiff must "specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 920-21 (Cal. 2005) (internal quotation marks

omitted). Plaintiffs allege no specific and individualized facts regarding the time and manner of the "recent" discovery of their injuries and GE's alleged wrongdoing. And they fail to explain why they could not have earlier discovered the cause of their injuries and GE's alleged role. Again, even after the filing of *three* amended complaints, the TAC still contains only insufficient conclusory allegations, strongly suggesting that Plaintiffs lack factual support for this vague assertion. And Plaintiffs' assertion that they "just recently" discovered their claims is facially implausible, given that the TAC relies on 2011 and 2012 media reports of GE's and TEPCO's alleged wrongdoing. Mem. 34-36.

Ironically, Plaintiffs now dispute the relevance of these media reports, citing *Nelson v. Indevus Pharmaceuticals, Inc.*, 142 Cal. App. 4th 1202, 1206 (Cal. Ct. App. 2006). But unlike in *Nelson*, where the court rejected the argument that media reports located by the defendant placed a plaintiff on inquiry notice when they were distributed to the "public in general," *id.* at 1205, Plaintiffs identify these very media reports as the source of their belief of GE's alleged wrongdoing. Plaintiffs allege no other new fact that has come to their attention since these 2011-2012 media reports that alerted them to their claims against GE or that would justify their failure to file within the statute of limitations. *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1134, 1143-44 (C.D. Cal. 2010) (plaintiff who failed to "allege[] in any form the manner of her discovery" of the facts giving rise to her claim, "d[id] not adequately plead tolling under the delayed discovery rule").

Moreover, here, Plaintiffs were already on inquiry notice in March 2011 when they allegedly were exposed to radiation. *E.g.*, TAC ¶¶ 192, 194, 210; Mem. 33. Plaintiffs' explanation that, in preparing their first three complaints, they were "expressly focused on TEPCO's role in causing the reactors' meltdown," and only "conduct[ed] the relevant and requisite research" about GE's role after they changed their theory of liability, Opp. 30, 32, does not excuse their oversight. The global media coverage of these events and the purported defects in GE's design, as alleged

in the Complaint, amply demonstrate that even a cursory investigation as to the causes of the FNPP accident would have revealed the bases of Plaintiffs' claims against GE long before August 2015. *Miller v. Bechtel Corp.*, 663 P.2d 177, 181 (Cal. 1983) (a person who "became aware of facts which would make a reasonably prudent person suspicious, … ha[d] a duty to investigate further and [is] charged with knowledge of matters which would have been revealed by such an investigation"). Plaintiffs have not remotely met their burden to allege facts that would allow them to invoke the discovery rule as is necessary to excuse their late claims.

Nor should the Court credit Plaintiffs' half-hearted invocation of the California Doe pleading rule. Opp. 31-33. Plaintiffs have no response to the fact that their "Doe" pleading was itself untimely. Mem. 36. Indeed, while Plaintiffs in their brief assert that "in their Complaint (Dkt. No. 1), Plaintiffs have sufficiently alleged" the existence of Doe defendants, Opp. 27, the complaint at docket entry 1 contains no such allegation.[4] The first time Plaintiffs ever referred to Doe defendants came in the FAC, which—as GE explained, Mem. 36—Plaintiffs filed after the statute of limitations had already expired.

Citing *Smeltzley v. Nicholson Mfg. Co.*, 559 P.2d 624 (Cal. 1977), and *Barrows v. American Motors Corp.*, 144 Cal. App. 3d 1 (Cal. Ct. App. 1983), Plaintiffs also contend that Defendants bear the burden to show that the Plaintiffs were "dilatory" and that Defendants "suffered prejudice from any such delay." Opp. 34. Plaintiffs' reliance on these cases is misplaced. *Smeltzley* and *Barrows* concerned the narrow situation where a defendant challenges operation of the Doe pleading rule because the plaintiffs unreasonably delayed amending their complaint after obtaining actual

---

[4] Plaintiffs also refer to a complaint, filed on April 1, 2013, which alleged John Doe Defendants. Opp. 34. This apparently refers to a separate, duplicative action initiated by Plaintiffs. *Cooper v. TEPCO*, No. 12-cv-773 (S.D. Cal.). Plaintiffs voluntarily dismissed this complaint on June 4, 2013, and instead filed the FAC in this case. Regardless, the April 1, 2013 filing, too, is untimely, as the limitations period expired on March 11 or 12, 2013.

