GREGORY P. STONE (State Bar No. 78329)
DANIEL P. COLLINS (State Bar No. 139164)
HAILYN J. CHEN (State Bar No. 237436)
MARK R. YOHALEM (State Bar No. 243596)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California  90071-3426
Telephone:   (213) 683-9100
Facsimile:   (213) 687-3702

KYLE W. MACH (State Bar No. 282090)
BRYAN H. HECKENLIVELY (State Bar No. 279140)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California  94105-2907
Telephone:   (415) 512-4000
Facsimile:   (415) 512-4077

Attorneys for Defendant
TOKYO ELECTRIC POWER COMPANY
HOLDINGS, INC.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDSAY R. COOPER; *et al*., | Case No. 12-cv-3032 JLS JLB |
| Plaintiffs, | **DEFENDANT TOKYO ELECTRIC POWER COMPANY HOLDINGS, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTIONS TO DISMISS THIRD AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION, UNDER THE DOCTRINES OF INTERNATIONAL COMITY AND *FORUM NON CONVENIENS*, AND FOR FAILURE TO STATE A CLAIM** |
| vs. | |
| TOKYO ELECTRIC POWER COMPANY, INC.; *et al*., | |
| Defendants. | |
| | Judge:  Hon. Janis L. Sammartino |
| | Date:    [To Be Set by Court] |
| | Time:    [To Be Set by Court] |
| | Crtrm.: 4D (Schwartz Building) |
| | 221 West Broadway |
| | San Diego |

1

**TABLE OF CONTENTS**

2
**Page**

3   ARGUMENT ........................................................................................................ 1

4   I.   This Case Should be Dismissed for Lack of Personal Jurisdiction ........ 1

5        A.   TEPCO's Personal Jurisdiction Defense Is Timely
             Because It Was Not "Available" Until the Supreme Court
6             Decided *Bristol-Myers* ................................................................ 1

7        B.   There Is No Specific Jurisdiction Over TEPCO in
             California ...................................................................................... 6
8
9             1.   Plaintiffs Cannot Establish That TEPCO
                  Purposefully Directed Its Activity Toward
                  California ............................................................................ 7
10
11            2.   TEPCO's Unrelated Business Interests Do Not
                  Establish Specific Jurisdiction Under a Purposeful
                  Availment Theory ............................................................... 8
12
13       C.   There Is No Jurisdiction Over TEPCO Under Rule 4(k)(2) ....... 10

14  II.  This Case Should Now Be Dismissed on International Comity
         and *Forum Non Conveniens* Grounds in Light of Further
         Developments ...................................................................................... 12
15
16       A.   The Fact That Japanese Law Governs the Major Issues in
             This Case Weighs Heavily in Favor of a Japanese Forum ........ 13

17       B.   The Remaining Comity Factors Also Support Dismissal .......... 17

18       C.   The Remaining *Forum Non Conveniens* Factors Favor
             Dismissal .................................................................................... 20
19
20            1.   Plaintiffs Ignore Changed Circumstances That
                  Cause the Private Interest Factors to Favor
                  Dismissal .......................................................................... 21
21
22            2.   The Public Interest Factors Favor Dismissal .................. 23

23  III. The TAC Should Be Dismissed, in Whole or in Part, for Other
         Reasons ............................................................................................... 24

24       A.   Plaintiffs' Class Allegations Are Insufficient ........................... 24

25       B.   The Claims of 156 Plaintiffs Lack Any Factual
             Allegations Other Than the Plaintiff's Names and Should
26            Be Dismissed .............................................................................. 24

27       C.   Plaintiffs Cannot Pursue Loss of Consortium Claims on
             Behalf of Their Spouses.............................................................. 24
28

1

**TABLE OF CONTENTS**
(continued)

2

**Page**

3        D.    Manuel Leslie's Wrongful Death and Survivor Claims Fail......25

4    CONCLUSION.........................................................................................25

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*In re Air Crash at Madrid, Spain, on Aug. 20, 2008,*
  893 F. Supp. 2d 1020 (C.D. Cal. 2011) .................................................. 16

*In re Air Crash Over Mid-Atl. on June 1, 2009,*
  760 F. Supp. 2d 832 (N.D. Cal. 2010) .................................................... 16

*In re Air Crash Over Taiwan Straits on May 25, 2002,*
  331 F. Supp. 2d 1176 (C.D. Cal. 2004) .................................................. 16

*Altmann v. Republic of Austria,*
  317 F.3d 954 (9th Cir. 2002) ................................................................. 22

*Alvarez v. NBTY, Inc.,*
  2017 WL 6059159 (S.D. Cal. Dec. 6, 2017) ............................................ 4

*Anderson v. Hickman,*
  2008 WL 2397470 (E.D. Cal. June 11, 2008) ........................................ 25

*Argueta v. Banco Mexicano, S.A.,*
  87 F.3d 320 (9th Cir. 1996) ................................................................... 21

*Ayco Farms, Inc. v. Ochoa,*
  862 F.3d 945 (9th Cir. 2017) ........................................................... 21, 23

*Bartel v. TEPCO,*
  2018 WL 312701 (S.D. Cal. Jan. 5, 2018) .....................................*passim*

*Bautista v. Los Angeles County,*
  216 F.3d 837 (9th Cir. 2000) ................................................................. 24

*Bazoge v. High Stakes Fishing, Inc.,*
  1989 WL 79471 (E.D.N.Y. July 3, 1989) ................................................. 8

*Bristol-Myers Squibb Co. v. Superior Court,*
  137 S. Ct. 1773 (2017) ..................................................................*passim*

*Carijano v. Occidental Petrol. Corp.,*
  643 F.3d 1216 (9th Cir. 2011) ............................................................... 22

*Chalfant v. United of Omaha Life Ins. Co.,*
  2016 WL 4539453 (N.D. Cal. Aug. 31, 2016) ....................................... 25

*Cooper v. TEPCO,*
  860 F.3d 1193 (9th Cir. 2017) .......................................................*passim*

*Cooper v. TEPCO,*
  166 F. Supp. 3d 1103 (S.D. Cal. 2015) ..................................... 20, 22, 23

1
2

**TABLE OF AUTHORITIES**
(continued)

Page

3  *Cooper v. TEPCO*,
4    990 F. Supp. 2d 1035 (S.D. Cal. 2013) .......................................................... 12, 15

5  *Czuchaj v. Conair Corp.*,
     2014 WL 1664235 (S.D. Cal. Apr. 18, 2014) ...................................................... 14

6  *Dillard v. Curtis*,
7    2004 WL 2496130 (N.D. Cal. Nov. 3, 2004)........................................................ 25

8  *Faalele v. Singapore Techs. Marine, Ltd.*,
     2016 WL 6330585 (S.D. Cal. Jan. 28, 2016) ...................................................... 11

9  *Frenzel v. AliphCom*,
10   76 F. Supp. 3d 999 (N.D. Cal. 2014)............................................................ 14, 15

11  *Getz v. Boeing Co.*,
      654 F.3d 852 (9th Cir. 2011) ...................................................................... 10

12  *Greatship (India) Ltd. v. Marine Logistics Sols. (Marsol) LLC*,
13    2012 WL 204102 (S.D.N.Y. Jan. 24, 2012)........................................................ 10

14  *Gucci Am., Inc. v. Eli Lilly & Co.*,
      768 F.3d 122 (2d Cir. 2014) ........................................................................ 5

15  *Hawknet, Ltd. v. Overseas Shipping Agencies*,
16    590 F.3d 87 (2d Cir. 2009) .......................................................................... 5

17  *Hendrix v. Novartis Pharm. Corp.*,
      975 F. Supp. 2d 1100 (C.D. Cal. 2013)............................................................ 24

18  *Hesterly v. Royal Caribbean Cruises, Ltd.*,
19    2008 WL 516495 (S.D. Fla. Feb. 25, 2008).......................................................... 8

20  *Lueck v. Sundstrand Corp.*,
      236 F.3d 1137 (9th Cir. 2001) .................................................................. 13, 16

21  *In re Micron Tech., Inc.*,
22    875 F.3d 1091 (Fed. Cir. 2017) ...................................................................... 5

23  *In re Morning Song Bird Food Litig.*,
      2018 WL 1382746 (S.D. Cal. Mar. 19, 2018)..................................................... 4, 5

24  *Mujica v. AirScan Inc.*,
25    771 F.3d 580 (9th Cir. 2014) .................................................................. 13, 24

26  *Nolan v. Exxon Mobil Corp.*,
      2016 WL 1213231 (M.D. La. 2016) ................................................................ 24

27  *Picot v. Weston*,
28    780 F.3d 1206 (9th Cir. 2015) .............................................................. 7, 8, 12

**TABLE OF AUTHORITIES**
(continued)

Page

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981) ......................................................................... 16

*Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*,
301 F. Supp. 3d 840 (N.D. Ill. 2018).......................................................... 4

*Russello v. United States*,
464 U.S. 16 (1983) ......................................................................... 11

*Sloan v. Gen. Motors*,
287 F. Supp. 3d 840 (N.D. Cal. 2018)................................................... 4, 5

