UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

LINDSAY R. COOPER; et al.,

                                   Plaintiffs,

v.

TOKYO ELECTRIC POWER
COMPANY, INC.; et al.,

                                   Defendants.

Case No.: 12cv3032-JLS (JLB)

**ORDER: (1) GRANTING GE'S
MOTION TO DISMISS; AND
(2) GRANTING TEPCO'S MOTION
TO DISMISS**

(ECF Nos. 152, 153)

        Presently before the Court is Defendant Tokyo Electric Power Company, Inc.'s ("TEPCO") Motion to Dismiss, ("TEPCO MTD," ECF No. 153), and Defendant General Electric's ("GE") Motion to Dismiss, ("GE MTD," ECF No. 152).  Plaintiffs have filed a Response in Opposition to TEPCO's Motion, ("Opp'n to TEPCO MTD," ECF No. 155), and to GE's Motion, ("Opp'n to GE MTD," ECF No. 154).  TEPCO filed a Reply, ("TEPCO Reply," ECF No. 157), as did GE, ("GE Reply," ECF No. 156).  Having reviewed the parties' arguments and the law, the Court rules as follows.

## BACKGROUND

        On March 11, 2011, an earthquake struck Japan, giving rise to tsunami waves that struck Japan's Fukushima-Daiichi Nuclear Power Plant ("FNPP").  Third Amended Complaint ("TAC") ¶¶ 112, 113, 119, 127, ECF No. 71.  The plant's radioactive core melted down causing severe damage to the plant and releasing radiation as a result.  *Id*.

¶ 182.  Plaintiffs are members of the U.S. Navy crews of the U.S.S. RONALD REAGAN, crews of other vessels participating in the Reagan Strike Force, land-based service personnel, and/or their dependents.  *Id.* ¶ 2.  Plaintiffs were deployed to Japan as part of a mission known as "Operation Tomodachi."  *Id.*  Plaintiffs allege that the FNPP released radioisotopes and exposed them to injurious levels of ionizing radiation during the mission.  *Id.*  The release of radiation and subsequent injuries resulted from "negligently designed and maintained" Boiling Water Reactors at the FNPP.  *Id.* ¶ 83.

Plaintiffs initiated this action against TEPCO, the owner and operator of the FNPP, on December 21, 2012.  TEPCO moved to dismiss.  The Court granted TEPCO's motion without prejudice.  ECF No 46.  Plaintiffs filed a Second Amended Complaint ("SAC"), which TEPCO moved to dismiss, and the Court granted in part and denied in part this motion, again permitting Plaintiffs to file an amended complaint.  ECF No. 69.  Plaintiffs filed their Third Amended Complaint ("TAC"), naming GE as an additional defendant, along with three other manufacturer defendants EBASCO, Toshiba, and Hitachi.[1]  ECF No. 71.  TEPCO then moved for reconsideration of the Court's order regarding its second motion to dismiss.  ECF No. 73.  The Court amended its order and granted TEPCO's motion for certification of interlocutory appeal and stayed the case at the district court level.  ECF No. 107.  The Ninth Circuit affirmed the Court's denial of TEPCO's Motion to Dismiss Plaintiffs' SAC.  *See* 860 F.3d 1193.

Plaintiffs' TAC asserts both individual and class action claims.  *See generally* TAC.  Their causes of action include negligence, strict products liability, strict liability for ultrahazardous activities, res ipsa loquitur, negligence per se, loss of consortium, and survival and wrongful death.  *Id.*  Plaintiffs make these claims against TEPCO as the owner and operator of the FNPP, *id.* ¶¶ 85, 96, and against GE as the designer of the Boiling Water Reactors within the FNPP.  *Id.* ¶¶ 88, 141.  Both GE and TEPCO have moved to dismiss this case against them.  The Court addresses each Motion in turn.

_____

[1] Plaintiffs have voluntarily dismissed their claims against EBASCO, Toshiba, and Hitachi.  ECF No. 139.

## GE'S MOTION TO DISMISS

In its Motion, GE argues that this Court lacks subject matter jurisdiction over this case. GE MTD at 19–21. Next, GE argues that this Court should conduct a choice-of-law analysis and apply Japan's Act on Compensation for Nuclear Damage, Act No. 147 of June 17, 1961 ("Compensation Act"), which precludes GE from liability for nuclear events. GE MTD at 21–32.[2]

## I.    Subject Matter Jurisdiction

GE argues that this Court lacks subject matter jurisdiction because (1) Plaintiffs fail to satisfy diversity jurisdiction under 28 U.S.C. § 1332(a), and (2) Plaintiffs' attempt to invoke jurisdiction under the Class Action Fairness Act ("CAFA") fails to show that "class certification will ever be warranted." GE MTD at 19–20.

### A.    *Diversity Jurisdiction Under Section 1332*

The United States Supreme Court has "consistently interpreted § 1332 as requiring complete diversity: In a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005).

GE argues Plaintiffs fail to establish diversity jurisdiction because they fail to meet the section 1332 requirement of complete diversity of citizenship. GE MTD at 19. Plaintiffs do not oppose this contention. *See* generally Opp'n to GE MTD. In the TAC, Plaintiffs allege that GE is incorporated in New York and has its principle place of business in Connecticut. TAC ¶¶ 87–88. Plaintiffs state that Plaintiff Jedediah Irons is a citizen

---

[2] GE also argues that the Court should dismiss Plaintiffs claims under the doctrine of *forum non conveniens* or the political question doctrine. Further, GE argues that, if California law applies, Plaintiffs claims are time-barred and that Plaintiffs fail to state a claim against GE for several factual and legal deficiencies in the Complaint. Finally, GE argues that all claims against GE should be dismissed as a matter of international comity and that the Court lacks jurisdiction because the of Convention on Supplemental Compensation for Nuclear Damage. Because the Court agrees with GE that Japanese law applies, the Court does not reach these arguments.

New York. *Id.* ¶ 81. Because both GE and Mr. Irons are citizens of New York, complete diversity is defeated and this court lack subject matter jurisdiction under section 1332.