knowledge of the Doe defendant's identity. *Barrows*, 144 Cal. App. 3d at 9. Even if the Doe pleading had been timely filed, the problem is not that Plaintiffs slept on their rights before seeking to amend under the Doe pleading rule; rather, Plaintiffs were not "genuinely ignorant" of GE's identity, as required to invoke the rule in the first place. *Woo v. Superior Court*, 75 Cal. App. 4th 169, 177 (Cal. Ct. App. 1999). Plaintiffs' claims against GE must be dismissed as untimely.

## V.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST GE

### A.   Plaintiffs' Undifferentiated Pleading Fails To Satisfy Rule 8

Plaintiffs acknowledge that "undifferentiated pleading" that fails to distinguish between defendants is improper. Opp. 35. They also do not dispute that the Complaint mostly refers to "Defendants" or to the "GE Defendants." Mem. 38; Opp. 35, nor that Plaintiffs' references to "Defendants" mean that "the entirety of the designated conduct applies to all Defendants." Opp. 35. This alone amounts to a concession that Plaintiffs' pleading fails to satisfy Rule 8.

Plaintiffs nevertheless contend that they "carefully differentiated their claims between TEPCO and 'GE Defendants' who were responsible for designing, repairing and renovating the Dai-ichi reactors." Opp. 35. This is simply untrue.[5] Moreover, Plaintiffs do not deny that their Complaint relies on generic, catchall allegations, nor that such allegations do not provide GE notice of the facts on which each individual Plaintiff bases his or her claims and therefore fail to satisfy Rule 8's pleading requirements.

---

[5] *See* TAC ¶ 105 ("Defendants, and each of them, … operated … the FNPP"); *id.* ¶ 100 ("Defendants, and each of them, … engineered, constructed, maintained, operated, managed, and controlled the FNPP"); *id.* ¶ 133 ("TEPCO and GE DEFENDANTS negligently failed nuclear power plant operation LESSON NO. 1"); *id.* ¶¶ 135, 136 (similar); *id.* ¶¶ 142-43, 150, 151, 157-58, 161-63, 191.

### B.   Plaintiffs' Claims Fail for Additional Reasons

#### 1.   Strict Liability for Manufacturing Defect (Count 2)

Plaintiffs cannot state a products liability claim absent an identification of an actual product placed "on the market." Mem. 39-41. Plaintiffs completely ignore this requirement and this Court's prior determination that a nuclear power plant is not a product on the market. *Cooper*, 166 F. Supp. 3d at 1129. Even if it were, Plaintiffs' products liability claims fail in any event. As GE explained, Mem. 41-42, a manufacturing defect claim posits that the manufacturing process in some way deviated from an otherwise suitable design. *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, 754 F. Supp. 2d 1208, 1222 (C.D. Cal. 2010) (quoting *In re Coordinated Latex Glove Litig.*, 99 Cal.App.4th 595, 613 (Cal. Ct. App. 2002)). "If a product meets the design specifications applicable at the time of manufacture, there is no manufacturing defect." *Carson v. Depuy Spine, Inc.*, 365 F. App'x 812, 814 (9th Cir. 2010). Plaintiffs must "*identify/explain how* the product either deviated from defendant's intended result/design or *how* the product deviated from other seemingly identical product models." *Toyota*, 754 F. Supp. 2d at 1222 (internal quotation marks omitted).

Plaintiffs admit that they have not alleged any such manufacturing defect, and instead argue that this is not the law. But the case and jury instruction Plaintiffs cite are not to the contrary, Opp. 36-37; they recognize that plaintiffs must establish a "defect" or "manufacturing defect," meaning that the product "differs from the manufacturer's intended result or from other ostensibly identical units of the same product line." *Barker v. Lull Eng'g Co.*, 573 P.2d 443, 454 (Cal. 1978). Plaintiffs' flawed theory erases the distinction between manufacturing and design defect claims. Plaintiffs also err in relying on allegations that concern exclusively *design* issues, ignoring the fundamental need to allege that the *manufacturing* process deviated from the FNPP's design. Opp. 37-38.