*Sobol v. Imprimis Pharm.*,
2018 WL 2424009 (E.D. Mich. May 29, 2018)................................... 4, 5

*Tuazon v. R.J. Reynolds Tobacco Co.*,
433 F.3d 1163 (9th Cir. 2006) ..................................................... 15, 16

*Ungaro-Benages v. Dresdner Bank AG*,
379 F.3d 1227 (11th Cir. 2004)......................................................... 15

*United States v. Swiss Am. Bank, Ltd.*,
191 F.3d 30 (1st Cir. 1999) ............................................................ 10

*Walden v. Fiore*,
571 U.S. 277 (2014) ......................................................................... 8

*Weiss v. Nat'l Westminster Bank PLC*,
176 F. Supp. 3d 264 (E.D.N.Y. 2016)................................................. 5

*Williams v. Gleneagle Ship Mgmt. Co.*,
1991 WL 208989 (E.D. Pa. Oct. 8, 1991) .......................................... 8

*Williams v. Yamaha Motor Co. Ltd.*,
851 F.3d 1015 (9th Cir. 2017) .......................................................... 9

*World Tanker Carriers Corp. v. M/V Ya Mawlaya*,
99 F.3d 717 (5th Cir. 1996) ............................................................ 10

*Yahoo! Inc. v. La Ligue Contre le Racisme et L'Antisemitisme*,
433 F.3d 1199 (9th Cir. 2006) ........................................................... 2

**STATE CASES**

*LeFiell Mfg. Co. v. Superior Ct.*,
55 Cal. 4th 275 (2012).............................................................. 24, 25

*Scandinavian Airlines Sys., Inc. v. County of Los Angeles*,
56 Cal. 2d 11 (1961)........................................................................ 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**
(continued)

**Page**

**FEDERAL STATUTES**

28 U.S.C. § 1332 ...................................................................................... 10

**STATE STATUTES**

Cal. Civ. Proc. Code § 377.32 .................................................................. 25

**FEDERAL RULES**

FED. R. CIV. P. 4(k)(2) .......................................................................... 10, 11

FED. R. CIV. P. 8 ....................................................................................... 24

FED. R. CIV. P. 12 .................................................................................. 1, 24

FED. R. CIV. P. 81(d)(2) ............................................................................ 11

12-cv-3032 JLS JLB

REPLY MEMORANDUM I/S/O DEFT. TEPCO'S MOTIONS TO DISMISS THIRD AMENDED COMPLAINT

1   As Defendant Tokyo Electric Power Company Holdings, Inc. ("TEPCO")

2   explained in its Motion to Dismiss ("Mot."), Plaintiffs' Third Amended Complaint

3   ("TAC") should be dismissed on multiple alternative grounds.  Nothing in Plaintiffs'

4   Opposition ("Opp.") warrants a different conclusion.[1]

5   **ARGUMENT**

6   **I.   This Case Should be Dismissed for Lack of Personal Jurisdiction**

7
    **A.   TEPCO's Personal Jurisdiction Defense Is Timely Because It Was
8        Not "Available" Until the Supreme Court Decided *Bristol-Myers***

9   As TEPCO has already explained (Mot. 16-19), Plaintiffs are wrong in

10  contending that TEPCO waived its personal jurisdiction defense.  A valid personal

11  jurisdiction defense was not "available" to TEPCO when it filed its prior Rule 12

12  motions, but TEPCO now has such a defense *after* the decision in *Bristol-Myers*

13  *Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017), which overruled the Ninth

14  Circuit precedent that previously had barred TEPCO's defense.  Because TEPCO has

15  asserted that defense at the first opportunity after *Bristol-Myers*, the defense is timely.

16  Plaintiffs contend that *Bristol-Myers* "did not change the law as to personal

17  jurisdiction" in any respect relevant here (Opp. 7-8), but that is plainly wrong.  As

18  Plaintiffs themselves concede, *Bristol-Myers* explicitly rejected "*the Ninth Circuit's*

19  *former sliding-scale approach* to specific jurisdiction."  (Opp. 9 (emphasis added).)

20  *See Bristol-Myers*, 137 S. Ct. at 1781 (holding that the sliding scale approach was

21  contrary to "our precedents").  As an examination of Plaintiffs' claims in this case

22  makes clear, the Supreme Court's elimination of the Ninth Circuit's sliding scale test

23  makes all the difference here, because it makes available to TEPCO a personal

24  jurisdiction defense that did not exist under that test.

25  Under the "sliding scale" approach to specific jurisdiction, "'the more wide

26  ranging the defendant's forum contacts, the more readily is shown a connection

---

27
28  [1] Given the complex issues raised in the pending motions to dismiss, TEPCO
    respectfully requests oral argument as set forth in "Defendants' Joint Request for
    Oral Argument on Defendants' Motions to Dismiss," filed concurrently herewith.

between the forum contacts and the claim.'" *Bristol-Myers*, 137 S. Ct. at 1778; *see also Yahoo! Inc. v. La Ligue Contre le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006) (en banc) ("In a specific jurisdiction inquiry, we consider the extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to those contacts.  A strong showing on one axis will permit a lesser showing on the other.").  Moreover, in assessing the "defendant's contacts" with the forum for purposes of this sliding scale test, the Ninth Circuit's approach aggregated "all of a defendant's contacts with the forum state, *whether or not those contacts involve wrongful activity by the defendant*." *Yahoo*, 433 F.3d at 1207 (emphasis added).  Under this flexible approach, which was the governing law in this Circuit prior to *Bristol-Myers*, this Court *would* have had specific jurisdiction over TEPCO in this case—and Plaintiffs do not contend otherwise.  Because GE allegedly designed the Boiling Water Reactors (BWRs) at its nuclear power division *in California* (Mot. 10), TEPCO's conduct in procuring the BWRs from GE would be deemed, under the sliding scale approach, to create a sufficient factual connection with California to assert personal jurisdiction over TEPCO *even though that conduct of TEPCO is neither tortious nor the basis of Plaintiffs' claims against TEPCO.  See Yahoo*, 433 F.3d at 1207, 1210 (stating that an attenuated connection between the defendant's tortious conduct and the forum would be sufficient if the defendant's *other* conduct has a connection to the forum).  Viewed another way, the sliding scale approach allowed a court to assert personal jurisdiction over a defendant that itself had little *relevant* connection to the forum, based on that defendants' connections to *another* potential defendant with strong connections to the forum.  *Bristol-Myers*, 137 S. Ct. at 1778-79 (explaining how the sliding scale approach allowed a court to assert personal jurisdiction over other parties with factually overlapping claims).

  *Bristol-Myers*, however, made two critical changes to the law that destroy this previously existing basis for asserting personal jurisdiction over TEPCO and thereby now give rise to a viable personal jurisdiction defense.  First, as noted, *Bristol-Myers*

expressly rejected the "sliding scale" approach.  137 S. Ct. at 1781.  Second, and building upon its rejection of the sliding scale approach, *Bristol-Myers* held that there must *always* be a party-specific showing of a sufficient "connection between the forum and the *specific claims at issue*."  *Id*. (emphasis added).  This means that—contrary to the Ninth Circuit's opinion in *Yahoo*, which considered all of the defendant's contacts with the forum, whether tortious or not—a defendant now can challenge personal jurisdiction if the "*conduct giving rise*" to the particular claims against the defendant "occurred elsewhere."  *Id*. at 1782 (emphasis added).  These changes in the controlling law are critical here because they eliminate the basis on which personal jurisdiction previously would have existed in this Court.  Under *Bristol-Myers*, the fact that TEPCO allegedly contracted with a California-based GE unit in procuring the BWRs can no longer serve as a sufficient basis to assert personal jurisdiction over TEPCO for its alleged tortious conduct in Japan: because "it is not alleged that [TEPCO] engaged in *relevant* acts together with [GE] in California," the "bare fact that [TEPCO] contracted with a California [business] is not enough to establish personal jurisdiction in the State."  137 S. Ct. at 1783 (emphasis added).  And under *Bristol-Myers*, the fact that this Court has personal jurisdiction over GE does not, without more, allow it to assert personal jurisdiction over the factually overlapping claims against TEPCO.  *See id*. at 1781 (fact that out-of-state plaintiffs "sustained the same injuries" from the same product as the in-state plaintiffs "does not allow the State to assert specific jurisdiction over the nonresidents' claims").  Contrary to what Plaintiffs suggest (Opp. 9-10), *Bristol-Myers* changed the law and made a personal jurisdiction defense available to TEPCO.

　　　Plaintiffs' Opposition makes no serious effort to engage TEPCO's arguments as to how *Bristol-Myers* makes a critical difference to the existence of a personal jurisdiction defense in *this* case.  Instead, Plaintiffs rely on a series of inapposite district court decisions which concluded that *Bristol-Myers* did not make a change in the law that was relevant to the *particular* personal jurisdiction issues asserted in

1    *those* cases.  None of these decisions addressed the specific arguments and Ninth

2    Circuit authority that TEPCO has raised here.  *Cf. Alvarez v. NBTY, Inc.*, 2017 WL

3    6059159, at *6 (S.D. Cal. Dec. 6, 2017) (whether *Bristol-Myers* created a new

4    personal jurisdiction defense depends upon the particular defense being asserted).