### B. Subject Matter Jurisdiction Under CAFA

The Class Action Fairness Act of 2005 provides "expanded original diversity jurisdiction for class actions." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090–91 (9th Cir. 2010). Jurisdiction under CAFA requires the total number of members of the proposed plaintiff class be 100 or more persons and the primary defendants not be "States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief." 28 U.S.C. § 1332(d)(5); *see also Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020 (9th Cir. 2007). Once these threshold requirements are met, federal courts are vested with "original jurisdiction of any civil action in which the matter in controversy exceeds . . . $5,000,000" and in which any member of the class is a citizen of a State different from any defendant. 28 U.S.C. § 1332(d)(2).

GE argues that this is not a class action, and thus "Plaintiffs cannot avail themselves of CAFA's minimal diversity provision." GE MTD at 19. GE points to statements by Plaintiffs' counsel that acknowledge that the case is "primarily a mass tort case," not a "class case." *Id.* (quoting Aug. 31, 2017 Status Conference Tr. at 59, ECF No. 145). Further, GE argues that the TAC reveals no basis to believe that class certification will ever be warranted. *Id.* at 7. Plaintiffs contend that their TAC satisfies all the CAFA requirements and that jurisdiction is appropriate. Opp'n to GE MTD at 11–12.

Here, there are 239 named Plaintiffs, and Plaintiffs allege no claims against any State or governmental entity. *See generally* TAC. The prayer for relief demands $1,000,000,000, meeting the amount in controversy requirement. *See* TAC Prayer. Further, Lindsay Cooper is a citizen of California, while GE is a citizen of New York (state of incorporation) and Connecticut (principle place of business), thus minimal jurisdiction is also satisfied. Accordingly, the TAC meets the CAFA jurisdictional requirements. *See* 28 U.S.C. § 1332(d)(11)(b).

Despite GE's contentions that there are insufficient allegations to certify the class alleged here, none of these alleged flaws are "so obviously fatal as to make the plaintiff's attempt to maintain the suit as a class action frivolous." *See Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 807 (7th Cir. 2010). Accordingly, the Court concludes that there is subject matter jurisdiction under CAFA.

## II. Choice-of-Law

GE requests the Court perform a choice-of-law analysis as to the issue of GE's liability, arguing Japanese law applies and precludes GE from liability.[3] GE MTD at 21–32. Plaintiffs argue that the Court should defer making a choice-of-law analysis at this point, although California substantive law should apply to the case and GE is strictly liable.[4] Opp'n to GE MTD at 14–24.

In a diversity case, the district court must apply the choice-of-law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941); *Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 484 (9th Cir. 1987). California applies a three-step "governmental interest" analysis to choice-of-law questions:

> First, the court examines the substantive law of each jurisdiction to determine whether the laws differ as applied to the relevant transaction. Second, if the laws do differ, the court must determine whether a "true conflict" exists in that each of the relevant jurisdictions has an interest in having its law applied. "If only one jurisdiction has a legitimate interest in the

---

[3] In their briefs and at oral argument, Plaintiffs asserted that the Ninth Circuit has already expressed a position on GE's arguments regarding the choice-of-law issue. *See, e.g.*, Opp'n to GE MTD at 21. But, as the Ninth Circuit made clear, "the district court has yet to undergo a choice-of-law analysis" and it is yet to be determined "what body of law applies." *Cooper v. Tokyo Elec. Power Co.*, 860 F.3d 1193, 1215 (9th Cir. 2017). Further, the issue regarding the applicability of the Compensation Act was not before the Ninth Circuit.

[4] The Parties also reference American federal law in their choice-of-law arguments. Plaintiffs argue the Court could "potentially even cobbl[e] together the appropriate law from California, Japan, American federal law and other appropriate sources," Opp'n to GE MTD at 11, but ultimately take the position that, if the Court does consider choice of law, it should apply California law. *Id.* at 14. Based on the pleadings, the claims alleged, and the facts of the case, the Court will conduct its choice-of-law analysis as to the laws of California or Japan.

> application of its rule of decision, there is a 'false conflict' and the law of the interested jurisdiction is applied." On the other hand, if more than one jurisdiction has a legitimate interest, "the court must move to the third stage of the analysis, which focuses on the 'comparative impairment' of the interested jurisdictions. At this stage, the court seeks to identify and apply the law of the state whose interest would be the more impaired if its law were not applied.

*Abogados v. AT&T Inc.*, 223 F.3d 932, 934 (9th Cir. 2000) (internal citations omitted). Generally, the preference is to apply California law, rather than choose the foreign law as a rule of decision. *Strassberg v. New England Mut. Life Ins. Co.*, 575 F.2d 1262, 1264 (9th Cir. 1978). "[T]he party seeking to dislodge the law of the forum[] bears the burden of establishing that the foreign jurisdiction has an interest, cognizable under California conflict-of-law principles, in the application of its law to the dispute at hand." *McGhee v. Arabian Am. Oil Co.,* 871 F.2d 1412, 1424 (9th Cir. 1989).

### A.    *Preliminary Choice-of-Law Issues*

Before the Court conducts the choice-of-law analysis, it addresses Plaintiffs' preliminary arguments regarding the appropriateness of conducting the analysis at this point in the litigation.

Plaintiffs argue that the choice-of-law determination requires additional time and development to analyze fully, thus the Court should not decide the issue at the motion-to-dismiss stage. Opp'n to GE MTD at 21–24. The Court disagrees**.** "The question of whether a choice-of-law analysis can be properly conducted at the motion to dismiss stage depends on the individual case." *Czuchaj v. Conair Corp.*, No. 13-cv-1901 BEN (RBB), 2014 WL 1664235, at *9 (S.D. Cal. Apr. 18, 2014). As long as a court has sufficient information to analyze the choice-of-law issue thoroughly, *see In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1028 (N.D. Cal. 2007), and discovery will not likely affect the analysis, *see Frezza v. Google Inc.*, No. 5:12-cv-00237-RMW, 2013 WL 1736788, at *5–6 (N.D. Cal. Apr. 22, 2013), it is appropriate for the Court to undertake a choice-of-law analysis at the motion-to-dismiss stage. Here, GE and Plaintiffs fully briefed

the issues, and discovery will not affect the analysis.  Thus, the Court finds that there is adequate information to analyze the specific choice-of-law determination as to the issue of GE's liability.