### 2.    Strict Liability for Design Defect (Count 3)

This Court previously dismissed the plaintiffs' design defect claim against TEPCO because the "FNPP was evidently not a product 'placed on the market.'" *Cooper*, 166 F. Supp. 3d at 1129. Plaintiffs' design defect claim here fails for the same reason.

Further, Plaintiffs ignore GE's argument that the TAC fails to allege the second element of this claim: the defendant's "knowledge that [the product] will be used without inspection for defect." *Id.* at 1128; Mem. 41 (quoting same). The TAC in fact alleges that the FNPP *was* inspected by its sole user, TEPCO. *See* TAC ¶¶ 103, 124, 126, 140(g). The design defect claim must be dismissed for this reason as well.

Plaintiffs also concede that the "consumer expectations test" is inapplicable, since "nuclear reactors are obviously not a product within the common experience of ordinary consumers." Opp. 39 (internal quotation marks omitted). Instead, Plaintiffs rely exclusively on the "risk-benefit test," *id.*, but the TAC nowhere alleges that "the risks of the design outweigh the benefits," as required to satisfy the test. *Toyota*, 754 F. Supp. 2d at 1220 ("To meet the strictures of *Twombly* and *Iqbal*, Plaintiffs should identify which design defect theory is being utilized and allege facts to support that theory."). Plaintiffs try to cobble together allegations from the TAC to meet the test, but simply repeat the same alleged design deficiencies and speculate that some better design must have been available. The TAC nowhere identifies a safer, technically and commercially feasible alternative design.[6] Plaintiffs' design defect claim should be dismissed for these additional reasons.

---

[6] Since the Fukushima accident, the U.S. Nuclear Regulatory Commission has found GE's Mark I design to be safe. *In the Matter of All Operating Reactor Licenses*, 81 N.R.C. 884, 888 (2015), available at https://goo.gl/yQPKt8; *In the Matter of All General Electric Mark I Boiling-Water Reactor Operating Licenses*, 81 N.R.C. 193, 196 (2015), available at https://goo.gl/brf6Wa. The Court may take judicial notice of these decisions.

### 3.   Strict Liability for Ultrahazardous Activities (Count 4)

Plaintiffs do not dispute that the mere design or manufacture of a product—as opposed to the product's use—is not ultrahazardous. Mem. 42. Plaintiffs point to their vague allegation that "GE … ha[s] been involved in maintenance and servicing of the nuclear power plant during the past decades." Opp. 43 (citing TAC ¶¶ 141, 143). Not only does the TAC fail to allege how plant maintenance contributed to the accident, but the TAC asserts that the relevant "ultrahazardous activity" is "producing nuclear power"—not any "maintenance" or "servicing." TAC ¶ 253. Plaintiffs thus admit that the Complaint does not allege that GE undertook the purported ultrahazardous activity. This concession alone warrants dismissal.

Even if GE had produced nuclear power, the claim would fail because this activity is not ultrahazardous. Plaintiffs ignore multiple federal and state decisions holding that "[u]nder California law, the activities of power plants are not classified as ultrahazardous for purposes of the strict liability doctrine," because California law limits the doctrine to activities that "are neither commonplace nor customary." *United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 991 (E.D. Cal. 2004)(quotation marks omitted); Mem. 42-43 (citing cases). And Plaintiffs do not dispute that the generation of nuclear power is pervasive in the United States and Japan. Mem. 43. Plaintiffs cite a Restatement provision and mostly out-of-circuit cases indicating that "the handling and manipulating of highly radioactive materials" is hazardous. Opp. 43-44. But *none* of those cases applied California law (and some involved nuclear *weapons*, not nuclear power), and Plaintiffs do not allege that GE engaged in any of the activities at issue in those cases. The one California case Plaintiffs cite did not involve a strict liability claim for ultrahazardous activities at all, and applied New Mexico—not California—law. *Bramer v. United States*, 412 F. Supp. 569, 572 (C.D. Cal. 1976) (cited at Opp. 43). Because the generation of nuclear power is commonplace, Plaintiffs' ultrahazardous activities claim fails.

### 4.    Res Ipsa Loquitur (Count 5) and Negligence Per Se (Count 6)

Res ipsa loquitur and negligence per se are not claims at all, but rather evidentiary doctrines. Plaintiffs do not dispute this; nor do they offer any argument in response to GE's arguments that the doctrines are inapplicable in any event. Mem. 43-44. These claims must therefore be dismissed.