5    Thus, for example, Plaintiffs cherry-pick favorable cases from a growing split among

6    the district courts concerning the irrelevant question whether *Bristol-Myers* changed

7    the law as to whether a court may assert personal jurisdiction over *nonresident*

8    *absent class members*.  (Opp. 8.)[2]  The remaining cases Plaintiffs cite all addressed

9    the question whether *Bristol-Myers* changed the law as to personal jurisdiction over

10   *nonresident named class representatives*,[3] but once again that is not the personal

11   jurisdiction defense TEPCO has asserted here.  TEPCO's argument is that, in light of

12   *Bristol-Myers*' overruling of the sliding scale test, this Court lacks jurisdiction *over*

13

14   [2] *Compare Sobol v. Imprimis Pharm.*, 2018 WL 2424009, at *2 (E.D. Mich. May 29,
     2018) (concluding that *Bristol-Myers* did not change the law so as to preclude

15   "personal jurisdiction over the claims of the nonresident, unnamed class members");
     *In re Morning Song Bird Food Litig.*, 2018 WL 1382746, at *5 (S.D. Cal. Mar. 19,

16   2018) (concluding that *Bristol-Myers* did not change the rule that "'claims of
     unnamed class members are irrelevant to the question of specific jurisdiction'") *with*

17   *Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, 301 F. Supp. 3d 840,
     863 (N.D. Ill. 2018) (rejecting waiver argument because *Bristol-Myers* changed the

18   law and made "available" a previously "futile" argument that the court's personal
     jurisdiction does not extend to "unnamed, nonresident class members"); *cf. Alvarez*,

19   2017 WL 6059159, at *6 (concluding that "*Bristol-Myers* may have created a new
     defense" as to personal jurisdiction "over the claims brought by the *unnamed*

20   *members*" of the class, but did not change the law as to jurisdiction over named
     plaintiffs); *see generally Sobol*, 2018 WL 2424009, at *2 (noting split).

21   [3] See *Sloan v. Gen. Motors*, 287 F. Supp. 3d 840, 853-54 (N.D. Cal. 2018); *Morning*
     *Song Bird*, 2018 WL 1382746, at *1 (addressing both named and unnamed class

22   members).  Although the point has no bearing here, TEPCO does not concede that
     these decisions were correct on this point.  On the contrary, the *Sloan* court plainly

23   erred in holding that *Bristol-Myers* did not prohibit it from asserting jurisdiction over
     the claims of *nonresident* named plaintiffs who could *not* show "an independent

24   relationship between their claims … and Defendant's contacts with the State of
     California which could satisfy *Bristol-Myers*."  287 F. Supp. 3d at 857-58.  That is

25   *precisely* what the Supreme Court forbade on the facts of *Bristol-Myers*, and *Sloan*'s
     remarkable conclusion that it could ignore that holding rested on flawed reasoning

26   that *Sloan* conceded was contrary to two separate lines of authority, *id.* at 859 n.3
     (rejecting numerous cases holding that *Bristol-Myers* applies equally to federal and

27   state courts); *id.* at 860 n.4 (rejecting numerous cases holding that "pendent personal
     jurisdiction"—which allows the addition of ancillary *claims* between parties already

28   before the court—does not extend to the addition of new *parties*).

REPLY MEMORANDUM I/S/O DEFT. TEPCO'S MOTIONS TO DISMISS THIRD AMENDED COMPLAINT

1    *TEPCO* for any of the claims asserted by any plaintiff, *whether resident or*

2    *nonresident*.  Moreover, in contrast to the showing that TEPCO has made here, the

3    defendants in the cited cases simply failed to "identif[y] binding precedent that

4    would have rendered" the defendants' personal jurisdiction defense "unavailable"

5    before *Bristol-Myers*, and it is therefore unsurprising that those courts held that the

6    defense had been waived on the facts of those cases.  *Sobol*, 2018 WL 2424009, at

7    *3; *see also Sloan*, 287 F. Supp. 2d at 854 ("Defendant has not identified a single

8    Ninth Circuit case overturned by *Bristol-Myers*"); *Morning Song Bird*, 2018 WL

9    1382746, at *2 (agreeing with the plaintiffs' argument that "Defendants fail to

10   identify any relevant binding Ninth Circuit or Supreme Court precedent that

11   foreclosed the personal jurisdiction challenge").

12          In addition, to the extent that *Morning Song Bird* suggest that *Bristol-Myers*

13   made no change in the law because the Supreme Court said that its decision followed

14   from settled *Supreme Court* precedent,[4] that is not the correct standard for assessing

15   whether TEPCO's personal jurisdiction defense was unavailable before *Bristol-*

16   *Myers*.  As TEPCO has explained (Mot. 16-18), the relevant question is whether *this*

17   *Court* would have been free to accept TEPCO's personal jurisdiction defense—not

18   whether the Supreme Court could have done so.  *In re Micron Tech., Inc.*, 875 F.3d

19   1091, 1097-98 (Fed. Cir. 2017); *Hawknet, Ltd. v. Overseas Shipping Agencies*, 590

20   F.3d 87, 92 (2d Cir. 2009); *see also, e.g.*, *Sloan*, 287 F. Supp. 3d at 854 (defense was

21   unavailable if it "'would have been directly contrary to controlling precedent in this

22   Circuit'") (quoting *Gucci Am., Inc. v. Eli Lilly & Co.*, 768 F.3d 122, 135-36 (2d Cir.

23   2014)); *Weiss v. Nat'l Westminster Bank PLC*, 176 F. Supp. 3d 264, 274-75

24   (E.D.N.Y. 2016) (where Supreme Court decision overruled contrary Second Circuit

25   precedent, court "decline[d] to find that Defendant, in failing to raise a futile

26   argument, waived its personal jurisdiction defense," which was asserted "promptly"

27   _____

28   [4] *Morning Song Bird*, 2018 WL 1382746, at *2; *see also Sobol*, 2018 WL 2424009,
     at *2 (following *Morning Song Bird* on this point).

after the decision).  Put simply, there is no obligation to assert personal jurisdiction defenses that are barred by then-controlling Circuit precedent, and a contrary rule makes no logical sense and would burden district courts with a flood of meritless motions.  Here, TEPCO's personal jurisdiction defense was previously unavailable because, on the specific facts of this case, it was foreclosed by the controlling standards established in *en banc* Ninth Circuit precedent endorsing the sliding scale test.  *See supra* at 1-3.  Indeed, while Plaintiffs cite *Morning Song Bird*, they present no substantive defense of its untenable suggestion that *Bristol-Myers* made *no* changes to personal jurisdiction law; on the contrary, Plaintiffs expressly concede that *Bristol-Myers* has changed that law by overruling the "the Ninth Circuit's former sliding-scale approach to specific jurisdiction."  (Opp. 9.)

Lastly, Plaintiffs improperly cite this Court's passing comment, in its initial oral *tentative* ruling in *Bartel v. TEPCO*, that the defense of personal jurisdiction in *Cooper* had been waived.  (Opp. 6.)  Plaintiffs fail to note that the Court at the *Bartel* hearing proceeded specifically to acknowledge that "the *Cooper* case isn't really in front of me today" (17-cv-1671, Dkt. No. 47 at 11:14-15), and that this Court's final ruling in *Bartel* stated: "Because the issue of personal jurisdiction in *Cooper* is not before the Court in the present Motion, the Court declines to determine whether TEPCO waived personal jurisdiction in *Cooper*."  *Bartel v. TEPCO*, 2018 WL 312701, at *2 (S.D. Cal. Jan. 5, 2018).  Now that this issue has been fully briefed and is squarely presented, it is clear that TEPCO has not waived its personal jurisdiction defense, which was not "available" under Ninth Circuit law before *Bristol-Myers*.

## B.     There Is No Specific Jurisdiction Over TEPCO in California

On the merits of TEPCO's personal jurisdiction defense, Plaintiffs provide no persuasive basis for distinguishing this Court's ruling in *Bartel*, which held that this Court lacked general or specific jurisdiction over comparable claims against TEPCO. *Bartel*, 2018 WL 312701, at *3-8.  Indeed, Plaintiffs astonishingly *do not even cite*, much less distinguish, this Court's dispositive decision in *Bartel*.  Here, like the

plaintiffs in *Bartel*, Plaintiffs do not contend that this Court has *general* jurisdiction over TEPCO. *Id*. at *7. And, like the plaintiffs in *Bartel*, Plaintiffs here have failed to show *specific* personal jurisdiction in California, either under a "purposeful direction" theory or a "purposeful availment" theory. *Id*. at *3-7.