Next, Plaintiffs argue that the Compensation Act's channeling provision is procedural, not substantive, and therefore not appropriate for the Court apply.  Opp'n to GE MTD at 21–24.  Whether or not the Court applies Japanese law or California law in the first place is a choice-of-law issue, and choice-of-law rules are considered "substantive." *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002) (a federal court in a diversity case must apply the choice-of-law rules of the state in which it sits); *see also* O'Connell & Stevenson, *Rutter Group Practice Guide: Fed. Civil Procedure Before Trial*, Ch. 1-B (The Rutter Group 2017) (same).  The law of California will therefore dictate which forums law will apply to this case.

As for the Compensation Act itself, the Court concludes that this issue is substantive.  Plaintiffs have provided no authority to support their assertion that application of the Compensation Act's channeling provision is procedural.  Applying the Compensation Act would significantly affect the result of this litigation because whether or not the Compensation Act is applied determines the entire case as to GE's liability.  This makes the Act a substantive one, and thus proper for the Court sitting in diversity to apply.  *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) (finding issue substantive if applying the foreign law, rather than the forum State's law, "significantly affect[s] the result of a litigation").

### B.   *Choice-of-Law Analysis*

#### 1.   *Differences in the Forum Laws*

The first factor in California's governmental interest test asks whether the laws of the two forums differ.  The Parties and the Court all agree the laws absolutely conflict.

Under Japanese law, the Compensation Act applies.  The Compensation Act channels liability for nuclear damage exclusively to the licensed operator of a nuclear installation.  *See* Compensation Act, art. 3 & 4 (when a Nuclear Operator in the course of

7

Operation of a Nuclear Reactor causes Nuclear Damage, "no other persons shall be liable to compensate for damages other than the Nuclear Operator"). The Parties agree that, if the Court were to apply this Act, it must dismiss all claims against GE.

In contrast, California law holds the manufacturer liable if a product is defective. Under California law, "[a] manufacturer is strictly liable for injuries caused by a product that is (1) defectively manufactured, (2) defectively designed, or (3) distributed without adequate instructions or warnings of its potential for harm." *Hufft v. Horowitz*, 4 Cal. App. 4th 8, 13 (1992) (citing *Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 428 (1978)). If Plaintiffs prove that GE defectively manufactured or designed the reactor, under California law, GE would be strictly liable for Plaintiffs' injuries.

### 2. *"True Conflicts" Analysis*

The second factor in California's governmental interest test requires the Court to evaluate each jurisdiction's interest in the application of its law to the issue at hand. The Court must examine the governmental policies underlying the California and Japanese laws, "'preparatory to assessing whether either or both states have an interest in applying their policy to the case.' Only if each of the states involved has a 'legitimate but conflicting interest in applying its own law' will [the court] be confronted with a 'true' conflicts case." *Offshore Rental Co. v. Cont'l Oil Co.*, 22 Cal. 3d 157, 163 (1985) (internal citations omitted). "When one of two states related to a case has a legitimate interest in the application of its law and policy and the other has none, there is no real problem; clearly the law of the interested state should be applied." *Hernandez v. Berger*, 102 Cal. App. 3d 795, 799 (1980) (internal citations omitted).

### a. California's Interest

Plaintiffs allege GE's Boiling Water Reactors contained numerous design and manufacturing defects for which GE should be liable. TAC ¶ 83. As noted, California law holds manufacturers strictly liable for products defectively manufactured or designed. *Hufft*, 4 Cal. App. 4th at 13. The governmental interest underlying California's strict products liability law

"is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves." . . . The other purposes, or public policies, behind the creation of the doctrine of strict products liability in tort as a theory of recovery are: "(1) to provide a 'short cut' to liability where negligence may be present but difficult to prove; (2) to provide an economic incentive for improved product safety; (3) to induce the reallocation of resources toward safer products; and (4) to spread the risk of loss among all who use the product."

*Barrett v. Super. Ct.*, 222 Cal. App. 3d 1176, 1186 (1990) (internal citations omitted).

Plaintiffs argue California has a strong interest in applying its laws to this case because California seeks to protect U.S. servicemen and women stationed and serving the Naval and Marine branches in the Southern District of California. Opp'n to GE MTD at 16–17 & 17 n.1. Plaintiffs also argue California has a strong public policy behind protecting those injured on account of defective products. *Id.* at 18. The primary purpose behind California's strict products liability law is to guarantee that the costs of injuries resulting from defective products are borne by manufacturers, not victims. *Id.* at 18–19 & 19 n.2. The Court agrees this interest is significant and, thus, California has an interest in ensuring compensation for the victims from California.

California has no interest, however, in ensuring compensation for plaintiffs who neither are California residents nor injured in California. *See Chen v. L.A. Truck Ctrs., LLC*, 7 Cal. App. 5th 757, 771 (2017) (citing *Hurtado v. Super. Ct.*, 11 Cal. 3d 574, 583 (1974)). Although California has an interest in ensuring compensation for the Plaintiffs residing in California, this interest does not extend to the other, non-resident Plaintiffs.

Other interests tied to California's strict products liability do apply to non-residents. Specifically, California has an interest in encouraging corporations to manufacture safe products regardless of whether these products will affect California residents. *See Hurtado*, 11 Cal. 3d at 583–584. California also has an interest in deterring defective nuclear power plants, both through the strict liability imposed in California for defective

products and the availability of punitive damages.  These are significant interests that apply whether or not Plaintiffs reside in California.

After weighing these factors, the Court finds that California has a strong interest in having its strict products liability law apply to this matter.

b.    Japan's Interest

GE argues that Japan has a compelling interest in "applying its own law on allocation of liability to a nuclear power plant accident occurring in Japanese territory."  GE MTD at 26–27.  GE cites this Court's past Order, wherein it stated, "Japan has an interest in adjudicating claims arising from the March 11, 2011 earthquake and tsunami that devastated large swaths of the country as evidenced by Japan's large investment in responding to the disaster."  GE MTD at 26 (citing ECF No. 69 at 28).

Japan also has an interest because it is the place of the wrong.  The "place of the wrong" is the state where the last event necessary to make the actor liable occurred.  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 593 (9th Cir. 2012) (citing *Zinn v. Ex-Cell-O Corp.*, 148 Cal. App. 2d 56, 80 n.6 (1957)).  Plaintiffs' injuries occurred off the coast of Japan as a result of the release of radioisotopes from the FNPP, TAC ¶ 84, and "the situs of the injury remains a relevant consideration" in choice-of-law issues.  *Offshore Rental*, 22 Cal. 3d at 168.