### 5.    Wrongful Death, Survival, and Loss of Consortium

Plaintiffs concede that their wrongful death, survival, and loss of consortium claims suffer from "procedural omissions." Opp. 44. Plaintiffs assert that these errors are "de minimis" and "can easily be remedied." *Id.* But courts routinely dismiss claims based on these same errors. *See, e.g.*, *Dunbar v. Medtronic, Inc.*, 2014 WL 3056026, at *8 (C.D. Cal. June 25, 2014) (dismissing loss of consortium claim under Rule 12(b)(6) for failure to name spouses as plaintiffs); *Gillian v. CDCR*, 2015 WL 4964836, at *2 (E.D. Cal. Aug. 19, 2015) (dismissing wrongful death claim for failure to comply with state law requirement to provide affidavit).

## VI.   THIS CASE SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

CAFA does not confer subject-matter jurisdiction over this dispute. Plaintiffs do not seriously contend that their claims are appropriate for class adjudication and provide no indication that they believe a class will ever be certified. Instead, Plaintiffs invoke the "mass action" provisions of CAFA, 28 U.S.C. § 1332(d)(11). Opp. 3-4 But CAFA provides for federal jurisdiction over only those claims in a mass action that "satisfy the jurisdictional amount requirements under subsection (a)." *Id.* § 1332(d)(11)(B)(i). That is, federal jurisdiction exists only over plaintiffs "whose claims individually satisfy the $75,000 amount in controversy requirement." *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 166 (2014). The TAC contains no individualized allegations as to the amount in controversy for each of the 239 plaintiffs, making it impossible to determine whether the requirements for CAFA jurisdiction are met as to each individual plaintiff. Accordingly, this Court should

dismiss Plaintiffs' claims for lack of subject-matter jurisdiction.

In addition, GE  preserves for further review its argument that the Convention on Supplementary Compensation grants exclusive jurisdiction over Plaintiffs' claims to the courts of Japan.

## VII.   THE DOCTRINE OF INTERNATIONAL COMITY REQUIRES DISMISSAL

Plaintiffs rely on this Court's statement that the parties' "strong connection" with this forum favored retaining jurisdiction. Opp. 45. But the Ninth Circuit stated that the parties' ties to the United States, balanced against Japan's interests in the case, were "not particularly helpful in determining whether to dismiss Plaintiffs' claims." *Cooper*, 860 F.3d at 1205-06. But Plaintiffs do not challenge GE's argument that the claims against GE implicate additional sovereign interests of the Japanese government—the regulation of Japan's nuclear power industry and design standards for Japanese nuclear power plants—that did not factor into the Ninth Circuit's comity analysis. These considerations now weigh in favor of dismissal, so that the sensitive issues of Japanese policy that the claims against GE raise can be resolved by Japanese courts.

## CONCLUSION

For the reasons set forth above and in GE's opening memorandum, the Court should dismiss the Complaint with prejudice under Rule 12(b)(1), the political question doctrine, or Rule 12(b)(6), or the Court should dismiss without prejudice under the doctrines of international comity or *forum non conveniens*.

1   Dated:  July 11, 2018                    Respectfully submitted,

2
                                            ARNOLD & PORTER
3                                             KAYE SCHOLER LLP

4
                                            */s/ David J. Weiner*
5                                           _____
                                            David J. Weiner
6                                           Sally L. Pei
                                            601 Massachusetts Ave., NW
7                                           Washington, DC 20004-1206
                                            (202) 942-5000
8

9                                           Michael D. Schissel
                                            (*pro hac vice*)
10                                          250 West 55th Street
                                            New York, NY 10019-9710
11                                          (212) 715-1000
12
                                            *Counsel for General Electric Company*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I, David J. Weiner, am an attorney at Arnold & Porter Kaye Scholer LLP, counsel of record for Defendant General Electric Company in this action. I certify that on July 11, 2018, I caused the attached document to be served via this Court's Electronic Filing System on all parties in this case, who are registered users of that system. See Local Civil Rule 5.4.

DATED: July 11, 2018

By:    */s/ David J. Weiner*
       David J. Weiner