### 1. Plaintiffs Cannot Establish That TEPCO Purposefully Directed Its Activity Toward California

Plaintiffs' purposeful direction theory is based entirely on their contention that this Court may exercise personal jurisdiction over TEPCO because, at the time of Plaintiffs' alleged exposure to radiation, they were on U.S. Navy vessels, one of which allegedly had its home port in California. (Opp. 13-16.) Plaintiffs' Opposition, however, simply ignores the fact that this Court already rejected the exact same argument in *Bartel*. Indeed, Plaintiffs' entire argument is recycled, largely verbatim, from the *Bartel* opposition, *see* 17-cv-1671, Dkt. No. 31 at 12-15, and Plaintiffs provide no reason why the Court should now accept the very same argument that it rejected in *Bartel*. Indeed, a review of Plaintiffs' arguments on this score confirms that they are plainly insufficient to establish personal jurisdiction in California, and for the same reasons this Court gave in *Bartel*: "Plaintiffs' allegations that the effects of TEPCO's conduct were felt by American citizens while on U.S. ships, one of which with a home port of San Diego, are too attenuated to establish purposeful direction." *Bartel*, 2018 WL 312701, at *5.

To establish purposeful jurisdiction on this theory, Plaintiffs would have to establish that TEPCO committed (1) an *intentional act*, (2) *expressly aimed* at California, and (3) which TEPCO *knew* would cause harm likely to be suffered in California. *Picot v. Weston*, 780 F.3d 1206, 1213-14 (9th Cir. 2015). Plaintiffs' argument fails because they cannot satisfy any element of the "effects" test. Plaintiffs cannot satisfy the first element because their argument rests exclusively on allegations of *gross negligence* committed by TEPCO (Opp. 16), which are insufficient as a matter of law. *Bartel*, 2018 WL 312701, at *5 n.3. Plaintiffs also

cannot establish the second and third elements, because, as this Court held in *Bartel*,
they do not allege any intentional acts by TEPCO that were *expressly aimed* at
California nor do they allege that TEPCO *knew* its actions would likely cause harm
to be suffered in California. *Id.* at \*5. As in *Bartel*, Plaintiffs' allegations against
TEPCO are based exclusively on conduct that occurred in Japan, and TEPCO did not
have knowledge that U.S. ships that were home ported *in California* would come to
provide aid. *Id.* The mere fact that TEPCO's conduct allegedly affected Plaintiffs
with connections to California is not enough to establish purposeful direction. *Id.*
(citing *Walden v. Fiore*, 571 U.S. 277, 291 (2014)).[5]

Plaintiffs' theory also fails because their reliance on alleged conduct directed
at U.S. ships located in Japan does not show purposeful direction toward *California*.
*Picot*, 780 F.3d at 1213-14. Plaintiffs provide no support for their claim that, when
an injury occurs on a U.S. ship overseas, personal jurisdiction exists in the state
where the ship has its home port. (Opp. 15-16.) None of the cases Plaintiffs cite
addresses personal jurisdiction, much less holds that a ship's home port determines
the place for exercise of personal jurisdiction. *See*, *e.g.*, *Williams v. Gleneagle Ship
Mgmt. Co.*, 1991 WL 208989, at \*1 (E.D. Pa. Oct. 8, 1991) (addressing choice of
law and subject matter jurisdiction under the Jones Act); *Scandinavian Airlines Sys.,
Inc. v. County of Los Angeles*, 56 Cal. 2d 11, 30 (1961) (addressing taxation). To the
contrary, courts have repeatedly *declined* to assert personal jurisdiction based solely
on the location of the ship's home port. *See*, *e.g.*, *Hesterly v. Royal Caribbean
Cruises, Ltd.*, 2008 WL 516495, at \*2, 10-11 (S.D. Fla. Feb. 25, 2008); *Bazoge v.
High Stakes Fishing, Inc.*, 1989 WL 79471, at \*1-2 (E.D.N.Y. July 3, 1989).

### 2.   TEPCO's Unrelated Business Interests Do Not Establish Specific Jurisdiction Under a Purposeful Availment Theory

Plaintiffs alternatively argue that personal jurisdiction over TEPCO is  proper

---

[5] Nor is it sufficient that some Plaintiffs were residents of California and returned to California after they left Japan where they allegedly experienced the effects of their radiation exposure. *Walden*, 571 U.S. at 291.

because their claims "arise from" TEPCO's "energy business" in Japan, and TEPCO has engaged in (unrelated) activities connected to its "energy business" in California. (Opp. 17-19.)  This argument was also rejected by the Court in *Bartel*, because the plaintiffs' claims did not arise out of TEPCO's alleged activities in California. *Bartel*, 2018 WL 312701, at *6-7.  The same is true here.

First, Plaintiffs' argument that jurisdiction is proper based on TEPCO's incorporation in California from 2003 to 2006 is insufficient because there is no "but for" relationship between TEPCO's activities in California and the claims at issue in this case. *Id.* at *7.  Indeed, Plaintiffs' argument is directly contrary to *Bristol-Myers*. There it was undisputed that Bristol-Myers engaged in activities in California during the relevant time period and that these activities related to its pharmaceutical business.  137 S. Ct. at 1777-78.  But this fact was insufficient to warrant the exercise of jurisdiction over plaintiffs whose specific claims arose from conduct *outside* the forum.  *Id.* at 1781-82.  The same reasoning and result obtain here.

Nor can Plaintiffs establish personal jurisdiction over TEPCO based on TEPCO's other purported business interests or activities in California.  For example, Plaintiffs argue that jurisdiction is proper because a company in which TEPCO is assertedly a "forty-percent owner," Eurus Energy America Corporation, has its principal executive office in California.  (Opp. 17-18.)[6]  But even if the conduct of a company in which TEPCO is a minority owner could be imputed to TEPCO, which it cannot, *see Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1022 (9th Cir. 2017), Plaintiffs do not allege any conduct by Eurus—a wind and solar company— that is related to Plaintiffs' claims.  *Bristol-Myers*, 137 S. Ct. at 1781.  For this same reason, Plaintiffs' allegations regarding TEPCO's other purported business interests or activities in California fail to establish specific personal jurisdiction: there is no "but for" relationship between those connections and Plaintiffs' claims.  *Bristol-*

---

[6] Contrary to what Plaintiffs imply (Opp. 17), TEPCO's 40% interest in this entity is *indirectly* held.  *See* <https://eurusenergy.com/about/> (noting TEPCO owns a minority interest in parent company).

1   *Myers*, 137 S. Ct. at 1781; *see also Bartel*, 2018 WL 312701, at *6.  These other

2   business interests have no relation to the FNPP accident, and indeed, most of the

3   cited activities post-date the accident.  (Opp. 18.)  As the Court previously concluded,

4   such post-incident conduct has "no bearing on the personal jurisdiction issue here."

5   *Bartel*, 2018 WL 312701, at *6 n.4.

6   ## C.    There Is No Jurisdiction Over TEPCO Under Rule 4(k)(2)

7   Plaintiffs are likewise wrong in contending that this Court has personal

8   jurisdiction under FED. R. CIV. P. 4(k)(2).  (Opp. 19-23.)

9   At the outset, Plaintiffs here cannot invoke Rule 4(k)(2) for the same reason

10   that this Court held that the *Bartel* plaintiffs could not do so: Plaintiffs here assert

11   that subject matter jurisdiction is proper based solely on diversity jurisdiction under

12   28 U.S.C. § 1332.  *See Bartel*, 2018 WL 312701, at *7-8.  Plaintiffs contend that,

13   although their TAC rests only on diversity jurisdiction, their underlying claims, at

14   least in part, "rely on substantive federal law." (Opp. 20.)  But Plaintiffs cite no

15   authority to support their flawed contention that *a complaint that does not allege that*

16   *its claims arise under federal law* should be deemed to arise under federal law for

17   purposes of Rule 4(k)(2).  *See Getz v. Boeing Co.*, 654 F.3d 852, 859 (9th Cir. 2011)

18   (fact that federal jurisdiction existed over state-law claims was *not* enough to trigger

19   Rule 4(k)(2), which is "available only to plaintiffs who allege a '*federally created*

20   *cause of action*'") (emphasis added).  Instead, Plaintiffs cite (Opp. 20) inapposite

21   cases in which the plaintiffs *did* allege that their claims arose under federal law.  *See,*

22   *e.g.*, *World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 721 (5th Cir.

23   1996) (maritime law claims under federal law); *Greatship (India) Ltd. v. Marine*

24   *Logistics Sols. (Marsol) LLC*, 2012 WL 204102, at *5 (S.D.N.Y. Jan. 24, 2012)

25   (claims under treaty concerning foreign arbitral awards); *United States v. Swiss Am.*

26   *Bank, Ltd.*, 191 F.3d 30, 42 (1st Cir. 1999) (holding federal common law provided

27   the "source" for the Government's claims in civil forfeiture action).