Finally, Japan has an interest in imposing liability based on and consistent with the Compensation Act.

> "When a state adopts a rule of law limiting liability for commercial activity conducted within the state in order to provide what the state perceives is fair treatment to, and an appropriate incentive for, business enterprises, . . . the state ordinarily has an interest in having that policy of limited liability applied to out-of-state companies that conduct business in the state, as well as to businesses incorporated or headquartered within the state."

///

///

*McCann*, 48 Cal. 4th 68, 91 (2010); *see also McGhee*, 871 F.3d at 464 (holding Turkey has "a legitimate interest in limiting the liability of corporations that conduct business within its borders").

After considering these interests, the Court concludes that Japan also has a strong interest in resolving the issues surrounding the incident, which occurred in Japan. Having found that both Japan and California have an interest in having their own laws applied, a true conflict exists.

### 3. *Comparative Impairment Analysis*

Once the trial court "determines that the laws are materially different *and* that each state has an interest in having its own law applied, thus reflecting a true conflict, the court must take the final step and select the law of the state whose interests would be "more impaired' if its law were not applied." *Wash. Mut. Bank, FA*, 24 Cal. 4th at 920. "In making this comparative impairment analysis, the trial court must determine 'the relative commitment of the respective states to the laws involved' and consider 'the history and current status of the states' laws,' and 'the function and purpose of those laws.'"[5] *Id.* (quoting *Offshore Rental*, 22 Cal. 3d at 167). "Accordingly, [the Court's] task is not to determine whether the [Japanese] rule or the California rule is the better or worthier rule, but rather to decide—in light of the legal question at issue and the relevant [] interests at stake—which jurisdiction should be allocated the predominating lawmaking power under the circumstances of the present case." *McCann*, 48 Cal. 4th at 97.

Plaintiffs argue California's interest would be significantly impaired if Japanese law were applied because GE's liability would go "unexamined" and GE would evade financial

---

[5] Neither Party makes any arguments as to the "history and current status of the states' laws." *Offshore Rental*, 22 Cal. 3d at 167. In *Offshore Rental*, the court found California's law to be "unusual and outmoded" in contrast to Louisiana's "prevalent and progressive" law, a fact the court found weighed toward Louisiana having a stronger interest in applying its law. *Id.* There is nothing to indicate either California's law on product liability or Japan's Compensation Act are outmoded; indeed, both remain prevalent today. *See Chen*, 7 Cal. App. 5th 757 (applying California's strict liability law in 2017); Nasu Decl. 9 (noting the Act has been, and continues to be, applied to provide compensation to the victims of the 2011 incident at the Fukushima Plant).

responsibility for its alleged misdeeds. Opp'n to GE MTD 19 n.2. According to Plaintiffs, without a finding of liability as to GE, Plaintiffs' rights will not be vindicated, California's interest in ensuring victims are compensated would be frustrated, and California could be responsible for Plaintiffs' long-term medical bills. *Id.*; *see also Munguia v. Bekens Van Lines, LLC*, No. 1:11-cv-01134-LJO-SKO, 2012 WL 5198490, at *5 (E.D. Cal. Oct. 19, 2012) (concluding California has an interest that "its residents are compensated for their injuries and do not become dependent on the resources of California for necessary medical, disability, and unemployment benefits").

Predictably, GE disagrees. GE contends that the Compensation Act could fully compensate Plaintiffs for their injuries. GE MTD at 30. Under the Compensation Act, Plaintiffs with valid claims may recover against TEPCO—the operator liable for such injuries—which has already acknowledged its liability for any harm caused by the radiation and has already paid over $70 billion to compensate those affected by the incident. *Id.*

The Court finds no convincing support for Plaintiffs' assertion that Japanese law will leave them with "minimal and insufficient damages" requiring the U.S. Government or California to pick up the financial balance. And while Plaintiffs' contention that litigating in the Japanese forum will be exponentially more difficult than litigating in California may be true, Plaintiffs have shown no law or facts that indicate that the Japanese forum is closed to any of the named, or unnamed, Plaintiffs. As the California Supreme Court has held, "the policy underlying a statute may [] be less 'comparatively pertinent' if the same policy may easily be satisfied by some means other than enforcement of the statute itself." *Offshore Rental*, 22 Cal. 3d at 166. Such is the case here. Because compensation for Plaintiffs' injuries is available in the Japanese forum, Plaintiffs have not demonstrated how, or to what extent, California's policy of compensating injured victims will be frustrated.

Plaintiffs also argue that California's interest in deterring tortfeasors would be greatly impaired. Opp'n to GE MTD 18–20. If Japanese law is applied, Plaintiffs concede that dismissal of their claims would follow. They argue that, if this occurs, no forum would

///

12

be capable of holding GE responsible, thwarting California's interest in deterrence. *Id.* at 18.

Although deterrence is a legitimate interest, "California decisions have adopted a restrained view of the scope or reach of California law with regard to the imposition of liability for conduct that occurs in another jurisdiction and that would not subject the defendant to liability under the law of the other jurisdiction." *McCann*, 48 Cal. 4th at 99.

For example, in *McCann*, the California Supreme Court applied California's choice-of-law analysis and determined that the application of Oklahoma law was more appropriate, despite the fact that Oklahoma's statute of limitations barred the plaintiff—a California resident exposed to asbestos in Oklahoma—while California's statute of limitations did not. 48 Cal. 4th at 99. Although that decision meant the plaintiff could not recover at all from the defendant, the court held Oklahoma had a "predominate interest" in regulating conduct that occurred within its borders and an interest "in being able to assure individuals and commercial entities operating within its territory that applicable limitations on liability set forth in the jurisdiction's law will be available to those individuals and businesses in the event they are faced with litigation in the future." *Id.* at 97.

Likewise, in *Offshore Rental*, the California Supreme Court applied Louisiana law in a case involving a California corporation seeking to recover for loss of services of an employee injured in Louisiana. 22 Cal. 3d at 160. The court concluded that, "[b]y entering Louisiana, plaintiff exposed itself to the risks of the territory, and should not expect to subject defendant to a financial hazard that Louisiana law had not created." *Id.* at 169 (internal quotations and alterations omitted). Louisiana's "vital interest in promoting freedom of investment and enterprise *within Louisiana's borders*" prevailed over California's interest in compensating residents. *Id.* at 168 (emphasis in original).