28   In any event, even if Plaintiffs' claims arose under federal law, Plaintiffs still

1    cannot establish personal jurisdiction, consistent with due process, under Rule

2    4(k)(2).  For the same reasons explained above, Plaintiffs' "purposeful availment"

3    and "purposeful direction" theories still fail, even when considered on a nationwide

4    basis.  *See supra* at 7-10.  As to purposeful availment, Plaintiffs point to TEPCO's

5    "extensive contacts with the U.S., including investment and energy-related business"

6    (Opp. 21), but this argument ignores *Bristol-Myers*' holding that the only relevant

7    contacts for purposes of specific personal jurisdiction are those that give rise to

8    Plaintiffs' claims.  137 S. Ct. at 1781-82.  Plaintiffs again fail to identify any contacts

9    related to their claims that occurred in the U.S.[7]

10         As to purposeful direction, Plaintiffs' argument under Rule 4(k)(2) fails for

11   two reasons.  First, Plaintiffs' argument is premised on allegations that TEPCO

12   "purposefully directed" its conduct at U.S. naval ships (Opp. 22), but under the plain

13   text of the federal rules, U.S. ships are not within the definition of U.S. territory for

14   purposes of Rule 4(k)(2).  *See* Fed. R. Civ. P. 81(d)(2) (for purposes of federal rules,

15   "State" includes only the states, the District of Columbia, and a U.S. commonwealth

16   or territory); *cf. also Faalele v. Singapore Techs. Marine, Ltd.*, 2016 WL 6330585, at

17   *6 (S.D. Cal. Jan. 28, 2016) (construing Rule 4(k)(2) jurisdiction even more

18   narrowly as extending only to states).  Plaintiffs note that U.S. ships are included

19   within the U.S.'s jurisdiction for *criminal* law and other purposes (Opp. 14, 22), but

20   that simply underscores that the *omission* of comparable language from Rule

21   81(d)(2) must be given effect.  *See Russello v. United States*, 464 U.S. 16, 24 (1983)

22   (where language is included in one section but omitted from another, the exclusion is

23   presumed to be intentional).  Second, Plaintiffs cannot establish personal jurisdiction

24   under this theory given that they again cannot meet the elements of the "effects" test,

---

25   [7] In a footnote, Plaintiffs assert that TEPCO had a substantial relationship with GE
26   and that during the relevant time GE was headquartered in San Jose, California.
     (Opp. 21 n.6.)  Plaintiffs do not explain how *GE's conduct* in California is relevant
27   to this Court's exercise of personal jurisdiction over TEPCO under Rule 4(k)(2), and
     for the reasons explained above, *Bristol-Myers* precludes any such argument.  *See*
28   *supra* at 1-3.

1  even when TEPCO's conduct is considered on a nationwide basis.  Their only

2  allegation of intentional conduct is that TEPCO assertedly discharged contaminated

3  water into the Pacific Ocean.  (Opp. 22.)  But this allegation does not show that

4  TEPCO "expressly aimed" the alleged contaminated water *at the U.S. ships*, nor does

5  it show that TEPCO discharged the water *knowing* that it would likely reach the U.S.

6  ships and cause harm to individuals on them.  *Picot*, 780 F.3d at 1213-14.[8]

7  **II.  This Case Should Now Be Dismissed on International Comity and *Forum***

8  ***Non Conveniens* Grounds in Light of Further Developments**

9      Despite the Ninth Circuit's clear instruction that "[f]urther developments …

10  may *require* the district court to revisit some of the issues that TEPCO raised in its

11  motion to dismiss" the Second Amended Complaint, *Cooper v. TEPCO*, 860 F.3d

12  1193, 1197 (9th Cir. 2017) (emphasis added), Plaintiffs implausibly insist that

13  "[n]othing has changed" over the last three years and that the Court should decline to

14  exercise its discretion any differently.  (Opp. 23.)  On the contrary, as set forth below,

15  there have been multiple new developments that warrant revisiting the comity and

16  *forum non conveniens* issues: (1) the Ninth Circuit emphasized the need for this

17  Court to undertake "a choice-of-law analysis," *Cooper*, 860 F.3d at 1215, and that

18  analysis reveals that Japanese law will govern the major issues in this case; (2) the

19  Japanese Government has lodged a formal objection to the continued pendency of

20  this suit in this Court; (3) this Court in *Bartel* held that (contrary to what Plaintiffs

21  had insinuated) TEPCO's relevant contacts with California were limited; and (4) the

22  Japanese courts have continued to gain experience in adjudicating claims arising

23  from the FNPP and in addressing unsettled issues of Japanese law raised by such

24  claims.  These factors weigh heavily in favor of dismissal on comity and/or *forum*

25  _____

26  [8] Plaintiffs' allegations that TEPCO disseminated "willfully false information" about
   radiation or safety (TAC ¶ 129) are insufficient, because this Court has already held
   that, to the extent Plaintiffs' claims purport to rely on allegations that TEPCO

27  provided false information to the U.S. Navy about radiation or safety, such claims
   are nonjusticiable under the political question doctrine.  *Cooper v. TEPCO*, 990

28  F. Supp. 2d 1035, 1041-42 (S.D. Cal. 2013).

*non conveniens* grounds.

### A.    The Fact That Japanese Law Governs the Major Issues in This Case Weighs Heavily in Favor of a Japanese Forum

As TEPCO explained in its motion, the choice-of-law analysis that the Ninth Circuit instructed this Court to undertake confirms that Japanese law will govern the major issues in this case.  (Mot. 20-26.)  The applicability of foreign law strongly supports dismissal in favor of a foreign forum, under *both* comity and *forum non conveniens*.  *See*, *e.g.*, *Cooper*, 860 F.3d at 1210 & n.12 (citing *Mujica v. AirScan Inc.*, 771 F.3d 580, 602 (9th Cir. 2014)); *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1148 n.6 (9th Cir. 2001)  Nothing in Plaintiffs' Opposition warrants a contrary view.

Plaintiffs insist that "there is a high likelihood that American law will primarily, if not completely" apply to this case (Opp. 26), but they provide *no* argument (much less authority) to support that conclusory assertion, which is demonstrably wrong.  Indeed, Plaintiffs' own Opposition highlights the key factors that make it obvious that Japanese law will govern the major issues in this litigation: Plaintiffs' claims are asserted against a Japanese company "primarily owned by the Japanese government" (Opp. 11), based on alleged injuries that occurred "off the coast of Japan" (Opp. 35), purportedly "as a result of the meltdown at the Fukushima Nuclear Power Plant" operated in Japan by that Japanese company, under the regulatory supervision of the Japanese Government (Opp. 1).  As TEPCO's detailed analysis explained, applying *California law* to define the liabilities and claims in this heavily Japan-centered case would turn settled choice-of-law principles on their head and, independently, would also violate the foreign affairs doctrine.  (Mot. 21-29.) Plaintiffs' failure to provide any substantive answer to TEPCO's choice-of-law arguments is understandable, because those arguments are unanswerable.

Instead, relying on inapposite cases that all involved proposed nationwide classes of purchasers who bought products in different states, Plaintiffs contend that it is premature to address the choice-of-law issue and that a "fuller factual record" is

1   necessary to decide whether California law should be applied to claims against a

2   Japanese company operating a nuclear power plant in Japan that released radiation in

3   Japan that then allegedly injured Plaintiffs off the coast of Japan.  (Opp. 25.)  But the

4   very cases Plaintiffs cite confirm that "'courts need not wait for discovery before

5   conducting [a] choice of law analysis where the pleadings, construed in plaintiff's

6   favor, contain all necessary facts.'"  *Czuchaj v. Conair Corp.*, 2014 WL 1664235 at

7   *9 (S.D. Cal. Apr. 18, 2014); *see also Frenzel v. AliphCom*, 76 F. Supp. 3d 999,

8   1007, 1009 (N.D. Cal. 2014) (choice-of-law analysis is properly conducted at the

9   motion to dismiss stage where, "given the current state of [the] pleadings," it appears

10  that "further development of the factual record is not reasonably likely to materially

11  impact the choice of law determination").  That is the case here.  A "fuller factual

12  record" is not going to change the uncontested fact that TEPCO is a Japanese

13  company headquartered in Japan and majority-owned by an instrumentality of the

14  Japanese Government; that the FNPP is located in Japan; that the radiation that

15  allegedly injured Plaintiffs was released in Japan; that Plaintiffs' alleged exposures

16  to that radiation occurred off the coast of Japan; and that the Japanese Government

17  has formally and vigorously objected to the "application of different legal standards"

18  from those set forth under Japanese law (GOJ *Amicus* Br. (Heckenlively Decl., Ex.

19  C) 3-4).  These are the facts that, under the applicable choice-of-law rules, dictate

20  that Japanese law will apply to the major issues in the case.  (Mot. 21-29.)