The reasoning from both *McCann* and *Offshore Rental* is applicable to the present case and weighs in favor of Japan having the more impaired interest. Japan has an interest in ensuring the uniform applicability of the Compensation Act, which limits liability to companies operating in Japan in the field of nuclear reactor operations. Japan instituted

the Compensation Act to encourage businesses to participate in Japan's nuclear industry, and it has an interest in applying its law fairly to all businesses who participate. *See* Declaration of Kohei Nasu ("Nasu Decl."), ECF No. 152-22 at 9; *see also Meraz v. Ford Motor Co.*, No. CV 13-00260 PSG (VBKXx), 2014 WL 12558123, at *5 (C.D. Cal. June 13, 2014) (citing *McCann* to hold Georgia has an interest in limiting liability for commercial activity conducted within the state to provide fair treatment to, and an appropriate incentive for businesses to operate within the state). Furthermore, Plaintiffs boarded a vessel destined for Japan, thus exposing themselves to the "risks of the territory." Plaintiffs therefore cannot expect to subject GE to a "financial hazard" under California law because one of the ships carrying Plaintiffs that provided aid to Japan had a home port of San Diego. *Castro v. Budget Rent-A-Car Sys., Inc.*, 154 Cal. App. 4th 1162, 1180 (2007) (finding that because incident occurred within Alabama's borders, Alabama had a "presumptive interest in controlling the conduct of those persons who use its roadways, absent some other compelling interest to be served by applying California law").

In sum, after balancing the impairments and reviewing the relevant case law, the Court is persuaded that Japan's interests would be "more impaired" if its law was not applied to this matter. Accordingly, Japanese law applies to the issue of GE's liability.

### C.    *Application of Japanese Law*

Having determined that Japanese law applies, the Court must next determine the ramification of that finding. Article 3 of the Compensation Act provides that, when damage that is attributable to the operation of a nuclear reactor occurs, the Nuclear Operator is liable for all damages in connection with the operation of the nuclear reactor. Compensation Act, art. 3. Article 4 provides, in the case set forth in Article 3, "no other persons shall be liable to compensate for damages other than the Nuclear Operator." *Id.* art. 3 & 4. Justice Kohei Nasu, former Justice on the Japanese Supreme Court, explains that the Compensation Act "has adopted principles of . . . strict and unlimited liability of the Operator of a nuclear plant . . . [and] channeling of third party liability for Nuclear Damage exclusively to the Operator." Nasu Decl. at 9.

Only two questions remain about the applicability of the Compensation Act to this Case. The first is whether GE is an "Operator" within the meaning of the statute. Under Article 2 of the Compensation Act, there are a variety of definitions that may qualify an entity as a "Nuclear Operator." *See* Compensation Act art. 2 (listing eight possibilities). In his declaration, Justice Nasu states that, in his opinion, GE is not an Operator because it is not licensed as such in Japan. Nasu Decl. at 9. GE also points to a recent Tokyo High Court decision that found that the Compensation Act precluded a finding of liability against any entity other than TEPCO. GE MTD at 24–25. The Court finds that GE does not fall within any of the Compensation Act's definitions for a Nuclear Operator, and thus GE "shall [not] be liable to compensate for damages." *See* Compensation Act art. 3.

The second question is whether the exception to the Compensation Act's channeling provision applies. Article 3 provides that the channeling provision does "not apply in the case where the damage was caused by an abnormally massive natural disaster." Compensation Act, art. 3. A massive 9.0 magnitude earthquake, giving rise to tsunami waves more than 40 feet high that struck and severely damaged the FNPP, releasing radiation as a result, caused the damage in this case. Although this exception would seem to apply, the Japanese government and courts have taken the position that it does not. GE MTD at 21–22; *see also* Declaration of David Weiner, Ex. B, ECF No. 152-4 at 6 (July 19, 2012 Tokyo District Court decision finding Article 3 exception does not apply). Moreover, as GE points out, even if the exception were to apply, liability would fall to the Japanese government under Article 17 of the Compensation Act, resulting in no liability for GE. GE MTD at 22 (citing Compensation Act art. 17). Based on the clear positions of the Japanese government and courts regarding the applicability of the exception, the Court agrees that the Article 3 exception does not apply.

The Court concludes, that under the Compensation Act, all liability for the meltdown channels to the Nuclear Operator (TEPCO), GE is not an Operator under the Act, and that no exception applies. Thus, none of Plaintiffs' claims against GE can stand under the Compensation Act.

12cv3032-JLS (JLB)

## II.     Conclusion

Based on the foregoing, the Court finds that subject matter jurisdiction is appropriate in this case under CAFA.  Under California's choice-of-law governmental interest test, the Court finds that Japanese law applies to this case.  Further, the Court interprets the Japanese Compensation Act to channel all liability from third parties to the Nuclear Operator.  Because GE is not an Operator and no exception applies, the Compensation Act precludes all liability against GE.  Thus, the Court **GRANTS** GE's Motion to Dismiss and **DISMISSES** all of Plaintiffs' claims against GE pursuant to the Compensation Act.

## TEPCO'S MOTION TO DISMISS

In its Motion to Dismiss, TEPCO argues that it did not waive its personal jurisdiction defense, and therefore this Court should dismiss Plaintiffs' claims for lack of personal jurisdiction.  TEPCO MTD at 12–28.  TEPCO also argues that new developments, including the choice-of-law analysis this Court should undertake, weigh in favor of dismissing the claims under international comity.  TEPCO MTD at 28–43.

## I.     Personal Jurisdiction

Under Rule 12(h)(1) of the Federal Rules of Civil Procedure, a defendant waives any personal jurisdiction objection if it omits it from a previous motion filed under Rule 12 or fails to raise the issue in its responsive pleading.  Fed. R. Civ. P. 12(h)(1); *see also Glater v. Eli Lilly & Co.*, 712 F.2d 735, 738 (1983) ("It is clear under this rule that defendants wishing to raise [the personal jurisdiction] defense[ ] must do so in their first defensive move, be it a Rule 12 motion or a responsive pleading.").  An exception to this rule exists when a defense or objection was unavailable at the time the defendant filed its earlier motion or responsive pleading.  Fed. R. Civ. P. 12(g)(2).