21      Plaintiffs speculate that discovery into a grab-bag of subsidiary points might

22  somehow alter the choice-of-law analysis (Opp. 25), but that is wrong.  Given

23  Plaintiffs' statement that, "[r]egardless of the choice-of-law," *strict liability applies*

24  and that "the only issues with respect to TEPCO will be causation and damages,"

25  there is no need for discovery into (for example) the "operational responsibilities" of

26  the FNNP (Opp. 25, 27).[9]  Likewise, given that this Court dismissed as

---

[9] By stating that, *regardless of the choice of law*, the *only* issues vis-à-vis Plaintiffs'
claims against TEPCO are causation and damages, Plaintiffs have effectively
withdrawn their negligence claims against TEPCO and instead are proceeding under

nonjusticiable any claim based on the allegation that "TEPCO misrepresented the condition of the FNPP and the risk to soldiers operating near the damaged facility," *Cooper*, 990 F. Supp. 2d at 1040, additional facts regarding TEPCO's alleged "dissemination of false information regarding the radiation emissions" (Opp. 25) "is not reasonably likely to materially impact the choice of law determination" here. *Frenzel*, 76 F. Supp. 3d at 1007.  Finally, whether any contract between GE and TEPCO contains a choice-of-law provision governing any disputes between the companies (Opp. 25) is irrelevant to *Plaintiffs'* claims against TEPCO, which do not arise under any such contract but arise under tort principles.  *Frenzel*, 76 F. Supp. 3d at 1009-10 (where plaintiffs' claims did not arise from website's terms of use, any choice-of-law provision in those terms was irrelevant to choice-of-law analysis).

Plaintiffs argue that, even if Japanese law applies to this case, that would not support dismissal in favor of a Japanese forum (Opp. 25-28), but this contention is contrary to settled precedent and to common sense.  The Ninth Circuit *in this very case* expressly stated that "[w]hich country's law applies is relevant to the international comity analysis," *Cooper*, 860 F.3d at 1210 n.12; *see also Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1240 (11th Cir. 2004) (noting, as a factor in favor of comity dismissal, the fact that "all of the relevant events implicated in this litigation took place in Germany and will involve issues of German law"), and the applicability of foreign law is likewise a strong factor in favor of dismissal under *forum non conveniens*, *see Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1182 (9th Cir. 2006) ("An analysis of Philippine law, assuming it applies, would be a burden and would support dismissal, as the district court acknowledged.").  As the

---

the strict liability principles that both TEPCO and Plaintiffs agree are applicable here.  In any event, as TEPCO explained in its Motion, Japanese law *bars* reliance on any theory other than strict liability, and no additional facts are needed to determine that *that* aspect of Japanese law will apply to this case and that TEPCO's strict liability will be defined by Japan's Act on Compensation for Nuclear Damage (ACND).  (Mot. 24-26.)  Indeed, applying *California* standards to the *actual operation of the FNPP in Japan* (as a California-law negligence claim would seek to do) would be particularly inappropriate, because Japan has the much stronger interest in having its law applied to that question.

Supreme Court has explained, in light of a U.S. court's "lack of familiarity" with a given foreign country's substantive law, "the need to apply foreign law point[s] towards dismissal." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 260 (1981). Indeed, courts have held that the "*mere likelihood or possibility* that foreign law would apply weighs in favor of dismissal." *In re Air Crash at Madrid, Spain, on Aug. 20, 2008*, 893 F. Supp. 2d 1020, 1040 (C.D. Cal. 2011) (emphasis added).[10]

Despite this overwhelming case law, Plaintiffs nonetheless contend that this Court's unfamiliarity with Japanese law will not present any difficulty because the applicable content of Japanese law is sufficiently clear that it will be easy for the Court to apply. (Opp. 26-28.) The argument is refuted by Plaintiffs' own statement that "Plaintiffs do not concede that the standards set forth by TEPCO" concerning the three major issues identified in TEPCO's motion "are the proper standards under Japanese law for this case." (Opp. 27 n.10.) The very fact that the parties do not agree on the content of Japanese law as to these key issues (much less as to the many other issues this Court would undoubtedly face in adjudicating this case) means that the Court will be called upon time and again to resolve the parties' disputes over the substantive content of Japanese law—which is precisely why this factor strongly favors a Japanese forum. *Piper Aircraft*, 454 U.S. at 260; *Cooper*, 860 F.3d at 1210 n.12; *Tuazon*, 433 F.3d at 1182. As this Court observed at the hearing on the motions to dismiss in *Bartel*, "the Court does not find it is in the best position to interpret Japanese law." (17-cv-1671, Dkt. No. 47 at 5:20-21.)

---

[10] *See also Lueck*, 236 F.3d at 1148 n.6 ("because New Zealand law is likely to apply in this suit, the choice of law determination weighs in favor of dismissal"); *In re Air Crash Over Taiwan Straits on May 25, 2002*, 331 F. Supp. 2d 1176, 1211 (C.D. Cal. 2004) ("Because Taiwanese law is likely to apply to these actions, and because the court is unfamiliar with Taiwanese law, this public factor—while not determinative —weighs in favor of dismissal on *forum non conveniens* grounds."); *In re Air Crash Over Mid-Atl. on June 1, 2009*, 760 F. Supp. 2d 832, 847 (N.D. Cal. 2010) (dismissing on *forum non conveniens* grounds in part because "the possibility that French law will apply is an additional factor favoring dismissal"). Because the mere *likelihood or possibility* of applying foreign law supports dismissal, that provides yet another reason why Plaintiffs are wrong in suggesting that this Court must first resolve every aspect of choice of law with certainty before ordering dismissal.

1

## B.   The Remaining Comity Factors Also Support Dismissal

2   In reviewing this Court's 2015 ruling concerning comity, the Ninth Circuit

3   held that, on the then-existing record, the issue presented a "close case with

4   competing policy interests." *Cooper*, 860 F.3d at 1205.  The Circuit instructed this

5   Court to re-examine the issue after undertaking a choice-of-law analysis, and for the

6   reasons explained above, that analysis now sharply tilts the balance in favor of

7   dismissal.  On top of that, since this Court's prior ruling, there have been several

8   significant additional developments that favor dismissal under international comity.

9   As explained in TEPCO's Motion, between 2015 and the present, the Japanese

10   government has continued to fund FNPP-related claims at a rate of more than one

11   trillion yen per year.  Indeed, payments to FNPP claimants—funded through the

12   Japanese Government—have more than doubled since the Court last addressed

13   comity, from 3.486 trillion yen (over $30 billion) to 8.1632 trillion yen (over $76

14   billion).  (*Compare* 2014 Kondo Decl. (Dkt. No. 55-14), ¶ 19, *with* Yamazaki Decl.,

15   ¶ 20.)  Unsurprisingly, Japanese courts have gained increasing experience with the

16   legal issues relating to FNPP claims, and they have resolved scores of cases

17   involving thousands of plaintiffs since this Court last ruled.  (*Compare* 2014 Kondo

18   Decl., ¶¶ 14, 16, *with* Yamazaki Decl., ¶¶ 14-16.)  For example, in addressing FNPP-

19   related claims, Japanese courts have clarified that the strict-liability cause of action

20   in the ACND is exclusive and precludes reliance upon negligence-based theories

21   (Apr. 25, 2018 Taniguchi Decl., ¶ 23 (collecting numerous cases)), thereby providing

22   a clear illustration of the point that the Japanese courts are best-positioned to resolve,

23   in a uniform and consistent manner, the disputed points of Japanese law that will

24   inevitably arise in the complex litigation arising from the FNPP accident.  In addition

25   to the litigation in the Japanese courts, Japan's ADR Center has continued to process

26   thousands of claims: the volume of claims resolved by the Center has more than

27   tripled from 7,203 at the time of this Court's 2015 ruling to *21,818* as of a few

28   months ago.  (*Compare* 2014 Kondo Decl., ¶ 10, *with* Yamazaki Decl., ¶ 10.)  The

1 | continuing resolution of thousands of claims by the Japanese courts and the ADR
2 | Center, resulting in billions of dollars in compensation, has further confirmed the
3 | very strong interests of the Japanese Government in addressing all FNPP-related
4 | claims in a consistent and coordinated manner, and this factor weighs in favor of
5 | dismissal. *Cooper*, 860 F.3d at 1209 ("Japan has an undeniably strong interest in
6 | centralizing jurisdiction over FNPP-related claims").

7 |      Moreover, since this Court's prior ruling, the Japanese Government has now
8 | weighed in forcefully against the continued pendency of this suit in this Court.  (GOJ
9 | *Amicus* Br. 1-4.)  The Ninth Circuit noted that this Court did not have the benefit of
10 | those views at the time of its prior ruling, *Cooper*, 860 F.3d at 1208-09, and the
11 | Circuit recognized that, when given the opportunity on remand to consider Japan's
12 | vigorous objections and any other new developments (including the choice-of-law
13 | determination), this Court might well conclude that, in light of the "strong reasons
14 | for dismissing Plaintiffs' claims in favor of a Japanese forum," a dismissal under
15 | comity is now warranted, *id.* at 1209-10.[11]  Plaintiffs' Opposition only further
16 | confirms that such a dismissal is now warranted.  In response to the Japanese
17 | Government's formal objections—which expressed Japan's profound concern that
18 | Plaintiffs' suit "could prove highly corrosive to the integrity of the compensation
19 | system" if Plaintiffs sought to apply "different legal standards" and obtain "disparate
20 | outcomes" from those that have been achieved by Japanese plaintiffs (GOJ *Amicus*
21 | Br. 2-3)—Plaintiffs candidly acknowledge that they do in fact seek application of
22 | different legal standards from those set forth by Japanese law (Opp. 23), and that
23 | they do so *precisely* in order to obtain disparate outcomes that will make the

24 |

---

[11] Contrary to what Plaintiffs suggest, the Ninth Circuit did not itself decide that
25 | dismissal was "unwarranted."  (Opp. 23.)  Rather, as the Circuit was at pains to note,
it decided only whether, under deferential abuse-of-discretion review, it would
26 | displace *this Court's* decision.  *Cooper*, 860 F.3d at 1209.  By urging this Court not
to exercise its own discretion afresh but to instead defer back to the Ninth Circuit's
27 | affirmance, Plaintiffs get things backward.  Indeed, the Ninth Circuit, in declining to
reverse this Court's prior decision, stated no less than three times that this Court
28 | would need to revisit the comity issue on remand.  *Id.* at 1197, 1209-10, 1217.