TEPCO argues that under Ninth Circuit law prior to *Bristol-Myers Squib Co. v. Superior Court*, 137 S. Ct. 1773 (2017), TEPCO did not have 'available' to it the objection to personal jurisdiction that it now asserts under *Bristol-Myers* when it filed its prior motion to dismiss.  TEPCO MTD at 19–23, 25–28.

///

In *Bristol-Myers*, a group of consumers brought tort claims against the defendant (a pharmaceutical company) in California state court, alleging injuries from the use of the defendant's drug. 137 S. Ct. at 1778. The 678 plaintiffs included 86 California residents and 592 non-California residents from other states. *Id.* Although the nonresident plaintiffs were not prescribed the drug in California, injured in California, or treated for their injuries in California, *id.*, and the drug was not manufactured, labeled, or packaged in California, *id.* at 1778, the California Supreme Court found specific personal jurisdiction to exist. *Id.* at 1778–79. Employing a "sliding scale approach," the California Supreme Court held that, although the claims by the non-California-resident plaintiffs did not arise out of contacts in the state, Bristol Myers distribution contract with a California company co-defendant, as well as other non-claim-related forum contacts "permitted the exercise of specific jurisdiction based on a less direct connection between [Bristol Myers]'s forum activities and plaintiffs' claims than might otherwise be required." *Id.* at 1778–79. The United States Supreme Court reversed, finding "no support for this approach" in its personal jurisdiction jurisprudence. *Id.* at 1781. Instead, the Court employed a "straightforward application . . . of settled principles of personal jurisdiction," *id.* at 1783, in which specific jurisdiction over a claim can only be exercised if there is an "affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State." *Id.* at 1781 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

The Court is not convinced that the *Bristol-Myers* opinion constituted a change in the law adequate to revive TEPCO's personal jurisdiction defense. TEPCO claims that its business relationship with GE would have been enough to assert personal jurisdiction over it under then-current Ninth Circuit precedent, which, according to TEPCO, applied the same "sliding scale" approach the Supreme Court rejected. TEPCO MTD at 20 (citing *Yahoo! Inc. v. La Ligue Contre le Racisme et L'Antisemitisme*, 433 F. 3d 1199, 1210 (9th Cir. 2006) (en banc)). But in *Bristol-Myers*, the Supreme Court specifically noted that it has previously held that "'a defendant's relationship with a . . . third party, standing alone,

is an insufficient basis for jurisdiction.'" *Bristol-Myers*, 137 S. Ct. at 1781 (quoting *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (citing *Rush v. Savchuk*, 444 U.S. 320, 332 (1980) ("Naturally, the parties' relationships with each other may be significant in evaluating their ties to the forum. The requirements of *International Shoe,* however, must be met as to each defendant over whom a state court exercises jurisdiction")) (emphasis added). Indeed, the Supreme Court has long held that "[d]ue process requires that a defendant be haled into court in a forum State based on [its] own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts [it] makes by interacting with other persons affiliated with the State." *Walden*, 571 U.S. at 286 (quoting *Burger King,* 471 U.S. at 475).

Moreover, a fair reading of *Yahoo!* does not support TEPCO's contention that raising a personal jurisdiction defense would have been futile prior to *Bristol-Myers*. In *Yahoo!*, the Ninth Circuit noted that, "[i]n a specific jurisdiction inquiry, we consider the extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to those contacts. A strong showing on one axis will permit a lesser showing on the other." *Yahoo! Inc.*, 433 F.3d at 1210. In the context of that case, this unremarkable statement merely meant "[a] single forum state contact can support jurisdiction if 'the cause of action . . . arises out of that particular purposeful contact of the defendant with the forum state,'" *id.* (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987), a holding not in disagreement with *Bristol-Myers*. The Court is unable to find a case stretching *Yahoo!* to find specific jurisdiction in a case factually similar to *Bristol-Myers*. Thus, nothing in *Yahoo!* convinces the Court that, had TEPCO raised a personal jurisdiction defense earlier in the litigation, the Court would have had no choice but to assert jurisdiction over TEPCO on the current facts.

Because TEPCO previously filed a motion to dismiss and failed to raise the personal jurisdiction defense there, *see* ECF No. 26, TEPCO waived its jurisdictional challenge and may not raise it here. *See Alvarez v. NBTY, Inc.*, 2017 WL 6059159, at *6-7 (S.D. Cal. Dec. 6, 2017) (finding defendants waived personal jurisdiction defense because *Bristol-*

*Myers* did not change Ninth Circuit law); *see also Sloan v. General Motors LLC*, 287 F. Supp. 3d 840, 854 (N.D. Cal. 2018) (same).

## II.   Choice of Law

Like GE, TEPCO also requests that the Court perform a choice-of-law analysis, which it asserts will impact the international comity analysis. TEPCO MTD at 30–38. Plaintiffs argue that the choice of law analysis is not ripe for determination and that California law will apply. Opp'n to TEPCO MTD at 36–37.

### A.   *Preliminary Choice-of-Law Issues*

As they did in their Opposition to GE's Motion, Plaintiffs argue that the choice-of-law analysis is not "ripe for determination" because the case requires additional time for development. *Id.* at 36. The Court already addressed—and rejected—this argument above. *See supra* GE Motion to Dismiss section II.A. The court will therefore conduct a choice-of-law analysis as it pertains to the claims against TEPCO.

### B.   *Choice-of-Law Analysis*

#### 1.   *Differences in the Forum Laws*

The first factor in California's governmental interest test asks whether the laws of the two forums differ. TEPCO argues that Japanese and California law differ in at least three significant ways. TEPCO MTD at 32–35. First, under Japanese law, the Compensation Act would be the exclusive means of redress and strict liability would apply for all aspects of the incident. *Id.* at 32 (citing Compensation Act, art. 3). Under California law, strict liability may also apply to an ultra-hazardous activity theory based on the operation and maintenance of the nuclear power plant. *Id.* at 34 n.14. But strict liability is not the only theory Plaintiffs may raise under California law; for the same construction and operation activities that constitute the hazardous activity, negligence principles may also be applied. *Id.* at 34.