REPLY MEMORANDUM I/S/O DEFT. TEPCO'S MOTIONS TO DISMISS THIRD AMENDED COMPLAINT

1    recovery of Japanese claimants "pale in comparison" (Opp. 38).  These proceedings

2    thus threaten to have exactly the feared corrosive effect on the Japanese

3    compensation system that the Japanese Government formally decried (GOJ *Amicus*

4    Br. 2), and this development strongly supports dismissal in favor of a Japanese forum.

5            Even while underscoring the powerful interests that Japan has in this case,

6    Plaintiffs' Opposition fails to show that the U.S. government's interests outweigh

7    those of Japan.  That is understandable, because the U.S.'s brief in the Ninth Circuit

8    explicitly stated—in a comment that Plaintiffs ignore—that "[c]ertainly, [the district]

9    court could choose to dismiss [this] case based on international comity."  (U.S.

10   *Amicus* Br. (Heckenlively Decl., Ex. D) 16-17.)  To be sure, the U.S. in its *amicus*

11   brief, concluded that, on the record *then* before it, this Court did not abuse its

12   discretion in retaining jurisdiction over this case.  (*Id.* at 10.)  In reaching that

13   conclusion, however, the U.S. argued that this Court correctly rejected TEPCO's

14   arguments at the time, which were based largely on the premise that the policies

15   underlying the Convention on Supplementary Compensation for Nuclear Damage

16   (CSC) gave the U.S. an affirmative interest in seeing the suit dismissed.  (*Id.* at 13-

17   17.)  As the Ninth Circuit concluded, TEPCO's arguments on that score rested on a

18   misapprehension of U.S. policy concerning the CSC.  *Cooper*, 860 F.3d at 1208-09.

19   But the U.S. pointedly did *not* say that, with these flawed CSC-based arguments

20   removed from the mix and with due consideration given to Japan's strong objections,

21   this Court could not dismiss this suit on comity grounds.  On the contrary, as noted,

22   the U.S. instead went out of its way to state that this Court "could choose to dismiss

23   [this] case based on international comity."  (U.S. *Amicus* Br. 16-17.)

24           Indeed, on the current record, it is now clear that *Plaintiffs* are the ones who

25   are misapprehending U.S. policy in this area.  In their Opposition, Plaintiffs argue

26   that the U.S. has a strong interest in maintaining jurisdiction over this case because

27   the U.S. has a "core prerogative[]" to "provide humanitarian assistance" and this

28   interest is infringed if U.S. personnel are injured in such endeavors and not

REPLY MEMORANDUM I/S/O DEFT. TEPCO'S MOTIONS TO DISMISS THIRD AMENDED COMPLAINT

adequately compensated.  (Opp. 37-38.)  The problem with this argument is that, when called upon to articulate the U.S. interests at stake in this litigation, *the U.S. amicus brief did not rely on this argument*.  It is not hard to see why: any U.S. interest in adequate compensation for injured servicemembers with valid claims would be equally satisfied if those claims were presented in Japan, which the U.S. *expressly* agreed "provide[s] adequate and timely compensation for claims following Fukushima, as detailed in Japan's amicus brief."  (U.S. *Amicus* Br. 11.)[12]  In particular, nothing whatsoever in the U.S.'s brief provides any support for Plaintiffs' claim that the U.S. has an interest in *overriding* the substantive content of Japanese law governing compensation for nuclear accidents; on the contrary, the U.S. expressly stated that it acknowledges and respects "Japan's desire to have these cases decided in a uniform manner."  (*Id*. at 2.)  Whatever Plaintiffs' *personal* interest in higher compensation in U.S. courts, the U.S. has eschewed any comparable interest in attacking Japan's "impressive" compensation system.  (*Id*. at 1.)

Finally, an additional important new development is that this Court in the related case of *Bartel* expressly recognized the extremely limited extent of TEPCO's contacts with California.  (Mot. at 33-34.)  This vitiates this Court's earlier conclusion, on the limited record then before it, that TEPCO has a "significant physical presence in the United States and is registered as a foreign corporation in California."  *Cooper v. TEPCO*, 166 F. Supp. 3d 1103, 1138 (S.D. Cal. 2015).  Plaintiffs simply ignore this point, which they cannot contest.

In following the Ninth Circuit's instruction to revisit this issue in light of additional developments, this Court should now dismiss this case on comity grounds.

## C.   The Remaining *Forum Non Conveniens* Factors Favor Dismissal

As noted above, the fact that Japanese law will govern the major issues in this case is a development that strongly favors a Japanese forum under the doctrine of

---

[12] The U.S.'s brief also expressly refuted Plaintiffs' patently incorrect argument—repeated in their Opposition (Opp. 38)—that Japan's compensation system extends only to economic damages and not to physical injuries.  (U.S. *Amicus* Br. 11 n.3.)

1  *forum non conveniens*.  *See supra* at 13-16.  Other developments since this Court's

2  2015 decision confirm that the remaining *forum non conveniens* factors also favor

3  dismissal in favor of a Japanese forum.

### 1.  Plaintiffs Ignore Changed Circumstances That Cause the Private Interest Factors to Favor Dismissal

6  **Residence of Parties and Witnesses.**  Plaintiffs state, without elaboration, that

7  their residence in the U.S. favors a U.S. forum.  In doing so, they ignore the Ninth

8  Circuit's recent guidance that a "U.S. citizen plaintiff is entitled to less deference in

9  his choice of forum if he does not reside in that forum." *Ayco Farms, Inc. v. Ochoa*,

10  862 F.3d 945, 950 (9th Cir. 2017) (emphasis added).  The TAC demonstrates that a

11  significant number of Plaintiffs are non-California residents, and so their choice to

12  proceed in a California court is entitled to less deference.  (Mot. 37 & n.19

13  (discussing Plaintiffs' states of residence)).  Under *Ayco*, the location of Plaintiffs'

14  residences therefore cuts less strongly against dismissal than it did when this Court

15  last considered *forum non conveniens*.

16  **Forum's Convenience to Litigants.**  Plaintiffs next argue that dismissal is not

17  warranted because Plaintiffs' medical conditions will make it difficult for them to

18  travel to Japan.  This again ignores the fact that, because Plaintiffs are from all over

19  the country (Mot. 37 & n.19), many of them would need to travel even if this case

20  went forward in California.  *See Ayco Farms*, 862 F.3d at 949 (court must analyze

21  *forum non conveniens* by "comparing the burdens and benefits of litigation in a

22  foreign country against the burdens and benefits of litigation *in a particular state*")

23  (emphasis added).  Even more fundamentally, this argument ignores that it is now

24  abundantly clear that Plaintiffs will not be required to travel to Japan in order to

25  pursue their claims.  (Mot. 36-37.)  Because Plaintiffs have "not provide[d] any

26  information showing that [their] physical presence" is "required to pursue the civil

27  action" in Japan, any asserted inconvenience that would have arisen from travel to

28  Japan is entitled to no weight.  *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 327

1   (9th Cir. 1996).[13]  This factor thus does not favor maintaining the case in this Court.

2          ***Access to Physical Evidence.***  The Court previously determined that "the

3   majority of the relevant documents and physical proof remain in Japan."  *Cooper*,

4   166 F. Supp. 3d at 1134.  Despite elsewhere stating that "[n]othing has changed"

5   (Opp. 23), Plaintiffs claim that this is no longer the case, because GE may be in

6   possession of relevant documents (Opp. 31).  As an initial matter, if GE is dismissed

7   from the lawsuit, then Plaintiffs' arguments vis-à-vis GE will evaporate.  In any

8   event, there can be little doubt that, because this case arises from a nuclear power

9   plant in Japan that had been in operation in Japan for literally decades, it is still the

10  case that the "majority of the relevant documents and physical proof remain in Japan."

11  *Cooper*, 166 F. Supp. 3d at 1134.  Plaintiffs have given the Court no reason to reach

12  a different conclusion.

13         ***Compelling Unwilling Witnesses.***  The Court has already determined that

14  "difficulties in obtaining testimony from non-party witnesses located in Japan …

15  weigh in favor of a Japanese forum."  *Cooper*, 166 F. Supp. 3d at 1134.  Plaintiffs

16  argue that the Court should revisit that determination, based on TEPCO's supposed

17  failure to submit sufficient proof that non-party witnesses will be unwilling to testify.