Second, the Compensation Act requires any plaintiffs to establish a "high probability" of causation. *Id.* at 33. This standard of causation requires that "plaintiff[s] must show a likelihood of 70% or 80%." *Id.* (citing Apr. 25, 2018 Declaration of Yasuhei

Taniguchi ("Taniguchi Decl.") ¶ 26, ECF No. 153-3). In contrast, California negligence principles require "[p]laintiffs to establish that their injuries were more likely than not caused by radiation exposure," which is a greater than 50% likelihood. *Id.* (citing *Jones v. Ortho Pharm. Corp.*, 163 Cal. App. 3d 396, 403 (1985)).

Third, TEPCO argues that the Compensation Act does not permit punitive damages. *Id.* at 33. According to TEPCO, damages under the Act are limited to compensatory damages and "do not permit an award of additional sums for the purpose of punishing the nuclear operator." *Id.* (citing Apr. 25, 2018 Taniguchi Decl. ¶¶ 3–21). California law, on the other hand, permits punitive damages for both strict liability and negligence claims. *Id.* at 35 (citing Cal. Civ. Code § 3294).

Plaintiffs do not contest that the Compensation Act conflicts with California law on these points. And while Plaintiffs "do not concede that the standards set forth by TEPCO are the proper standards under Japanese law for this case," they raise no alternative interpretations and no reasons why such an interpretation of Japanese law would be consistent with California law. Accordingly, the Court finds that the laws of Japan and California conflict.

2. *"True Conflicts" Analysis:*

The second factor in California's governmental interest test requires the Court to evaluate each jurisdiction's interest in the application of its law to this issue. In their Opposition to TEPCO's Motion, Plaintiffs make no specific arguments regarding the interests of either forum. *See generally* Opp'n to TEPCO MTD. In addressing whether there is a true conflict as it pertains to the claims against GE, the Court determined that both California and Japan have strong interests in applying their respective laws to this case. *See supra* GE Motion to Dismiss section II.B.(2). Nothing regarding the specific laws and facts at issue in the claims against TEPCO changes this analysis in any way. Thus, the Court finds a true conflict exists.

///

///

### 3. *Comparative Impairment*

The third and final step the court must take is to determine which forum's interests would be "more impaired" if its law were not applied. The Court's previous analysis of this step with regard to GE's liability is applicable here as well, and thus the Court concludes that Japan's interests would be "more impaired" if its law was not applied to this matter.

In fact, when compared to the claims against GE, Japan's interests in applying its laws in the case against TEPCO are even stronger. After the FNPP accident, the Japanese government established the Nuclear Damage Compensation and Decommissioning Facilitation Fund ("NDF"), providing over $75 billion dollars to TEPCO to resolve claims arising from the accident. TEPCO MTD at 41 (citing Declaration of Norihito Yamazaki ("Yamazaki Decl.") ¶ 27, ECF No. 153-17). The Japanese government explained that if United States' law is applied, it could result in inconsistent adjudication of claims, which would be "highly corrosive to the integrity of the compensation system," not only for reasons of fairness to the claimants, but also the continued viability of funding of the NDF. *Id.* (citing Government of Japan Amicus Brief, at 3–4).

Because Japan has an overwhelmingly strong interest in applying its laws in this case, and because those interests would be more impaired than California's, the Court determines that Japanese law applies to the issue of TEPCO's liability.

## III. International Comity

International comity is an abstention doctrine that permits federal courts to defer to the judgment of an alternative forum where the issues to be resolved are "entangled in international relations." *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1237 (11th Cir. 2004) (quoting *In re Maxwell Comm'n Corp.*, 93 F.3d 1036, 1047 (2d Cir. 1996)). Courts must evaluate several factors, including "the strength of the United States' interest in using a foreign forum, the strength of the foreign governments' interests, and the adequacy of the alternative forum." *Id.* at 1238 (citing cases).

///

In assessing the interests of the respective countries, courts should consider five nonexclusive factors: (1) the location of the conduct in question, (2) the nationality of the parties, (3) the character of the conduct in question, (4) foreign policy interests, and (5) any public policy interests. *Mujica v. AirScan Inc.*, 771 F.3d 580, 604, 607 (9th Cir. 2014). Also relevant to the analysis is which country's law applies and whether those laws conflict. *Id.* at 602–03. With respect to the third element—adequacy of the foreign forum—the focus should be on procedural fairness in the forum and whether the opponent has presented specific evidence of significant inadequacy. *Id.* at 607–08.

Previously, the Court held that, although "both the U.S. and Japan have an interest in having this suit heard within their forum[,] . . . [the] reasons for maintaining jurisdiction of this case [were] more compelling." ECF No. 107 at 46. Consequently, the Court "decline[d] to exercise its discretion in dismissing this case under the doctrine of international comity." *Id.* In affirming that decision, the Ninth Circuit noted in *Cooper* that "further developments in the district court may counsel in favor of dismissing Plaintiff's lawsuit in favor of a Japanese forum" 860 F.3d at 1201 n.12.

TEPCO argues that since the Ninth Circuit's decision, "several significant factors have tilted the balance sharply in favor of a Japanese court." TEPCO MTD at 29. Specifically, TEPCO argues that the outcome of the choice of law analysis, the Japanese Government's objection to the suit, and several recent findings by this Court in the *Bartel* cases should sway this Court to dismiss Plaintiffs' claims on international comity grounds. *Id.* at 30–43.

### A.    *Changes Since Ninth Circuit Decision: Choice-of-Law*

Following a choice-of-law analysis, the country's law that applies is relevant to the international comity analysis. *Ungaro-Benages*, 379 F.3d at 1240; *see also Mujica*, 771 F.3d at 602 ("At least in cases considering adjudicatory comity, we will consider whether there is a conflict between American and foreign law as one factor in . . . the application of comity.").

///

Plaintiffs argue that if the Court determines that Japanese law applies, that fact should not weigh in favor of dismissal. They argue that while some issues will likely turn on Japanese law, the entire case will likely be decided under a mixed-law framework. Opp'n to TEPCO MTD 38–39. According to Plaintiffs, that puts this Court in as good of a position as the Japanese court to rule on the case. Moreover, Plaintiffs assert that, even if Japanese law applies to all the major issues, this Court is "fully capable" of applying that law in this case. *Id.*

The Court appreciates this vote of confidence, but these arguments have very little weight in the comity analysis. And even if they did, it is undercut by Plaintiffs' own briefing. While Plaintiffs state that applying Japanese law will be straightforward, they already disagree that the standards TEPCO set forth in its Motion concerning Japanese law are the correct standards. *Id.* at 27 n.10. Given this disagreement, this Court would be forced to decide what the correct standards under Japanese law are without the benefit of "any familiarity with the substantive principles and nuances of Japanese law" that will "inevitably arise during the course of this complex litigation." TEPCO MTD at 39. The Court agrees that "[i]t would be preferable to allow a Japanese court to articulate and apply the pertinent principles of Japanese law in the uniform and authoritative manner that only the courts of Japan can do." *Id.*

Based on the Ninth Circuits' guidance regarding the now-completed choice-of-law analysis and the preference to have Japanese courts articulate and apply important and pertinent principles of Japanese law themselves, the Court finds that this factor weighs in favor of dismissing the case.