18  (Opp. 32.)  But the Ninth Circuit has made clear that a party must simply "allege[],"

19  "show[]," or "represent" that relevant categories of witnesses will be unwilling to

20  testify.  *See Carijano v. Occidental Petrol. Corp.*, 643 F.3d 1216, 1231 (9th Cir.

21  2011).  TEPCO has made that showing here, and there is no reason for the Court to

22  alter its conclusion that this factor favors a Japanese forum.  Indeed, if anything, this

23  factor now even more strongly favors dismissal, given the increased number of

24  former TEPCO employees that cannot be compelled to testify.  (Mot. 36 (noting that

25  number of former TEPCO directors and employees has doubled since Court last

26  considered this issue).)

27  _____

28  [13] *Altmann v. Republic of Austria*, 317 F.3d 954 (9th Cir. 2002), is thus irrelevant
    here.  *Id.* at 973-74 (noting "requisite" travel to pursue action abroad).

1   ***Costs of Bringing Witnesses to Trial.***  Plaintiffs claim that the costs of

2   traveling for trial favor maintaining this case in a U.S. forum.  (Opp. 32.)  But the

3   Court has already held "it is not at all clear that [Plaintiffs] would be required to

4   travel to Japan" and that, on balance, this factor weighs slightly in *favor* of dismissal.

5   *Cooper*, 166 F. Supp. 3d at 1135.  Moreover, Plaintiffs fail to acknowledge that the

6   TAC confirms that many Plaintiffs will be forced to travel even if this case goes

7   forward in California.  *Ayco Farms*, 862 F.3d at 949.  Plaintiffs have presented

8   nothing to warrant a contrary conclusion, and this factor still favors dismissal.

9   ## 2.   The Public Interest Factors Favor Dismissal

10   ***Local Interest in Lawsuit.***  Plaintiffs claim this factor is neutral by pointing to

11   the U.S.'s "interest in providing compensation for servicemembers."  (Opp. 33.)  But

12   as explained above, the U.S.'s interest in compensation for valid claims would be

13   addressed *regardless* of the forum, and there is no other U.S. interest that, on this

14   record, outweighs the Japanese Government's vigorous, specific, and formal

15   objections to the maintenance of this suit in this Court.  *See supra* at 19-20.  This

16   factor now strongly favors dismissal.

17   ***Burden on Local Courts and Juries.***  Plaintiffs assert (without support) that

18   this case will not impose a significant burden on this Court or jurors in this case.

19   (Opp. 34.)  In doing so, Plaintiffs ignore that recent developments have amplified the

20   burdens this case will impose on both the Court and jurors.  First, Plaintiffs have

21   made clear that they intend to pursue this case as a mass action, which will require

22   extensive discovery and be a significant drain on Court resources.  (Mot. 41.)

23   Second, Japanese law governs the major issues in this case, *see supra* at 13-16, and

24   that will increase the burden imposed on both the Court and jurors.  This factor thus

25   strongly favors a Japanese forum, especially when considered in light of Japan's

26   demonstrated ability to address very large numbers of claims arising from the FNPP

27   accident.  *See supra* at 17-18.

28

## III.  **The TAC Should Be Dismissed, in Whole or in Part, for Other Reasons**

### A.  **Plaintiffs' Class Allegations Are Insufficient**

Plaintiffs are wrong in arguing that their class allegations are sufficient for purposes of Rule 12(f) and that, alternatively, resolution of this issue should await class certification.  (Opp. 42.)  Where, as here, the plaintiffs' class allegations are patently insufficient to provide a defendant with notice of who is in the class, the courts can, and do, strike those allegations at the pleading stage.  (Mot. 42-43 (citing cases).)  Plaintiffs simply ignore this authority.  Plaintiffs likewise wholly fail to address TEPCO's second basis for striking their class allegations—namely, that a class action for personal injuries, like that alleged here, cannot be maintained. *Hendrix v. Novartis Pharm. Corp.*, 975 F. Supp. 2d 1100, 1113 (C.D. Cal. 2013).

### B.  **The Claims of 156 Plaintiffs Lack Any Factual Allegations Other Than the Plaintiff's Names and Should Be Dismissed**

Plaintiffs wrongly contend that their reliance on blanket allegations is sufficient.  (Opp. 42-43.)  Courts have repeatedly held that FED. R. CIV. P. 8 requires sufficient allegations about *each* plaintiff's claims, rather than undifferentiated allegations applicable to all plaintiffs.  *See*, *e.g.*, *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000); *Nolan v. Exxon Mobil Corp.*, 2016 WL 1213231, at *2 (M.D. La. 2016).  Plaintiffs argue that TEPCO can obtain this additional detail in discovery, but Plaintiffs "must satisfy the pleading requirements of Rule 8 *before* the discovery stage, not after it."  *Mujica*, 771 F.3d at 593.  The Court should also decline to grant Plaintiffs' request for leave to amend.  They have already amended their complaint four times and yet still fail to satisfy Rule 8.

### C.  **Plaintiffs Cannot Pursue Loss of Consortium Claims on Behalf of Their Spouses**

As TEPCO has explained in its Motion, any loss of consortium claim must be for "loss of consortium suffered *by the plaintiff*," and so it must be asserted by the spouses themselves.  *LeFiell Mfg. Co. v. Superior Ct.*, 55 Cal. 4th 275, 284-85

1   (2012) (emphasis added).  Plaintiffs argue that their loss of consortium claim is

2   properly pleaded because "[m]any of Plaintiffs *are* the spouses of injured servicemen

3   and women."  (Opp. 44 (emphasis added).)  But that response simply underscores

4   why the TAC falls short.  If, as Plaintiffs now claim, *some* of the Plaintiffs are

5   actually *spouses* of servicemembers and assert only loss of consortium claims, while

6   the remainder are servicemembers asserting personal injury claims, then the TAC is

7   patently deficient for failing to give notice as to which Plaintiffs are in which group.

8   The loss-of-consortium claim, as currently pleaded, therefore must be dismissed.

9         **D.    Manuel Leslie's Wrongful Death and Survivor Claims Fail**

10        In addressing Manuel Leslie's flawed wrongful death and survival claims,

11   Plaintiffs narrowly focus on whether an affidavit under Cal. Civ. Proc. Code

12   § 377.32 is an absolute prerequisite to such a claim in a *federal* court.  (Opp. 43-44.)

13   This misses the point that, in the absence of *some* satisfactory showing, by affidavit

14   or sufficient allegations, that Leslie has the right to assert these claims, they must be

15   dismissed.  *See*, *e.g.*, *Chalfant v. United of Omaha Life Ins. Co.*, 2016 WL 4539453,

16   at *1 (N.D. Cal. Aug. 31, 2016) (plaintiff's affidavit met § 377.72's requirements).

17   Indeed, numerous courts in the Ninth Circuit have required plaintiffs to comply with

18   § 377.32's affidavit requirement.  *Anderson v. Hickman*, 2008 WL 2397470, at *1

19   (E.D. Cal. June 11, 2008) ("[M]ost federal courts to have confronted the issue have

20   found that plaintiffs must satisfy the procedural requirements of section 377.32.");

21   *see also*, *e.g.*, *Dillard v. Curtis*, 2004 WL 2496130, at *7 (N.D. Cal. Nov. 3, 2004)

22   (noting that "[a]lthough Civil Procedure Code [§] 377.32 is a rule of California (not

23   federal) procedure, it seems to set a minimum threshold below which a person

24   claiming to be a 'successor in interest' should not be permitted to slip").  Manuel

25   Leslie's claims should be dismissed.

26                              **CONCLUSION**

27        For the foregoing reasons, and those stated in TEPCO's Motion, this action

28   should be dismissed.

REPLY MEMORANDUM I/S/O DEFT. TEPCO'S MOTIONS TO DISMISS THIRD AMENDED COMPLAINT

1    DATED:  July 11, 2018        Respectfully submitted,

2                                 MUNGER, TOLLES & OLSON LLP
                                  By:        /s/ Daniel P. Collins
3                                 _____
                                          DANIEL P. COLLINS
4                                 Attorneys for Defendant TOKYO ELECTRIC
                                  POWER COMPANY HOLDINGS, INC.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY MEMORANDUM I/S/O DEFT. TEPCO'S MOTIONS TO DISMISS THIRD AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I, Daniel P. Collins, am an attorney at Munger, Tolles & Olson LLP, counsel of record for Defendant Tokyo Electric Power Company Holdings, Inc. in this action.  I certify that on July 11, 2018, I caused the attached document to be served via this Court's Electronic Filing System on all parties in this case, whose respective counsel are registered users of that system.  *See* Local Civil Rule 5.4.

DATED: July 11, 2018

*/s/ Daniel P. Collins*
DANIEL P. COLLINS

REPLY MEMORANDUM I/S/O DEFT. TEPCO'S MOTIONS TO DISMISS THIRD AMENDED COMPLAINT