**B.      *Significant Changes Since Ninth Circuit Decision: Japanese Government's Objection to this Suit***

Prior to the Ninth Circuit appeal in these proceedings, neither the Japanese government nor the United States government expressed an interest in the location of this litigation. This Court cited that fact as a reason for maintaining jurisdiction, and the Ninth Circuit subsequently noted that, "when a country in question expresses no preference [to

the location of the litigation], the district court can take that fact into consideration." *Cooper*, 860 F.3d at 1206. When "a foreign county[] request[s] that the United States court dismiss a pending lawsuit in favor of a foreign forum[, it] is a significant consideration weighing in favor of dismissal." *Id.* (citing *Jota v. Texaco, Inc.*, 157 F.3d 153, 160 (2nd Cir. 1998)).

During the appeal in the Ninth Circuit, the Japanese government submitted an *amicus* brief stating its strong objection to continuing this suit in the United States and expressing its belief that the suit should be dismissed in favor of the Japanese forum. *Id.* Following the submission of Japan's *amicus* brief, the Ninth Circuit solicited the views of the U.S. State Department, which submitted an *amicus* brief in support of this Court maintaining jurisdiction. *Id.* at 1207. The Ninth Circuit thoroughly discussed each country's relevant policy interests. *Id.* at 1206–09. It found that "Japan has an undeniably strong interest in centralizing jurisdiction over FNPP-related claims," and that "the United States believes that maintaining jurisdiction over this case will help promote the [Convention on Supplementary Compensation for Nuclear Damage], an interest that encompasses all future claims arising from nuclear incidents around the globe."[6] *Id.* at 1209. The Ninth Circuit concluded that these "important, competing policy interests" create a "difficult judgment call" for this Court. *Id.*

TEPCO argues that, since filing the *amicus* brief in March 2016, Japan's interests have only grown stronger. The Japanese government has now paid more than $76 billion to resolve more than 17,000 claims and approximately 160 court proceedings through TEPCO's "Nuclear Damage Claim Dispute Resolution Center."[7] TEPCO MTD at 41. The sheer number of parties compensated through the Japanese system, TEPCO argues,

_____

[6] In its amicus brief, the United States also noted that, "certainly, [the district court] could choose to dismiss [this] case based on international comity." TEPCO MTD at 40 (quoting U.S. Government's *amicus curiae* brief in the Ninth Circuit 16–17).

[7] More than 440 court proceedings have been filed, while 160 have been adjudicated or settled. TEPCO MTD 41.

increases Japan's interest in ensuring there is consistency in how plaintiffs are treated to guarantee there are ample funds to maintain the system. *Id.* at 41–42.

Weighing these interests, the Court concludes that the United States and Japan both have important, competing policy interest here. Because the Japanese government has now made its position known and Defendants have made strong showings for why Japan's foreign and public policy interests would be harmed, however, the Court finds that this factor now weighs slightly in favor of dismissal.

### C. *Significant Changes Since Ninth Circuit Decision: Other Developments*

TEPCO raises two other developments in support of its argument. First, TEPCO points to this Court's decision in *Bartel I*, in which the Court found TEPCO's activities in California ended five years before the incident and many years before the litigation. This, TEPCO argues, is a change from the Court's finding that TEPCO "is a large corporation with a significant physical presence in the United States and is registered as a foreign corporation in California." ECF No. 107 at 41. The Court does not agree that this fact changes its previous analysis. When assessing the nationality of the parties, this Court focused on the Plaintiffs' U.S. citizenship, not just TEPCO's ties to California. Additionally, TEPCO does not refute its significant ties to the United States in general, which still weighs against dismissal.

Second, TEPCO argues that the nature of the conduct now weighs in favor of dismissal. Because Japanese law applies, the case is no longer a "civil tort case regarding a Japanese company's negligence and personal injury to U.S. plaintiffs," as this Court previously found. *Id.* at 42. Instead, this is a strict liability tort under Japanese law. TEPCO MTD at 43. This is true, but it does not change the Court's previous finding that this factor is neutral. A Japanese tort is still not a criminal case or violation of international moral norms that would weigh in favor of dismissal. Therefore, the Court finds this also does not move the scale in favor of dismissal.

///

///

## IV. Conclusion

As the Ninth Circuit previously made clear, this is a "close case" with competing interests pointing in both directions. After further developments, and with the benefit of the Ninth Circuit's guidance, the Court has now reweighed its prior ruling on international comity. The location of the conduct in question, as well as the nationality of the parties, continues to weigh against dismissal; the nature of the conduct and public policy interests remains neutral. Now, however, after considering the Japanese and United States governments' views, the Court finds that the foreign and public policy interests weigh toward dismissal. And having conducted a choice-of-law analysis and having determined that Japanese law applies, this factor also weighs in favor of dismissal.

On balance, the Court concludes that the factors now weigh in favor of dismissal. Accordingly, the Court **GRANTS** TEPCO's Motion to Dismiss and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' case against TEPCO under international comity.

## CONCLUSION

Based on the foregoing, the Court (1) **GRANTS** GE's Motion to Dismiss (ECF No. 152) and **DISMISSES** Plaintiffs' TAC as to the claims against GE; and (2) **GRANTS** TEPCO's Motion to Dismiss (ECF No. 153) and **DISMISSES** Plaintiffs' TAC **WITHOUT PREJUDICE** as to the claims against TEPCO. The Court dismisses the complaint against TEPCO without prejudice so that Plaintiffs may file their claims in the proper forum.

**IT IS SO ORDERED**

Dated: March 4, 2019

_Janis L. Sammartino_
Hon. Janis L. Sammartino
United States District Judge

12cv3032-JLS (JLB)